**JENNER & BLOCK LLP**
Vincent E. Lazar (admitted *pro hac vice*)
Derek L. Wright (admitted *pro hac vice*)
Angela M. Allen (admitted *pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
Telephone:     (312) 222-9350
Facsimile:     (312) 527-0484
Email:         vlazar@jenner.com
               dwright@jenner.com
               aallen@jenner.com

**HAYNES AND BOONE, LLP**
Charles A. Beckham, Jr. (TX #02016600)
Ian T. Peck (TX #24013306)
Martha Wyrick (TX #24101606)
2801 N. Harwood Street, Ste. 2300
Dallas, TX 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email: charles.beckham@haynesboone.com
       ian.peck@haynesboone.com
       martha.wyrick@haynesboone.com

*Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| OMNICARE, LLC, *et al.*,[1] | ) Case No. 25-80486 (SGJ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DEBTORS' <u>THIRD OMNIBUS</u> MOTION FOR ENTRY OF AN ORDER**
**(I) AUTHORIZING AND APPROVING SETTLEMENT AGREEMENTS PURSUANT**
**TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AND**
**<u>(II) GRANTING RELATED RELIEF</u>**

---

[1] The last four digits of Omnicare, LLC's federal tax identification number are 1351. There are 110 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Omnicare. The location of Omnicare, LLC's corporate headquarters and the Debtors' service address is One CVS Drive, Mail Code 1160, Woonsocket, RI 02895.

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txnb.uscourts.gov/ no more than twenty-four (24) days after the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk and filed on the docket no more than twenty-four (24) days after the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on June 3, 2026, at 9:30 a.m. (prevailing Central Time) in Courtroom #1, Floor 14, Earle Cabell Federal Building, 1100 Commerce Street, Dallas, Texas 75242. You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 650.479.3207. The meeting code is 2304 154 2638. Video communication will be by use of the Cisco WebEx platform. Connect via the Cisco WebEx application or click the link on Judge Jernigan's home page. Click the settings icon in the upper right corner and enter your name under the personal information setting. WebEx hearing instructions may be obtained from Judge Jernigan's hearing/calendar site: https://www.txnb.uscourts.gov/judges-info/hearing-dates/chief-judgejernigans-hearing-dates.**

**Hearing appearances must be made electronically in advance of electronic hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jernigan's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Omnicare, LLC ("**Omnicare**") and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully state the following in support of this motion (the "**Motion**").

### Preliminary Statement[2]

1.      Prior to these cases, the Debtors regularly faced claims arising from automobile accidents that occurred during the course of the Debtors' delivery of pharmaceutical products to

---

[2] Capitalized terms used in this preliminary statement but not otherwise defined have the meanings given to such terms below.

their customers.   Historically, the Debtors have been able to settle these claims in a favorable manner, with the settlements paid by available insurance.   Consistent with this past practice, the Debtors have reached mutually acceptable release agreements (the "**Settlement Agreements**")[3] with certain holders (the "**Settling Parties**") of accident-related claims against the Debtors, the Debtors' insurers, the Debtors' vehicle lessor, or the Debtors' employees (the "**Settled Claims**"). These Settlement Agreements are conditioned upon entry of an order from the Court approving the Debtors' entry into and performance under such settlements.   Pursuant to this Motion, the Debtors now seek that authority from the Court.

2.       Entry into the Settlement Agreements is beneficial to the estates and an exercise of the Debtors' business judgment.   The settlements will be satisfied entirely by insurance proceeds, so the payments have minimal, if any, impact on the estates.   Moreover, entry into the Settlement Agreements satisfies the three factors courts consider when evaluating settlements under Bankruptcy Rule 9019.   *First*, the probability of success for the Debtors to defend the Settled Claims through litigation is uncertain and will likely be costly and time-consuming.   Some of the underlying cases are in their early stages, with facts yet to be developed.   Moreover, all of the cases could involve jury demands, which carries a level of inherent uncertainty.   Settlement resolves this uncertainty in a manner mutually beneficial to all involved parties.

3.       *Second*, the Debtors' defense of the Settled Claims may potentially involve complex litigation regarding application and enforcement of the automatic stay in this Court.   This procedural issue would need to be resolved before the parties ever reached the merits of the claims. Settlement avoids this hurdle efficiently and economically.

---

[3] Copies of each of the Settlement Agreements are attached hereto and are proposed to be attached to the order granting this Motion.

4.      *Third*, there are many other considerations that weigh in favor of compromise of the Settled Claims.  The settlements reduce the incurrence of legal fees and expenses, and all of the parties involved have engaged in good faith, arms'-length negotiations.  Overall, these settlements are favorable to the estates because they (i) will have minimal, if any, impact on the estates because the settlements are payable from available insurance proceeds, (ii) are reasonable in amount, (iii) avoid costly litigation, and (iv) resolve disputes in a manner that is consistent with the Debtors' pre-petition ordinary practice of settling claims related to alleged automobile accidents.

5.      Entry into and implementation of the Settlement Agreements is in the best interests of the Debtors and their estates and satisfies the requirements under Bankruptcy Rule 9019 and applicable law.  The terms of the Settlement Agreements are fair and reasonable and the decision to enter into the Settlement Agreements represents a sound exercise of the Debtors' business judgment.

6.      For these reasons and as further described in the Motion, the Debtors respectfully request that the Court authorize the Debtors' entry into the Settlement Agreements.

**Jurisdiction**

7.      The United States District Court for the Northern District of Texas (the "**District Court**") has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334. The District Court's jurisdiction has been referred to this Court pursuant to 28 U.S.C. § 157 and the District Court's Miscellaneous Order No. 33, *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984. This is a core matter pursuant to 28 U.S.C. § 157, which may be heard and finally determined by this Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The basis for the relief requested herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**").

9. The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## Background

**A. The Debtors' historical involvement with automobile personal injury and accident-related claims**

10. During the ordinary course of business, the Debtors deliver certain of their pharmaceutical products through delivery drivers, who are part of the Debtors' workforce (the "**Driver Employees**"). The Debtors lease vehicles from Wheels LT (the "**Vehicle Lessor**") for the use of the Driver Employees. Unfortunately, during the course and scope of their employment, from time to time, the Driver Employees become involved in automobile accidents.

11. In connection with these accidents, in some instances, third parties assert personal injury or accident-related claims against the Driver Employees, the Debtors, or the Vehicle Lessor (the "**Third Party Direct Claims**"). In other instances, particularly in states that require the Debtors to maintain uninsured motorist policies (as explained below), the Driver Employees may assert personal injury claims against the Debtors or the Debtors' insurers (the "**Employee Claims**"). Generally, individuals take one of two paths to assert Third Party Direct Claims or Employee Claims, including (i) asserting their claim by filing complaints in state or federal court and proceeding with litigation (the "**Litigated Claims**") or (ii) serving demands for payment before filing a lawsuit ("**Pre-Suit Claims**").

5

12. If a holder of a Third Party Direct Claim maintains insurance and their insurer satisfies such holder's medical expenses, that insurer may seek to recover their payments from the Debtors' insurer. These claims are referred to in this Motion as the "**Third Party Reimbursement Claims**." Moreover, when receiving treatment related to alleged accidents, the holder of the Third Party Claim may inform the medical provider that the Debtors' insurer may be available to satisfy the medical expenses. In those instances, the medical provider may bill the Debtors' insurer directly for such medical expenses. These claims are referred to in this Motion as the "**Medical Provider Claims**." The Medical Provider Claims, together with the Third Party Direct Claims, Employee Claims, and Third Party Reimbursement Claims, are collectively referred to herein as the "**Auto Claims**."

13. In the ordinary course of business, the Debtors may administer the Auto Claims in house or use the services of Sedgwick Claims Management Services ("**Sedgwick**"). The Debtors or Sedgwick review the third-party demands, obtain supporting documentation (such as medical evidence, accident reports, dash camera footage, if available, driver statements, and photos), and evaluate the Debtors' risk exposure with respect to the demands. Sedgwick or the Debtors may also negotiate with the holders of the Auto Claims to reach settlements that are acceptable to the Debtors.

14. In the ordinary course of business, the Debtors take responsibility for providing the defense for all Auto Claims, including Auto Claims asserted against the Driver Employees, the Vehicle Lessor, or the Debtors' insurers, pursuant to the Debtors' potential exposure to indemnity liability. This indemnity liability may arise under applicable law (such as the doctrine of *respondeat superior* for incidents arising during the course and scope of employment) or

contractual obligations (such as through the lease agreements with the Vehicle Lessor or the insurance policies).

**B.      The Debtors' insurance policies implicated in this Motion**

15.      On September 24, 2025, this Court entered an order granting the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Maintain Existing Insurance Programs, Surety Bonds, and Letters of Credit and Pay All Obligations Arising Thereunder and (B) Renew, Revise, Extend, Supplement, or Enter into New Insurance Programs, Surety Bonds, or Letters of Credit; (II) Authorizing All Banks to Honor Payments of Insurance, Surety Bond, and Letter of Credit Obligations; and (III) Granting Related Relief* [Docket No. 12] (the "**Insurance Motion**") and authorizing the Debtors to maintain their insurance policies.[4]

16.      Per the Insurance Motion, the Debtors maintain certain automobile insurance policies (the "**General Automobile Policies**") issued by ACE American Insurance Company (the "**Insurer**").  Under the General Automobile Policies, the Debtors, the Driver Employees, and the Vehicle Lessor are covered insureds.  Additionally, the Debtors' automobile insurance includes uninsured motorist coverage, which is required by certain states in which the Debtors operate (the "**UM Policies**," and with the General Automobile Policies, the "**Automobile Policies**").  The UM Policies provide coverage to the Driver Employees who are injured by a third-party who does not have insurance.  Each of the Automobile Policies has a deductible (collectively, the "**Deductibles**").

---

[4] *See Order (I) Authorizing the Debtors to (A) Maintain Existing Insurance Programs, Surety Bonds, and Letters of Credit and Pay All Obligations Arising Thereunder and (B) Renew, Revise, Extend, Supplement, or Enter into New Insurance Programs, Surety Bonds, or Letters of Credit; (II) Authorizing All Banks to Honor Payments of Insurance, Surety Bond, and Letter of Credit Obligations; and (III) Granting Related Relief* [Docket No. 61] (the "**Insurance Order**").

7

17.     In the ordinary course of business dealings between CVS Health Corporation ("**CVS Health**") and CVS subsidiaries, the relevant CVS subsidiary bears responsibility for satisfying the Deductibles under the Automobile Policies, which includes any legal defense costs. To satisfy these obligations, CVS Health maintains a captive insurance program (the "**Captive Insurance Program**," and with the Automobile Policies, the "**Applicable Insurance**") issued by a captive insurer and wholly owned CVS Pharmacy, Inc. subsidiary, CVS Caremark Indemnity Ltd. ("**CVS Caremark**").[5]  The Debtors are beneficiaries of the Captive Insurance Program.  The Captive Insurance Program is available to pay the Debtors' obligations associated with certain claims, such as the Deductibles and defense costs for the claims subject to the Settlement Agreements.

**C.     The Settlement Negotiations**

18.     The Debtors (either directly or through Sedgwick) have engaged in settlement discussions with the Settling Parties.  During the course of these settlement discussions, the Settling Parties presented the Debtors with evidence in support of their claims which allegedly arise from automobile accidents involving the Debtors' employees, which evidence was reviewed by the Debtors or Sedgwick, working at the Debtors' direction.

19.     Each of the Settling Parties sent the Debtors an initial demand for payment, including a proposed settlement amount.  The Debtors or Sedgwick engaged in good faith, arm's length negotiations with the Settling Parties to resolve all issues pertaining to their claims, which are memorialized in the Settlement Agreements.

---

[5] *See Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Maintain Existing Insurance Programs, Surety Bonds, and Letters of Credit and Pay All Obligations Arising Thereunder and (B) Renew, Revise, Extend, Supplement, or Enter Into New Insurance Programs, Surety Bonds, and Letters of Credit; (II) Authorizing All Banks to Honor Payments of Insurance, Surety Bond, and Letter of Credit Obligations; and (III) Granting Related Relief* [Docket No. 12] (the "**Insurance Motion**").

20.     The Debtors and Sedgwick are engaged in ongoing discussions with other claimants who are not subject to the Settlement Agreements.  As the Debtors reach additional agreements, the Debtors will file further omnibus settlement motions.

**Summary of the Settlement Agreements**

**A.     Marion General Hospital**

21.     On October 24, 2025, Marion General Hospital ("**Marion General**") asserted a lien for approximately $8,086.00 related to unpaid medical services rendered to Betsy Draper arising from an alleged automobile accident that occurred on August 20, 2025 involving Ms. Draper and one of the Debtors' employees, Heather Godsey (the "**Marion General Claim**").  The Marion General claim is a Medical Provider Claim.[6]

22.     After the Debtors advised Marion General that the lien filing may have violated the automatic stay, Marion General voluntarily released their lien on February 3, 2026.  Moreover, following good faith, arm's length negotiations, the Debtors and Marion General have agreed that the Debtors will pay Marion General $1,850.00 in full and final satisfaction of Marion General's claims, which amount shall only be payable from the Applicable Insurance. This settlement is in the best interests of the estate because it (i) is payable from the Applicable Insurance, which means paying the settlement has minimal, if any, impact on the estates and creditors, (ii) avoids the costs of litigation, including whether the automatic stay applies, and (iii) is in a favorable amount based upon the Debtors' review of the facts underlying the Marion General Claim.  Additional grounds to support this settlement are set forth below in ¶¶ 35-48.

23.     The Settlement Agreement between the Debtors and Marion General is attached to this Motion as **Exhibit C-1**.

---

[6] As of the date hereof, Ms. Draper has not asserted a Third Party Direct Claim against the Debtors.

**B.**      **Latitude Subrogation Services, as subrogee for Auto-Owners#227 Indiana Auto**

24.      At the time of the alleged automobile accident involving Ms. Draper, discussed above, Ms. Draper also maintained her own insurance through Auto-Owners#227 Indiana Auto ("**Indiana Auto**").  Indiana Auto allegedly made payments on behalf of Ms. Draper related to the automobile accident.

25.      On March 26, 2026, Latitude Subrogation Services, as subrogee for Indiana Auto ("**Latitude**") issued a demand to Sedgwick asserting that it is subrogated to the rights of Ms. Draper's insurer, Indiana Auto (the "**Latitude Claim**").  Through the Latitude Claim, Latitude seeks reimbursement to recover $5,000 in medical expense payments Indiana Auto made on Ms. Draper's behalf arising from the August 20, 2025 incident (i.e., to recover a Third Party Reimbursement Claim).

26.      Following good faith, arm's length negotiations, the Debtors and Latitude have agreed that the Debtors will pay Latitude $2,000.00 in full and final satisfaction of Latitude's claims, which amount shall only be payable from the Applicable Insurance. This settlement is in the best interests of the estate because it (i) is payable from the Applicable Insurance, which means paying the settlement has minimal, if any, impact on the estates and creditors, (ii) avoids the costs of litigation, including whether the automatic stay applies, and (iii) is in a favorable amount based upon the Debtors' review of the facts underlying the Latitude Claim.  Additional grounds to support this settlement are set forth below in ¶¶ 35-48.

27.      The Settlement Agreement between the Debtors and Latitude is attached to this Motion as **Exhibit C-2**.[7]

---

[7] Latitude has accepted the settlement, but the Settlement Agreement is pending their signature.  The Debtors anticipate obtaining Latitude's signature to the Settlement Agreement before the hearing on this Motion.

**Relief Requested**

28.     The Debtors seek entry of the proposed order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (i) approving the terms of the Settlement Agreements, attached hereto as **Exhibits C-1 and C-2**, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (ii) authorizing the Debtors to satisfy the Settled Claims from the Applicable Insurance, and (iii) granting related relief.

29.     In support of this Motion, the Debtors submit the *Declaration of Paul Rundell in Support of the Debtors' Third Omnibus Motion for Entry of an Order (I) Approving Settlement Agreements Pursuant to Federal Rule of Bankruptcy Procedure 9019 and (II) Granting Related Relief* (the "**Declaration**"), attached hereto as **Exhibit B**.

30.     The relief requested herein is substantially similar as that approved by the Court in the (i) *Order Granting the Debtors' First Omnibus Motion for Entry of an Order (I) Authorizing and Approving Settlement Agreements Pursuant to Federal Rule of Bankruptcy Rule 9019 and (II) Granting Related Relief* [Docket No. 643] and the (ii) *Order Granting the Debtors' Second Omnibus Motion for Entry of an Order (I) Authorizing and Approving Settlement Agreements Pursuant to Federal Rule of Bankruptcy Rule 9019 and (II) Granting Related Relief* [Docket No. 758].

**Basis for Relief Requested**

31.     Bankruptcy Rule 9019(a) provides that, "after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal citations and quotations omitted). Settlements are considered a "normal part of the process of reorganization" and a

11

"desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).

32.     The Fifth Circuit has articulated a three-factor balancing test for assessing proposed settlements under Bankruptcy Rule 9019. *In re Cajun Elec. Power Co-op, Inc.*, 119 F.3d 349, 356 (5th Cir. 1997). To determine whether a compromise is "fair, equitable, and in the best interest of the estate," courts in this Circuit consider: "(1) [t]he probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) [t]he complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) [a]ll other factors bearing on the wisdom of the compromise." *In re Roqumore*, 393 B.R. 474, 479 (Bankr. S.D. Tex. 2008).

33.     The terms of the Settlement Agreements are fair, equitable, and in the best interest of the Debtors' estates. The Fifth Circuit's balancing test weights in favor of the Debtors' entry into the Settlement Agreements, and the Debtors' respectfully request the Court to approve the Motion.

**A.      The balance between the probability of success and the benefits of settlement weigh in favor of the Debtors' entry into the Settlement Agreements**

34.     "With respect to the first factor, it is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. The judge need only apprise [themselves] of the relevant facts and law so that [the court] can make an informed and intelligent decision . . .". *In re Cajun Elec. Power Co-op, Inc.*, 119 F.3d at 356 (internal quotations omitted) (quoting *La Salle Nat'l Bank v. Holland (In re American Reserve Corp.)*, 841 F.2d 159, 163 (7th Cir. 1987)).

12

35.     The probability of success for the Debtors to defend the Settled Claims through litigation is uncertain and will likely be costly and time-consuming.  The Settled Claims are not subject to live litigation, which means the Debtors would need to participate in initial motion practice, submission of answers, and discovery, among other things.  Moreover, if the Settling Parties filed formal litigation, it is likely they would make jury demands, and subjecting the Debtors (and the other defendants) to a jury trial exposes them to a certain measure of risk that is difficult to quantify.

36.     In weighing the probability of success with the benefits of the settlement and considering the availability of the Applicable Insurance, settlement is the preferable outcome and reflects a reasonable exercise of the Debtors' business judgment. *See In re Johns*, 667 B.R. 322, 327 (Bankr. N.D. Tex. 2025) (finding proposed settlement satisfied business judgment rule when, among other reasons, anticipated litigation, including likely attorneys' fees, would be substantial); *see also In re Mirant Corp.*, 348 B.R. 725, 744 (Bankr. N.D. Tex. 2006) ("[I]t is clearly reasonable that management, as part of the Debtors' reorganization, should want to convert the substantial, uncertain liabilities" to a satisfied claim through a settlement.").  This factor weighs in favor of granting the Motion.

**B.     The likelihood of complex, lengthy, expensive litigation weighs in favor of the approval of the Settlement Agreements**

37.     Litigation regarding the Settled Claims will likely be a complex and protracted process before the Debtors even reach the point of litigating the claims on the merits in a court of competent jurisdiction.

38.     It is the Debtors' position that the Settled Claims are currently subject to the automatic stay.  The Debtors may incur costs litigating the applicability of the automatic stay while also providing a defense in the underlying litigation (if filed) to preserve their rights and avoid

default judgments.  Resolving the Settled Claims now resolves these issues and saves the estate significant costs.

39.     Litigating this procedural issue may be contentious and require discovery, all of which will quickly become expensive and prolong the litigation.  Then, once the procedural issue is resolved, the Debtors would need to adjudicate the claims on the merits.  Doing so may require the Debtors to incur the costs of preparing for jury trials.  Courts find that avoiding litigation and additional costs weighs in favor of this factor.  *See In re Mirant Corp.*, 348 B.R. 725, 740 (Bankr. N.D. Tex. 2006) (holding that "the first two prongs of the *Cajun Electric* standard weigh in favor of approval of the Settlement because it provides for resolution of each of the previously disputed and litigated issues without the need for further litigation or cost").

40.     For these reasons, this factor weighs in favor of granting the Motion.

**C.     Additional factors bearing on the wisdom of compromise support the approval of the Settlement Agreements**

41.     The third factor is a "catch-all provision."  *In re Cajun Elec. Power Co-Op., Inc.*, 119 F.3d at 356.  The Fifth Circuit directs courts to evaluate two additional factors in evaluating the third factor, including (1) "the best interests of the creditors, with proper deference to their reasonable views" and (2) the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id.* (citing *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917-18 (5th Cir. 1995)).

**i.     The settlements are in the best interests of the Debtors' estates and their creditors**

42.     By entering into the Settlement Agreements, the Debtors will avoid further costs and the uncertainty that will arise from the defense of the Settled Claims (and any potential related litigation).  Ultimately, the Settlement Agreements will prevent the Debtors' estates from incurring

14

further attorneys' fees and expenses in connection with the Settled Claims, which may be of benefit to the recovery of creditors under the Debtors' anticipated chapter 11 plan. *See In re Cajun Elec. Power Co-op, Inc.*, 119 F.3d at 358 (5th Cir. 1997) (upholding approval of a settlement, in part, because of the "salutary effects of a settlement on the prospects for reorganization").

### ii.    The Settlement Agreements are the result of arm's length bargaining

43.    The Settlement Agreements between the Settling Parties and the Debtors are the product of extensive, good-faith, arms-length negotiations.  Each of the Settling Parties and the Debtors reached a settlement that will resolve the Settled Claims and prevent potential future litigation, bringing finality to the dispute.

### Notice

44.    The Debtors will provide notice of this Motion to all parties on the Complex Service List, counsel for the Settling Parties, CVS Caremark, and the Insurer.  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

WHEREFORE, for the reasons set forth above, the Debtors respectfully request that the Court (a) enter the Proposed Order granting the relief requested herein and (b) grant such other and further relief as the Court may deem just and proper.

Dated: May 7, 2026

**HAYNES AND BOONE, LLP**

*/s/ Ian T. Peck*
Charles A. Beckham, Jr. (TX #02016600)
Ian T. Peck (TX #24013306)
Martha Wyrick (TX #24101606)
2801 N. Harwood Street, Ste. 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email: charles.beckham@haynesboone.com
        ian.peck@haynesboone.com
        martha.wyrick@haynesboone.com

**JENNER & BLOCK LLP**

Vincent E. Lazar (admitted *pro hac vice*)
Derek L. Wright (admitted *pro hac vice*)
Angela M. Allen (admitted *pro hac vice*)
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Email: vlazar@jenner.com
        dwright@jenner.com
        aallen@jenner.com

*Counsel to the Debtors and
Debtors in Possession*

16

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2026, I caused a copy of the foregoing document to be served by electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case.

*/s/ Ian T. Peck*
Ian T. Peck

# EXHIBIT A

## Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
|  | ) |  |
| In re: | ) | Chapter 11 |
|  | ) |  |
| OMNICARE, LLC, *et al.*,[1] | ) | Case No. 25-80486 (SGJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | Ref. Docket No. [●] |

**ORDER GRANTING THE DEBTORS' <u>THIRD OMNIBUS</u> MOTION FOR ENTRY OF
AN ORDER (I) AUTHORIZING AND APPROVING SETTLEMENT AGREEMENTS
PURSUANT TO FEDERAL RULE OF BANKRUPTCY RULE 9019 AND
<u>(II) GRANTING RELATED RELIEF</u>**

The Court has considered the *Debtors' Third Omnibus Motion for Entry of an Order*

*(I) Approving Settlement Agreements Pursuant to Federal Rule of Bankruptcy Procedure 9019*

---

[1] The last four digits of Omnicare, LLC's federal tax identification number are 1351. There are 110 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Omnicare. The location of Omnicare, LLC's corporate headquarters and the Debtors' service address is One CVS Drive, Mail Code 1160, Woonsocket, RI 02895.

*and (II) Granting Related Relief* (the "**Motion**")[2] filed by the above-captioned debtors (the

"**Debtors**").  The Court finds that: (i) it has jurisdiction over the matters raised in the Motion

pursuant to 28 U.S.C. § 1334; (ii) this matter is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2); (iii) the relief requested in the Motion is warranted in light of the factual circumstances

of these cases and the matters described in the Motion and the Declaration; and (iv) the Debtors'

notice of the Motion and opportunity for a hearing on the Motion were appropriate under the

circumstances and no other notice need be provided.  Having reviewed the Motion and heard the

statements concerning the relief requested therein at a hearing before this Court, including any

objections thereto (the "**Hearing**"), the legal and factual bases set forth in the Motion and at the

Hearing establish just cause for the relief granted herein.  Upon all of the proceedings before this

Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY**

**ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      Each of the settlement agreements attached hereto as **Exhibits 1 and 2** is approved

(the "**Settlement Agreements**").

3.      The parties to each of the Settlements Agreements are authorized to enter into the

Settlement Agreement, execute all other documents, and take any and all actions necessary to

effectuate the Settlement Agreement.

4.      The payments contemplated by the Settlement Agreement shall be satisfied solely

from the proceeds of the Applicable Insurance (the "**Settlement Payments**").  Except for the

payment of the Settled Claims from the Applicable Insurance, the Debtors shall have no liability

or obligation to satisfy the Settled Claims.

---

[2] Capitalized terms used herein but not otherwise defined have the meanings given to such terms in the Motion.

2

5.      The Debtors' entry into the Settlement Agreements, including, without limitation, the releases of claims provided therein, is an exercise of the Debtors' reasonable business judgment.

6.      This Order is binding in all respects upon all parties in interest in this case, creditors of the Debtors or their estates, and the successors and assigns of each of the foregoing.

7.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Local Rules and the Complex Case Procedures are satisfied by such notice.

8.      The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

9.      This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

### END OF ORDER ###

Order Submitted by:

**HAYNES AND BOONE, LLP**

Charles A. Beckham, Jr. (TX #02016600)
Ian T. Peck (TX #24013306)
Martha Wyrick (TX #24101606)
2801 N. Harwood Street, Ste. 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
charles.beckham@haynesboone.com
ian.peck@haynesboone.com
martha.wyrick@haynesboone.com

**JENNER & BLOCK LLP**

Vincent E. Lazar (admitted *pro hac vice*)
Derek L. Wright (admitted *pro hac vice*)
Angela M. Allen (admitted *pro hac vice*)
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
vlazar@jenner.com
dwright@jenner.com
aallen@jenner.com

*Counsel to the Debtors and Debtors in Possession*

**<u>EXHIBIT B</u>**

**Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| OMNICARE, LLC, *et al.*,[1] | ) | Case No. 25-80486 (SGJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DECLARATION OF PAUL RUNDELL IN SUPPORT OF DEBTORS'
THIRD OMNIBUS MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND
APPROVING SETTLEMENT AGREEMENTS PURSUANT TO FEDERAL RULE OF
BANKRUPTCY RULE 9019 AND (II) GRANTING RELATED RELIEF**

I, Paul Rundell, hereby declare under 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am a Managing Director at Alvarez & Marsal North America, LLC ("**A&M**"), a global restructuring advisory firm and financial advisor to the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") in these chapter 11 cases (the "**Chapter 11 Cases**"). On August 18, 2025, the Debtors engaged A&M as financial advisor to help manage their liquidity and evaluate strategic alternatives, and on September 21, 2025, I, along with Matthew Frank of A&M, were appointed Co-Chief Restructuring Officers of Omnicare, LLC.

2.      In my capacity as co-CRO of Omnicare, LLC and financial advisor of the Debtors, I have become knowledgeable and familiar with the Debtors' day-to-day operations, business, financial affairs, and the circumstances leading to the commencement of these Chapter 11 Cases.

---

[1] The last four digits of Omnicare, LLC's federal tax identification number are 1351. There are 110 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Omnicare. The location of Omnicare, LLC's corporate headquarters and the Debtors' service address is Attn: Omnicare, LLC, One CVS Drive, Mail Code 1160, Woonsocket, RI 02895.

1

3.      I have reviewed and am familiar with the *Debtors' Third Omnibus Motion for Entry of an Order (I) Approving Settlement Agreements Pursuant to Federal Rule of Bankruptcy Procedure 9019 and (II) Granting Related Relief* (the "**Motion**").[2]  I am generally familiar with the release agreements (the "**Settlement Agreements**") between the Debtors and certain holders (the "**Settling Parties**") of accident-related claims against the Debtors, the Debtors' insurers, the Debtors' vehicle lessor, and/or the Debtors' employees (the "**Settled Claims**").  I submit this declaration in support of the Motion and the Debtors' entry into the Settlement Agreements (this "**Declaration**").

4.      Except as otherwise noted, the statements in this Declaration are based on my personal knowledge, my review of relevant documents, information provided to me by the Debtors or their employees, advisors or professionals, or my opinion based on my experience, knowledge and information concerning the Debtors' operations and the industry in which they operate. I am over the age of eighteen. I am authorized to submit this Declaration on behalf of the Debtors in support of the Motion. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

**Background**

A.    **The Debtors' historical involvement with automobile personal injury and accident-related claims**

5.      During the ordinary course of business, the Debtors deliver certain of their pharmaceutical products through delivery drivers, who are part of the Debtors' workforce (the "**Driver Employees**").  The Debtors lease vehicles from Wheels LT (the "**Vehicle Lessor**") for the

---

[2] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Motion.

2

use of the Driver Employees. Unfortunately, during the course and scope of their employment, from time to time, the Driver Employees become involved in automobile accidents.

6. In connection with these accidents, in some instances, third parties assert personal injury and/or accident-related claims against the Driver Employees, the Debtors, and/or the Vehicle Lessor (the "**Third Party Claims**"). In other instances, particularly in states that require the Debtors to maintain uninsured motorist policies (as explained below), the Driver Employees may assert personal injury claims against the Debtors and/or the Debtors' insurers (the "**Employee Claims**").

7. Generally, individuals take one of two paths to assert Third Party Direct Claims or Employee Claims, including (i) asserting their claim by filing complaints in state or federal court and proceeding with litigation (the "**Litigated Claims**") or (ii) serving demands for payment before filing a lawsuit ("**Pre-Suit Claims**").

8. If a holder of a Third Party Direct Claim maintains insurance and their insurer satisfies such holder's medical expenses, that insurer may seek to recover their payments from the Debtors' insurer. These claims are referred to in the Motion as the "**Third Party Reimbursement Claims**." Moreover, when receiving treatment related to alleged accidents, the holder of the Third Party Claim may inform the medical provider that the Debtors' insurer may be available to satisfy the medical expenses. In those instances, the medical provider may bill the Debtors' insurer directly for such medical expenses. These claims are referred to in the Motion as the "**Medical Provider Claims**." The Medical Provider Claims, together with the Third Party Direct Claims, Employee Claims, and Third Party Reimbursement Claims, are collectively referred to herein as the "**Auto Claims**."

3

9.      In the ordinary course of business, the Debtors may administer the Auto Claims in house or use the services of Sedgwick Claims Management Services ("**Sedgwick**").  The Debtors or Sedgwick review the third-party demands, obtain supporting documentation (such as medical evidence, accident reports, dash camera footage, if available, driver statements, and photos), and evaluate the Debtors' risk exposure with respect to the demands.  Sedgwick or the Debtors may also negotiate with the holders of the Auto Claims to reach settlements that are acceptable to the Debtors.

10.     In the ordinary course of business, the Debtors take responsibility for providing the defense for all Auto Claims, including Auto Claims asserted against the Driver Employees, the Vehicle Lessor, or the Debtors' insurers, pursuant to the Debtors' potential exposure to indemnity liability.  I understand this indemnity liability may arise under applicable law (such as the doctrine of *respondeat superior* for incidents arising during the course and scope of employment) or contractual obligations (such as through the lease agreements with the Vehicle Lessor or the insurance policies).

11.     Prior to the filing of these Chapter 11 Cases on September 22, 2025 (the "**Petition Date**"), the Debtors were involved in approximately 13 Litigated Claims and 53 Pre-Suit Claims related to alleged automobile accidents.

**B.      The Debtors' insurance policies implicated in the Motion**

12.     On September 24, 2025, this Court entered an order granting the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Maintain Existing Insurance Programs, Surety Bonds, and Letters of Credit and Pay All Obligations Arising Thereunder and (B) Renew, Revise, Extend, Supplement, or Enter into New Insurance Programs, Surety Bonds, or Letters of Credit; (II) Authorizing All Banks to Honor Payments of Insurance,*

4

*Surety Bond, and Letter of Credit Obligations; and (III) Granting Related Relief* [Docket No. 12]

(the "**Insurance Motion**") and authorizing the Debtors to maintain their insurance policies.[3]

13.     Per the Insurance Motion, the Debtors maintain certain automobile insurance

policies (the "**General Automobile Policies**") issued by ACE American Insurance Company (the

"**Insurer**").  Under the General Automobile Policies, the Debtors, the Driver Employees, and the

Vehicle Lessor are covered insureds.  Additionally, the Debtors' automobile insurance includes

uninsured motorist coverage, which is required by certain states in which the Debtors operate (the

"**UM Policies**," and with the General Automobile Policies, the "**Automobile Policies**").  The UM

Policies provide coverage to the Driver Employees who are injured by a third-party who does not

have insurance.     Each of the Automobile Policies has a deductible (collectively, the

"**Deductibles**").

14.     In the ordinary course of business dealings between CVS Health Corporation

("**CVS Health**") and CVS subsidiaries, the relevant CVS subsidiary bears responsibility for

satisfying the Deductibles under the Automobile Policies, which includes any legal defense costs.

To satisfy these obligations, CVS Health maintains a captive insurance program (the "**Captive

Insurance Program**," and with the Automobile Policies, the "**Applicable Insurance**") issued by

a captive insurer and wholly owned CVS Pharmacy, Inc. subsidiary, CVS Caremark Indemnity

Ltd. ("**CVS Caremark**").[4]  The Debtors are beneficiaries of the Captive Insurance Program.  The

---

[3] *See Order (I) Authorizing the Debtors to (A) Maintain Existing Insurance Programs, Surety Bonds, and Letters of Credit and Pay All Obligations Arising Thereunder and (B) Renew, Revise, Extend, Supplement, or Enter into New Insurance Programs, Surety Bonds, or Letters of Credit; (II) Authorizing All Banks to Honor Payments of Insurance, Surety Bond, and Letter of Credit Obligations; and (III) Granting Related Relief* [Docket No. 61] (the "**Insurance Order**").

[4] *See Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Maintain Existing Insurance Programs, Surety Bonds, and Letters of Credit and Pay All Obligations Arising Thereunder and (B) Renew, Revise, Extend, Supplement, or Enter Into New Insurance Programs, Surety Bonds, and Letters of Credit; (II) Authorizing All Banks to Honor Payments of Insurance, Surety Bond, and Letter of Credit Obligations; and (III) Granting Related Relief* [Docket No. 12] (the "**Insurance Motion**").

Captive Insurance Program is available to pay the Debtors' obligations associated with certain claims, such as the Deductibles and defense costs for the claims subject to the Settlement Agreements.

**C.      The Settlement Negotiations**

15.     The Debtors (either directly or through Sedgwick) have engaged in settlement discussions with the Settling Parties.  During the course of these settlement discussions, the Settling Parties presented the Debtors with evidence in support of their claims which allegedly arise from automobile accidents involving the Debtors' employees, which evidence was reviewed by the Debtors and/or Sedgwick, working at the Debtors' direction.

16.     In connection therewith, each of the Settling Parties sent the Debtors an initial demand for payment, including a proposed settlement amount.  The Debtors and/or Sedgwick engaged in good faith, arm's length negotiations with the Settling Parties to resolve all issues pertaining to their claims, which are memorialized in the Settlement Agreements.

17.     The Debtors and/or Sedgwick are engaged in ongoing discussions with other claimants who are not subject to the Settlement Agreements.  As the Debtors reach additional agreements, the Debtors will file further omnibus settlement motions.

<u>**Summary of the Settlement Agreements**</u>

**A.      Marion General Hospital**

18.     On October 24, 2025, Marion General Hospital ("**Marion General**") asserted a lien for approximately $8,086.00 related to unpaid medical services rendered to Betsy Draper arising from an alleged automobile accident that occurred on August 20, 2025 involving Ms. Draper and

one of the Debtors' employees, Heather Godsey (the "**Marion General Claim**").  The Marion

General claim is a Medical Provider Claim.[5]

19.     After the Debtors advised Marion General that the lien filing may have violated the

automatic stay, Marion General voluntarily released their lien on February 3, 2026.  Moreover,

following good faith, arm's length negotiations, the Debtors and Marion General have agreed that

the Debtors will pay Marion General $1,850.00 in full and final satisfaction of Marion General's

claims, which amount shall only be payable from the Applicable Insurance. This settlement is in

the best interests of the estate because it (i) is payable from the Applicable Insurance, which means

paying the settlement has minimal, if any, impact on the estates and creditors, (ii) avoids the costs

of litigation, including whether the automatic stay applies, and (iii) is in a favorable amount based

upon the Debtors' review of the facts underlying the Marion General Claim.  Additional grounds

to support this settlement are set forth below in ¶¶ 23-29.

**B.     Latitude Subrogation Services, as subrogee for Auto-Owners#227 Indiana Auto**

20.     At the time of the alleged automobile accident involving Ms. Draper, discussed

above, Ms. Draper also maintained her own insurance through Auto-Owners#227 Indiana Auto

("**Indiana Auto**").  Indiana Auto allegedly made payments on behalf of Ms. Draper related to the

automobile accident.

21.     On March 26, 2026, Latitude Subrogation Services, as subrogee for Indiana Auto

("**Latitude**"), issued a demand to Sedgwick asserting that it is subrogated to the rights of Ms.

Draper's insurer, Indiana Auto (the "**Latitude Claim**").  Through the Latitude Claim, Latitude

seeks reimbursement to recover $5,000 in medical expense payments Indiana Auto made on Ms.

---

[5] As of the date hereof, Ms. Draper has not asserted a Third Party Direct Claim against the Debtors.

Draper's behalf arising from the August 20, 2025 incident (i.e., to recover a Third Party Reimbursement Claim).

22.     Following good faith, arm's length negotiations, the Debtors and Latitude have agreed that the Debtors will pay Latitude $2,000.00 in full and final satisfaction of Latitude's claims, which amount shall only be payable from the Applicable Insurance. This settlement is in the best interests of the estate because it (i) is payable from the Applicable Insurance, which means paying the settlement has minimal, if any, impact on the estates and creditors, (ii) avoids the costs of litigation, including whether the automatic stay applies, and (iii) is in a favorable amount based upon the Debtors' review of the facts underlying the Latitude Claim.  Additional grounds to support this settlement are set forth below in ¶¶ 23-29.

**Support for Entry into the Settlement Agreements**

**A.     The balance between the probability of success and the benefits of settlement weigh in favor of the Debtors' entry into the Settlement Agreements**

23.     The probability of success for the Debtors to defend the Settled Claims through litigation is uncertain and will likely be costly and time-consuming.  The Settled Claims are not subject to live litigation, which means the Debtors would need to participate in initial motion practice, submission of answers, and discovery, among other things.  Moreover, if the Settling Parties filed formal litigation, it is likely they would make jury demands, and subjecting the Debtors (and the other defendants) to a jury trial exposes them to a certain measure of risk that is difficult to quantify.

24.     In weighing the probability of success with the benefits of the settlement and considering the availability of the Applicable Insurance, settlement is the preferable outcome and reflects a reasonable exercise of the Debtors' business judgment.

**B.      The likelihood of complex, lengthy, expensive litigation weighs in favor of the approval of the Settlement Agreements**

25.      Litigation regarding the Settled Claims will likely be a complex and protracted process for two main procedural reasons, before the Debtors even reach the point of litigating the claims on the merits in a court of competent jurisdiction.

26.      It is the Debtors' position that the Settled Claims are currently subject to the automatic stay.  The Debtors may incur costs litigating the applicability of the automatic stay while also providing a defense in the underlying litigation (if filed) to preserve their rights and avoid default judgments.  Resolving the Settled Claims now resolves these issues and saves the estate significant costs.

27.      Litigating these procedural issues may be contentious and require discovery, all of which will quickly become expensive and prolong the litigation.  Then, once the procedural issues are resolved, the Debtors would need to adjudicate the claims on the merits.  Doing so may require the Debtors to incur the costs of preparing for jury trials.

**C.      Additional factors bearing on the wisdom of compromise support the approval of the Settlement Agreements**

**i.      The settlements reduce the incurrence of legal fees and expenses**

28.      By entering into the Settlement Agreements, the Debtors will avoid further costs and the uncertainty that will arise from the defense of the Settled Claims (and any potential related litigation).  Ultimately, the Settlement Agreements will prevent the Debtors' estates from incurring further attorneys' fees and expenses in connection with the Settled Claims, which may be of benefit to the recovery of creditors under the Debtors' anticipated chapter 11 plan.

9

**iii.      The Settlement Agreements are the result of arm's length bargaining**

29.     The Settlement Agreements between the Settling Parties and the Debtors are the product of extensive, good-faith, arms-length negotiations.  Each of the Settling Parties and the Debtors are competent and sophisticated parties and reached a settlement that will resolve the Settled Claims and prevent potential future litigation, bringing finality to the dispute.

## Conclusion

30.     Entry into and implementation of the Settlement Agreements is in the best interests of the Debtors and their estates.  The settlements will be satisfied entirely with insurance proceeds, so the payments have minimal, if any, impact on the estates.  The terms of the Settlement Agreements are fair and reasonable and the decision to enter into the Settlement Agreements represents a sound exercise of the Debtors' business judgment.

Dated: May 7, 2026                         By: /s/ *Paul Rundell*
                                           Name: Paul Rundell
                                           Title: Co-Chief Restructuring Officer of
                                           Omnicare, LLC

10

## Exhibits C-1 through C-2

**Settlement Agreements**

**<u>Exhibit C-1</u>**

**Marion General Release Agreement**

# GENERAL RELEASE

**KNOW ALL PERSONS**, that I/We, **Marion General Hospital,** (hereinafter **"Releasor"**), in consideration of the payment of **One Thousand Eight Hundred Fifty ($1,850.00) dollars (the "Settlement Payment"),** and for other valuable consideration, the receipt of and sufficiency of which is hereby acknowledged, for myself, my heirs, executors, administrators, successors and assigns, do hereby release and quitclaim unto the "**Released Parties**," which Released Parties collectively include: **(i) CVS HEALTH CORPORATION; (ii) CVS PHARMACY, INC.; (iii) the Debtors (as defined below), which includes NEIGHBORCARE OF INDIANA, LLC; (iv) HEATHER GODSEY; and (v) ACE AMERICAN INSURANCE COMPANY,** and with respect to items (i) through (v), each of their respective past, present, or future parents, subsidiaries, affiliate entities, successors, assigns, officers, directors, employees, partners, stockholders, attorneys, employees, agents, servants, representatives, and insurers, of the **"Released Claims,"** which Released Claims collectively include all manner of actions, causes of actions, debts, dues, claims and demands, both in law and equity, including but not limited to all claims that were or could have been asserted in the auto accident that occurred at University Nursing Center, Upland, Indiana on August 20, 2025 (hereinafter the "**Incident**"), as well as any other alleged tortious actions or activities which may at this time, or any other time, be complained of by the plaintiff against the **Released Parties**.  It is the specific intent and purpose of this instrument to release and discharge any and all claims and causes of action of any kind or nature whatsoever, whether known or unknown and whether specifically mentioned or not, against which the said aforementioned **Releasor** now has or ever has had, or will ever in the future have against the **Released Parties**, arising out of the incident described herein, or any incident arising out of claims derived out of the subject incident, including but not limited to, costs and fees; past and present pain and suffering, wrongful death, medical expenses, lost earnings, or any direct or consequential claims of **Releasor.**  This Release is meant to discharge any and all claims or causes of action of any kind whatsoever which may have arisen, or which may arise out of or be derivative, including consortium or other derivative causes of action, of any claim which **Releasor** may have now or in the future against the **Released Parties** arising out of the above-described incident. **Releasor** hereby agree to indemnify, defend and hold harmless the **Released Parties** from any claims made by third-parties or other individuals whose claims have not been brought heretofore and which are derivative of the injuries and damages, including consortium or other derivative causes of action, arising out of the Incident referred to above.

**Releasor** further warrants that they will satisfy any and all present and future liens including liens for medical care, disability claims, Medicare, Medicaid, or ERISA liens and attorneys' liens.  If any person or entity sues the **Released Parties**, their present and former agents, officers, directors, servants, and employees and/or parent, subsidiaries, predecessor and/or successor legal entities, their insurers, excess carriers, and reinsurers, for any claims arising out of any alleged lien on the money paid to **Releasor** in settlement, **Releasor** will hold harmless and indemnify the **Released Parties** from all such claims, including all attorneys' fees and costs incurred in responding to and/or defending such claims.

**Releasor** further declares under penalty of perjury under the laws of the State of Indiana, that: Betsy Draper is not currently a Medicare recipient; and none of the treatment he/she received

*Page 2 of 4*

for the injury or injuries claimed in this amount sought (or related to the incident) or released in this agreement were or will be submitted to or paid for by Medicare.  For the purposes of this Release, "Medicare" is defined to include Part A, Part B, Part C (including any Medicare + Choice or Medicare Advantage Plan), and Part D.

**Releasor** understands that this settlement is a compromise of a disputed claim and that the payments specified herein are not to be construed as an admission of liability on the part of the aforementioned corporations and/or individuals but, on the contrary, liability is expressly denied by them.

As a result of the resolution of this disputed claim, the **Releasor** agrees that the facts and circumstances of the claim, the identity of the parties, the fact of this settlement, the fact that any money was paid in settlement, and/or the amount of money paid in settlement shall be kept strictly confidential in the future and shall not be disclosed in any manner including by oral, written, electronic or digital means to anyone including but not limited to press or media of any form unless pursuant to the agreement of the parties in writing or if required by court order or directive; *provided that* Releasor shall be permitted to disclose information related to this General Release as necessary for the Debtors (as defined below) to prosecute the Settlement Motion (as defined below).  If, however, any inquiry as to the existence of or the terms and conditions of this settlement is made by anyone, including the press or media of any form, the Releasor and their attorneys shall decline to respond or state only that they have "no comment".

The undersigned Releasor and their attorneys also agree not to solicit any such inquiries from any person, firm, corporation or entity.  The confidentiality provisions contained in this Release are part of the agreed resolution of this lawsuit and contractually binding on the **Releasor. Releasor** understands and acknowledges that the terms of this General Release will be made public in connection with the Settlement Motion.  The Releasor understands that the failure to abide by this confidentiality covenant may, on demonstrated breach of same, constitute a material breach of the settlement agreement, and upon adequate showing, entitle **Released Parties** to any and all remedies available in law and in equity.  Venue for any violation of this Release shall be in the State of Indiana.

After the Releasor delivers an executed copy of this settlement to the Released Parties, counsel for NEIGHBORCARE OF INDIANA, LLC and its debtor affiliates (collectively, the "**Debtors**") shall file in the Chapter 11 cases styled *In re Omnicare, LLC*, Case No. 25-80486 (Bankr. N.D. Tex.) (the "**Chapter 11 Cases**") a motion for authorization for the Debtors to enter into the settlement contemplated by this Release and for authority for the Settlement Payment to be issued on behalf of the Released Parties (a "**Settlement Motion**").  This agreement shall not become effective, and the Released Parties shall not be obligated to make the Settlement Payment, unless and until the United States Bankruptcy Court of the Northern District of Texas (the "**Bankruptcy Court**") enters an order granting the Settlement Motion (a "**Bankruptcy Court Order**").  The effectiveness of this settlement is subject to and contingent upon entry of the Bankruptcy Court Order by the Bankruptcy Court and the Bankruptcy Court Order becoming final and non-appealable.  If the Bankruptcy Court does not enter the Bankruptcy Court Order within

*Page 3 of 4*

sixty (60) days of the filing of the Settlement Motion, each of the Releasor and the Released Parties shall be returned to their position *status quo ante*.

Within five (5) calendar days after the Releasor receives the Settlement Payment, the Releasor shall withdraw the proof of claim, if any, filed in the Chapter 11 Cases.

IN WITNESS WHEREOF, I hereunto set my hand this ___22__ day of __April____, 2026.

_____

**WITNESS:**

_Bul Jo_____         _____

_____         _____


STATE OF __Indiana__, COUNTY OF __Grant__, ss:

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☒ online notarization, this _April 22_, 20_26_ by _____ (name of person acknowledging), who is personally known to me or who has produced _____ (type of identification) as identification.

_Samantha Walton_____
Signature of Notary Public

_Samantha Walton_____
Name typed, printed, or stamped

_Biller_____
Title or rank

```
SAMANTHA A WALTON
Hotary Public - Seal
Johnson County - State of Indiana
Commission Number NP0748153
My Commission Expires Apr 9, 2031
```

_____
Serial number, if any

Date: _April_, _22_, 2026.

*Page 4 of 4*

Date: _____, _____, 2026.


AGREED TO BY:


_____
Co-Chief Restructuring Officer
of Omnicare, LLC, on behalf of the Debtors

## Exhibit C-2

**Latitude Release Agreement**

# GENERAL RELEASE

**KNOW ALL PERSONS**, that I/We, **Latitude Subrogation Services,** (hereinafter **"Releasor"**), in consideration of the payment of **Two Thousand ($2,000.00) dollars (the "Settlement Payment"),** and for other valuable consideration, the receipt of and sufficiency of which is hereby acknowledged, for myself, my heirs, executors, administrators, successors and assigns, do hereby release and quitclaim unto the "**Released Parties**," which Released Parties collectively include: **(i) CVS HEALTH CORPORATION; (ii) CVS PHARMACY, INC.; (iii) the Debtors (as defined below), which includes NEIGHBORCARE OF INDIANA, LLC; (iv) HEATHER GODSEY; and (v) ACE AMERICAN INSURANCE COMPANY,** and with respect to items (i) through (v), each of their respective past, present, or future parents, subsidiaries, affiliate entities, successors, assigns, officers, directors, employees, partners, stockholders, attorneys, employees, agents, servants, representatives, and insurers, of the **"Released Claims,"** which Released Claims collectively include all manner of actions, causes of actions, debts, dues, claims and demands, both in law and equity, including but not limited to all claims that were or could have been asserted in the auto accident that occurred at University Nursing Center, Upland, Indiana on August 20, 2025 (hereinafter the "**Incident**"), as well as any other alleged tortious actions or activities which may at this time, or any other time, be complained of by the plaintiff against the **Released Parties**.  It is the specific intent and purpose of this instrument to release and discharge any and all claims and causes of action of any kind or nature whatsoever, whether known or unknown and whether specifically mentioned or not, against which the said aforementioned **Releasor** now has or ever has had, or will ever in the future have against the **Released Parties**, arising out of the incident described herein, or any incident arising out of claims derived out of the subject incident, including but not limited to, costs and fees; past and present pain and suffering, wrongful death, medical expenses, lost earnings, or any direct or consequential claims of **Releasor.** This Release is meant to discharge any and all claims or causes of action of any kind whatsoever which may have arisen, or which may arise out of or be derivative, including consortium or other derivative causes of action, of any claim which **Releasor** may have now or in the future against the **Released Parties** arising out of the above-described incident. **Releasor** hereby agree to indemnify, defend and hold harmless the **Released Parties** from any claims made by third-parties or other individuals whose claims have not been brought heretofore and which are derivative of the injuries and damages, including consortium or other derivative causes of action, arising out of the Incident referred to above.

**Releasor** further warrants that they will satisfy any and all present and future liens including liens for medical care, disability claims, Medicare, Medicaid, or ERISA liens and attorneys' liens.  If any person or entity sues the **Released Parties**, their present and former agents, officers, directors, servants, and employees and/or parent, subsidiaries, predecessor and/or successor legal entities, their insurers, excess carriers, and reinsurers, for any claims arising out of any alleged lien on the money paid to **Releasor** in settlement, **Releasor** will hold harmless and indemnify the **Released Parties** from all such claims, including all attorneys' fees and costs incurred in responding to and/or defending such claims.

**Releasor** further declares under penalty of perjury under the laws of the State of Indiana, that: Betsy Draper is not currently a Medicare recipient; and none of the treatment he/she received for the injury or injuries claimed in this amount sought (or related to the incident) or released in

*Page 2 of 4*

this agreement were or will be submitted to or paid for by Medicare.  For the purposes of this Release, "Medicare" is defined to include Part A, Part B, Part C (including any Medicare + Choice or Medicare Advantage Plan), and Part D.

**Releasor** understands that this settlement is a compromise of a disputed claim and that the payments specified herein are not to be construed as an admission of liability on the part of the aforementioned corporations and/or individuals but, on the contrary, liability is expressly denied by them.

As a result of the resolution of this disputed claim, the **Releasor** agrees that the facts and circumstances of the claim, the identity of the parties, the fact of this settlement, the fact that any money was paid in settlement, and/or the amount of money paid in settlement shall be kept strictly confidential in the future and shall not be disclosed in any manner including by oral, written, electronic or digital means to anyone including but not limited to press or media of any form unless pursuant to the agreement of the parties in writing or if required by court order or directive; *provided that* Releasor shall be permitted to disclose information related to this General Release as necessary for the Debtors (as defined below) to prosecute the Settlement Motion (as defined below).  If, however, any inquiry as to the existence of or the terms and conditions of this settlement is made by anyone, including the press or media of any form, the Releasor and their attorneys shall decline to respond or state only that they have "no comment".

The undersigned Releasor and their attorneys also agree not to solicit any such inquiries from any person, firm, corporation or entity.  The confidentiality provisions contained in this Release are part of the agreed resolution of this lawsuit and contractually binding on the **Releasor. Releasor** understands and acknowledges that the terms of this General Release will be made public in connection with the Settlement Motion.  The Releasor understands that the failure to abide by this confidentiality covenant may, on demonstrated breach of same, constitute a material breach of the settlement agreement, and upon adequate showing, entitle **Released Parties** to any and all remedies available in law and in equity.  Venue for any violation of this Release shall be in the State of Indiana.

After the Releasor delivers an executed copy of this settlement to the Released Parties, counsel for NEIGHBORCARE OF INDIANA, LLC and its debtor affiliates (collectively, the "**Debtors**") shall file in the Chapter 11 cases styled *In re Omnicare, LLC*, Case No. 25-80486 (Bankr. N.D. Tex.) (the "**Chapter 11 Cases**") a motion for authorization for the Debtors to enter into the settlement contemplated by this Release and for authority for the Settlement Payment to be issued on behalf of the Released Parties (a "**Settlement Motion**").  This agreement shall not become effective, and the Released Parties shall not be obligated to make the Settlement Payment, unless and until the United States Bankruptcy Court of the Northern District of Texas (the "**Bankruptcy Court**") enters an order granting the Settlement Motion (a "**Bankruptcy Court Order**").  The effectiveness of this settlement is subject to and contingent upon entry of the Bankruptcy Court Order by the Bankruptcy Court and the Bankruptcy Court Order becoming final and non-appealable.  If the Bankruptcy Court does not enter the Bankruptcy Court Order within

*Page 3 of 4*

sixty (60) days of the filing of the Settlement Motion, each of the Releasor and the Released Parties shall be returned to their position *status quo ante.*

Within five (5) calendar days after the Releasor receives the Settlement Payment, the Releasor shall withdraw the proof of claim, if any, filed in the Chapter 11 Cases.

IN WITNESS WHEREOF, I hereunto set my hand this _____ day of _____, 2026.

_____

**WITNESS:**

_____                    _____

_____                    _____

STATE OF _____, COUNTY OF _____, ss:

The foregoing instrument was acknowledged before me by means of ☐ physical presence or

☐ online notarization, this _____, 20___ by _____ (name of person acknowledging), who is personally known to me or who has produced _____ (type of identification) as identification.

_____
Signature of Notary Public

_____
Name typed, printed, or stamped

_____
Title or rank

_____
Serial number, if any

Date: _____, _____, 2026.

*Page 4 of 4*

Date: _____, _____, 2026.


AGREED TO BY:


_____
Co-Chief Restructuring Officer
of Omnicare, LLC, on behalf of the Debtors