**JENNER & BLOCK LLP**
Vincent E. Lazar (admitted *pro hac vice*)
Derek L. Wright (admitted *pro hac vice*)
Angela M. Allen (admitted *pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
Telephone:    (312) 222-9350
Facsimile:    (312) 527-0484
Email:    vlazar@jenner.com
    dwright@jenner.com
    aallen@jenner.com

*Counsel for the Debtors and Debtors in
Possession*

**HAYNES AND BOONE, LLP**
Charles A. Beckham, Jr. (TX #02016600)
Ian T. Peck (TX #24013306)
Martha Wyrick (TX #24101606)
2801 N. Harwood Street, Ste. 2300
Dallas, TX 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email: charles.beckham@haynesboone.com
    ian.peck@haynesboone.com
    martha.wyrick@haynesboone.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| OMNICARE, LLC, *et al.*,[1] | ) Case No. 25-80486 (SGJ) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) Related to Docket No. 288, 720, & |
| | ) 799 |

**CERTIFICATE OF COUNSEL REGARDING PROPOSED SALE ORDER**

Pursuant to the *Procedures for Complex Cases in the Northern District of Texas* (the "**Complex Procedures**"), and the *Order Granting Complex Chapter 11 Bankruptcy Case Treatment* [Docket No. 68], the undersigned hereby certifies as follows:

---

[1] The last four digits of Omnicare, LLC's federal tax identification number are 1351. There are 110 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Omnicare. The location of Omnicare, LLC's corporate headquarters and the Debtors' service address is One CVS Drive, Mail Code 1160, Woonsocket, RI 02895.

**A.      Relevant Background**

1.      On November 7, 2025, Omnicare, LLC and certain of its affiliates (collectively, the "**Debtors**") filed the *Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Selection of Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling the Auction and Sale Hearing(s), and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof; and (II) Granting Related Relief* [Docket No. 288] (the "**Sale Motion**").

2.      On December 3, 2025, following a hearing, the Court approved certain relief requested in the Sale Motion, including the Bid Procedures (as defined in the Sale Motion), through the entry of the *Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Selection of Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling the Auction and Sale Hearing(s), and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof; and (II) Granting Related Relief* [Docket No. 398] (the "**Original Bid Procedures Order**").

3.      On April 14, 2026, following a hearing, the Court modified the Original Bid Procedures Order and the Bid Procedures pursuant to the *Order Granting Debtors' Emergency Motion to Modify the Bid Procedures Order and Bid Procedures* [Docket No. 757] (the "**Modified Bid Procedures Order**," and with the Original Bid Procedures Order, the "**Bid Procedures Order**").

4.      Pursuant to the Bid Procedures Order, on April 1, 2026, the Debtors filed the *Notice of (I) Stalking Horse Bidder; (II) Rescheduled Bid Deadline, Auction and Sale Hearing Dates; and*

*(III) Amended Deadline to File Assumption and Assignment Notice* [Docket No. 720] (the "**Stalking Horse Notice**"). The Debtors designated GenieRX Holdings LLC as the Stalking Horse Bidder and attached to the Stalking Horse Notice a proposed form of sale order. [Docket No. 720, Exhibit C] (the "**Original Proposed Sale Order**").

5. Pursuant to the Bid Procedures Order, on May 1, 2026, the Debtors filed the *Notice of Cancellation of Auction and of Successful Bidder* [Docket No. 799] (the "**Successful Bidder Notice**"), designating GenieRX Holdings LLC as the successful bidder (the "**Successful Bidder**").[2] The deadline for objections related to approval of the Sale pursuant to the terms of the Successful Bid, the identity of the Successful Bidder, and adequate assurance of future performance by the Successful Bidder was May 11, 2026 at 4:00 p.m. C.T. (the "**Sale Objection Deadline**"). A hearing to consider approval of the Sale pursuant to the terms of the Successful Bid, the identity of the Successful Bidder, and adequate assurance of future performance by the Successful Bidder is scheduled for May 13, 2026 at 1:30 p.m. C.T. (the "**Sale Hearing**").

6. On April 20, 2026, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing the Assumption of Certain Unexpired Leases of Nonresidential Real Property and Granting Related Relief* [Docket No. 782] (the "**Assumption Motion**").

7. On April 27, 2026, the Debtors filed the *Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [Docket No. 789] (the "**First Cure Notice**"). On May 1, 2026, the Debtors filed the *Supplemental Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts* [Docket No. 798] (the "**Second Cure Notice**," and with the First Cure Notice, the "**Cure Notices**"). The Cure Notices include the deadlines and procedures for filing cure objections,

---

[2] Capitalized terms used but not defined herein have the meanings given to such terms in the Successful Bidder Notice.

which are separate objections with separate deadlines from the Sale Objection Deadline. The deadline to object to the First Cure Notice is fourteen days after it was served, i.e., Monday, May 11, 2026. The deadline to object to the Second Cure Notice is fourteen days after it was served, i.e., Friday, May 15, 2026.

**B.    Responses Received Before the Sale Objection Deadline**

8.    While no party in interest has filed a formal objection to approval of the Sale, the Debtors have received several informal inquiries related to the Original Proposed Sale Order, the assumption and assignment of unexpired leases and executory contracts, or the Cure Notices. The Debtors have resolved all such inquiries for purposes of the Sale Hearing, as set forth in more detail below.

    **i.    Edits to Proposed Sale Order**

9.    The Debtors received several requested edits to the Original Proposed Sale Order from various interested parties (the "**Sale Order Responses**"). The Debtors have resolved all Sale Order Responses through revisions to the Original Proposed Sale Order. The Debtors hereby submit a revised proposed order (excluding Exhibit A), attached hereto as **Exhibit B** (the "**Revised Proposed Sale Order**"). A redline comparing the Revised Proposed Sale Order to the Original Proposed Sale Order (excluding exhibits) is attached hereto as **Exhibit C**.

    **ii.    Plymouth Objection**

10.    Plymouth International Spellmire OH LLC ("**Plymouth**") filed a limited objection to the First Cure Notice and the *Debtors' Motion for Entry of an Order Authorizing the Assumption of Certain Unexpired Leases of Nonresidential Real Property and Granting Related Relief* [Docket No. 782] (the "**Assumption Motion**"). *See* Docket No. 816. Plymouth's limited rejection relates to the relief requested in the Assumption Motion. The deadline to object to the Assumption Motion

4

is Thursday, May 14, 2026, and a hearing on the Assumption Motion is scheduled for June 3, 2026 at 9:30 a.m. CT (the "**Assumption Motion Hearing**").  The revisions in the Revised Proposed Sale Order ensure that issues related to the Assumption Motion are reserved for later determination.

### iii.      The Adequate Assurance Inquiries

11.     Four creditors requested evidence of the Successful Bidder's ability to provide adequate assurance of future performance (the "**Adequate Assurance Inquiries**").  The Debtors provided information regarding the Successful Bidder's ability to perform under such creditors' executory contracts or unexpired non-residential real property leases, as applicable (the "**Adequate Assurance Information**").  No creditor has indicated that the Adequate Assurance Information is insufficient.

### iv.      Cure Amount Responses

12.     The Debtors received several inquiries regarding the cure amounts proposed in the Cure Notices (the "**Cure Amount Responses**").  The Debtors have either resolved the Cure Amount Responses by agreement, extended the respective creditor's deadline to object to the cure amount identified in the Cure Notice, or included the inquiry on a Preserved Objection.  The Debtors have revised the Proposed Sale Order to ensure that issues related to cure amounts are reserved for later determination.  *See* Revised Proposed Sale Order ¶ 26.

13.     No creditor who raised a Cure Amount Response has objected to approval of the Sale on any other basis.

### C.      Conclusion

14.     Attached hereto as **<u>Exhibit A</u>** is a chart that includes a description of the Sale Order Responses, Plymouth's objection to the Assumption Motion and the Adequate Assurance Inquiries, and the resolution for each of the foregoing for purposes of the Sale Hearing.

15.     In accordance with paragraph 30 of the Complex Case Procedures, the undersigned counsel represents that all known comments or responses to approval of the Sale have been resolved.  The only remaining unresolved issues relate to the Cure Notices and Assumption Motion, which issues are reserved for later determination.

16.     Accordingly, the Debtors respectfully requests that the Court enter the Revised Proposed Sale Order.

Dated: May 13, 2026

**HAYNES AND BOONE, LLP**

*/s/ Ian T. Peck*
Charles A. Beckham, Jr. (TX #02016600)
Ian T. Peck (TX #24013306)
Martha Wyrick (TX #24101606)
2801 N. Harwood Street, Ste. 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email:  charles.beckham@haynesboone.com
ian.peck@haynesboone.com
martha.wyrick@haynesboone.com

**JENNER & BLOCK LLP**

Vincent E. Lazar (admitted *pro hac vice*)
Derek L. Wright (admitted *pro hac vice*)
Angela M. Allen (admitted *pro hac vice*)
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 923-2952
Facsimile: (312) 527-0484
Email:  vlazar@jenner.com
dwright@jenner.com
aallen@jenner.com

*Counsel to the Debtors and*
*Debtors in Possession*

## CERTIFICATE OF SERVICE

I certify that on May 13, 2026, I caused a copy of the foregoing document to be served via CM/ECF to all parties authorized to receive electronic notices in these cases.

/s/ Ian T. Peck
Ian T. Peck

**Exhibit A**

**Chart Summarizing the Limited Objection, Informal Responses, and Resolutions**

| Creditor | Inquiry | Resolution for Purposes of Sale Hearing |
|---|---|---|
| *Sale Order Responses* | | |
| Successful Bidder | The Successful Bidder requested various edits to the Original Proposed Sale Order. | The Debtors and the Successful Bidder have negotiated agreed edits that are included throughout the Revised Proposed Sale Order. |
| ACE American Insurance Company and affiliates (the "**Chubb Companies**") | The Chubb Companies requested edits to the Original Proposed Sale Order to reserve rights with respect to the insurance policies issued by the Chubb Companies. | The Debtors and the Chubb Companies reached agreement to resolve the Chubb Companies' concerns through agreed language.  *See* Revised Proposed Sale Order ¶ 9. |
| DIP Lender | The DIP Lender requested clarification with respect to the proceeds of the Sale. | The Debtors and the DIP Lender reached agreement to resolve the DIP Lender's concerns through agreed language.  *See* Revised Proposed Sale Order ¶ 11. |
| National Labor Relations Board | The NLRB requested edits to clarify that nothing in the proposed sale order would be misinterpreted to preclude the NLRB or a court from finding that a purchaser of Debtors' assets has an obligation to bargain with the employees of the purchased business, pursuant to successorship doctrine under federal law. | The Debtors accepted the NLRB's requested edits. *See* Revised Proposed Sale Order ¶ 41. |
| Texas Taxing Authorities | Various Texas taxing authorities requested edits clarifying the assumption of certain tax claims and the continuation | The Debtors and the Texas taxing authorities reached agreement to resolve the Texas taxing authorities' concerns |

| Creditor | Inquiry | Resolution for Purposes of Sale Hearing |
|---|---|---|
| | of certain tax liens. | through agreed language. *See* Revised Proposed Sale Order ¶ 43. |
| United States Department of Justice | The DOJ requested a reservation of rights with respect to any policy or regulatory powers, setoff and recoupment rights, jurisdiction, and various related matters. | The Debtors and the DOJ reached agreement to resolve the DOJ's concerns through agreed language. *See* Revised Proposed Sale Order ¶ 44. |
| Unsecured Creditors Committee | The Committee provided various edits to the Original Proposed Sale Order. | The Debtors and the Committee have negotiated agreed edits that are included throughout the Revised Proposed Sale Order. |
| *Plymouth Objection* | | |
| Plymouth International Spellmire OH LLC | Plymouth's limited rejection relates to the Debtors' proposed assumption and assignment of a non-residential real property lease. | The Debtors added language to the Revised Proposed Sale Order to ensure that issues related to the proposed assumption and assignment of the nonresidential real property leases would be subject to the terms of any order granting the Assumption Motion. *See* Revised Proposed Sale Order ¶¶ 21-22. The Debtors also included Plymouth on the Preserved Objection list as attached to Exhibit B to the Revised Proposed Sale Order. |
| *Adequate Assurance Inquiries* | | |
| Plymouth International Spellmire OH LLC | Plymouth requested adequate assurance information from the Successful Bidder. | On May 7, 2026, the Debtors provided Plymouth with adequate assurance information prepared by the Successful Bidder. Plymouth filed the limited |

2

| Creditor | Inquiry | Resolution for Purposes of Sale Hearing |
|---|---|---|
| | | objection, as noted above. The Debtors also included Plymouth on the Preserved Objection list as attached to Exhibit B to the Revised Proposed Sale Order. |
| Change Healthcare Solutions LLC and OptumRx | OptumRx requested adequate assurance information from the Successful Bidder. | On May 7, 2026, the Debtors provided OptumRx with adequate assurance information prepared by the Successful Bidder. |
| Cada La Quinta/Ray Road | Cada La Quinta requested adequate assurance information from the Successful Bidder. | On May 7, 2026, the Debtors provided Cada La Quinta with adequate assurance information prepared by the Successful Bidder. |
| Chicago Industrial Portfolio Owner LLC | Chicago Industrial requested adequate assurance information from the Successful Bidder. | On May 11, 2026, the Debtors provided Chicago Industrial with adequate assurance information prepared by the Successful Bidder. The Debtors also included Chicago Industrial on the Preserved Objection list as attached to Exhibit B to the Revised Proposed Sale Order. |

**Exhibit B**

**Revised Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OMNICARE, LLC, *et al.*,[1] | ) | Case No. 25-80486 (SGJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Related to Docket Nos. 288, 398 |

**ORDER (I) APPROVING THE ASSET PURCHASE
AGREEMENT BETWEEN THE DEBTORS AND GENIERX HOLDINGS LLC;
(II) AUTHORIZING THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES; (III) AUTHORIZING THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES IN CONNECTION THEREWITH; AND (IV) GRANTING RELATED RELIEF**

---

[1] The last four digits of Omnicare, LLC's federal tax identification number are 1351. There are 110 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Omnicare. The location of Omnicare, LLC's corporate headquarters and the Debtors' service address is One CVS Drive, Mail Code 1160, Woonsocket, RI 02895.

4931-6106-8970.1

This matter coming before the Court on the *Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Selection of Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling the Auction and Sale Hearing(s), and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof; and (II) Granting Related Relief* [Docket No. 288] (the "**Motion**")[2] filed by Omnicare, LLC and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), seeking, among other things, entry of an order (this "**Sale Order**"): (i) authorizing and approving the sale of the Purchased Assets of the Debtors to GenieRx Holdings LLC or its designees, as applicable (collectively, the "**Buyer**"), in accordance with the terms and conditions set forth in that certain Asset Purchase Agreement, dated as of March 31, 2026, by and among the Debtors and Buyer (as amended, supplemented or otherwise modified by the parties thereto, the "**APA**," and together with the Transition Services Agreement, Powers of Attorney, and all other ancillary agreements, documents and instruments attached thereto or contemplated thereunder, the "**Transaction Documents**"), a copy of which is attached hereto as **Exhibit A**, free and clear of all liens, claims, interests, and encumbrances to the fullest extent permitted by law, except for the Assumed Liabilities and Permitted Encumbrances as set forth in the APA; (ii) authorizing the assumption and assignment of the Assigned Contracts and Assigned Leases; and (iii) granting related relief, all as more fully set forth in the Motion; and this Court having entered the *Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Selection of*

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion, the Bidding Procedures Order, or the APA (as defined below), as applicable.

*Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling the Auction and Sale Hearing(s), and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof; and (II) Granting Related Relief* [Docket No. 398] (the "**Bidding Procedures Order**"), that, among other things, (i) approved the Bidding Procedures for the sale of the Debtors' Assets, including the process, timeline, and notice thereof and (ii) authorized the Debtors' entry into the Stalking Horse Agreement, subject to higher or otherwise better offers at the Auction in accordance with the Bidding Procedures; and the Debtors having determined pursuant to the Bidding Procedures Order and after extensive marketing and in consultation with the Consultation Parties, that the Auction would be cancelled, the Stalking Horse Bid submitted by the Stalking Horse Bidder is the Successful Bid and the Stalking Horse Bidder is the Successful Bidder, in accordance with the Bidding Procedures, as reflected in the *Notice of Cancellation of Auction and of Successful Bidder* [Docket No. 799] (the "**Successful Bidder Notice**"); and the Debtors having filed and served the *Assumption and Assignment Notice* and *Supplemental Assumption and Assignment Notice* [Docket Nos. 789 and 798] that set forth, among other things, the Cure Costs for the executory contracts and unexpired leases set forth on the Cure Schedules thereto; and upon due, adequate, and sufficient notice of the Motion, the Bidding Procedures Order, the Assumption and Assignment Notice, the Successful Bidder Notice, the APA, and all other related transactions contemplated thereunder and in this Sale Order (such transactions collectively, the "**Sale**"); and this Court having held a hearing to consider the relief requested in the Motion on a final basis (the "**Sale Hearing**"); and this Court having determined that the legal and factual bases set forth in the Motion and the (i) *Declaration of Steven Balash in Support of Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the*

*Selection of Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling the Auction and Sale Hearing(s), and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner and Notice Thereof; and (II) Granting Related Relief* [Docket No. 818-4]; (ii) *Declaration of Paul Rundell in Support of Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Selection of Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling the Auction and Sale Hearing(s), and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner and Notice Thereof; and (II) Granting Related Relief* [Docket No. 818-3]; and (iii) *Declaration of Marcy Wilder, Privacy Expert, in Support of the Debtors' Proposed Sale and Transfer of Personally Identifiable Information and PHI* [Docket No. 800] (collectively, the "**Sale Declarations**"), and at the Sale Hearing, establish just cause for the relief granted herein; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and, except as provided in paragraph 3 herein, all objections, responses, and reservations of rights filed or asserted in respect of the Motion, if any, having been withdrawn, resolved, or overruled; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

**I.      Jurisdiction, Venue, Final Order and Statutory Predicates**

A.      This Court has jurisdiction to hear and determine the Motion and to grant the relief requested therein pursuant to 28 U.S.C. §1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc*, Miscellaneous Order No. 33 (N.D. Tex. August 3, 1984). Venue of these Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408

4

and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O).

B.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein. In the absence of a stay pending appeal, Buyer, being a good-faith purchaser under section 363(m) of the Bankruptcy Code, may close the sale contemplated by the APA at any time after entry of this Sale Order, subject to the provisions of the APA, and shall not be subject to any applicable stay, including any stay provided by Bankruptcy Rules 6004(h) and 6006(d).

C.      The statutory predicates for the relief granted herein are sections 105, 363, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and section E of the *Procedures for Complex Cases in the Northern District of Texas* (the "**Complex Case Procedures**").

## II.      Notice

D.      As evidenced by the certificates of service filed with the Court and the relevant information regarding the sale posted on the website of the Debtors' claims and noticing agent, Stretto, Inc., and as demonstrated by the evidence presented and the representations of counsel at the Sale Hearing, (i) proper, timely, and adequate notice of the Motion, the Sale Hearing, the Auction (and cancellation thereof), the Sale, the Assumption and Assignment Procedures, the Assumption and Assignment Notice, the Cure Costs, the Successful Bidder Notice, all related transactions collectively described in the Transaction Documents, and all related deadlines has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 9007, 9008, and 9014, Local Rule 9007-1, section E of the Complex Case

5

Procedures, and the Bidding Procedures Order; (ii) such notice was good, sufficient, and appropriate under the circumstances and provided parties-in-interest with reasonable and adequate opportunity to object or be heard with respect to the Motion, the Sale, the APA, the Assumption and Assignment Notice, the assumption and assignment of the Assigned Contracts and Assigned Leases, and entry of this Sale Order; and (iii) no other or further notice of the Motion, the Sale Hearing, the Auction (and cancellation thereof), the Sale, the Assumption and Assignment Procedures, the Assumption and Assignment Notice, the Cure Costs, the Successful Bidder Notice, all related transactions collectively described in the APA, and all related deadlines is necessary or shall be required.  The requirements of Bankruptcy Rule 6004(a) and Local Rule 9007-1 are satisfied by such notice.

E.    The Debtors filed with this Court and served the Assumption and Assignment Notice, containing (i) the list of executory contracts and unexpired leases that may be potentially assumed and assigned in connection with the Sale; (ii) information necessary and appropriate to provide notice of the relevant proposed assumption and assignment of the executory contracts and unexpired leases; (iii) Cure Costs, where applicable, and (iv) the procedures and deadlines for objecting to the assumption and assignment of the executory contracts and unexpired leases and related Cure Costs, where applicable, on all counterparties to such executory contracts and unexpired leases. The Assumption and Assignment Notice (i) included the Debtors' good faith calculation of Cure Costs with respect to each Assigned Contract or Assigned Lease; (ii) stated that assumption and assignment is not guaranteed and is subject to this Court's approval; and (iii) prominently displayed the Cure Objection Deadline (as defined in the Assumption and Assignment Notice).  The filing and service of the Assumption and Assignment Notice was good, sufficient, and appropriate under the circumstances, and no other or further notice need be given.

F.      Notice, as evidenced by the certificates of service filed with the Court at Docket Numbers 299, 427, 670, 733, 796, and 806, and as posted on the website of the Debtors' claims and noticing agent, Stretto, Inc., has been provided in the form and manner specified in the Motion and required by the Bidding Procedures Order, and the Court finds that the notice is adequate and sufficient in all respects to bind all creditors, bidders and other parties in interest in these Chapter 11 Cases.

**III.      Compliance with Bidding Procedures and Bidding Procedures Order**

G.      As demonstrated by the Sale Declarations, the evidence proffered or adduced at the Sale Hearing, and the arguments of counsel made on the record at the Sale Hearing, the Debtors' marketing and sale process with respect to the Purchased Assets were in accordance with the Bidding Procedures and afforded a full, fair, and reasonable opportunity for any Potential Bidder to make a higher or otherwise better offer to purchase the Purchased Assets and participate in the sale process.

H.      As demonstrated by the Sale Declarations, the evidence proffered or adduced at the Sale Hearing, and the arguments of counsel made on the record at the Sale Hearing, the Debtors and their professionals have adequately marketed the Purchased Assets and conducted the marketing and sale process in compliance with the Bidding Procedures and the Bidding Procedures Order, and the sale process was conducted in a diligent, non-collusive, fair, reasonable, and good-faith manner. The Debtors afforded Potential Bidders a full and fair opportunity to participate in the bidding process for the Purchased Assets and to make higher or otherwise better offers. The process conducted by the Debtors and their professionals pursuant to the Bidding Procedures obtained the highest or otherwise best value for the Purchased Assets, and there was no other

transaction or combination of transactions available or presented that would have yielded a higher or better result for the Purchased Assets.

**IV.     Highest or Otherwise Best Offer**

I.     As demonstrated by the Sale Declarations, the evidence proffered or adduced at the Sale Hearing, and the arguments of counsel made on the record at the Sale Hearing, (i) the APA constitutes the highest or otherwise best offer for the Purchased Assets, (ii) the Debtors have determined, in consultation with the Consultation Parties, that the transactions contemplated by the APA maximize value for the benefit of the Debtors' estates, creditors, stakeholders, and parties in interest, and constitute the highest or otherwise best offer for the Purchased Assets, and (iii) entry into the APA constitutes a valid and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties and is in accordance and compliance with the Bidding Procedures and the Bidding Procedures Order. No other person, entity, or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors than the Buyer has. The APA provides fair and reasonable terms for the purchase of the Purchased Assets.

**V.     Sale in Best Interests**

J.     Approval of the Transaction Documents, the Sale, and all related transactions together with the actions to be taken by the Debtors and the Buyer in connection therewith, are appropriate under the circumstances of these Chapter 11 Cases and are in the best interests of the Debtors, their estates, their creditors and other parties in interest. The Debtors have demonstrated (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, outside of a plan of reorganization or liquidation, in that, among other things, the immediate consummation of the Sale to the Buyer is necessary and appropriate to

maximize the value of the Debtors' estates, subject to the regulatory approvals and other conditions set forth in the APA.

K. The Debtors' decision to enter into the APA and pursue and consummate the Sale in accordance with the terms of the APA constitutes a proper exercise of the fiduciary duties of the Debtors and their respective directors, managers, and officers. The Sale must be approved and consummated promptly to maximize the value of the Debtors' estates. Time is of the essence in consummating the Sale. Given the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price, the Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved. The consummation of the Sale and the assumption and assignment of the Assigned Contracts and Assigned Leases are legal, valid, and properly authorized under sections 105(a), 363(b), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect to the Sale. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts and Assigned Leases to the Buyer in connection with consummation of the Sale, and the assumption and assignment of the Assigned Contracts and Assigned Leases is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

## VI. Arm's-Length Sale and Good Faith of Buyer

L. None of the Debtors nor the Buyer, their respective affiliates, officers, directors, members, partners, principals, or equityholders (or equivalent) nor any of their respective representatives, attorneys, advisors, successors, or assigns have engaged in any conduct that would cause or permit the APA or the consummation of the Sale and related transactions contemplated in the APA to be avoided, or costs or damages to be imposed, under section 363(n) of the

9

Bankruptcy Code. The Buyer has not acted in a collusive manner with any Person. The APA was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion or fraud, in good faith, and from arm's-length bargaining positions.

M. None of the Debtors nor the Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code. Among other things, (i) the Debtors were free to deal with any other party interested in acquiring the Purchased Assets, (ii) the Debtors and the Buyer complied with the provisions of the Bidding Procedures Order and the Bidding Procedures, (iii) the Buyer agreed to subject its bid to the Bidding Procedures, (iv) the Debtors and the Buyer, and, as applicable, their respective management, board of directors, board of managers (or comparable governing authority), employees, agents, advisors, and representatives, each actively participated in the marketing and sale process, and each acted in good faith and without collusion or fraud of any kind, (v) all payments to be made by the Buyer, and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed, and (vi) the Buyer was designated the Successful Bidder for the Purchased Assets in accordance with the Bidding Procedures and the Bidding Procedures Order.

N. The Buyer is purchasing the Purchased Assets pursuant to the APA in good faith and for fair and reasonable consideration, and the Buyer is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code. The protections afforded by section 363(m) of the Bankruptcy Code are integral to the Sale, and the Buyer would not consummate the Sale without such protections. The Buyer is, therefore, entitled to the full rights, benefits, privileges, and protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and nonbankruptcy law in connection with this proceeding, the Sale, each term of the APA and other Transaction Documents, and each term of this Sale Order.

## VII.    Corporate Authority

O.    The Debtors have (i) full requisite corporate or other organizational power and authority to execute, deliver, and perform their obligations under the APA and other Transaction Documents, and to consummate the Sale and other transactions contemplated thereby, and such execution, delivery, and performance have been duly and validly authorized by all necessary corporate or other organizational action of each applicable Debtor, (ii) taken all requisite corporate or other organizational action and formalities necessary to authorize and approve the execution, delivery, and performance of their obligations under the APA and other Transaction Documents and the consummation by the Debtors of the Sale and other transactions contemplated thereby, including as required by their respective organizational documents, and, upon execution thereof, each such agreement executed by such Debtor will be duly and validly executed and delivered by such Debtor and enforceable against such Debtor in accordance with its terms and, assuming due authorization, execution, and delivery thereof by the other parties thereto, will constitute a valid and binding obligation of such Debtor. No additional consents or approvals, other than those provided in the APA, are necessary or required for the Debtors to enter into the APA and other Transaction Documents, perform their obligations therein, and otherwise consummate the Sale and other transactions approved by this Sale Order.

## VIII.    No Merger; Buyer Not an Insider; No Successor Liability

P.    The Buyer is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code. The Buyer is not a "successor" to, a mere continuation of, or an alter ego of the Debtors or their estates, and there is no continuity of enterprise or common identity between the Buyer and the Debtors by reason of any theory of law or equity. There is no common identity of incorporators, directors, or controlling stockholders between the Debtors and the Buyer. The

11

Buyer is not holding itself out to the public as a successor to or a continuation of the Debtors or their estates. The Sale does not amount to a consolidation, succession, merger, or de facto merger of Buyer and the Debtors. The transfer of the Purchased Assets to the Buyer, and the assumption of the Assumed Liabilities by the Buyer, except as otherwise explicitly set forth in the APA, does not, and will not, subject the Buyer to any liability whatsoever (including any successor liability whatsoever), with respect to the Debtors or the operation of the Debtors' businesses prior to the Closing or by reason of such transfer, including under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or any foreign jurisdiction, based, in whole or in part, directly or indirectly, on any, or any theory of, successor, transferee, derivative, vicarious, or assignee liability of any kind or character, including, but not limited to, antitrust, environmental, revenue, pension, ERISA, tax, labor (including any WARN Act), employment or benefits, de facto merger, business continuation, substantial continuity, alter ego, derivative, transferee, veil piercing, escheat, continuity of enterprise, mere continuation, product line, products liability, or other applicable law, rule, or regulation (including filing requirements under any such law, rule, or regulation), or theory of liability, whether legal, equitable, or otherwise (collectively, the "**Successor or Other Liabilities**").

## IX.    **Binding and Valid Transfer**

Q.    The transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets, and will vest the Buyer with all right, title, and interest that the Debtors or their estates possess with respect to the Purchased Assets, free and clear, to the fullest extent permitted by law, of all Interests (as defined below) (other than the Permitted Encumbrances and the Assumed Liabilities) in or against such assets and equity interests comprising the Purchased Assets, as set forth in the APA. Immediately prior to consummating the Sale, the

Purchased Assets constituted property of the Debtors' estates, good title was vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code, and the Debtors were the sole and rightful owners of the Purchased Assets. The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 365(f), and 365(m), and all of the applicable requirements of such sections have been satisfied in respect of the Sale. Upon and following the consummation of the Sale, the Buyer shall be vested with good and marketable title to the Purchased Assets and shall be the sole and rightful owner of the Purchased Assets.

**X. No Fraudulent Transfer**

R. The Transaction Documents are valid and binding contracts between the Debtors and the Buyer. The Transaction Documents were not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia, or foreign jurisdiction. The consideration provided by the Buyer in respect of the Sale (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors more expeditiously than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, and similar laws and acts). None of the Debtors nor the Buyer is entering into the Sale or other transactions contemplated by the Transaction Documents fraudulently for the purpose of statutory and common-law fraudulent conveyance and fraudulent transfer claims.

13

**XI. Section 363(f) is Satisfied**

S. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full with respect to each Interest (as defined below) in the Purchased Assets; therefore, the Debtors may sell the Purchased Assets free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities).

T. The Buyer would not have entered into the Transaction Documents, and would not consummate the transactions contemplated thereby, if the (i) Sale of the Purchased Assets to the Buyer was not free and clear of all Interests (defined below) (other than the Permitted Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever or (ii) Buyer would, or in the future could, be liable for any of the Interests (other than the Permitted Encumbrances and the Assumed Liabilities). The Buyer will not consummate the transactions contemplated by the Transaction Documents unless this Court expressly orders that none of the Buyer, any of the Buyer's Affiliates or Subsidiaries, or any of their respective officers, directors, partners, principals, direct and indirect equityholders (including any equity sponsor), professionals, or representatives, successors, or assigns, or their respective assets or properties, including, without limitation, the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, or by payment, setoff, recoupment, or otherwise, directly or indirectly, any Interests (other than the Permitted Encumbrances and the Assumed Liabilities), including rights or claims based on any Successor or Other Liabilities. The total consideration to be provided under the APA reflects the Buyer's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Interests (other than the Permitted Encumbrances and the Assumed

14

Liabilities) of any kind or nature whatsoever (including, without limitation, any potential Successor or Other Liabilities).

U.      Not transferring the Purchased Assets free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities), including rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state, federal, foreign law, or otherwise, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

V.      The Debtors may sell the Purchased Assets free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Those holders of Interests that did not timely object to the Sale or the Motion, or withdrew objections to the Sale or the Motion, are deemed to have consented to the Sale and the Motion pursuant to section 363(f)(2) of the Bankruptcy Code. All Interests (except to the extent that such encumbrances are Permitted Encumbrances or Assumed Liabilities) fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and, therefore, all holders of Interests are adequately protected.

## XII.    Cure Costs and Adequate Assurance of Future Performance

W.      The assumption and assignment of the Assigned Contracts and Assigned Leases pursuant to the terms of this Sale Order (i) is integral to the APA, (ii) is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, and (iii) represents the

15

reasonable exercise of reasonable and prudent business judgment by the Debtors. The assumption and assignment of the Assigned Contracts and Assigned Leases (i) is necessary to sell the Purchased Assets to the Buyer, (ii) allows the Debtors to maximize the value of the Purchased Assets, including the Assigned Contracts and Assigned Leases, (iii) limits the losses suffered by the counterparties to the Assigned Contracts and Assigned Leases (the "**Counterparties**"), and (iv) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assigned Contracts and Assigned Leases. For these reasons, the Debtors have exercised reasonable business judgment in assuming and assigning the Assigned Contracts and Assigned Leases and such assumption and/or assignment is in the best interests of the Debtors' estates.

X.     Pursuant to section 365(f) of the Bankruptcy Code, each Assigned Contract or Assigned Lease to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in such contract prohibiting, restricting, or conditioning its assignment or transfer. No section of any of the Assigned Contracts and Assigned Leases that would prohibit, restrict, or condition, whether directly or indirectly, the use, assumption, or assignment of any of the Assigned Contracts and Assigned Leases in connection with the Sale shall have any force or effect.

Y.     Subject to the terms of the APA, the Debtors or the Buyer, as the case may be, have cured or have demonstrated the ability to cure, any default under any Assigned Contract or Assigned Lease with respect to any act or omission that occurred prior to the date of assignment of such Assigned Contract or Assigned Lease. The Debtors' or Buyer's, as applicable and in accordance with the APA, obligations to pay the Cure Costs upon the Closing Date, and the Buyer's obligations to perform the obligations under the Assigned Contracts and Assigned Leases

16

thereafter, shall constitute adequate assurance of their future performance of and under the Assigned Contracts and Assigned Leases, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code. Pursuant to the Bidding Procedures Order, all Counterparties to the Assigned Contracts and Assigned Leases that failed to file with this Court and serve a timely objection are forever barred from asserting any such objection with regard to the assumption or assignment of their Assigned Contract or Assigned Lease. This Court finds that, with respect to all such Assigned Contracts and Assigned Leases, the payment of Cure Costs is appropriate and is deemed to fully satisfy the Debtors' obligations under section 365(b) of the Bankruptcy Code. Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption and the assignment by the applicable Debtor to the Buyer of each of the Assigned Contracts and Assigned Leases. To the extent any Assigned Contract or Assigned Lease is not an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Buyer in accordance with the terms of this Sale Order that are applicable to the Purchased Assets.

**XIII.    Not a Sub Rosa Plan**

Z.      Neither the APA nor the Sale constitutes a sub rosa chapter 11 plan or an element of such plan for which approval has been sought without the protection that a disclosure statement would afford. Neither the APA nor the Sale impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of the Debtors' subsequent chapter 11 plan.

**XIV.    Necessity of Order**

AA.    The Buyer would not have entered into the APA and would not consummate the Sale without all of the relief provided for in this Sale Order. The consummation of the Sale pursuant to this Sale Order and the APA is necessary for the Debtors to maximize the value of

17

their estates for the benefit of the Debtors, their estates, their creditors, and all other parties in interest. It is important that the Sale be consummated as expeditiously as possible to preserve the value of the Purchased Assets.

## XV. Compelling Circumstances for an Immediate Sale

BB. The Debtors' decision to enter into the APA and to consummate the Sale represents an exercise of reasonable business judgment. The Debtors have demonstrated both (i) good, sufficient, and reasonable business purposes and justifications for approving the APA, and (ii) compelling circumstances for the immediate approval and consummation of the Sale contemplated by the Transaction Documents outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization or liquidation, in that the prompt consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtors' estates and to expedite distributions to creditors.

## XVI. Waiver of Bankruptcy Rules 6004(h) and 6006(d)

CC. The sale of the Purchased Assets must be approved and consummated promptly in order to preserve the value of the Purchased Assets. Therefore, time is of the essence in consummating the Sale contemplated by the Transaction Documents, and the Debtors and the Buyer intend to close the transactions as soon as reasonably practicable following the entry of this Sale Order. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions as contemplated by the Transaction Documents. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with respect to the Sale transaction contemplated by this Sale Order.

## XVII. Final Order

18

DD.    This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**I.    General Provisions**

1.    **<u>Findings of Fact and Conclusions of Law</u>**. The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Chapter 11 Cases pursuant to Bankruptcy Rule 9014. To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such. This Court's findings shall also include any oral findings of fact and conclusions of law by this Court during or at the conclusion of the Sale Hearing. Additionally, this Court's findings of fact and conclusions of law in the Bidding Procedures Order are incorporated herein by reference as if fully set forth in this Sale Order.

2.    **<u>Motion is Granted</u>**. Subject to paragraph 3 of this Sale Order, the Motion and the relief requested therein is granted and approved, and the Sale transaction contemplated in the Motion and the APA and other Transaction Documents are approved in their entirety, in each case as set forth herein and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Sale Order.

3.    **Certain Objections Preserved**. Notwithstanding anything to the contrary herein, the specific objections listed on **Exhibit B** are preserved in all respects and will be either consensually resolved or continued to a date to be set by the Court and resolved by separate order of the Court (the "**Preserved Objections**") and all rights of affected parties to appeal such separate orders are also preserved in all respects. The Preserved Objections shall be resolved prior to any Closing of the Sale (unless otherwise separately ordered by the Court after notice and an opportunity for a hearing). Such resolutions shall be set forth in one or more orders of the Court, which may provide that the terms of this Sale Order shall be made applicable to the substantive rights of any party or issue that is the subject of such Preserved Objection (to the extent the Court overrules such Preserved Objection) or provide such other relief as determined by the Court. All valid and timely objections to assumption and assignment of any applicable Assigned Contract or Assigned Lease, including to proposed Cure Costs, are preserved and shall be resolved pursuant to the terms set forth in this paragraph and paragraphs 33 to 35 of this Sale Order.

4.    **All Other Objections Overruled**. All other objections to, reservations of rights regarding, or other responses to the Motion or the relief requested therein, the APA and other Transaction Documents, the Sale, the entry of this Sale Order, or the relief granted herein have been resolved, withdrawn, or overruled. Those parties who did not timely object to the Motion or the entry of this Sale Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including pursuant to section 363(f)(2) of the Bankruptcy Code.

**II.    Approval of the APA**

5.    **Approval and Authorization**. The APA and other Transaction Documents, including, in each case, any amendments, supplements, and modifications thereto, and all of the

20

terms and conditions thereof, are hereby approved. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the APA and other Transaction Documents, (b) close the Sale as contemplated in the APA and this Sale Order, and (c) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their obligations as contemplated by the APA and other Transaction Documents, including the assumption and assignment to the Buyer of the Assigned Contracts and Assigned Leases, in each case without further notice to or order of this Court, and including any actions that otherwise would require further approval by the Counterparties, equityholders, members, or boards of directors or managers, or similar governing bodies, as the case may be, without the need to obtain such approvals, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and other Transaction Documents and the Sale. The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any amounts that become payable by the Debtors pursuant to the APA and other Transaction Documents.

6. **Binding Effect**. The APA and other Transaction Documents and this Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of Claims (whether known or unknown) against the Debtors, all holders of Liens or other Interests against, in, or on all or any portion of the Purchased Assets, all counterparties to any executory contract or unexpired lease of the Debtors (including all Counterparties), the Buyer, and all successors and assigns of each of the foregoing, including any

21

trustee subsequently appointed in these Chapter 11 Cases or upon a conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, and any Person seeking to assert rights on behalf of any of the foregoing or that belong to the Debtors' estates. The APA and the Transaction Documents shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their equity holders, or any trustees, examiners, or receivers.

7.        Notwithstanding any other provision of this Sale Order, the Debtors and the Buyer may, at their option, mutually agree, and are hereby authorized (but not required), to modify the APA to provide for the sale or transfer of the equity interests of one or more Subsidiaries that are Asset Sellers, including but not limited to by means of an outright sale or a plan of reorganization or liquidation for such Subsidiaries that are Asset Sellers, so long as any such modification does not have a material adverse effect on the Debtors' estates; *provided*, however, that the Debtors shall provide the Committee with reasonable notice prior to agreeing to any such modification, and the foregoing authorization shall not be deemed a waiver of the Committee's right to object to any such modification and/or confirmation of any such Chapter 11 plan.

### III.        Transfer of Purchased Assets

8.        **<u>Valid Transfer</u>**. The transfer of the Purchased Assets to the Buyer in accordance with the terms of the APA will be a legal, valid, enforceable, and effective sale and transfer of the Purchased Assets and the Assumed Liabilities and will, subject to the Closing, render the Buyer liable for the Assumed Liabilities. The transfer of each of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets which transfer vests or will vest the Buyer with all right, title, and interest to the Purchased Assets. Pursuant to the APA, in no instance shall the Buyer have any liability for, or be deemed to have assumed, any Excluded Liabilities.

9.      Nothing herein, in the APA, any lists of executory contracts to be assumed and assigned and/or any Assumption and Assignment Notices, or any documents relating to any of the foregoing shall permit or otherwise effect a sale, assignment or other transfer of (i) insurance policies issued by ACE American Insurance Company, ACE Property & Casualty Insurance Company, Indemnity Insurance Company of North America, Westchester Surplus Lines Insurance Company, Westchester Fire Insurance Company, Illinois Union Insurance Company, Pacific Indemnity Company, Federal Insurance Company, Executive Risk Indemnity Inc., Executive Risk Specialty Insurance Company, and Chubb Custom Insurance Company (collectively, and together with their U.S.-based affiliates and predecessors, the "**Chubb Companies**"), or any related agreements (collectively with such insurance policies, the "**Chubb Insurance Contracts**"), and/or (ii) any rights, proceeds, benefits, interests, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts; provided, however, that the Debtors may pursue claims in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, deliver to the Buyer any proceeds; and provided further that the Debtors shall pursue such claims as described in Section 2.01(p) of the APA.

10.      **Free and Clear**. Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors shall transfer the Purchased Assets, including, but not limited to, the Assigned Contracts and Assigned Leases, to the Buyer in accordance with the terms of the APA; such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets; and the Buyer shall take title to and possession of such Purchased Assets free and clear of (a) all liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code) and encumbrances relating to, accruing, or arising any time prior to the Closing Date (collectively, the "**Liens**"), and (b) all debts (as that term is defined in section 101(12) of the Bankruptcy Code)

23

arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, deeds of trust, security interests or similar interests, conditional sale or other title retention agreements and other similar impositions, restrictions on transfer or use, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter ego liability, suits, credits, allowances, options, limitations, causes of action, choses in action, rights of first refusal or first offer, rebate, chargeback, credit, or return, proxy, voting trust or agreement or transfer restriction under any shareholder or similar agreement or encumbrance, easements, rights of way, encroachments, and matters of any kind and nature, whether arising prior to or subsequent to the Petition Date, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether imposed by agreement, understanding, law, equity, or otherwise (including rights with respect to claims and liens (i) that purport to give to any party a right or option to effect a setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or the Buyer's interests in the Purchased Assets, or any similar rights, if any,  (ii) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attribute of ownership, or (iii) recoupments, arising out of or related to any Healthcare Laws, Permit, or Provider Numbers, as well as participation in any Government Health Program) (collectively, as defined in this clause (b), the "**Claims**" and,

24

together with the Liens and any other encumbrances or interests of any kind or nature whatsoever, the "**Interests**"), relating to, accruing, or arising any time prior to the Closing Date, with the exception of the Permitted Encumbrances and the Assumed Liabilities. Any and all valid and perfected Interests in the Purchased Assets shall attach to the cash proceeds of the Sale ultimately attributable to the property against or in which such Interests are asserted, with the same validity, force, and effect, if any, and in the same order of priority, that they have now as against the assets and equity interests comprising the Purchased Assets, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto. Except as expressly assumed by the Buyer under the APA, the transfer of the Purchased Assets to the Buyer and the assignment to the Buyer of the Assigned Contracts and Assigned Leases will not subject the Buyer to any liability whatsoever that may become due or owing under the Assigned Contracts and Assigned Leases prior to the Closing Date, or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or foreign jurisdiction, based, in whole or in part, directly or indirectly, on any theory of law or equity, including any Successor or Other Liabilities. Following the Closing, no holder of any Interests (other than those expressly assumed by the Buyer or Permitted Encumbrances) or other party in interest may interfere with the Buyer's use and enjoyment of the Purchased Assets based on or related to such Interests, or any actions that the Debtors may take in these Chapter 11 Cases, and no party may take any action to prevent, interfere with, or otherwise enjoin consummation of the Sale.

11. Pursuant to the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, Grant Liens, Provide Superpriority Administrative Expense Claims and Use Cash Collateral, (II) Modifying the Automatic Stay, and (III) Granting Related Relief* [Docket No. 257]

(the "**Final DIP Order**") and the DIP Credit Agreement (as defined in the Final DIP Order), until Payment in Full of the Obligations (as each such term is defined in the DIP Credit Agreement), the Purchased Assets and the proceeds thereof under the Transaction Documents or otherwise, constitute DIP Collateral and Cash Collateral (each as defined in the Final DIP Order). Upon receipt by any Borrower (as defined in the DIP Credit Agreement) or any of its Subsidiaries (as defined in the DIP Credit Agreement) of any Net Cash Proceeds (as defined in the DIP Credit Agreement) received from the sale of the Purchased Assets pursuant to the Transaction Documents, the Borrowers shall pay to the DIP Lender (as defined in the Final DIP Order) the Net Cash Proceeds received in connection with such sale up to an amount equal to the aggregate outstanding amount of the Obligations, in accordance with and subject to the Final DIP Order and, as applicable, the terms and conditions of the DIP Credit Agreement and the other DIP Documents (each as defined in the Final DIP Order).

12. **Valid and Binding**. The APA and other Transaction Documents are valid and binding contracts between the Debtors and the Buyer and shall be enforceable pursuant to their terms. The APA and other Transaction Documents, the Sale, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these Chapter 11 Cases, or any converted or successor cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person. The APA and other Transaction Documents were not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction (including the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, and similar laws and acts). Neither the

26

Debtors nor the Buyer are entering into the transactions contemplated by the APA with any fraudulent or otherwise improper purpose, including for the purpose of statutory and common-law fraudulent conveyance and fraudulent transfer.

13.     **Release of Interests**. Each and every federal, state, local, and other governmental agency, governmental department, administrative agency, filing agent, filing officer, title agent, title company, recording agency, registrar of deeds, registrar of patents, trademarks, or other intellectual property, secretary of state, federal, state, and local official, and any other persons and entity who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets, (i) is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the APA, and (ii) the APA and Sale Order are binding upon and shall govern the acts of such persons. Neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments or documents to effectuate, consummate, and implement the provisions of this Sale Order, and the provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of Interests (other than the Permitted Encumbrances and the Assumed Liabilities) shall be self-executing. The Buyer may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county, or other territory or jurisdiction in which any of the Debtors or their Affiliates is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale Order as of the Closing Date. On the Closing Date, each of the Debtors' creditors is authorized and directed to

27

execute such documents and take all other actions as may be reasonably necessary to release its Liens, if any, in the Purchased Assets, as such Liens may otherwise exist. If any Person that has filed a financing statement, mortgage, mechanic's lien, lis pendens, or other statement, document, or agreement evidencing an Interest in any portion of the Purchased Assets (other than statements or documents with respect to Permitted Encumbrances or Assumed Liabilities) shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases, and/or other similar documents necessary for the purpose of documenting the release of all Interests that such Person has in the Purchased Assets, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such Person with respect to the Purchased Assets, (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order that, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests of any kind or nature in the Purchased Assets, and (c) the Buyer and the Debtors may seek in this Court, or any other court of appropriate jurisdiction, to compel the appropriate parties to execute termination statements, instruments of satisfaction, releases, and/or other similar documents with respect to all Interests that such Person has in the Purchased Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

14.   **Conditions Precedent**. The Debtors and the Buyer shall have no obligation to proceed with the Closing until all conditions precedent to their respective obligations to proceed have been met, satisfied, or waived in accordance with the terms of the APA.

15.     **Surrender of Purchased Assets**. Unless the Buyer otherwise consents, all Persons that are in or come into possession of any portion of the Purchased Assets, at any time prior to the Closing Date, are hereby directed to surrender possession of such Purchased Assets to the Buyer on the Closing Date, or at such time thereafter as the Buyer may request. Subject to the terms of this Sale Order, all Persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to the Buyer in accordance with the terms of the APA and this Sale Order.

16.     **Licenses and Permits**. Upon the Closing, Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in, to, and under the Assigned Permits and the Debtors shall be relieved from any further responsibility or liability with respect to the Assigned Permits arising on or accruing after the Closing (other than as expressly provided for in the APA and other Transaction Documents).  Except as otherwise provided for in the Transaction Documents, the Buyer acknowledges and agrees that, from and after the Closing, it shall be responsible for complying with the terms of each Assigned Permit (other than any such terms that are deemed unenforceable under this Order).

17.     To the maximum extent permitted under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any Assigned Permit (including pursuant to any Power of Attorney with respect to an Assigned Permit that cannot be transferred to Buyer on the Closing Date), and all Assigned Permits are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.

18.     To the extent that any Assigned Permit or other license or permit necessary for the operation of the Debtors' business is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code or is otherwise unable to be transferred to

29

the Buyer on the Closing Date (each, an "**Untransferable Permit**"), the Buyer shall apply for and obtain a replacement for such Untransferable Permit promptly after the Closing Date, and such Untransferable Permit shall remain in full force and effect for the Buyer's benefit (until a new license or permit is obtained. The Debtors may, at their reasonable discretion, take all steps necessary to cooperate with the Buyer in connection with any such application as provided for in the APA or other Transaction Documents, as applicable.

19. No person or entity (including any Governmental Authority) may deny, revoke, suspend, condition, or refuse to issue or renew any permit, license, approval, agreement, or similar grant relating to the operation of the Purchased Assets on account of (a) the filing or pendency of these Chapter 11 Cases; (b) the consummation of the transactions contemplated by the APA and other Transaction Documents; or (c) the assumption, payment, guaranty, or other satisfaction of any obligation or liability of the Debtors by the Buyer or any other person or entity.

20. Any provision in any Assigned Permit that purports to require or impose any fees, penalties, fines, charges, deposits, or other payments, collateral, security, or guaranties as a result of or as a condition of the assignment of such Assigned Permit to the Buyer shall have no force and effect with respect to the transactions authorized by this Order, and such provisions are unenforceable under sections 363(l), 365(e)(1), 365(f), and/or 541(c)(1) of the Bankruptcy Code, as applicable.

21. **Assumption and Assignment**. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing of the Sale, the applicable Debtors' assumption and assignment, to the Buyer, and the Buyer's acceptance of, the Assigned Contracts and Assigned Leases (subject to further Court order with respect to the Nonresidential Real Property Leases described and defined below), on the terms set forth in the APA, is hereby

30

approved, and the requirements of section 365(b)(1) and 365(f)(2) with respect thereto are hereby found and deemed to be satisfied. The Debtors are hereby authorized and, unless the Debtors and the Buyer otherwise agree, directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer, effective upon the Closing Date, the Assigned Contracts and Assigned Leases free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities and as otherwise required pursuant to the APA) and (b) execute and deliver to the Buyer such documents or other instruments as Buyer deems may be necessary to assign and transfer the Assigned Contracts, Assigned Leases, and Assigned Permits to the Buyer.

22.     The foregoing assumption and assignment remains subject to the Court's determination of *the Debtors' Motion for Entry of an Order Authorizing the Assumption of Certain Unexpired Leases of Nonresidential Real Property and Granting Related Relief* [Docket No. 782] (the "**Assumption Motion**") through which the Debtors seek authority to assume, pursuant to section 365 of the Bankruptcy Code, certain unexpired leases of nonresidential real property identified in Schedule 1 attached thereto (the "**Nonresidential Real Property Leases**"). Such Nonresidential Real Property Leases shall only be deemed Assigned Leases that shall be assumed and assigned to the Buyer pursuant to the terms of this Sale Order to the extent the Court grants the relief requested in the Assumption Motion and authorizes the Debtors to assume the Nonresidential Real Property Leases.

23.     **Ipso Facto Clauses Ineffective**. With respect to the Assigned Contracts and Assigned Leases, and with respect to the Sale of the Purchased Assets to the Buyer, (a) the Debtors may assume each of the Assigned Contracts and Assigned Leases in accordance with section 365 of the Bankruptcy Code, (b) the Debtors may assign each Assigned Contract or Assigned Lease in

31

accordance with the APA and sections 363 and 365 of the Bankruptcy Code, and, to the extent

provided in section 365 of the Bankruptcy Code, such assignment may occur notwithstanding and

without giving effect to any provisions in any Assigned Contract or Assigned Lease that prohibit

or condition the assignment of such Assigned Contract or Assigned Lease or allow the party to

such Assigned Contract or Assigned Lease to terminate, recapture, impose any penalty, condition

renewal or extension, or modify any term or condition upon the assignment of such Assigned

Contract or Assigned Lease, which provisions constitute unenforceable anti-assignment or ipso

facto provisions which are void and of no force and effect, (c) all other requirements and conditions

under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and

assignment, as applicable, to the Buyer of each Assigned Contract or Assigned Lease have been

satisfied, and (d) effective upon the Closing Date, the Assigned Contracts and Assigned Leases

shall be transferred and assigned to, and from and following the Closing Date remain in full force

and effect for the benefit of, the Buyer, notwithstanding any provision in any Assigned Contract

or Assigned Lease that prohibits, restricts, or conditions such assignment or transfer and, pursuant

to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability

with respect to the Assigned Contracts and Assigned Leases after such assumption and assignment

to the Buyer, except as provided in the APA. To the extent that any provision in any Assigned

Contract or Assigned Lease (y) prohibits, restricts, or conditions, or purports to prohibit, restrict,

or condition, such assumption and assignment or assignment (including, without limitation, any

"change of control" provision), or (z) is modified, breached, or terminated, or deemed modified,

breached, or terminated by any of the following: (i) the commencement of these Chapter 11 Cases,

(ii) the insolvency or financial condition of any of the Debtors at any time before the closing of

these Chapter 11 Cases, (iii) the Debtors' assumption and/or assignment of such Assigned Contract

32

or Assigned Lease, (iv) a change of control or similar occurrence, or (v) the consummation of the Sale, then such provision shall be deemed modified so as not to entitle the non-Debtor party thereto to prohibit, restrict, or condition such assumption and assignment or assignment, to modify, terminate, or declare a breach or default under such Assigned Contract or Assigned Lease, or to exercise any other default-related rights or remedies with respect thereto. With respect to the Sale of the Purchased Assets to the Buyer, all such provisions constitute unenforceable anti-assignment or ipso facto provisions that are void and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

24.      **Assumption and Assignment of Assumed Contracts; Cure**. All defaults or other obligations of the Debtors under the Assigned Contracts and Assigned Leases arising or accruing prior to the Closing Date, or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts and Assigned Leases, shall be cured by the Debtors or the Buyer, as applicable, as set forth in the APA and this Sale Order.

25.      All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts and Assigned Leases have been satisfied. Each of the Assigned Contracts and Assigned Leases shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms as of the Closing Date, subject to any amendments or modifications agreed to between a Counterparty to an Assigned Contract and Assigned Lease and the Buyer. Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Assigned Contract or Assigned Lease, and each Assigned Contract or Assigned Lease shall be

33

fully enforceable by the Buyer in accordance with its respective terms and conditions, except as limited or modified by this Sale Order. To the extent provided in the APA, the Debtors shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

26. Subject to determination of the amount of the Cure Costs (as may be applicable) and payment of the Cure Costs pursuant to the terms hereof and the APA (in the case of the Buyer, subject to the Cure Cost Cap set forth in the APA), and the Debtors' assignment of the Assigned Contracts and Assigned Leases to the Buyer under the provisions of this Sale Order, no default or other obligations arising prior to the Closing Date shall exist under any Assigned Contract or Assigned Lease, and each Counterparty to an Assigned Contract or Assigned Lease is forever barred, estopped, and permanently enjoined from (a) declaring a default by the Debtors or the Buyer under such Assigned Contract or Assigned Lease based on acts or occurrences arising prior to or existing as of the Closing Date, (b) raising or asserting against the Debtors or the Buyer, or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts and Assigned Leases, or (c) taking any other action against the Buyer as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract or Assigned Lease. Each counterparty to an Assigned Contract or Assigned Lease hereby is also forever barred, estopped, and permanently enjoined from (y) asserting against the Debtors or the Buyer, or the property of any of them, any default or Claim arising out of any indemnity or other obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date and (z) imposing or charging against Buyer or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to Buyer of such Assigned Contract or Assigned Lease.

27.     Subject to the terms and conditions of the APA, and upon the Closing Date, the Debtors and/or the Buyer (as applicable) shall have to the extent necessary (a) cured or provided adequate assurance of cure of, any default existing prior to the date hereof under the Assigned Contracts and Assigned Leases, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code and (b) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under the Assigned Contracts and Assigned Leases, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(B) of the Bankruptcy Code. The Debtors' and/or the Buyer's (as applicable) obligations to pay the Cure Costs under the APA and the Buyer's agreement to perform the obligations under the Assigned Contracts and Assigned Leases in accordance with the terms of the APA shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the Counterparties.

28.     To the furthest extent permitted by law, any party that may have had the right to consent to the assumption or assignment of an Assigned Contract or Assigned Lease is deemed to have consented to such assumption and assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to timely object to the assumption or assignment of such Assigned Contract or Assigned Lease in accordance with the Bidding Procedures Order, and the Buyer shall be deemed to have demonstrated adequate assurance of future performance with respect to such Assigned Contract or Assigned Lease pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Any Counterparty to an Assigned Contract or Assigned Lease who has not timely filed and served an objection shall be barred from objecting, or asserting monetary or non-monetary defaults, with respect to any such applicable Assigned Contract or

Assigned Lease, and such applicable agreement, if designated as an Assigned Contract or Assigned Lease in accordance with the terms of the APA, shall be deemed assumed by the Debtors and assigned to the Buyer on the Closing Date pursuant to this Sale Order.

29.     To the extent a Counterparty to an Assigned Contract or Assigned Lease failed to timely object to the Cure Costs for any applicable Assigned Contract or Assigned Lease in accordance with the Bidding Procedures Order, such Cure Costs shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time.

30.     The requirements of Bankruptcy Rule 6006(f)(6) are hereby waived, for cause shown, with respect to the Motion and the relief requested therein.

31.     Upon and as of the Closing Date, the Buyer shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assigned Contract or Assigned Lease and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts and Assigned Leases (except as may be required by the APA).

32.     The Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Purchased Assets.

33.     From the date of the entry of this Sale Order, the Debtors may, with the consent of the Buyer, settle objections to assumption and assignment of any applicable Assigned Contract or Assigned Lease, including to proposed Cure Costs, without any further notice to or action by any party or order of this Court (including by paying any agreed Cure Cost); *provided that* notice to

36

and consent of the Buyer shall be required to the extent that the Buyer is liable for such Cure Costs pursuant to the APA or the Buyer's rights and remedies are otherwise altered in any way by the resolution. Unless this Court orders otherwise, contemporaneously with the resolution of any such objection, the executory contract or unexpired lease underlying such objection shall be deemed an Assigned Contract or Assigned Lease without the necessity of obtaining any further order of this Court.

34.     Notwithstanding anything to the contrary herein (but subject to paragraph 35 of this Sale Order), no executory contract or unexpired lease as to which a Counterparty to an Assigned Contract or Assigned Lease has timely filed and served an objection shall be considered an Assigned Contract or Assigned Lease under this Sale Order unless and until such timely objection to the assumption and assignment of such executory contract or unexpired lease has been resolved or overruled.

35.     If a non-Debtor party to an Assigned Contract or Assigned Lease has objected solely to the proposed Cure Cost, the Debtors or the Buyer, as applicable, may pay the undisputed portion of such Cure Cost and place the disputed amount in a segregated account pending further order of the Court or mutual agreement of the parties. So long as such disputed amounts are held in such segregated account, the Debtors may, without delay, assume and assign such Assigned Contract or Assigned Lease to the applicable assignee in accordance with this Sale Order. Under such circumstances, the objecting non-Debtor Counterparty's recourse shall be limited to the funds held in such segregated account on account of such Assigned Contract or Assigned Lease. In the event of a dispute as of, or after, the Closing Date regarding assumption and assignment or cure of any Assigned Contract or Assigned Lease, any applicable cure payments that are outstanding with respect to such Assigned Contract or Assigned Lease shall be made following the entry of an order

37

resolving any such dispute (or upon the consensual resolution of such dispute as may be agreed by the Debtors or the Buyer, as applicable, and such non-Debtor Counterparty).

36.     Nothing in this Sale Order, the Motion, or any other notice or any other document is or shall be deemed an admission by the Debtors or the Buyer that any contract is an executory contract or must be assumed and assigned pursuant to the APA or in order to consummate the Sale.

## IV.     No Successor Liability; Prohibition of Actions Against the Buyer

37.     **No Continuity**. The Buyer is not a "successor" to, a mere continuation of, or an alter ego of any of the Debtors or their estates, and there is no continuity of enterprise or common identity between the Buyer and the Debtors by reason of any theory of law or equity. Neither the purchase of the Purchased Assets by the Buyer, nor the fact that the Buyer is using any of the Purchased Assets previously operated by the Debtors, will cause the Buyer to be deemed a successor to, combination of, or alter ego of, in any respect, any of the Debtors or the Debtors' businesses, or incur any liability derived therefrom within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, antitrust, environmental, labor law (including any WARN Act), employment or benefits law, de facto merger, business continuation, substantial continuity, successor, vicarious, alter ego, derivative, transferee, veil piercing, escheat, continuity of enterprise, mere continuation, product line, or other law, rule, regulation (including filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine, whether now known or unknown, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether matured or unmatured, whether contingent or noncontingent, whether liquidated or unliquidated, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or

38

otherwise, including liabilities on account of warranties, intercompany loans, and receivables among the Debtors, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the cancellation of debt of the Debtors or their Affiliates, or in any way relating to the operation of any of the Purchased Assets or ratings experience of the Debtors prior to the Closing Date, in each case other than the Permitted Encumbrances and Assumed Liabilities.

38.     Except with respect to Permitted Encumbrances and Assumed Liabilities, the Buyer shall not have, assume, or be deemed to assume, or in any way be responsible for, any liability or obligation of any of the Debtors or their estates, or any of the Debtors' predecessors or Affiliates with respect to the Purchased Assets or otherwise. Without limiting the generality of the foregoing, and except as otherwise specifically agreed in the APA, the Buyer shall not have any liability, responsibility, or obligation for any Interests of the Debtors or their estates, including any claims, liabilities, or other obligations related to the Purchased Assets, including, for the avoidance of doubt, and without limiting the generality of the foregoing, any Successor or Other Liabilities, which may become due or owing (a) prior to the Closing Date or (b) from and after the Closing Date but which arise out of or relate to any act, omission, circumstance, breach, default, or other event occurring prior to the Closing Date.

39.     Except with respect to Permitted Encumbrances and Assumed Liabilities, or as otherwise specifically set forth in the APA, all Persons (including all debt holders, equity holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, contract counterparties, customers, landlords, licensors, and employees), and other holders of Interests against or in any of the Debtors or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, known or unknown, contingent or noncontingent, liquidated or unliquidated, senior or subordinate, asserted or unasserted, whether arising prior to

39

or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the Closing, or the transfer of the Purchased Assets to the Buyer (including, without limitation, any Successor or Other Liabilities or rights or claims based thereon) shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing against the Buyer, or their respective assets or properties, including, without limitation, the Purchased Assets, the Interests of any kind or nature whatsoever such Person had, has, or may have against or in the Debtors, their estates, officers, directors, shareholders, or the Purchased Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding) against the Buyer, or their respective assets or properties, including the Purchased Assets; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, or their respective assets or properties, including the Purchased Assets; (c) creating, perfecting, or enforcing any Interest against the Buyer, or their respective assets or properties, including the Purchased Assets; (d) asserting any setoff, or right of subrogation, of any kind against the Buyer or its respective assets or properties, including the Purchased Assets; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (f) to the extent prohibited by section 525 of the Bankruptcy Code, revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

40

40.     Except with respect to Permitted Encumbrances and Assumed Liabilities, or as provided in the APA, and without limiting other applicable provisions of this Sale Order, the Buyer is not, by virtue of the consummation of the Sale, assuming, nor shall it be liable or responsible for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed, or otherwise) in any way whatsoever relating to or arising from the Debtors, the Purchased Assets, or the Debtors' operation of their businesses or use of the Purchased Assets on or prior to the Closing Date or any such liabilities, debts, commitments, or obligations that in any way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid, discharged, or performed on or prior to the Closing Date (in each case, including, without limitation, Successor or Other Liabilities and any liabilities that result from, relate to, or arise out of tort or product liability claims), or any liabilities calculable by reference to the Debtors or their assets or operations (including by reference to the Debtors' experience or similar ratings), or relating to continuing conditions existing on or prior to the Closing Date, including with respect to any of the Debtors' predecessors or Affiliates, which liabilities, debts, commitments, and obligations are hereby extinguished insofar as they may give rise to Successor or Other Liabilities.

41.     Notwithstanding, and with all rights specifically reserved by the Buyer, the Debtors and any interested party, nothing herein is intended to, nor shall it be deemed to, preclude the National Labor Relations Board or any court from finding that any purchaser of the Debtors' assets is subject to a successor collective bargaining obligation under the National Labor Relations Act in accordance with *NLRB v. Burns International Security Services*, 406 U.S. 272 (1972) and applicable law.

42.    None of the Buyer nor any of its affiliates, equityholders, successors, and assigns, nor any of their professionals shall have, incur any liability to, or be subject to any action by, the Debtors or any of their predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the APA and other Transaction Documents and the entry into and consummation of the Sale, except as expressly provided in the APA and this Sale Order. Neither the Debtors, nor any of their respective affiliates, equityholders, successors, and assigns, nor any of their professionals shall have, incur any liability to, or be subject to any action by, the Buyer arising out of the negotiation, investigation, preparation, execution, or delivery of the APA and other Transaction Documents and the entry into and consummation of the Sale, except as expressly provided in the APA and this Sale Order.

## V.    Other Provisions

43.    **Texas Taxing Authorities**. Notwithstanding anything to the contrary in this Sale Order or the APA, any ad valorem taxes owed to the Texas Taxing Authorities[3] for tax year 2026 that are secured by property being acquired by the Buyer (the "**2026 Ad Valorem Tax Claims**") shall be paid and allocated between the Debtors and Buyer as set forth in the APA. Subject to any claims and defenses of the Debtors or Buyer, the Texas Taxing Authorities shall retain their respective liens arising from the 2026 Ad Valorem Tax Claims, if any, against the Purchased Assets, as applicable, until paid in full, including any applicable penalties or interest. The tax liens of the Texas Taxing Authorities for tax year 2025 and prior years, if any, shall attach to the sale proceeds of any property that is the subject of such liens. All parties' rights to object to the priority,

---

[3] The "Texas Taxing Authorities" are Bexar County, City of Carrollton, Dallas County, Ector County Appraisal District, City of El Paso, Ellis County, Fannin County Appraisal District, Fort Bend County, City of Frisco, Galveston County, Harris County, Hidalgo County, Jefferson County, Kaufman County, Lewisville Independent School District, City of McAllen, McClennan County, Montgomery County, Nueces County, Parker County Appraisal District, Polk County, City of Prosper, Prosper Independent School District, Rockwall County Appraisal District, San Marcos Consolidated Independent School District, Shelby County, Smith County, Tarrant County, Tom Green County Appraisal District, Upshur County, and Van Zandt County Appraisal District.

42

validity, amount, and extent of any tax claims of the Texas Taxing Authorities and the asserted liens in connection therewith, are fully preserved.

44.      **Reservation of Rights of the United States**. Notwithstanding any provision to the contrary in this Sale Order, the Transaction Documents, or any other document related to the Sale, nothing shall (a) release, nullify, preclude, or enjoin the enforcement of any police or regulatory power or any liability that any entity would be subject to as the owner, lessor, lessee, or operator of property that such entity owns, operates, or leases after the date of entry of this Sale Order; (b) affect the setoff or recoupment rights of the United States; (c) confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (d) authorize the assumption, assignment, sale, or other transfer of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) agreements, (v) awards, (vi) task orders, (vii) property, (viii) intellectual property, (ix) patents, (x) leases, (xi) certifications, (xii) applications, (xiii) registrations, (xiv) billing numbers, (xv) national provider identifiers, (xvi) provider transaction access numbers, (xvii) licenses, (xviii) permits, (xix) covenants, (xx) inventory, (xxi) guarantees, (xxii) indemnifications, (xxiii) data, (xxiv) records, or any other interests belonging to the United States (collectively, the "**Federal Interests**") without compliance by the Debtors and Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law; (e) be interpreted to set cure amounts or to require the United States to novate, approve, or otherwise consent to the sale, assumption, assignment, or transfer of any Federal Interests; (f) waive, alter, or otherwise limit the United States' property rights; or (g) expand the scope of 11 U.S.C. § 525. In the event of an inconsistency or conflict between the provisions of the Transaction Documents and any provision of this Sale Order, as to the United States, the provisions of this Sale Order and federal law shall govern.

43

45.     **Good Faith of Buyer**. The transactions contemplated by the APA and this Sale Order are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not alter, affect, limit, or otherwise impair the validity of the Sale (including the assumption, assignment, and/or transfer of the Assigned Contracts and Assigned Leases), unless such authorization and consummation of the Sale are duly stayed pending such appeal. The Buyer is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code. As a good faith purchaser of the Purchased Assets, the Buyer has not entered into any agreement with any other potential bidders and has not colluded with any potential or actual bidders, and therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided, pursuant to section 363(n) of the Bankruptcy Code.

46.     **Bulk Sales, Bulk Transfer, or Similar Laws**. No "bulk sales," "bulk transfer," or any similar law (including without limitation those relating to taxes) of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including without limitation the APA and Sale.

47.     **Bankruptcy Rules Satisfied or Waived**. This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  For cause shown, pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply. Time is of the essence

44

in closing the Sale. Accordingly, the Debtors and Buyer are authorized and empowered to close the Sale immediately upon entry of this Sale Order.

48. **Failure to Specify Provisions**. The failure to include or specifically reference any particular provision of the APA and other Transaction Documents in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the APA and other Transaction Documents be authorized and approved in their entirety.

49. **Conflicts**. To the extent that this Sale Order is inconsistent with the Motion, the terms of this Sale Order shall control and govern. To the extent that there are any inconsistencies between the terms of this Sale Order, on the one hand, and the APA and other Transaction Documents, on the other hand, the terms of this Sale Order shall control and govern. To the extent that any plan of reorganization or liquidation, or any order of any type or kind entered in these Chapter 11 Cases or any subsequent chapter 7 case into which these Chapter 11 Cases may be converted, conflicts with or derogates from the terms of the APA (or any ancillary agreements or instruments delivered pursuant thereto) or this Sale Order, the terms of the APA (or any ancillary agreements or instruments delivered pursuant thereto) and this Sale Order shall control and govern to the extent of any such conflict or derogation. Unless otherwise provided herein, to the extent this Sale Order is inconsistent with the Bidding Procedures Order or the terms of the APA, this Sale Order shall govern.

50. **Transaction Document Modifications**. The APA and other Transaction Documents may be modified, amended, or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof without further notice to or order of this Court, so long as any such modification, amendment, or supplement does not have a material adverse effect on

45

the Debtors' estates and does not otherwise conflict with this Sale Order; *provided, however*, that notice shall be provided to the Committee.

51.     **Automatic Stay**. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, without the need for further order of this Court, to allow the Buyer and the Debtors to deliver any notice provided for in the APA and to allow the Buyer and the Debtors to take any and all actions permitted under the APA and other Transaction Documents.

52.     **Further Assurances**. From time to time, as and when requested by the other, the Debtors and the Buyer, as the case may be, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including, such actions as may be necessary to vest, perfect or confirm, record, or otherwise, in the Buyer its right, title, and interest in and to the Purchased Assets and the Assigned Contracts and Assigned Leases, subject to the provisions of the APA.

53.     **Retention of Jurisdiction**. This Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the APA and other Transaction Documents, and any amendments thereto and any waivers and consents given thereunder, and to adjudicate, if necessary, any and all disputes concerning or in any way relating to the Sale, including retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Buyer, (b) interpret, implement, and enforce the provisions of this Sale Order, including the injunctions and limitations of liability set forth in this Sale Order, (c) decide any disputes concerning this Sale Order and the APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the APA and this Sale Order including the

46

interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Purchased Assets and any Assigned Contract or Assigned Lease and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities) and the resolution of the Preserved Objections, and (d) enter any orders under sections 105, 363, and 365 of the Bankruptcy Code, or otherwise, with respect to the Purchased Assets and the Assigned Contracts and Assigned Leases.

# # # END OF ORDER # # #

Order submitted by:

Charles A. Beckham, Jr. (TX #02016600)
Ian T. Peck (TX #24013306)
Martha Wyrick (TX #24101606)
**HAYNES AND BOONE, LLP**
2801 N. Harwood Street
Suite 2300
Dallas, TX 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email: charles.beckham@haynesboone.com
         ian.peck@haynesboone.com
         martha.wyrick@haynesboone.com

Vincent E. Lazar (admitted *pro hac vice*)
Derek L. Wright (admitted *pro hac vice*)
Angela M. Allen (admitted *pro hac vice*)
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Email: vlazar@jenner.com
         dwright@jenner.com
         aallen@jenner.com

*Counsel to the Debtors and Debtors in Possession*

47

**<u>Exhibit A</u>**

**APA      [Filed at Docket No. 720]**

**<u>Exhibit B</u>**

**Preserved Objections**

## Preserved Objections

- Chicago Industrial Portfolio Owner LLC
- Plymouth International Spellmire OH LLC

**Exhibit C**

**Redline of Revised Proposed Order against Original Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OMNICARE, LLC, *et al.*,[1] | ) | Case No. 25-80486 (SGJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Related to Docket Nos. 288, 398, ~~[ ]~~ |

**ORDER (I) APPROVING THE ASSET PURCHASE**
**AGREEMENT BETWEEN THE DEBTORS AND ~~[BUYER]~~GENIERX HOLDINGS**
**LLC;**
**(II) AUTHORIZING THE SALE OF SUBSTANTIALLY**
**ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS,**
**INTERESTS AND ENCUMBRANCES; (III) AUTHORIZING THE ASSUMPTION**
**AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED**

---

[1] The last four digits of Omnicare, LLC's federal tax identification number are 1351. There are ~~111~~110 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Omnicare. The location of Omnicare, LLC's corporate headquarters and the Debtors' service address is One CVS Drive, Mail Code 1160, Woonsocket, RI 02895.

4931-6106-8970.1

**LEASES IN CONNECTION THEREWITH; AND (IV) GRANTING RELATED RELIEF**

This matter coming before the Court on the *Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Selection of Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling the Auction and Sale Hearing(s), and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof; and (II) Granting Related Relief* [Docket No. 288] (the "**Motion**")[2] filed by Omnicare, LLC and certain of its affiliates and subsidiaries, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), seeking, among other things, entry of an order (this "**Sale Order**"): (i) authorizing and approving the sale of the Purchased Assets of the Debtors to [BUYER] or Buyer's DesigneesGenieRx Holdings LLC or its designees, as applicable (collectively, the "**Buyer**"), in accordance with the terms and conditions set forth in that certain Asset Purchase Agreement, dated as of [DATE]March 31, 2026, by and among the Debtors and Buyer (as amended, supplemented or otherwise modified by the parties thereto, the "**APA**," and together with the Transition Services Agreement, Powers of Attorney, and all other ancillary agreements, documents and instruments attached thereto or contemplated thereunder, the "**Transaction Documents**"), a copy of which is attached hereto as **Exhibit A**, free and clear of all liens, claims, interests, and encumbrances to the fullest extent permitted by law, except for the Assumed Liabilities and Permitted Encumbrances as set forth in the APA; (ii) authorizing the assumption and assignment of the Assigned Contracts and Assigned Leases; and (iii) granting related relief, all as more fully set forth in the Motion; and this Court having entered the *Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B)*

---

[2]Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion, the Bidding Procedures Order, or the APA (as defined below), as applicable.

*Authorizing the Selection of Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling the Auction and Sale Hearing(s), and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof; and (II) Granting Related Relief* [Docket No. 398] (the "**Bidding Procedures Order**"), that, among other things, (i) approved the Bidding Procedures for the sale of the Debtors' Assets, including the process, timeline, and notice thereof and (ii) authorized the Debtors' entry into the Stalking Horse Agreement, subject to higher or otherwise better offers at the Auction in accordance with the Bidding Procedures; and the Debtors having ~~conducted the Auction to determine the Successful Bidder and Back-Up Bidder and having~~ determined pursuant to the Bidding Procedures Order and after extensive marketing and ~~the Auction, that the Buyer has submitted the highest or otherwise best bid to purchase the Purchased Assets; and having selected the Buyer as the~~ <u>in consultation with the Consultation Parties, that the Auction would be cancelled, the Stalking Horse Bid submitted by the Stalking Horse Bidder is the Successful Bid and the Stalking Horse Bidder is the</u> Successful Bidder ~~[and [BACK-UP BIDDER] (the "**Back-Up Bidder**" and such bid, the "**Back-Up Bid**"))], in each case~~<u>,</u> in accordance with the Bidding Procedures, as reflected in the *Notice of <u>Cancellation of</u> Auction ~~Results~~ and ~~Designation~~ of Successful Bidder ~~and Back-Up Bidder~~* [Docket No. ~~___~~<u>799</u>] (the "~~**Auction**~~<u>**Successful Bidder**</u> **Notice**"); and the Debtors having filed and served the *Assumption and Assignment Notice* <u>and *Supplemental Assumption and Assignment Notice* [Docket Nos. 789 and 798]</u> that set forth, among other things, the Cure Costs for the executory contracts and unexpired leases set forth on the Cure Schedules thereto; and upon due, adequate, and sufficient notice of the Motion, the Bidding Procedures Order, the Assumption and Assignment Notice, the ~~Auction~~<u>Successful Bidder</u> Notice, the APA<u>,</u> and all other related transactions contemplated thereunder and in this Sale Order (such transactions collectively, the

3

"**Sale**"); and this Court having held a hearing to consider the relief requested in the Motion on a final basis (the "**Sale Hearing**"); and this Court having determined that the legal and factual bases set forth in the Motion and the (i) *Declaration of* ~~[ ]~~*Steven Balash in Support of Debtors' Motion for* Entry of an Order (I) ~~Approving the Asset Purchase Agreement Between the Debtors and [BUYER]; (II)~~*(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B)* Authorizing the ~~Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; (III) Authorizing the~~*Selection of Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling the Auction and Sale Hearing(s), and (D) Establishing Certain* Assumption and Assignment ~~of Certain Executory Contracts and Unexpired Leases in Connection Therewith~~*Procedures and Approving the Manner and Notice Thereof*; and (~~IV~~*II*) *Granting Related Relief* [Docket No. ~~ ] (the "**Sale Declaration**~~818-4]; (ii) *Declaration of Paul Rundell in Support of Debtors' Motion for Entry of an Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Selection of Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling the Auction and Sale Hearing(s), and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner and Notice Thereof; and (II) Granting Related Relief* [Docket No. 818-3]; and (iii) *Declaration of Marcy Wilder, Privacy Expert, in Support of the Debtors' Proposed Sale and Transfer of Personally Identifiable Information and PHI* [Docket No. 800] (collectively, the "**Sale Declarations**"), and at the Sale Hearing*,* establish just cause for the relief granted herein; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and, except as provided in paragraph 3 herein, all objections, responses, and reservations of rights filed or asserted in respect of the Motion, if any, having been

4

withdrawn, resolved, or overruled; and upon all of the proceedings had before this Court; and after

due deliberation and sufficient cause appearing therefor,

~~**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**~~

**FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

**I.      Jurisdiction, Venue, Final Order and Statutory Predicates**

A.      This Court has jurisdiction to hear and determine the Motion and to grant the relief

requested therein pursuant to 28 U.S.C. §1334 and the *Order of Reference of Bankruptcy Cases*

*and Proceedings Nunc Pro Tunc*, Miscellaneous Order No. 33 (N.D. Tex. August 3, 1984). Venue

of these Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408

and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (N)

and (O).

B.      This Sale Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Court expressly

finds that there is no just reason for delay in the implementation of this Sale Order and expressly

directs entry of judgment as set forth herein. In the absence of a stay pending appeal, Buyer, being

a good-faith purchaser under section 363(m) of the Bankruptcy Code, may close the sale

contemplated by the APA at any time after entry of this Sale Order, subject to the provisions of

the APA, and shall not be subject to any applicable stay, including any stay provided by

Bankruptcy Rules 6004(h) and 6006(d).

C.      The statutory predicates for the relief granted herein are sections 105, 363, 365 and

541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and section E of the

*Procedures for Complex Cases in the Northern District of Texas* (the "**Complex Case**

**Procedures**").

**II.     Notice**

5

D.      As evidenced by the certificates of service ~~and publication~~ filed with the Court and the relevant information regarding the sale posted on the website of the Debtors' claims and noticing agent, Stretto, Inc., and as demonstrated by the evidence presented and the representations of counsel at the Sale Hearing, (i) proper, timely, and adequate notice of the Motion, the Sale Hearing, the Auction (and cancellation thereof), the Sale, the Assumption and Assignment Procedures, the Assumption and Assignment Notice, the Cure Costs, the ~~Auction~~Successful Bidder Notice, all related transactions collectively described in the Transaction Documents, and all related deadlines has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 9007, 9008, and 9014, Local Rule 9007-1, section E of the Complex Case Procedures, and the Bidding Procedures Order; (ii) such notice was good, sufficient, and appropriate under the circumstances and provided parties-in-interest with reasonable and adequate opportunity to object or be heard with respect to the Motion, the Sale, the APA, the Assumption and Assignment Notice, the assumption and assignment of the Assigned Contracts and Assigned Leases, and entry of this Sale Order; and (iii) no other or further notice of the Motion, the Sale Hearing, the Auction (and cancellation thereof), the Sale, the Assumption and Assignment Procedures, the Assumption and Assignment Notice, the Cure Costs, the ~~Auction~~Successful Bidder Notice, all related transactions collectively described in the APA, and all related deadlines is necessary or shall be required.  The requirements of Bankruptcy Rule 6004(a) and Local Rule 9007-1 are satisfied by such notice.

E.      The Debtors filed with this Court and served the Assumption and Assignment Notice, containing (i) the list of executory contracts and unexpired leases that may be potentially assumed and assigned in connection with the Sale; (ii) information necessary and appropriate to provide notice of the relevant proposed assumption and assignment of the executory contracts and

6

unexpired leases; (iii) Cure Costs, where applicable, and (iv) the procedures and deadlines for objecting to the assumption and assignment of the executory contracts and unexpired leases and related Cure Costs, where applicable, on all counterparties to such executory contracts and unexpired leases. The Assumption and Assignment Notice (i) included the Debtors' good faith calculation of Cure Costs with respect to each Assigned Contract or Assigned Lease; (ii) stated that assumption and assignment is not guaranteed and is subject to this Court's approval; and (iii) prominently displayed the Cure Objection Deadline (as defined in the Assumption and Assignment Notice). The filing and service of the Assumption and Assignment Notice was good, sufficient, and appropriate under the circumstances, and no other or further notice need be given.

F.      Notice, as evidenced by the certificates of service ~~and publication~~ filed with the Court ~~as~~at Docket ~~Nos. [      ]~~Numbers 299, 427, 670, 733, 796, and 806, and as posted on the website of the Debtors' claims and noticing agent, Stretto, Inc., has been provided in the form and manner specified in the Motion and required by the Bidding Procedures Order, and the Court finds that the notice is adequate and sufficient in all respects to bind all creditors, bidders and other parties in interest in these Chapter 11 Cases.

**III.     Compliance with Bidding Procedures and Bidding Procedures Order**

G.      As demonstrated by the Sale ~~Declaration~~Declarations, the evidence proffered or adduced at the Sale Hearing, and the arguments of counsel made on the record at the Sale Hearing, the Debtors' marketing and sale process with respect to the Purchased Assets were in accordance with the Bidding Procedures and afforded a full, fair, and reasonable opportunity for any Potential Bidder to make a higher or otherwise better offer to purchase the Purchased Assets and participate in the sale process.

H.      As demonstrated by the Sale ~~Declaration~~Declarations, the evidence proffered or adduced at the Sale Hearing, and the arguments of counsel made on the record at the Sale Hearing, the Debtors and their professionals have adequately marketed the Purchased Assets and conducted the marketing and sale process in compliance with the Bidding Procedures and the Bidding Procedures Order, and the sale process was conducted in a diligent, non-collusive, fair, reasonable, and good-faith manner. The Debtors ~~have~~ afforded Potential Bidders a full and fair opportunity to participate in the bidding process for the Purchased Assets and to make higher or otherwise better offers. The process conducted by the Debtors and their professionals pursuant to the Bidding Procedures obtained the highest or otherwise best value for the Purchased Assets, and there was no other transaction or combination of transactions available or presented that would have yielded a higher or better result for the Purchased Assets.

**IV.    Highest or Otherwise Best Offer**

I.      As demonstrated by the Sale ~~Declaration~~Declarations, the evidence proffered or adduced at the Sale Hearing, and the arguments of counsel made on the record at the Sale Hearing, (i) the APA constitutes the highest or otherwise best offer for the Purchased Assets, (ii) the Debtors have determined, in consultation with the Consultation Parties, that the transactions contemplated by the APA maximize value for the benefit of the Debtors' estates, creditors, stakeholders, and parties in interest, and ~~constitutes~~constitute the highest or otherwise best offer for the Purchased Assets, and (iii) entry into the APA constitutes a valid and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties and is in accordance and compliance with the Bidding Procedures and the Bidding Procedures Order. No other person, entity, or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors

8

than the Buyer has. The APA provides fair and reasonable terms for the purchase of the Purchased Assets.

## V. Sale in Best Interests

J. Approval of the Transaction Documents, the Sale, and all related transactions together with the actions to be taken by the Debtors and the Buyer in connection therewith, are appropriate under the circumstances of these Chapter 11 Cases and are in the best interests of the Debtors, their estates, their creditors and other parties in interest. The Debtors have demonstrated (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, outside of a plan of reorganization or liquidation, in that, among other things, the immediate consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtors' estates, subject to the regulatory approvals and other conditions set forth in the APA.

K. The Debtors' decision to enter into the APA and pursue and consummate the Sale in accordance with the terms of the APA constitutes a proper exercise of the fiduciary duties of the Debtors and their respective directors, managers, and officers. The Sale must be approved and consummated promptly to maximize the value of the Debtors' estates. Time is of the essence in consummating the Sale. Given the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price, the Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved. The consummation of the Sale and the assumption and assignment of the Assigned Contracts and Assigned Leases are legal, valid, and properly authorized under sections 105(a), 363(b), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect ~~of~~to the

9

Sale. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts and Assigned Leases to the Buyer in connection with consummation of the Sale, and the assumption and assignment of the Assigned Contracts and Assigned Leases is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

**VI.     Arm's-Length Sale and Good Faith of Buyer**

L.      None of the Debtors nor the Buyer, their respective affiliates, officers, directors, members, partners, principals, or equityholders (or equivalent) nor any of their respective representatives, attorneys, advisors, successors, or assigns have engaged in any conduct that would cause or permit the APA or the consummation of the Sale and related transactions contemplated in the APA to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. The Buyer has not acted in a collusive manner with any Person. The APA was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion or fraud, in good faith, and from arm's-length bargaining positions.

M.      None of the Debtors nor the Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code. Among other things, (i) the Debtors were free to deal with any other party interested in acquiring the Purchased Assets, (ii) the Debtors and the Buyer complied with the provisions of the Bidding Procedures Order and the Bidding Procedures, (iii) the Buyer agreed to subject its bid to the Bidding Procedures, (iv) the Debtors and the Buyer, and, as applicable, their respective management, board of directors, board of managers (or comparable governing authority), employees, agents, advisors, and representatives, each actively participated in the marketing and sale process, and each acted in good faith and without collusion or fraud of any kind, (v) all payments to be made by the Buyer, and other agreements or

10

arrangements entered into by the Buyer in connection with the Sale have been disclosed, and (vi) the Buyer was designated the Successful Bidder for the Purchased Assets in accordance with the Bidding Procedures and the Bidding Procedures Order~~, and for the avoidance of doubt, if the Successful Bidder does not close the Transaction(s), the Back-Up Bidder shall be designated as the Buyer in accordance with the Bidding Procedures and Bidding Procedures Order~~.

N.      The Buyer is purchasing the Purchased Assets pursuant to the APA in good faith and for fair and reasonable consideration, and the Buyer is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code. The protections afforded by section 363(m) of the Bankruptcy Code are integral to the Sale, and the Buyer would not consummate the Sale without such protections. The Buyer is, therefore, entitled to the full rights, benefits, privileges, and protections afforded under section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and nonbankruptcy law in connection with this proceeding, the Sale, each term of the APA and other Transaction Documents, and each term of this Sale Order.

## VII.      Corporate Authority

O.      The Debtors have (i) full requisite corporate or other organizational power and authority to execute, deliver, and perform their obligations under the APA and other Transaction Documents, and to consummate the Sale and other transactions contemplated thereby, and such execution, delivery, and performance have been duly and validly authorized by all necessary corporate or other organizational action of each applicable Debtor, (ii) taken all requisite corporate or other organizational action and formalities necessary to authorize and approve the execution, delivery, and performance of their obligations under the APA and other Transaction Documents and the consummation by the Debtors of the Sale and other transactions contemplated thereby, including as required by their respective organizational documents, and, upon execution thereof,

11

each such agreement executed by such Debtor will be duly and validly executed and delivered by such Debtor and enforceable against such Debtor in accordance with its terms and, assuming due authorization, execution, and delivery thereof by the other parties thereto, will constitute a valid and binding obligation of such Debtor. No additional consents or approvals, other than those provided in the APA, are necessary or required for the Debtors to enter into the APA and other Transaction Documents, perform their obligations therein, and otherwise consummate the Sale and other transactions approved by this Sale Order.

## VIII.    No Merger; Buyer Not an Insider; No Successor Liability

P.    The Buyer is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code. The Buyer is not a "successor" to, a mere continuation of, or an alter ego of the Debtors or their estates, and there is no continuity of enterprise or common identity between the Buyer and the Debtors by reason of any theory of law or equity. There is no common identity of incorporators, directors, or controlling stockholders between the Debtors and the Buyer. The Buyer is not holding itself out to the public as a successor to or a continuation of the Debtors or their estates. The Sale does not amount to a consolidation, succession, merger, or de facto merger of Buyer and the Debtors. The transfer of the Purchased Assets to the Buyer, and the assumption of the Assumed Liabilities by the Buyer, except as otherwise explicitly set forth in the APA, does not, and will not, subject the Buyer to any liability whatsoever (including any successor liability whatsoever), with respect to the Debtors or the operation of the Debtors' businesses prior to the Closing or by reason of such transfer, including under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or any foreign jurisdiction, based, in whole or in part, directly or indirectly, on any, or any theory of, successor, transferee, derivative, vicarious, or assignee liability of any kind or character, including, but not limited to, antitrust,

12

environmental, revenue, pension, ERISA, tax, labor (including any WARN Act), employment or benefits, de facto merger, business continuation, substantial continuity, alter ego, derivative, transferee, veil piercing, escheat, continuity of enterprise, mere continuation, product line, products liability, or other applicable law, rule, or regulation (including filing requirements under any such law, rule, or regulation), or theory of liability, whether legal, equitable, or otherwise (collectively, the "**Successor or Other Liabilities**").

IX.     **Binding and Valid Transfer**

Q.     The transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets, and will vest the Buyer with all right, title, and interest that the Debtors or their estates possess with respect to the Purchased Assets, free and clear, to the fullest extent permitted by law, of all Interests (as defined below) (other than the Permitted Encumbrances and the Assumed Liabilities) in or against such assets and equity interests comprising the Purchased Assets, as set forth in the APA. Immediately prior to consummating the Sale, the Purchased Assets constituted property of the Debtors' estates, good title was vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code, and the Debtors were the sole and rightful owners of the Purchased Assets. The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, sections 105(a), 363(b), 363(f), 365(f), and 365(m), and all of the applicable requirements of such sections have been satisfied in respect of the Sale. Upon and following the consummation of the Sale, the Buyer shall be vested with good and marketable title to the Purchased Assets and shall be the sole and rightful owner of the Purchased Assets.

X.     **No Fraudulent Transfer**

R.      The Transaction Documents are valid and binding contracts between the Debtors and the Buyer. The Transaction Documents were not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia, or foreign jurisdiction. The consideration provided by the Buyer in respect of the Sale (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Purchased Assets, (iii) will provide a greater recovery for the Debtors' creditors more expeditiously than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, and similar laws and acts). None of the Debtors nor the Buyer is entering into the Sale or other transactions contemplated by the Transaction Documents fraudulently for the purpose of statutory and common-law fraudulent conveyance and fraudulent transfer claims.

## XI.      Section 363(f) is Satisfied

S.      The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full with respect to each Interest (as defined below) in the Purchased Assets; therefore, the Debtors may sell the Purchased Assets free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities).

T.      The Buyer would not have entered into the Transaction Documents, and would not consummate the transactions contemplated thereby, if the (i) Sale of the Purchased Assets to the Buyer was not free and clear of all Interests (defined below) (other than the Permitted Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever or (ii) Buyer would,

14

or in the future could, be liable for any of the Interests (other than the Permitted Encumbrances and the Assumed Liabilities). The Buyer will not consummate the transactions contemplated by the Transaction Documents unless this Court expressly orders that none of the Buyer, any of the Buyer's Affiliates or Subsidiaries, or any of their respective officers, directors, partners, principals, direct and indirect equityholders (including any equity sponsor), professionals, or representatives, successors, or assigns, or their respective assets or properties, including, without limitation, the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, or by payment, setoff, recoupment, or otherwise, directly or indirectly, any Interests (other than the Permitted Encumbrances and the Assumed Liabilities), including rights or claims based on any Successor or Other Liabilities. The total consideration to be provided under the APA reflects the Buyer's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever (including, without limitation, any potential Successor or Other Liabilities).

U. Not transferring the Purchased Assets free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities), including rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state, federal, foreign law, or otherwise, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Purchased Assets other than pursuant to a transfer that is free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities) of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

V.      The Debtors may sell the Purchased Assets free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Those holders of Interests that did not timely object to the Sale or the Motion, or withdrew objections to the Sale or the Motion, are deemed to have consented to the Sale and the Motion pursuant to section 363(f)(2) of the Bankruptcy Code. All Interests (except to the extent that such encumbrances are Permitted Encumbrances or Assumed Liabilities) fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and, therefore, all holders of Interests are adequately protected.

**XII.     Cure Costs and Adequate Assurance of Future Performance**

W.      The assumption and assignment of the Assigned Contracts and Assigned Leases pursuant to the terms of this Sale Order (i) is integral to the APA, (ii) is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, and (iii) represents the reasonable exercise of reasonable and prudent business judgment by the Debtors. The assumption and assignment of the Assigned Contracts and Assigned Leases (i) is necessary to sell the Purchased Assets to the Buyer, (ii) allows the Debtors to maximize the value of the Purchased Assets, including the Assigned Contracts and Assigned Leases, (iii) limits the losses suffered by the counterparties to the Assigned Contracts and Assigned Leases (the "**Counterparties**"), and (iv) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assigned Contracts and Assigned Leases. For these reasons, the Debtors have exercised reasonable business judgment in assuming and assigning the Assigned Contracts and Assigned Leases and such assumption and/or assignment is in the best interests of the Debtors' estates.

16

X.      Pursuant to section 365(f) of the Bankruptcy Code, each Assigned Contract or Assigned Lease to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer, notwithstanding any provision in such contract prohibiting, restricting, or conditioning its assignment or transfer. No section of any of the Assigned Contracts and Assigned Leases that would prohibit, restrict, or condition, whether directly or indirectly, the use, assumption, or assignment of any of the Assigned Contracts and Assigned Leases in connection with the Sale shall have any force or effect.

Y.      Subject to the terms of the APA, the Debtors or the Buyer, as the case may be, have cured or have demonstrated the ability to cure, any default under any Assigned Contract or Assigned Lease with respect to any act or omission that occurred prior to the date of assignment of such Assigned Contract or Assigned Lease. The Debtors' or Buyer's, as applicable and in accordance with the APA, obligations to pay the Cure Costs upon the Closing Date, and the Buyer's obligations to perform the obligations under the Assigned Contracts and Assigned Leases thereafter, shall constitute adequate assurance of their future performance of and under the Assigned Contracts and Assigned Leases, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code. Pursuant to the Bidding Procedures Order, all counterpartiesCounterparties to the Assigned Contracts and Assigned Leases that failed to file with this Court and serve a timely objection are forever barred from asserting any such objection with regard to the assumption or assignment of their Assigned Contract or Assigned Lease. This Court finds that, with respect to all such Assigned Contracts and Assigned Leases, the payment of Cure Costs is appropriate and is deemed to fully satisfy the Debtors' obligations under section 365(b) of the Bankruptcy Code. Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption and the assignment by the applicable

17

Debtor to the Buyer of each of the Assigned Contracts and Assigned Leases. To the extent any Assigned Contract or Assigned Lease is not an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Buyer in accordance with the terms of this Sale Order that are applicable to the Purchased Assets.

XIII. ~~**Back-Up Bidder**~~

~~Z. The Debtors have demonstrated sufficient basis to have selected and designated the bid of the Back-up Bidder as the next highest and otherwise best bid for the Purchased Assets. Such actions are appropriate exercises of the Debtors' business judgment and are in the best interests of the Debtors, their creditors, their estates, and other parties-in-interest. Approval of the Back-up Bidder's bid as the Back-Up Bid, as provided for in the Bidding Procedures Order, and entitling the Back-Up Bid, if such Back-Up Bidder ultimately consummates the Transaction(s) contemplated by this Sale Order, the findings and protections of this Sale Order is in the best interests of the Debtors, their creditors, their estates, and other parties-in-interest.~~

**XIII.** ~~XIV.~~ **Not a Sub Rosa Plan**

Z. ~~AA.~~ Neither the APA nor the Sale constitutes a sub rosa chapter 11 plan or an element of such plan for which approval has been sought without the protection that a disclosure statement would afford. Neither the APA nor the Sale impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of the Debtors' subsequent chapter 11 plan.

**XIV.** ~~XV.~~ **Necessity of Order**

AA. ~~BB.~~ The Buyer would not have entered into the APA and would not consummate the Sale without all of the relief provided for in this Sale Order. The consummation of the Sale pursuant to this Sale Order and the APA is necessary for the Debtors to maximize the value of their estates for the benefit of the Debtors, their estates, their creditors, and all other parties in

interest. It is important that the Sale be consummated as expeditiously as possible to preserve the value of the Purchased Assets.

## XV. ~~XVI.~~ Compelling Circumstances for an Immediate Sale

BB. ~~CC.~~ The Debtors' decision to enter into the APA and to consummate the Sale represents an exercise of reasonable business judgment. The Debtors have demonstrated both (i) good, sufficient, and reasonable business purposes and justifications for approving the APA, and (ii) compelling circumstances for the immediate approval and consummation of the Sale contemplated by the Transaction Documents outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization or liquidation, in that the prompt consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtors' estates and to expedite distributions to creditors.

## XVI. ~~XVII.~~ Waiver of Bankruptcy Rules 6004(h) and 6006(d)

CC. ~~DD.~~ The sale of the Purchased Assets must be approved and consummated promptly in order to preserve the value of the Purchased Assets.  Therefore, time is of the essence in consummating the Sale contemplated by the Transaction Documents, and the Debtors and the Buyer intend to close the transactions as soon as reasonably practicable following the entry of this Sale Order.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions as contemplated by the Transaction Documents. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with respect to the Sale transaction contemplated by this Sale Order.

## XVII. ~~XVIII.~~ Final Order

19

DD. ~~EE.~~ This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

I.     **General Provisions**

1.     **<u>Findings of Fact and Conclusions of Law</u>**. The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Chapter 11 Cases pursuant to Bankruptcy Rule 9014. To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such. This Court's findings shall also include any oral findings of fact and conclusions of law by this Court during or at the conclusion of the Sale Hearing. Additionally, this Court's findings of fact and conclusions of law in the Bidding Procedures Order are incorporated herein by reference as if fully set forth in this Sale Order.

2.     **<u>Motion is Granted</u>**. Subject to paragraph 3 of this Sale Order, the Motion and the relief requested therein is granted and approved, and the Sale transaction contemplated in the Motion and the APA and other Transaction Documents are approved in their entirety, in each case as set forth herein and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Sale Order.

3.      **Certain Objections Preserved**. Notwithstanding anything to the contrary herein, the specific objections listed on **Exhibit B** are preserved in all respects and will be either consensually resolved or continued to a date to be set by the Court and resolved by separate order of the Court (the "**Preserved Objections**") and all rights of affected parties to appeal such separate orders are also preserved in all respects. The Preserved Objections shall be resolved prior to any Closing of the Sale (unless otherwise separately ordered by the Court after notice and an opportunity for a hearing). Such resolutions shall be set forth in one or more orders of the Court, which may provide that the terms of this Sale Order shall be made applicable to the substantive rights of any party or issue that is the subject of such Preserved Objection (to the extent the Court overrules such Preserved Objection) or provide such other relief as determined by the Court. All valid and timely objections to assumption and assignment of any applicable Assigned Contract or Assigned Lease, including to proposed Cure Costs, are preserved and shall be resolved pursuant to the terms set forth in this paragraph and paragraphs ~~33~~33 to ~~35~~35 of this Sale Order.

4.      **All Other Objections Overruled**. All other objections to, reservations of rights regarding, or other responses to the Motion or the relief requested therein, the APA and other Transaction Documents, the Sale, the entry of this Sale Order, or the relief granted herein have been resolved, withdrawn, or overruled. Those parties who did not timely object to the Motion or the entry of this Sale Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including pursuant to section 363(f)(2) of the Bankruptcy Code.

## II.      Approval of the APA

5.      **Approval and Authorization**. The APA and other Transaction Documents, including, in each case, any amendments, supplements, and modifications thereto, and all of the

21

terms and conditions thereof, are hereby approved. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the APA and other Transaction Documents, (b) close the Sale as contemplated in the APA and this Sale Order, and (c) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their obligations as contemplated by the APA and other Transaction Documents, including the assumption and assignment to the Buyer of the Assigned Contracts and Assigned Leases, in each case without further notice to or order of this Court, and including any actions that otherwise would require further approval by the Counterparties, equityholders, members, or boards of directors or managers, or similar governing bodies, as the case may be, without the need ~~of obtaining~~to obtain such approvals, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and other Transaction Documents and the Sale. The Debtors are further authorized to pay, without further order of this Court, whether before, at, or after the Closing, any amounts that become payable by the Debtors pursuant to the APA and other Transaction Documents.

6.      **Binding Effect**. The APA and other Transaction Documents and this Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of Claims (whether known or unknown) against the Debtors, all holders of Liens or other Interests against, in, or on all or any portion of the Purchased Assets, all counterparties to any executory contract or unexpired lease of the Debtors (including all Counterparties), the Buyer, and all successors and assigns of each of the foregoing, including any

22

trustee subsequently appointed in these Chapter 11 Cases or upon a conversion of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, and any Person seeking to assert rights on behalf of any of the foregoing or that belong to the Debtors' estates. The APA and the Transaction Documents shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their equity holders, or any trustees, examiners, or receivers.

7.     Notwithstanding any other provision of this Sale Order, the Debtors and the Buyer may, at their option, mutually agree, and are hereby authorized (but not required), to modify the APA to provide for the sale or transfer of the equity interests of one or more Subsidiaries that are Asset Sellers, including but not limited to by means of an outright sale or a plan of reorganization or liquidation for such Subsidiaries that are Asset Sellers, so long as any such modification does not have a material adverse effect on the Debtors' estates; *provided*, however, that the Debtors shall provide the Committee with reasonable notice prior to agreeing to any such modification, and the foregoing authorization shall not be deemed a waiver of the Committee's right to object to any such modification and/or confirmation of any such Chapter 11 plan.

## III.     Transfer of Purchased Assets

8.     **Valid Transfer**. The transfer of the Purchased Assets to the Buyer in accordance with the terms of the APA will be a legal, valid, enforceable, and effective sale and transfer of the Purchased Assets and the Assumed Liabilities and will, subject to the Closing, render the Buyer liable for the Assumed Liabilities. The transfer of each of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets which transfer vests or will vest the Buyer with all right, title, and interest to the Purchased Assets. Pursuant to the APA, in no instance shall the Buyer have any liability for, or be deemed to have assumed, any Excluded Liabilities.

9.      Nothing herein, in the APA, any lists of executory contracts to be assumed and assigned and/or any Assumption and Assignment Notices, or any documents relating to any of the foregoing shall permit or otherwise effect a sale, assignment or other transfer of (i) insurance policies issued by ACE American Insurance Company, ACE Property & Casualty Insurance Company, Indemnity Insurance Company of North America, Westchester Surplus Lines Insurance Company, Westchester Fire Insurance Company, Illinois Union Insurance Company, Pacific Indemnity Company, Federal Insurance Company, Executive Risk Indemnity Inc., Executive Risk Specialty Insurance Company, and Chubb Custom Insurance Company (collectively, and together with their U.S.-based affiliates and predecessors, the "**Chubb Companies**"), or any related agreements (collectively with such insurance policies, the "**Chubb Insurance Contracts**"), and/or (ii) any rights, proceeds, benefits, interests, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts; provided, however, that the Debtors may pursue claims in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, deliver to the Buyer any proceeds; and provided further that the Debtors shall pursue such claims as described in Section 2.01(p) of the APA.

10.     8. **Free and Clear**. Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors shall transfer the Purchased Assets, including, but not limited to, the Assigned Contracts and Assigned Leases, to the Buyer in accordance with the terms of the APA; such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets; and the Buyer shall take title to and possession of such Purchased Assets free and clear of (a) all liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code) and encumbrances relating to, accruing, or arising any time prior to the Closing Date (collectively, the "**Liens**"), and (b) all debts (as that term is defined in section 101(12) of the Bankruptcy Code)

24

arising under, relating to, or in connection with any act of the Debtors or claims (as that term is

defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties,

options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages,

hypothecations, charges, indentures, loan agreements, instruments, collective bargaining

agreements, leases, licenses, deeds of trust, security interests or similar interests, conditional sale

or other title retention agreements and other similar impositions, restrictions on transfer or use,

pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration,

infringement, products liability, alter ego liability, suits, credits, allowances, options, limitations,

causes of action, choses in action, rights of first refusal or first offer, rebate, chargeback, credit, or

return, proxy, voting trust or agreement or transfer restriction under any shareholder or similar

agreement or encumbrance, easements, rights of way, encroachments, and matters of any kind and

nature, whether arising prior to or subsequent to the Petition Date, whether known or unknown,

legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated,

asserted or unasserted, whether imposed by agreement, understanding, law, equity, or otherwise

(including rights with respect to claims and liens (i) that purport to give to any party a right or

option to effect a setoff or recoupment against, or a right or option to effect any forfeiture,

modification, profit sharing interest, right of first refusal, purchase or repurchase right or option,

or termination of, any of the Debtors' or the Buyer's interests in the Purchased Assets, or any

similar rights, if any,  (ii) in respect of taxes, restrictions, rights of first refusal, charges of interests

of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer,

receipt of income, or other exercise of any attribute of ownership, or (iii) recoupments, arising out

of or related to any Healthcare Laws, Permit, or Provider Numbers, as well as participation in any

Government Health Program) (collectively, as defined in this clause (b), the "**Claims**" and,

25

together with the Liens and any other encumbrances or interests of any kind or nature whatsoever, the "**Interests**"), relating to, accruing, or arising any time prior to the Closing Date, with the exception of the Permitted Encumbrances and the Assumed Liabilities. Any and all valid and perfected Interests in the Purchased Assets shall attach to the cash proceeds of the Sale ultimately attributable to the property against or in which such Interests are asserted, with the same validity, force, and effect, if any, and in the same order of priority, that they have now as against the assets and equity interests comprising the Purchased Assets, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto. Except as expressly assumed by the Buyer under the APA, the transfer of the Purchased Assets to the Buyer and the assignment to the Buyer of the Assigned Contracts and Assigned Leases will not subject the Buyer to any liability whatsoever that may become due or owing under the Assigned Contracts and Assigned Leases prior to the Closing Date, or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or foreign jurisdiction, based, in whole or in part, directly or indirectly, on any theory of law or equity, including any Successor or Other Liabilities. Following the Closing, no holder of any Interests (other than those expressly assumed by the Buyer or Permitted Encumbrances) or other party in interest may interfere with the Buyer's use and enjoyment of the Purchased Assets based on or related to such Interests, or any actions that the Debtors may take in these Chapter 11 Cases, and no party may take any action to prevent, interfere with, or otherwise enjoin consummation of the Sale.

11.      Pursuant to the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, Grant Liens, Provide Superpriority Administrative Expense Claims and Use Cash Collateral, (II) Modifying the Automatic Stay, and (III) Granting Related Relief* [Docket No. 257]

26

(the "**Final DIP Order**") and the DIP Credit Agreement (as defined in the Final DIP Order), until Payment in Full of the Obligations (as each such term is defined in the DIP Credit Agreement), the Purchased Assets and the proceeds thereof under the Transaction Documents or otherwise, constitute DIP Collateral and Cash Collateral (each as defined in the Final DIP Order).  Upon receipt by any Borrower (as defined in the DIP Credit Agreement) or any of its Subsidiaries (as defined in the DIP Credit Agreement) of any Net Cash Proceeds (as defined in the DIP Credit Agreement) received from the sale of the Purchased Assets pursuant to the Transaction Documents, the Borrowers shall pay to the DIP Lender (as defined in the Final DIP Order) the Net Cash Proceeds received in connection with such sale up to an amount equal to the aggregate outstanding amount of the Obligations, in accordance with and subject to the Final DIP Order and, as applicable, the terms and conditions of the DIP Credit Agreement and the other DIP Documents (each as defined in the Final DIP Order).

12. 9. **Valid and Binding**. The APA and other Transaction Documents are valid and binding contracts between the Debtors and the Buyer and shall be enforceable pursuant to their terms. The APA and other Transaction Documents, the Sale, and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors and any chapter 7 or chapter 11 trustee appointed in these Chapter 11 Cases, or any converted or successor cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person. The APA and other Transaction Documents were not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction (including the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, and similar laws and acts). Neither the

27

Debtors nor the Buyer are entering into the transactions contemplated by the APA with any fraudulent or otherwise improper purpose, including for the purpose of statutory and common-law fraudulent conveyance and fraudulent transfer.

13.    ~~10.~~ **Release of Interests**. Each and every federal, state, local, and other governmental agency, governmental department, administrative agency, filing agent, filing officer, title agent, title company, recording agency, registrar of deeds, registrar of patents, trademarks, or other intellectual property, secretary of state, federal, state, and local official, and any other persons and entity who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets, (i) is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale contemplated by the APA, and (ii) the APA and Sale Order are binding upon and shall govern the acts of such persons. Neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments or documents to effectuate, consummate, and implement the provisions of this Sale Order, and the provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of Interests (other than the Permitted Encumbrances and the Assumed Liabilities) shall be self-executing. The Buyer may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county, or other territory or jurisdiction in which any of the Debtors or their Affiliates is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale Order as of the Closing Date. On the Closing Date, each of the Debtors' creditors is authorized and directed to

execute such documents and take all other actions as may be reasonably necessary to release its Liens, if any, in the Purchased Assets, as such Liens may otherwise exist. If any Person that has filed a financing statement, mortgage, mechanic's lien, lis pendens, or other statement, document, or agreement evidencing an Interest in any portion of the Purchased Assets (other than statements or documents with respect to Permitted Encumbrances or Assumed Liabilities) shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases, and/or other similar documents necessary for the purpose of documenting the release of all Interests that such Person has in the Purchased Assets, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such Person with respect to the Purchased Assets, (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order that, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests of any kind or nature in the Purchased Assets, and (c) the Buyer and the Debtors may seek in this Court, or any other court of appropriate jurisdiction, to compel the appropriate parties to execute termination statements, instruments of satisfaction, releases, and/or other similar documents with respect to all Interests that such Person has in the Purchased Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

14.     ~~11.~~ **Conditions Precedent**. The Debtors and the Buyer shall have no obligation to proceed with the Closing until all conditions precedent to their respective obligations to proceed have been met, satisfied, or waived in accordance with the terms of the APA.

15.    ~~12.~~ **Surrender of Purchased Assets**. Unless the Buyer otherwise consents, all Persons that are in or come into possession of any portion of the Purchased Assets, at any time prior to the Closing Date, are hereby directed to surrender possession of such Purchased Assets to the Buyer on the Closing Date, or at such time thereafter as the Buyer may request. Subject to the terms of this Sale Order, all Persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to the Buyer in accordance with the terms of the APA and this Sale Order.

16.    ~~13.~~ **Licenses and Permits**. Upon the Closing, Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in, to, and under the Assigned Permits and the Debtors shall be relieved from any further responsibility or liability with respect to the Assigned Permits arising on or accruing after the Closing (other than as expressly provided for in the APA and other Transaction Documents).  Except as otherwise provided for in the Transaction Documents, the Buyer acknowledges and agrees that, from and after the Closing, it shall be responsible for complying with the terms of each Assigned Permit (other than any such terms that are deemed unenforceable under this Order).

17.    ~~14.~~ To the maximum extent permitted under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any Assigned Permit (including pursuant to any Power of Attorney with respect to an Assigned Permit that cannot be transferred to Buyer on the Closing Date), and all Assigned Permits are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.

18.    ~~15.~~ To the extent that any Assigned Permit or other license or permit necessary for the operation of the Debtors' business is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code or is otherwise unable to be transferred to

30

the Buyer on the Closing Date (each, an "**Untransferable Permit**"), the Buyer shall apply for and obtain a replacement for such Untransferable Permit promptly after the Closing Date, and such Untransferable Permit shall remain in full force and effect for the Buyer's benefit (until a new license or permit is obtained. The Debtors may, at their reasonable discretion, take all steps necessary to cooperate with the Buyer in connection with any such application as provided for in the APA or other Transaction Documents, as applicable.

19.     16. No person or entity (including any Governmental Authority) may deny, revoke, suspend, condition, or refuse to issue or renew any permit, license, approval, agreement, or similar grant relating to the operation of the Purchased Assets on account of (a) the filing or pendency of these Chapter 11 Cases; (b) the consummation of the transactions contemplated by the APA and other Transaction Documents; or (c) the assumption, payment, guaranty, or other satisfaction of any obligation or liability of the Debtors by the Buyer or any other person or entity.

20.     17. Any provision in any Assigned Permit that purports to require or impose any fees, penalties, fines, charges, deposits, or other payments, collateral, security, or guaranties as a result of or as a condition of the assignment of such Assigned Permit to the Buyer shall have no force and effect with respect to the transactions authorized by this Order, and such provisions are unenforceable under sections 363(l), 365(e)(1), 365(f), and/or 541(c)(1) of the Bankruptcy Code, as applicable.

21.     18. **Assumption and Assignment**. Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing of the Sale, the applicable Debtors' assumption and assignment, to the Buyer, and the Buyer's acceptance of, the Assigned Contracts and Assigned Leases (subject to further Court order with respect to the Nonresidential Real Property Leases described and defined below), on the terms set forth in the APA, is hereby

31

approved, and the requirements of section 365(b)(1) and 365(f)(2) with respect thereto are hereby found and deemed to be satisfied. The Debtors are hereby authorized and, unless the Debtors and the Buyer otherwise agree, directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer, effective upon the Closing Date, the Assigned Contracts and Assigned Leases free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities and as otherwise required pursuant to the APA) and (b) execute and deliver to the Buyer such documents or other instruments as Buyer deems may be necessary to assign and transfer the Assigned Contracts, Assigned Leases, and Assigned Permits to the Buyer.

22.    The foregoing assumption and assignment remains subject to the Court's determination of *the Debtors' Motion for Entry of an Order Authorizing the Assumption of Certain Unexpired Leases of Nonresidential Real Property and Granting Related Relief* [Docket No. 782] (the "**Assumption Motion**") through which the Debtors seek authority to assume, pursuant to section 365 of the Bankruptcy Code, certain unexpired leases of nonresidential real property identified in Schedule 1 attached thereto (the "**Nonresidential Real Property Leases**"). Such Nonresidential Real Property Leases shall only be deemed Assigned Leases that shall be assumed and assigned to the Buyer pursuant to the terms of this Sale Order to the extent the Court grants the relief requested in the Assumption Motion and authorizes the Debtors to assume the Nonresidential Real Property Leases.

23.    19. **Ipso Facto Clauses Ineffective**. With respect to the Assigned Contracts and Assigned Leases, and with respect to the Sale of the Purchased Assets to the Buyer, (a) the Debtors may assume each of the Assigned Contracts and Assigned Leases in accordance with section 365 of the Bankruptcy Code, (b) the Debtors may assign each Assigned Contract or Assigned Lease in

accordance with the APA and sections 363 and 365 of the Bankruptcy Code, and, to the extent

provided in section 365 of the Bankruptcy Code, such assignment may occur notwithstanding and

without giving effect to any provisions in any Assigned Contract or Assigned Lease that prohibit

or condition the assignment of such Assigned Contract or Assigned Lease or allow the party to

such Assigned Contract or Assigned Lease to terminate, recapture, impose any penalty, condition

renewal or extension, or modify any term or condition upon the assignment of such Assigned

Contract or Assigned Lease, which provisions constitute unenforceable anti-assignment or ipso

facto provisions which are void and of no force and effect, (c) all other requirements and conditions

under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and

assignment, as applicable, to the Buyer of each Assigned Contract or Assigned Lease have been

satisfied, and (d) effective upon the Closing Date, the Assigned Contracts and Assigned Leases

shall be transferred and assigned to, and from and following the Closing Date remain in full force

and effect for the benefit of, the Buyer, notwithstanding any provision in any Assigned Contract

or Assigned Lease that prohibits, restricts, or conditions such assignment or transfer and, pursuant

to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability

with respect to the Assigned Contracts and Assigned Leases after such assumption and assignment

to the Buyer, except as provided in the APA. To the extent that any provision in any Assigned

Contract or Assigned Lease (y) prohibits, restricts, or conditions, or purports to prohibit, restrict,

or condition, such assumption and assignment or assignment (including, without limitation, any

"change of control" provision), or (z) is modified, breached, or terminated, or deemed modified,

breached, or terminated by any of the following: (i) the commencement of these Chapter 11 Cases,

(ii) the insolvency or financial condition of any of the Debtors at any time before the closing of

these Chapter 11 Cases, (iii) the Debtors' assumption and/or assignment of such Assigned Contract

33

or Assigned Lease, (iv) a change of control or similar occurrence, or (v) the consummation of the Sale, then such provision shall be deemed modified so as not to entitle the non-Debtor party thereto to prohibit, restrict, or condition such assumption and assignment or assignment, to modify, terminate, or declare a breach or default under such Assigned Contract or Assigned Lease, or to exercise any other default-related rights or remedies with respect thereto. With respect to the Sale of the Purchased Assets to the Buyer, all such provisions constitute unenforceable anti-assignment or ipso facto provisions that are void and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

24. 20. **Assumption and Assignment of Assumed Contracts; Cure**. All defaults or other obligations of the Debtors under the Assigned Contracts and Assigned Leases arising or accruing prior to the Closing Date, or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts and Assigned Leases, shall be cured by the Debtors or the Buyer, as applicable, as set forth in the APA and this Sale Order.

25. 21. All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts and Assigned Leases have been satisfied. Each of the Assigned Contracts and Assigned Leases shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms as of the Closing Date, subject to any amendments or modifications agreed to between a Counterparty to an Assigned Contract and Assigned Lease and the Buyer. Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Assigned Contract or Assigned Lease, and each Assigned Contract or Assigned Lease shall be

fully enforceable by the Buyer in accordance with its respective terms and conditions, except as limited or modified by this Sale Order. To the extent provided in the APA, the Debtors shall cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

26.     22. UponSubject to determination of the amount of the Cure Costs (as may be applicable) and payment of the Cure Costs pursuant to the terms hereof and the APA (in the case of the Buyer, subject to the Cure Cost Cap set forth in the APA), and the Debtors' assignment of the Assigned Contracts and Assigned Leases to the Buyer under the provisions of this Sale Order, no default or other obligations arising prior to the Closing Date shall exist under any Assigned Contract or Assigned Lease, and each Counterparty to an Assigned Contract or Assigned Lease is forever barred, estopped, and permanently enjoined from (a) declaring a default by the Debtors or the Buyer under such Assigned Contract or Assigned Lease based on acts or occurrences arising prior to or existing as of the Closing Date, (b) raising or asserting against the Debtors or the Buyer, or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts and Assigned Leases, or (c) taking any other action against the Buyer as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract or Assigned Lease. Each counterparty to an Assigned Contract or Assigned Lease hereby is also forever barred, estopped, and permanently enjoined from (y) asserting against the Debtors or the Buyer, or the property of any of them, any default or Claim arising out of any indemnity or other obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date and (z) imposing or charging against Buyer or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to Buyer of such Assigned Contract or Assigned Lease.

27.   ~~23.~~ Subject to the terms and conditions of the APA, and upon the Closing Date, the Debtors and/or the Buyer (as applicable) shall have to the extent necessary (a) cured or provided adequate assurance of cure of, any default existing prior to the date hereof under the Assigned Contracts and Assigned Leases, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code and (b) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under the Assigned Contracts and Assigned Leases, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(B) of the Bankruptcy Code. The Debtors' and/or the Buyer's (as applicable) obligations to pay the Cure Costs under the APA and the Buyer's agreement to perform the obligations under the Assigned Contracts and Assigned Leases in accordance with the terms of the APA shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the Counterparties.

28.   ~~24.~~ To the furthest extent permitted by law, any party that may have had the right to consent to the assumption or assignment of an Assigned Contract or Assigned Lease is deemed to have consented to such assumption and assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to timely object to the assumption or assignment of such Assigned Contract or Assigned Lease in accordance with the Bidding Procedures Order, and the Buyer shall be deemed to have demonstrated adequate assurance of future performance with respect to such Assigned Contract or Assigned Lease pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Any Counterparty to an Assigned Contract or Assigned Lease who has not timely filed and served an objection shall be barred from objecting, or asserting monetary or ~~non- monetary~~non-monetary defaults, with respect to any such applicable Assigned

36

Contract or Assigned Lease, and such applicable agreement, if designated as an Assigned Contract or Assigned Lease in accordance with the terms of the APA, shall be deemed assumed by the Debtors and assigned to the Buyer on the Closing Date pursuant to this Sale Order.

29. 25. To the extent a Counterparty to an Assigned Contract or Assigned Lease failed to timely object to the Cure Costs for any applicable Assigned Contract or Assigned Lease in accordance with the Bidding Procedures Order, such Cure Costs shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time.

30. 26. The requirements of Bankruptcy Rule 6006(f)(6) are hereby waived, for cause shown, with respect to the Motion and the relief requested therein.

31. 27. Upon and as of the Closing Date, the Buyer shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assigned Contract or Assigned Lease and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts and Assigned Leases (except as may be required by the APA).

32. 28. The Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Purchased Assets.

33. 29. From the date of the entry of this Sale Order, the Debtors may, with the consent of the Buyer, settle objections to assumption and assignment of any applicable Assigned Contract or Assigned Lease, including to proposed Cure Costs, without any further notice to or action by any party or order of this Court (including by paying any agreed Cure Cost); *provided that* notice

37

to and consent of the Buyer shall be required to the extent that the Buyer is liable for such Cure Costs pursuant to the APA or the Buyer's rights and remedies are otherwise altered in any way by the resolution. Unless this Court orders otherwise, contemporaneously with the resolution of any such objection, the executory contract or unexpired lease underlying such objection shall be deemed an Assigned Contract or Assigned Lease without the necessity of obtaining any further order of this Court.

34.     30. Notwithstanding anything to the contrary herein (but subject to paragraph 3535 of this Sale Order), no executory contract or unexpired lease as to which a Counterparty to an Assigned Contract or Assigned Lease has timely filed and served an objection shall be considered an Assigned Contract or Assigned Lease under this Sale Order unless and until such timely objection to the assumption and assignment of such executory contract or unexpired lease has been resolved or overruled.

35.     31. If a non-Debtor party to an Assigned Contract or Assigned Lease has objected solely to the proposed Cure Cost, the Debtors or the Buyer, as applicable, may pay the undisputed portion of such Cure Cost and place the disputed amount in a segregated account pending further order of the Court or mutual agreement of the parties. So long as such disputed amounts are held in such segregated account, the Debtors may, without delay, assume and assign such Assigned Contract or Assigned Lease to the applicable assignee in accordance with this Sale Order. Under such circumstances, the objecting non-Debtor counterparty'sCounterparty's recourse shall be limited to the funds held in such segregated account on account of such Assigned Contract or Assigned Lease. In the event of a dispute as of, or after, the Closing Date regarding assumption and assignment or cure of any Assigned Contract or Assigned Lease, any applicable cure payments that are outstanding suchwith respect to such Assigned Contract or Assigned Lease shall be made

38

following the entry of an order resolving any such dispute (or upon the consensual resolution of such dispute as may be agreed by the Debtors or the Buyer, as applicable, and such non-Debtor ~~counterparty~~Counterparty).

36. ~~32.~~ Nothing in this Sale Order, the Motion, or any other notice or any other document is or shall be deemed an admission by the Debtors or the Buyer that any contract is an executory contract or must be assumed and assigned pursuant to the APA or in order to consummate the Sale.

## IV. No Successor Liability; Prohibition of Actions Against the Buyer

37. ~~33.~~ **No Continuity**. The Buyer is not a "successor" to, a mere continuation of, or an alter ego of any of the Debtors or their estates, and there is no continuity of enterprise or common identity between the Buyer and the Debtors by reason of any theory of law or equity. Neither the purchase of the Purchased Assets by the Buyer, nor the fact that the Buyer is using any of the Purchased Assets previously operated by the Debtors, will cause the Buyer to be deemed a successor to, combination of, or alter ego of, in any respect, any of the Debtors or the Debtors' businesses, or incur any liability derived therefrom within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, antitrust, environmental, labor law (including any WARN Act), employment or benefits law, de facto merger, business continuation, substantial continuity, successor, vicarious, alter ego, derivative, transferee, veil piercing, escheat, continuity of enterprise, mere continuation, product line, or other law, rule, regulation (including filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine, whether now known or unknown, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether matured or unmatured, whether

contingent or noncontingent, whether liquidated or unliquidated, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise, including liabilities on account of warranties, intercompany loans, and receivables among the Debtors, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the cancellation of debt of the Debtors or their Affiliates, or in any way relating to the operation of any of the Purchased Assets or ratings experience of the Debtors prior to the Closing Date, in each case other than the Permitted Encumbrances and Assumed Liabilities.

38.   34. Except with respect to Permitted Encumbrances and Assumed Liabilities, the Buyer shall not have, assume, or be deemed to assume, or in any way be responsible for, any liability or obligation of any of the Debtors or their estates, or any of the Debtors' predecessors or Affiliates with respect to the Purchased Assets or otherwise. Without limiting the generality of the foregoing, and except as otherwise specifically agreed in the APA, the Buyer shall not have any liability, responsibility, or obligation for any Interests of the Debtors or their estates, including any claims, liabilities, or other obligations related to the Purchased Assets, including, for the avoidance of doubt, and without limiting the generality of the foregoing, any Successor or Other Liabilities, which may become due or owing (a) prior to the Closing Date or (b) from and after the Closing Date but which arise out of or relate to any act, omission, circumstance, breach, default, or other event occurring prior to the Closing Date.

39.   35. Except with respect to Permitted Encumbrances and Assumed Liabilities, or as otherwise specifically set forth in the APA, all Persons (including all debt holders, equity holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, contract counterparties, customers, landlords, licensors, and employees), and other holders of Interests against or in any of the Debtors or any portion of the Purchased Assets (whether legal or equitable,

40

secured or unsecured, matured or unmatured, known or unknown, contingent or noncontingent, liquidated or unliquidated, senior or subordinate, asserted or unasserted, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the Closing, or the transfer of the Purchased Assets to the Buyer (including, without limitation, any Successor or Other Liabilities or rights or claims based thereon) shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing against the Buyer, or their respective assets or properties, including, without limitation, the Purchased Assets, the Interests of any kind or nature whatsoever such Person had, has, or may have against or in the Debtors, their estates, officers, directors, shareholders, or the Purchased Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding) against the Buyer, or their respective assets or properties, including the Purchased Assets; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, or their respective assets or properties, including the Purchased Assets; (c) creating, perfecting, or enforcing any Interest against the Buyer, or their respective assets or properties, including the Purchased Assets; (d) asserting any setoff, or right of subrogation, of any kind against the Buyer or its respective assets or properties, including the Purchased Assets; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (f) to the extent prohibited by section 525 of the Bankruptcy Code, revoking, terminating, or

41

failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

40.    36. Except with respect to Permitted Encumbrances and Assumed Liabilities, or as provided in the APA, and without limiting other applicable provisions of this Sale Order, the Buyer is not, by virtue of the consummation of the Sale, assuming, nor shall it be liable or responsible for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed, or otherwise) in any way whatsoever relating to or arising from the Debtors, the Purchased Assets, or the Debtors' operation of their businesses or use of the Purchased Assets on or prior to the Closing Date or any such liabilities, debts, commitments, or obligations that in any way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid, discharged, or performed on or prior to the Closing Date (in each case, including, without limitation, Successor or Other Liabilities and any liabilities that result from, relate to, or arise out of tort or product liability claims), or any liabilities calculable by reference to the Debtors or their assets or operations (including by reference to the Debtors' experience or similar ratings), or relating to continuing conditions existing on or prior to the Closing Date, including with respect to any of the Debtors' predecessors or Affiliates, which liabilities, debts, commitments, and obligations are hereby extinguished insofar as they may give rise to Successor or Other LiabilityLiabilities.

41.    Notwithstanding, and with all rights specifically reserved by the Buyer, the Debtors and any interested party, nothing herein is intended to, nor shall it be deemed to, preclude the National Labor Relations Board or any court from finding that any purchaser of the Debtors' assets is subject to a successor collective bargaining obligation under the National Labor Relations Act

in accordance with *NLRB v. Burns International Security Services*, 406 U.S. 272 (1972) and applicable law.

42.    ~~37.~~ None of the Buyer nor any of its affiliates, equityholders, successors, and assigns, nor any of their professionals shall have, incur any liability to, or be subject to any action by, the Debtors or any of their predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the APA and other Transaction Documents and the entry into and consummation of the Sale, except as expressly provided in the APA and this Sale Order. Neither the Debtors, nor any of their respective affiliates, equityholders, successors, and assigns, nor any of their professionals shall have, incur any liability to, or be subject to any action by, the Buyer arising out of the negotiation, investigation, preparation, execution, or delivery of the APA and other Transaction Documents and the entry into and consummation of the Sale, except as expressly provided in the APA and this Sale Order.

## V.    Other Provisions

43.    **Texts Taxing Authorities**. Notwithstanding anything to the contrary in this Sale Order or the APA, any ad valorem taxes owed to the Texas Taxing Authorities[3] for tax year 2026 that are secured by property being acquired by the Buyer (the "**2026 Ad Valorem Tax Claims**") shall be paid and allocated between the Debtors and Buyer as set forth in the APA. Subject to any claims and defenses of the Debtors or Buyer, the Texas Taxing Authorities shall retain their respective liens arising from the 2026 Ad Valorem Tax Claims, if any, against the Purchased Assets, as applicable, until paid in full, including any applicable penalties or interest. The tax liens

---

[3] The "Texas Taxing Authorities" are Bexar County, City of Carrollton, Dallas County, Ector County Appraisal District, City of El Paso, Ellis County, Fannin County Appraisal District, Fort Bend County, City of Frisco, Galveston County, Harris County, Hidalgo County, Jefferson County, Kaufman County, Lewisville Independent School District, City of McAllen, McClennan County, Montgomery County, Nueces County, Parker County Appraisal District, Polk County, City of Prosper, Prosper Independent School District, Rockwall County Appraisal District, San Marcos Consolidated Independent School District, Shelby County, Smith County, Tarrant County, Tom Green County Appraisal District, Upshur County, and Van Zandt County Appraisal District.

of the Texas Taxing Authorities for tax year 2025 and prior years, if any, shall attach to the sale proceeds of any property that is the subject of such liens. All parties' rights to object to the priority, validity, amount, and extent of any tax claims of the Texas Taxing Authorities and the asserted liens in connection therewith, are fully preserved.

44.      **Reservation of Rights of the United States**. Notwithstanding any provision to the contrary in this Sale Order, the Transaction Documents, or any other document related to the Sale, nothing shall (a) release, nullify, preclude, or enjoin the enforcement of any police or regulatory power or any liability that any entity would be subject to as the owner, lessor, lessee, or operator of property that such entity owns, operates, or leases after the date of entry of this Sale Order; (b) affect the setoff or recoupment rights of the United States; (c) confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (d) authorize the assumption, assignment, sale, or other transfer of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) agreements, (v) awards, (vi) task orders, (vii) property, (viii) intellectual property, (ix) patents, (x) leases, (xi) certifications, (xii) applications, (xiii) registrations, (xiv) billing numbers, (xv) national provider identifiers, (xvi) provider transaction access numbers, (xvii) licenses, (xviii) permits, (xix) covenants, (xx) inventory, (xxi) guarantees, (xxii) indemnifications, (xxiii) data, (xxiv) records, or any other interests belonging to the United States (collectively, the "**Federal Interests**") without compliance by the Debtors and Buyer with all terms of the Federal Interests and with all applicable non-bankruptcy law; (e) be interpreted to set cure amounts or to require the United States to novate, approve, or otherwise consent to the sale, assumption, assignment, or transfer of any Federal Interests; (f) waive, alter, or otherwise limit the United States' property rights; or (g) expand the scope of 11 U.S.C. § 525. In the event of an inconsistency or conflict between the provisions of

44

the Transaction Documents and any provision of this Sale Order, as to the United States, the provisions of this Sale Order and federal law shall govern.

45.   38. **Good Faith of Buyer**. The transactions contemplated by the APA and this Sale Order are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not alter, affect, limit, or otherwise impair the validity of the Sale (including the assumption, assignment, and/or transfer of the Assigned Contracts and Assigned Leases), unless such authorization and consummation of the Sale are duly stayed pending such appeal. The Buyer is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code. As a good faith purchaser of the Purchased Assets, the Buyer has not entered into any agreement with any other potential bidders and has not colluded with any potential or actual bidders, and therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided, pursuant to section 363(n) of the Bankruptcy Code.

39. **Back-Up Bidder**. [BACK-UP BIDDER] is hereby approved as the Back-Up Bidder and [BACK-UP BIDDER]'s bid is hereby approved and authorized as the Back-Up Bid. Pursuant to the Bidding Procedures Order, the Back-Up Bidder is directed to keep its bid open for acceptance by the Debtors until the date which is the earlier of (i) sixty (60) days following the entry of this Sale Order, (ii) consummation of the Transaction(s) with the Buyer, and (iii) the release of such Back-Up Bid in writing by the Debtors (in consultation with the Consultation Parties) (the "**Back-Up Termination Date**"). If the APA of the Successful Bidder terminates in

~~accordance with its terms, so long as the Back-Up Termination Date has not occurred, the Debtors, in consultation with the Consultation Parties, are authorized to consummate the Transaction(s) with the Back-Up Bidder without further order of this Court, upon twenty-four (24) hours' advance notice filed with the Court, and the Back-Up Bidder and the Back-Up Bid shall be entitled to all of the findings and protections of this Sale Order, in all respects, provided to the Buyer. Notwithstanding the foregoing, affected landlords or contract counterparties shall have seven (7) days from the filing of a notice of intent to proceed with the Back-Up Bidder to object to the approval of the assumption and assignment of any contract or lease by the Back-Up Bidder.~~

46. ~~40.~~ **Bulk Sales, Bulk Transfer, or Similar Laws**. No "bulk sales," "bulk transfer," or any similar law (including without limitation those relating to taxes) of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including without limitation the APA and Sale.

47. ~~41.~~ **Bankruptcy Rules Satisfied or Waived**. This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  For cause shown, pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply. Time is of the essence in closing the Sale. Accordingly, the Debtors and Buyer are authorized and empowered to close the Sale immediately upon entry of this Sale Order.

48. ~~42.~~ **Failure to Specify Provisions**. The failure to include or specifically reference any particular provision of the APA and other Transaction Documents in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the APA and other Transaction Documents be authorized and approved in their entirety.

46

49.     43. **Conflicts**. To the extent that this Sale Order is inconsistent with the Motion, the terms of this Sale Order shall control and govern. To the extent that there are any inconsistencies between the terms of this Sale Order, on the one hand, and the APA and other Transaction Documents, on the other hand, the terms of this Sale Order shall control and govern. To the extent that any plan of reorganization or liquidation, or any order of any type or kind entered in these Chapter 11 Cases or any subsequent chapter 7 case into which these Chapter 11 Cases may be converted, conflicts with or derogates from the terms of the APA (or any ancillary agreements or instruments delivered pursuant thereto) or this Sale Order, the terms of the APA (or any ancillary agreements or instruments delivered pursuant thereto) and this Sale Order shall control and govern to the extent of any such conflict or derogation. Unless otherwise provided herein, to the extent this Sale Order is inconsistent with the Bidding Procedures Order or the terms of the APA, this Sale Order shall govern.

50.     44. **Transaction Document Modifications**. The APA and other Transaction Documents may be modified, amended, or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof without further notice to or order of this Court, so long as any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates and does not otherwise conflict with this Sale Order; *provided, however*, that notice shall be provided to the Committee.

51.     45. **Automatic Stay**. The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted to the extent necessary, without the need for further order of this Court, to allow the Buyer and the Debtors to deliver any notice provided for in the APA and to allow the Buyer and the Debtors to take any and all actions permitted under the APA and other Transaction Documents.

52.    46. **Further Assurances**. From time to time, as and when requested by the other, the Debtors and the Buyer, as the case may be, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including, such actions as may be necessary to vest, perfect or confirm, record, or otherwise, in the Buyer its right, title, and interest in and to the Purchased Assets and the Assigned Contracts and Assigned Leases, subject to the provisions of the APA.

53.    47. **Retention of Jurisdiction**. This Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the APA and other Transaction Documents, and any amendments thereto and any waivers and consents given thereunder, and to adjudicate, if necessary, any and all disputes concerning or in any way relating to the Sale, including retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Buyer, (b) interpret, implement, and enforce the provisions of this Sale Order, including the injunctions and limitations of liability set forth in this Sale Order, (c) decide any disputes concerning this Sale Order and the APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the APA and this Sale Order including the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Purchased Assets and any Assigned Contract or Assigned Lease and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Interests (other than the Permitted Encumbrances and the Assumed Liabilities) and the resolution of the Preserved Objections, and (d) enter any orders under sections 105, 363, and 365 of the Bankruptcy Code, or otherwise, with respect to the Purchased Assets and the Assigned Contracts and Assigned Leases.

# # # END OF ORDER # # #

Order submitted by:

Charles A. Beckham, Jr. (TX #02016600)
Ian T. Peck (TX #24013306)
Martha Wyrick (TX #24101606)
**HAYNES AND BOONE, LLP**
2801 N. Harwood Street
Suite 2300
Dallas, TX 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email: charles.beckham@haynesboone.com
        ian.peck@haynesboone.com
        martha.wyrick@haynesboone.com


Vincent E. Lazar (admitted *pro hac vice*)
Derek L. Wright (admitted *pro hac vice*)
Angela M. Allen (admitted *pro hac vice*)
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Email: vlazar@jenner.com
        dwright@jenner.com
        aallen@jenner.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**APA**

## Exhibit B

**Preserved Objections**

Case 25-80486-sgj11   Doc 831   Filed 05/13/26   Entered 05/13/26 11:25:26   Desc
Main Document      Page 114 of 115

## Preserved Objections

- Chicago Industrial Portfolio Owner LLC
- Plymouth International Spellmire OH LLC

| Summary report: Litera Compare for Word 11.16.0.74 Document comparison done on 5/13/2026 10:21:19 AM | |
| --- | --- |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4897-0474-2315/1/Omnicare - Proposed Sale Order - DO NOT USE FOR REDLINE ONLY.docx | |
| **Modified DMS:** nd://4926-3259-6889/10/Omnicare - Proposed Sale Order.docx | |
| **Changes:** | |
| Add | 131 |
| Delete | 105 |
| Move From | 2 |
| Move To | 2 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 240 |