**JENNER & BLOCK LLP**
Vincent E. Lazar (admitted pro hac vice)
Derek L. Wright (admitted pro hac vice)
Angela M. Allen (admitted pro hac vice)
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Email: vlazar@jenner.com
    dwright@jenner.com
    aallen@jenner.com

**HAYNES AND BOONE, LLP**
Charles A. Beckham, Jr. (TX #02016600)
Ian T. Peck (TX #24013306)
Martha Wyrick (TX #24101606)
2801 N. Harwood Street, Ste. 2300
Dallas, TX 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email: charles.beckham@haynesboone.com
    ian.peck@haynesboone.com
    martha.wyrick@haynesboone.com

*Counsel for the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| OMNICARE, LLC, *et al.*,[1] | Case No. 25-80486 (SGJ) |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9019 TO APPROVE COMPROMISES WITH THE UNITED STATES
DEPARTMENT OF JUSTICE, CVS HEALTH CORPORATION, AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

---

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txnb.uscourts.gov/ within twenty-four (24) days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk and filed on the docket no more than twenty-four (24) days after the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

[1] The last four digits of Omnicare, LLC's federal tax identification number are 1351. There are 110 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Omnicare. The location of Omnicare, LLC's corporate headquarters and the Debtors' service address is One CVS Drive, Mail Code 1160, Woonsocket, RI 02895.

> **A hearing will be conducted on this matter on August 12, 2026, at 9:30 a.m. (prevailing Central Time) in Courtroom #1, Floor 14, Earle Cabell Federal Building, 1100 Commerce Street, Dallas, Texas 75242. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 650.479.3207. The meeting code is 2304 154 2638. Video communication will be by use of the Cisco WebEx platform. Connect via the Cisco WebEx application or click the link on Judge Jernigan's home page. Click the settings icon in the upper right corner and enter your name under the personal information setting. WebEx hearing instructions may be obtained from Judge Jernigan's hearing/calendar site: https://www.txnb.uscourts.gov/judges-info/hearing-dates/chief-judge-jernigans-hearing-dates.**
>
> **Hearing appearances must be made electronically in advance of electronic hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jernigan's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Omnicare, LLC ("**Omnicare**") and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**") hereby file this motion (the "**Motion**") seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), pursuant to 11 U.S.C. §§ 105(a) and 363(b), and Federal Rule of Bankruptcy Procedure 9019(a), approving proposed compromises (the "**Agreements**") as between (a) the Debtors, the U.S. Department of Justice ("**DOJ**"), and CVS Health Corporation ("**CVS**"), which is memorialized in the agreement attached to the Proposed Order as **Exhibit 1** (the "**DOJ Agreement**"); and (b) the Debtors, the Official Committee of Unsecured Creditors (the "**Committee**"), and CVS, which is memorialized in the agreement attached to the Proposed Order as **Exhibit 2** (the "**CVS Estate Settlement**"). In support of the Motion, the Debtors submit the *Declaration of Paul Rundell in Support of the Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 to Approve Compromises with the United States Department of Justice, CVS Health Corp., and the Official*

*Committee of Unsecured Creditors*, attached hereto as **Exhibit B** (the "**Rundell Declaration**"). In support of the relief requested herein, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors have reached two interrelated Agreements that comprehensively resolve all claims among the Debtors, CVS and DOJ arising from the $948,778,444.10 judgment (the "**Judgment**") entered in *United States of America et al. ex rel. Uri Bassan v. Omnicare, Inc. et al.,* Case No. 15-cv-4179 (CM) (S.D.N.Y) (the "**FCA Action**"). The Agreements are the product of months of good faith, arms-length negotiations among the Debtors, DOJ, CVS and the Committee.

2.      First, pursuant to the DOJ Agreement, the Debtors, CVS and DOJ have agreed to resolve the Judgment as follows: (1) DOJ will accept a minimum of $440 million in satisfaction of its claims against the Debtors and the CVS Entities (as defined below), comprising (a) an initial payment of $130 million from CVS within 14 days after the effective date of the DOJ Agreement, and (b) no less than $310 million in distributions from the Debtors' estates, provided that if DOJ has not received $310 million in distributions from the Debtors' estates by March 15, 2028, CVS will pay the remaining balance of the $310 million to DOJ no later than March 31, 2028; (2) DOJ's claim will be allowed as a general unsecured claim in its full amount, but DOJ will defer distributions on its claim until all other allowed general unsecured claims are fully paid or reserved for; and (3) the CVS Entities will not receive any distributions on account of their prepetition claims against the Debtors unless the DOJ Claim (as defined below) is paid in full. The DOJ Agreement is contingent upon approval of the CVS Estate Settlement and is expected to take effect upon the closing of the sale of the Debtors' assets previously approved by this Court.

3

3.      Second, the Debtors, the Committee and CVS have entered into the CVS Estate Settlement pursuant to which, in exchange for CVS's performance of its obligations under the DOJ Agreement, the Debtors' estates will release all potential estate claims against the CVS Entities (as defined below). The CVS Estate Settlement is contingent upon approval of the DOJ Agreement and also will become effective upon the closing of the sale of substantially all of the Debtors' assets previously approved by this Court.

4.      Together, the Agreements establish the framework for the Debtors to confirm consensual chapter 11 plans, eliminate the need for protracted and expensive litigation, resolve the treatment of DOJ's and CVS's claims, and provide the best chance that all other general unsecured claims will be paid in full.

5.      The Debtors submit that the Agreements are fair, equitable, and in the best interests of the Debtors, their estates and all parties-in-interest in the chapter 11 cases. Accordingly, the Debtors request that the Court approve the Agreements.

**JURISDICTION AND VENUE**

6.      The United States District Court for the Northern District of Texas (the "**District Court**") has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334. The District Court's jurisdiction has been referred to this Court pursuant to 28 U.S.C. § 157 and the District Court's Miscellaneous Order No. 33, Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 3, 1984. This is a core matter pursuant to 28 U.S.C. § 157(b), which may be heard and finally determined by this Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code; 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rule 9019 of the

4

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 9019-1 of the Bankruptcy Local Rules for the Northern District of Texas (the "**Local Rules**"), and the *Procedures for Complex Cases in the Northern District of Texas* (the "**Complex Case Procedures**").

8.     The Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

### A. The Chapter 11 Cases.

9.     On September 22, 2025 (the "**Petition Date**"), the Debtors commenced these cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.     The United States Trustee appointed the Committee on October 16, 2025. No trustee or examiner has been requested or appointed in these Chapter 11 Cases.

### B. The FCA Action and Judgment.

11.     In June 2015, Uri Bassan ("**Relator**"), a former Omnicare pharmacist, commenced the FCA Action against Omnicare in the United States District Court for the Southern District of New York. The United States intervened and took control of the lawsuit in December 2019 and added CVS as a defendant.

12.     Following a four-week jury trial in April 2025, a jury returned a verdict against both Omnicare and CVS in the FCA Action. The jury awarded damages against Omnicare in the amount of $135,592,814.70 but none against CVS. Following post-trial briefing, on August 18, 2025, the

5

District Court entered the Judgment in the amount of $948,778,444.10 against Omnicare, consisting of $135,592,814.70 in damages which were trebled under the FCA (a total of $406,778,444.10), plus $542,000,000 in statutory penalties, of which the District Court found CVS to be jointly and severally liable with Omnicare for $164,800,000.

13.     On September 15, 2025, each of Omnicare and CVS appealed the Judgment to the United States Court of Appeals for the Second Circuit. On November 13, 2025, the Court entered the *Stipulation and Agreed Order Regarding the Automatic Stay* [Docket No. 310], which modified the automatic stay (to the extent it applied to the appeal) to permit the appeal to proceed. While the appeals remain pending, the Second Circuit Court stayed the appeals pending negotiation and approval of the DOJ Agreement.

14.     On March 20, 2026, DOJ filed a proof of claim in Omnicare's chapter 11 case in the amount of $952,717,824.19, which has been assigned Claim No. 419 (the "**DOJ Claim**").

**C. The Asset Sale.**

15.     On May 13, 2026, the Court entered an order approving the sale of substantially all of the Debtors' assets (the "**Asset Sale**") pursuant to an asset purchase agreement (the "**APA**") with GenieRx Holdings LLC ("**GenieRx**"), under which GenieRx agreed to acquire substantially all of the Debtors' assets in exchange for $250,000,000 in cash consideration, plus the assumption of (i) unpaid payroll liabilities accrued with respect to the payroll period ending after the closing date; (ii) unpaid paid time off benefit liabilities up to $6,000,000; and (iii) other assumed liabilities up to $30,000,000 [Docket No. 835] (the "**Sale Order**").

16.     The Sale Order states that "the Debtors and the Buyer may, at their option, mutually agree, and are hereby authorized (but not required), to modify the APA to provide for the sale or transfer of the equity interests of one or more Subsidiaries that are Asset Sellers" on the terms and

6

conditions of the Sale Order (the "**Potential Equity Transaction**"). Sale Order ¶ 7. The Potential Equity Transaction gives GenieRx and the Debtors (subject to, *inter alia*, providing notice to the Committee) the flexibility to pivot to an equity transaction for certain Debtors as needed due to the extensive permitting and licensing that is associated with the Debtors' businesses. The Debtors and GenieRx are currently evaluating whether one or more of the Debtors (other than Omnicare LLC) should reorganize under a chapter 11 plan or a Potential Equity Transaction.

### D. The CVS Claim.

17.     On January 30, 2026, CVS Pharmacy, Inc. ("**CVS Pharmacy**") filed a proof of claim against the Debtors in the amount of $54,450,254.00 [Claim No. 332] (the "**Prepetition CVS Claim**") on account of prepetition amounts CVS Pharmacy asserts are owed by the Debtors, of which $12,895,623.00 is asserted to be entitled to administrative status under section 503(b)(9) of the Bankruptcy Code and $4,574,285.69 is asserted to be entitled to priority status under section 507(a) of the Bankruptcy Code. CVS also asserts post-petition claims against the Debtors that arise in the ordinary course of the Debtors' business, including for shared services.

### E. The Compromise.

18.     Since the Petition Date, the Debtors have engaged in extensive good faith negotiations with DOJ, CVS, and the Committee regarding resolution of the Judgment and the DOJ Claim, the ultimate distribution of the Asset Sale proceeds, resolution of potential estate claims against CVS and its non-debtor subsidiaries and affiliates (collectively, the "**CVS Entities**"), and the terms of plans for the Debtors. These negotiations involved multiple parties with potentially divergent interests and required a careful balancing of complex legal and commercial considerations.

19.    After months of intensive negotiations, the parties reached resolution on the key

terms of the Agreements, as follows:

| Term | Summary[2] |
|---|---|
| **Initial CVS Payment** | CVS will pay $130 million to DOJ within 14 days of the DOJ Agreement becoming effective. |
| **Additional Distributions to DOJ** | The Debtors or their successors will distribute no less than $310 million to DOJ on account of the DOJ Claim, after first satisfying all costs of administration, allowed secured and priority claims and other allowed general unsecured claims. If DOJ has not received $310 million by March 15, 2028, or if the Chapter 11 Cases are dismissed, CVS will pay the balance to DOJ no later than March 31, 2028. |
| **Treatment of DOJ Claim** | The DOJ Claim will be treated as an allowed general unsecured claim in its full amount of $952,717,824.19. DOJ has agreed to defer distributions on account of the DOJ Claim until after all other general unsecured claims are paid in full. |
| **Treatment of Prepetition CVS Claim** | No prepetition claims asserted by CVS Entities, including but not limited to all claims asserted in the Prepetition CVS Claim (Claim No. 332), shall be entitled to any distributions unless the DOJ Claim has been paid in full. |
| **Estate Releases** | Upon the effective date of the Agreements, the Debtors' estates shall release all claims against the CVS Entities and the CVS Entities' officers, directors, employees, and agents, to the extent related in any way to the Debtors, and the Debtors' officers, directors, employees, and agents, to the extent related in any way to claims that are being released against the CVS Entities. |
| **DOJ Releases** | Upon receipt of the initial $130 million payment from CVS, plus the receipt of Adequate Security (as defined in the DOJ Agreement), as well as the dismissal of CVS's appeal with prejudice, DOJ shall fully and finally release any and all claims that the United States has asserted, could have asserted, or may assert in the future against the Debtors and the CVS Entities arising from (a) the civil complaint filed in the Bassan Action, (b) the United States' contentions set forth in Section IV.A of the proposed Joint Pretrial Order filed in the Bassan Action (as defined in the DOJ Agreement) at Civil Docket No. 683, and/or (c) the Judgment, including any liabilities thereunder. The foregoing release shall not affect, diminish, or extinguish the DOJ's contractual rights under the DOJ Agreement, |

---

[2] This chart is for summary purposes only and is qualified in its entirety by the Agreements.

8

| Term | Summary[2] |
|---|---|
|  | including the right to receive payments and distributions on the DOJ Claim as provided in the DOJ Agreement. |
| **Dismissal of Appeals** | Following the Effective Date, Omnicare and CVS will dismiss their appeals from the Judgment with prejudice. |
| **Plan Terms** | Any chapter 11 plan shall be consistent with the terms of the Agreements; will include a release of all Chapter 5 claims against any landlord, supplier of goods or services, or trade creditor of the Debtors (to the extent not transferred under the Asset Sale); and shall provide for the appointment of a Plan Administrator or Liquidating Trustee (selected by the Debtors) (subject to the reasonable consent of the Committee and CVS) and a creditor representative appointed by the Committee with consultation rights as to the claims reconciliation process after the Effective Date. |
| **Conditions to Effectiveness** | The effectiveness of the Agreements is conditioned upon: (1) approval of both the DOJ Agreement and the CVS Estate Settlement by final order of the Bankruptcy Court on or before August 15, 2026; (2) the closing of the Asset Sale; and (3) agreement among the Debtors, the Committee, and CVS on go-forward professional fee budgets within 21 days of entering into the CVS Estate Settlement, unless waived by CVS in its sole discretion. |

20.     Based on estimates of the proceeds anticipated to be realized from the Asset Sale, the costs of administration of the Debtors' Estates and any plan, and claims against the Debtors that ultimately will be allowed, the Debtors expect that the Agreements—including most importantly DOJ's agreement to defer distributions on account of the DOJ Claim until after all other general unsecured claims are paid in full, and CVS's agreement to defer all distributions on account of the Prepetition CVS Claim—will result in significant, and very likely 100%, distributions for all other general unsecured creditors.

21.     Notwithstanding anything in the Agreements to the contrary, the Agreements are not intended to release, and the Debtors do not seek authority to release, any obligations arising in the ongoing post-petition, ordinary course of business dealings between the Debtors and the CVS Entities during the Chapter 11 Cases, including, without limitation, any rights to or arising under

the shared services described in the Debtors' First Day Declarations, insurance rights, and any agreements related to the foregoing, all of which shall continue in accordance with their terms. In addition, although all distributions on account of the Prepetition CVS Claim are being deferred until the DOJ Claim has been paid in full, the CVS Entities shall continue to be entitled to assert administrative claims for goods and services (including shared services) being provided to the Debtors post-petition in the ordinary course of business.

**F. Potential Claims Against CVS Entities.**

22.     Following the commencement of these Chapter 11 Cases, and at the direction of Omnicare's independent director, the Debtors' professionals conducted an investigation into potential claims that the Debtors' estates might hold against CVS Entities arising from the conduct at issue in the FCA Action, the Debtors' prepetition relationships with the CVS Entities, transfers made by the Debtors to CVS Entities, and CVS's role in the events leading to these Chapter 11 Cases. That investigation included an extensive review of the Debtors' books and records, analysis of intercompany agreements and arrangements, and a review of transactions by and among the Debtors and CVS Entities.

23.     Independently, commencing shortly after its appointment on October 16, 2025, the Committee conducted its own investigation into potential estate claims against the CVS Entities.

24.     As part of their investigations, professionals for the Debtors and Committee conferred with each other on issues relevant to their evaluations of the potential claims, and considered documents and information provided by CVS Entities at the Debtors' and Committee's requests.

25.     The Debtors and Committee each independently concluded that the estates may hold colorable claims against CVS Entities, including potential constructive fraudulent transfer

claims arising from a 2023 Omnicare member distribution to the CVS Entities in the amount of $660 million. CVS strongly disputes that the 2023 transaction is avoidable on any basis, asserts (among other things) that Omnicare remained solvent by over $200 million following the 2023 distribution, and disputes the viability of all potential claims against the CVS Entities.

26. The Debtors have evaluated the proposed Agreements, including the proposed releases of claims against the CVS Entities in the CVS Estate Settlement. The Debtors, acting through their independent director and with the advice and input of the Debtors' professionals, determined that the significant consideration and benefits to be provided by CVS under the Agreements represented a tangible outcome that is likely to be materially superior to litigating the estate's potential claims against CVS Entities, taking into account the substantial legal and factual defenses available to CVS Entities, the cost and duration of any litigation, and the attendant risks and uncertainties of any litigation. The Debtors therefore agreed to enter into the Agreements, subject to this Court's approval.

## RELIEF REQUESTED

27. By this Motion, the Debtors respectfully request entry of the Proposed Order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a), authorizing and approving the Agreements.

## BASIS FOR RELIEF REQUESTED

28. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). A bankruptcy court may approve a settlement that is "fair and equitable and in the best interest of the estate." *In re Age Refining, Inc.*, 801 F.3d 530, 540 (5th Cir. 2015) (quoting *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995)).

29.     In deciding whether the settlement of a controversy is "fair and equitable," courts apply a balancing test "with a focus on comparing the terms of the compromise with the likely rewards of litigation." *In re Age Ref. Inc.*, 801 F.3d at 540. The test includes consideration of: (i) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (ii) the complexity and likely duration of the litigation and any attendant expenses, inconvenience and delay; and (iii) all other factors bearing on the wisdom of the compromise. *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355-56 (5th Cir. 1997); *In re Heritage Org., L.L.C.*, 375 B.R. 230, 259 (Bankr. N.D. Tex. 2007).

30.     With respect to the third prong of the balancing test, courts have considered "(i) the best interests of the creditors, with proper deference to their reasonable views; and (ii) the extent to which the settlement is truly the product of arms-length bargaining, and not fraud or collusion." *In re Age Ref.*, 801 F.3d at 540.

31.     To evaluate the probability of success in the litigation, "it is unnecessary for the Court to conduct a mini-trial before approving a settlement." *In re Heritage Org.*, 375 B.R. at 260. Instead, the Court need only make itself aware of the relevant facts and law so that it may make an informed and intelligent decision. *In re Cajun Elec.*, 119 F.3d at 356. Here, all factors weigh in favor of approving the Agreements.

**A. Probability of Success and Uncertainty in Fact and Law**

32.     The Agreements resolve multiple areas of significant legal and factual uncertainty that would otherwise be the subject of protracted and expensive litigation.

33.     *First*, absent the Agreements, the parties would face substantial uncertainty regarding both the outcome of Omnicare's pending appeal of the Judgment and the treatment and priority of the DOJ Claim in the Chapter 11 Cases. The DOJ Agreement eliminates this uncertainty

by providing clear agreement on the treatment of the DOJ Claim as a general unsecured claim with deferred distributions until all other general unsecured claims are paid in full.

34.      *Second*, with respect to the CVS Estate Settlement, the Debtors and the Committee each investigated the claims that the Debtors' estates could potentially assert against the CVS Entities related to the conduct giving rise to the Judgment, the prepetition intercompany transactions between the Debtors and CVS Entities, and the Debtors' relationships with CVS Entities more generally. The Debtors evaluated whether the relevant facts might support potential fraudulent transfer claims, preference claims, breach of fiduciary duty claims, or claims for contribution or indemnification against the CVS Entities, and concluded that any such claims would face substantial defenses and require extensive investigation, discovery, and litigation, with the likelihood of success on any such claims uncertain. By releasing these potential claims in exchange for CVS's substantial commitments under the Agreements (including the $130 million payment to DOJ, the deferral of all distributions on account of all prepetition claims of the CVS Entities, and CVS's agreement to pay up to an additional $310 million to DOJ if DOJ does not receive $310 million in distributions from the estates – all in exchange for which DOJ is agreeing to defer distributions on the otherwise highly-dilutive DOJ Claim until after all other general unsecured claims have been paid in full), the Debtors obtain significant tangible value without the risk and expense of litigation.

35.      In short, the Agreements likely result in a 100% payout to general unsecured creditors, and a substantial (and agreed) minimum distribution to DOJ. This is an extraordinary result for these cases. The Debtors believe it is unlikely that the Debtors' estates could achieve more favorable recoveries if potential claims against the CVS Entities were instead litigated.

### B. Complexity, Duration, and Expense of Litigation

36.    The litigation that the Agreements avoid would be complex, protracted, and expensive. Disputes over the treatment of the DOJ Claim would likely involve fact-intensive and potentially novel legal issues, extensive briefing, and evidentiary presentations. The litigation of estate claims against the CVS Entities would similarly require substantial additional investigation, motion practice, document discovery, depositions, expert testimony, and potentially lengthy trials.

37.    Litigation could easily extend these Chapter 11 Cases or delay distributions to creditors under a chapter 11 plan by many months or even years, with attendant expense and delay. The expenses associated with this litigation would likely involve tens of millions of dollars in professional fees, and those expenses would also impact the funds available for distribution to creditors. The Agreements eliminate these expenses, provide certainty of recovery, and allow the Debtors to focus their resources on the sale closing, a consensual plan process, and efficient claims reconciliation.

### C. Additional Factors Bearing on the Agreements

38.    Several additional factors support approving the Agreements. Most significantly, the Agreements provide that general unsecured creditors must be paid in full from estate assets before any distribution is made to DOJ on its substantial claim. DOJ's agreement to defer distributions on the DOJ Claim until all other general unsecured claims are paid in full dramatically improves the recovery prospects for general unsecured claimants.

39.    Additionally, the Committee, which has a fiduciary duty to represent the interests of all unsecured creditors, supports approval of the Agreements. The Committee's support following a thorough investigation and significant negotiation provides strong evidence that the Agreements serve the estates and creditors' best interests.

40.     The Agreements are the product of extensive, good faith, arms-length negotiations among sophisticated parties with experienced counsel. Each party had divergent interests and negotiated vigorously to protect its position. The resulting agreements represent carefully balanced compromises that provide meaningful value and benefits to all constituencies. The Agreements were negotiated over months of intensive discussions and reflect legitimate compromises of the parties' respective positions, and there is no suggestion of fraud, collusion, or overreaching in the negotiation process.

41.     The Agreements also provide critical benefits for the Debtors' efforts to close the Asset Sale with GenieRx and the prospect of largely consensual chapter 11 plans. The Agreements enhance the sale closing process by providing clarity regarding operational continuity and stakeholder alignment, incentivizing all parties to reduce go-forward administrative expenses, streamlining the bankruptcy process, and maximizing the value realized from the Asset Sale.

42.     Equally important, the fact that both DOJ and the Committee have agreed to support the Debtors' restructuring framework sends a powerful signal to all stakeholders. Parties can proceed with confidence that the major constituencies are aligned, that the path to plan confirmation is clear, and that the closing will not be delayed or derailed by stakeholder disputes. This alignment reduces any perceived execution risk.

43.     By establishing a clear framework for the distribution of sale proceeds and the treatment of remaining claims, the Agreements enable the Debtors to proceed directly to plan confirmation without the delay, expense, and uncertainty of contested litigation over the DOJ Claim and potential estate claims against the CVS Entities. The resulting efficiencies will directly benefit general unsecured creditors—which have an excellent chance of being paid in full—by preserving estate resources that would otherwise be consumed by protracted litigation.

44.     For all the foregoing reasons, the Agreements constitute a reasonable exercise of the Debtors' business judgment, represent fair and equitable resolutions of complex disputes, and are in the best interests of the Debtors' estates and creditors. Accordingly, the Debtors respectfully submit that the Court should approve the Agreements pursuant to Bankruptcy Rule 9019.

## NOTICE

45.     Notice of this Motion will be provided to: (a) the U.S. Trustee for the Northern District of Texas; (b) counsel to the Committee; (c) the United States Attorney's Office for the Southern District of New York; (d) the United States Attorney's Office for the Northern District of Texas; (e) CVS and its counsel; (f) counsel to JMB Capital Partners Lending, LLC; (g) counsel to the Relator; and (h) all parties on the Complex Service List. A copy of this Motion is also available on the website maintained by the Debtors' claims and noticing agent, Stretto, Inc., at https://cases.stretto.com/Omnicare.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) grant the Motion; (ii) approve each of the Agreements in its entirety; (iii) authorize the Debtors to take all actions necessary to implement and consummate the Agreements; and (iv) grant such other and further relief as is just and proper.

Dated: July 1, 2026

**HAYNES AND BOONE, LLP**

*/s/ Ian T. Peck*
Charles A. Beckham, Jr. (TX #02016600)
Ian Peck (TX #24013306)
Martha Wyrick (TX #24101606)
2801 N. Harwood Street, Ste. 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email: charles.beckham@haynesboone.com
    ian.peck@haynesboone.com
    martha.wyrick@haynesboone.com

**JENNER & BLOCK LLP**

Vincent E. Lazar (admitted *pro hac vice*)
Derek L. Wright (admitted *pro hac vice*)
Angela M. Allen (admitted *pro hac vice*)
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Email: vlazar@jenner.com
    dwright@jenner.com
    aallen@jenner.com

*Counsel to the Debtors and
Debtors in Possession*

17

**EXHIBIT A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| OMNICARE, LLC, *et al.*,[1] | ) | Case No. 25-80486 (SGJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER GRANTING DEBTORS' MOTION PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 9019 TO APPROVE COMPROMISES WITH THE
UNITED STATES DEPARTMENT OF JUSTICE, CVS HEALTH CORPORATION, AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

---

[1] The last four digits of Omnicare, LLC's federal tax identification number are 1351. There are 110 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Omnicare. The location of Omnicare, LLC's corporate headquarters and the Debtors' service address is One CVS Drive, Mail Code 1160, Woonsocket, RI 02895.

Upon the *Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 to Approve Compromises with the United States Department of Justice, CVS Health Corporation, and the Official Committee of Unsecured Creditors* (the "**Motion**") filed by Omnicare, LLC, et al. (collectively, the "**Debtors**");[2] and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334, and the Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc, Miscellaneous Order No. 33 (N.D. Tex. August 3, 1984); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion on _____, 2026; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Debtors' entry into the DOJ Agreement (attached hereto as **Exhibit 1**) and the CVS Estate Settlement (attached hereto as **Exhibit 2**), as well as the Debtors' decision to grant the releases of claims provided for therein, constitute valid exercises of the Debtors' reasonable business judgment.

---

[2] Unless otherwise defined, all capitalized terms used herein shall have the meaning ascribed to such terms in the Motion.

3.      The DOJ Agreement, the CVS Estate Settlement, and the transactions contemplated therein, including without limitation, all releases of the CVS Entities, are approved in their entirety and shall be effective in accordance with the terms of the DOJ Agreement and the CVS Estate Settlement, as applicable, as if set forth in full in this Order. For the avoidance of doubt, the Debtors' and the Debtors' estates' releases in favor of the CVS Entities shall only become effective upon the effective date of the CVS Estate Settlement.

4.      Notwithstanding anything in the DOJ Agreement or the CVS Estate Settlement, nothing in the Agreements shall be construed to release (a) any obligations arising in the ongoing post-petition, ordinary course of business dealings between the Debtors and the CVS Entities during these Chapter 11 Cases, including, without limitation, any rights to or arising under the shared services described in the Debtors' First Day Declarations, insurance rights, and any agreements related to the foregoing, all of which shall continue in accordance with their terms, or (b) administrative claims held by the CVS Entities against the Debtors' estates for goods and services (including shared services) being provided to the Debtors post-petition in the ordinary course of business.

5.      The Debtors are authorized to enter into and take any and all actions necessary to implement the terms of the DOJ Agreement and the CVS Estate Settlement and to perform all obligations thereunder on the conditions set forth therein.

6.      Upon the effective date of the DOJ Agreement, the DOJ Claim shall be allowed as a general unsecured claim in its full amount, pursuant to the DOJ Agreement, without the need for the DOJ or the Debtors to take any further action with respect to such claim.

7.      This Order shall be immediately effective and enforceable upon its entry.

3

8.      This Court retains exclusive jurisdiction with respect to all matters arising or related

to the implementation, interpretation, and enforcement of this Order.

### END OF ORDER ###

**Order submitted by:**

Charles A. Beckham, Jr. (TX #02016600)
Ian Peck (TX #24013306)
Martha Wyrick (TX #24101606)
**HAYNES AND BOONE, LLP**
2801 N. Harwood Street
Suite 2300
Dallas, TX 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email:   charles.beckham@haynesboone.com
         ian.peck@haynesboone.com
         martha.wyrick@haynesboone.com

Vincent E. Lazar (admitted *pro hac vice*)
Derek L. Wright (admitted *pro hac vice*)
Angela M. Allen (admitted *pro hac vice*)
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Email:   vlazar@jenner.com
         dwright@jenner.com
         aallen@jenner.com

*Counsel to the Debtors and
Debtors in Possession*

4

## EXHIBIT 1

**DOJ Agreement**

*Execution Version*

# COLLECTION AGREEMENT

**THIS AGREEMENT** is made by and among the United States Department of Justice ("**DOJ**"), acting on behalf of the United States of America, its agencies, officers, agents, employees, and servants (collectively, the "**United States**"); Omnicare, Inc. (n/k/a Omnicare, LLC) ("**Omnicare**"), on behalf of itself and all Debtors (defined below), as debtors and debtors-in-possession; and CVS Health Corporation ("**CVSHC**"), on behalf of itself and all its affiliates and subsidiaries other than the Debtors and any entities owned or controlled by the Debtors (collectively, the "**CVS Entities**," and together with the United States and Omnicare, the "**Parties**"), through their duly authorized representatives.

## RECITALS

A. **WHEREAS,** Omnicare and its affiliates operate a network of pharmacies throughout the United States that provide medication and pharmaceutical services to patients residing in more than 4,000 long-term care facilities, including skilled nursing facilities, assisted-living communities, independent-living communities and institutional facilities.

B. **WHEREAS**, on August 18, 2025, after a four-week trial, the United States District Court for the Southern District of New York entered a judgment (the "**Judgment**") in favor of the United States and against Omnicare and CVSHC. *United States of America et al. ex rel. Uri Bassan v. Omnicare, Inc. et al.*, No. 15-cv-4179 (S.D.N.Y. Aug. 18, 2025) [Civil Docket No. 831] (the "**Bassan Action**"). The Judgment against Omnicare is in the amount of $948,778,444.10, which consists of $406,778,444.10 in damages ($135,592,814.70 trebled), plus $542,000,000 in statutory penalties. *Id.* Pursuant to the Judgment, CVSHC is jointly and severally liable for $164,800,000 of the statutory penalties assessed against Omnicare. *Id.*

C. **WHEREAS**, on September 15, 2025, Omnicare and CVSHC appealed the Judgment to the United States Court of Appeals for the Second Circuit (the "**Second Circuit**"). *See id.* at Civil Docket Nos. 841-42. The appeals are both styled as *United States of America ex rel. Uri Bassan v. Omnicare, Inc.*, 25-2257 (L), 25-2259 (Con) (the "**Appeals**").

D. **WHEREAS**, on September 17, 2025, CVSHC posted a supersedeas bond for approximately 111% of the amount for which it is jointly and severally liable under the Judgment, or $182,928,000 (the "**Bond Amount**"), thus staying execution of the Judgment against it.

E. **WHEREAS**, on September 22, 2025, Omnicare and 110 of its affiliates (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 (the "**Chapter 11 Cases**") of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**"), automatically staying enforcement of the Judgment against Omnicare. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

F. **WHEREAS**, on November 14, 2025, the Bankruptcy Court granted Omnicare relief from the automatic stay for the exclusive purpose of pursuing its Appeal. *See* Bankruptcy Docket No. 310.

G. **WHEREAS,** the Bankruptcy Court authorized the Debtors to incur $110 million in secured, post-petition financing to operate their businesses while they pursue a sale of substantially all of their assets (the "**DIP Loan**"). *See* Bankruptcy Docket Nos. 257, 288.  CVS Pharmacy, Inc., which is one of the CVS Entities, currently provides certain post-petition services to the Debtors' businesses that are entitled to be reimbursed by the DIP Loan. *See id.*

H. **WHEREAS**, on January 20, 2026, Omnicare and CVSHC filed their opening briefs in the Appeals.  On February 11, 2026, the Second Circuit ordered Appellee's brief to be filed on or before April 21, 2026.  On March 16, 2026, the Second Circuit entered orders holding the Appeals in abeyance while the Parties evaluate a potential settlement. Appeal No. 25-2257 at Docket No. 134; Appeal No. 25-2259 at Docket No. 45.

I. **WHEREAS,** on March 20, 2026, DOJ timely filed a proof of claim in the Chapter 11 Cases against Omnicare totaling $952,717,824.19, reflecting the amount of the Judgment, plus post-judgment interest pursuant to 28 U.S.C. § 1961 as of the petition date [Claim No. 419] **(**the **"DOJ Claim")**.

J. **WHEREAS**, on April 1, 2026, the Debtors filed their *Notice of (I) Stalking Horse Bidder; (II) Rescheduled Bid Deadline, Auction, and Sale Hearing Dates; and (III) Amended Deadline to File Assumption and Assignment Notice* designating a stalking horse bidder that has agreed to purchase substantially all of their assets pursuant to that certain agreement attached thereto (the "**Stalking Horse Agreement**").  Bankruptcy Docket No. 720.

K. **WHEREAS,** on May 1, 2026, the Debtors filed their *Notice of Cancellation of Auction and of Successful Bidder*, Bankruptcy Docket No. 799, designating the stalking horse bidder GenieRx Holdings LLC ("**Buyer**") as the Successful Bidder.

L. **WHEREAS**, the Parties have exchanged information, negotiated in good faith and at arm's length, and now desire to resolve all matters regarding collection of the Judgment and DOJ Claim upon the terms and conditions set forth below.

**NOW THEREFORE**, for good and valuable consideration, it is hereby stipulated, consented to and agreed by and between the Parties as follows:

## TERMS AND CONDITIONS

1. **Asset Sale**. This Agreement is premised on a sale of the assets of the Debtors to the Buyer or another buyer on terms generally consistent with the Stalking Horse Agreement pursuant to § 363 of the Bankruptcy Code through these Chapter 11 Cases or, if the cases convert, by a chapter 7 trustee ("**Asset Sale**"). In the event Omnicare determines not to sell its assets and attempts to restructure, with the exception of a plan of reorganization sponsored by a third party to which the DOJ does not object or otherwise oppose, Omnicare, along with any successors or assigns, and CVSHC agree that the DOJ Claim is non-dischargeable as against Omnicare under 11 U.S.C. § 1141(d)(6), and that the United States may pursue the full amount of the Judgment against Omnicare.

2

2. **Effective Date**. This Agreement is conditioned upon the occurrence of: (a) the execution of this Agreement by the Parties; (b) the Bankruptcy Court's entry of a final and non-appealable order approving this Agreement in form and substance acceptable to the Parties on or before  August 15, 2026; (c) the Bankruptcy Court's entry of a final and non-appealable order approving a concurrent settlement between the Debtors and CVSHC in form and substance acceptable to the Parties on or before August 15, 2026; and (d) the closing of the Asset Sale. The date by which all of the preceding conditions have occurred is the "**Effective Date**."

3. **9019 Motion**. The Debtors shall file a motion with the Bankruptcy Court in a form reasonably satisfactory to all the Parties requesting approval of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure no later than July 1, 2026.

4. **Initial Payment**. CVSHC shall pay to the United States $130 million ("**Initial Payment**") within fourteen (14) days of the Effective Date by electronic funds transfer pursuant to written instructions to be provided by the Civil Division of the DOJ.

5. **Treatment of DOJ Claim**. The DOJ Claim shall be treated in any chapter 11 plan ("**Plan**") proposed or supported by the Debtors or the CVS Entities as an allowed general unsecured claim that is not subject to subordination, disallowance, reconsideration or discharge. Distributions on the DOJ Claim shall be paid after payment or reserve for (a) the DIP Loan, (b) costs of administration of the Plan or liquidation and administrative claims; *provided*, *however*, that administrative claims of the CVS Entities shall be limited to post-petition claims arising in the ordinary course of business; (c) priority claims under 11 U.S.C. § 507(a), and (d) all other general unsecured claims allowed in the Chapter 11 Cases, excluding any general unsecured claims of the CVS Entities (the "**CVS Excluded Claims**").[1]

6. **Second Payment**. In addition to the Initial Payment, the United States is entitled to receive no less than $310 million on account of the DOJ Claim (the "**Second Payment**"). In the event the United States does not recover the full amount of the Second Payment from the Debtors' bankruptcy estates or their successors by March 15, 2028, or the Chapter 11 Cases are dismissed, CVSHC guarantees the United States' collection of the remaining balance owed on the Second Payment, and will pay the United States an amount equal to the remaining balance owed on the Second Payment by March 31, 2028, or by the date the Chapter 11 Cases are dismissed, whichever date occurs first. Accordingly, the United States will receive a minimum of $440 million (the "**Total Guaranteed Payment**") from the Debtors' bankruptcy estates (or their successors) and CVSHC under this Agreement, regardless of whether the Debtors confirm a Plan or whether the Chapter 11 Cases are dismissed or converted.

7. **Third Payment**. In addition to the Total Guaranteed Payment, the United States shall

---

[1] For avoidance of doubt, the term "CVS Excluded Claims" shall not include any post-petition (*i.e.*, accruing on or after September 22, 2025) administrative claims of the CVS Entities against the estate. Debtors will provide any detail on the administrative claims reasonably requested by DOJ.

3

receive all proceeds from the Asset Sale or the liquidation of any other estate assets, if any, remaining after payment of all allowed claims and the Second Payment, in an amount up to the amount of the DOJ Claim. There will be no distributions made on account of the CVS Excluded Claims unless and until the DOJ Claim is paid in full during the Chapter 11 Cases or any subsequently converted chapter 7 cases.

8. **Dismissal of Appeals**. Omnicare and CVSHC shall dismiss their respective Appeals with prejudice within 7 days of the Effective Date.

9. **DOJ Releases**. Upon receipt of the Initial Payment and Adequate Security as defined below in Paragraph 12, as well as the dismissal of the Appeals with prejudice, DOJ shall fully and finally release any and all claims that the United States has asserted, could have asserted, or may assert in the future against the Debtors and the CVS Entities arising from (a) the civil complaint filed in the Bassan Action, (b) the United States' contentions set forth in Section IV.A of the proposed Joint Pretrial Order filed in the Bassan Action at Civil Docket No. 683, and/or (c) the Judgment, including any liabilities thereunder. The foregoing release shall not affect, diminish, or extinguish the United States' contractual rights under this Agreement, including the right to receive payments and distributions on the DOJ Claim as provided in Paragraphs 6 and 7 above.

10. **Satisfaction of Judgment.** Within 14 days of recovering the full amount of the Total Guaranteed Payment the United States shall file a Notice of Satisfaction of Judgment in the Bassan Action.

11. **Debtors and CVS Entities Releases**. The Debtors and CVS Entities hereby fully and finally release the United States from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that the Debtors and CVS Entities have asserted, could have asserted, or may assert in the future against the United States arising from the investigation and prosecution of the Bassan Action.

12. **Adequate Security**. As adequate security for the payments under this Agreement, CVSHC will (a) place the Bond Amount in a segregated account and grant the United States a security interest in the segregated account, or (b) obtain another bond in the Bond Amount for the benefit of the United States (each option, "**Adequate Security**"). To the extent CVSHC places the Bond Amount in a segregated account, CVSHC will cooperate with and aid the DOJ in perfecting the United States' security interest in the segregated account, including executing any necessary control agreements. CVSHC shall not dispose of any funds in the segregated account without DOJ consent. Upon receipt of the Second Payment, DOJ will release its security interest in the segregated account or, to the extent CVSHC has obtained a bond pursuant to option (b) above, execute any documents reasonably necessary to discharge such bond.

13. **Relator Claims**. The Parties agree that the claims of relator Uri Bassan ("**Relator**") against Omnicare and CVSHC for reasonable expenses and reasonable attorneys' fees and costs associated with the Bassan Action is a separate claim held by Relator pursuant to 31 U.S.C.

4

§ 3730(d)(1) and is not part of this Agreement or the DOJ Claim.  Omnicare and CVSHC reserve all rights to dispute any such claim by Relator.

14. **Satisfaction of DOJ Claim**. The treatment of the DOJ Claim as provided for herein shall be in full satisfaction of the DOJ Claim against Omnicare and the Debtors' estates.

15. **CVSHC Default**. The Initial Payment and, if applicable, CVSHC's collection guarantee of the Second Payment (collectively the "**CVSHC Obligations**"), represent and constitute obligations owed by CVSHC to the United States under this Agreement. In the event that CVSHC fails to timely satisfy either of the CVSHC Obligations, or if the CVSHC Obligations are avoided or rescinded for any reason, CVSHC will be in default of this Agreement ("**Default**"), and interest on the unpaid amounts shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default on the unpaid amount. In the event of a Default, the United States, at its sole discretion, may (a) retain any payments or distributions previously made under this Agreement and pursue collection of the CVSHC Obligations with any recovery reduced by the amount of any monies already received by the United States; (b) take any action against CVSHC to enforce this Agreement or the Judgment; (c) offset the remaining unpaid balance of the CVSHC Obligations from any amounts due and owing to the CVS Entities by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (d) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity. In the event the United States pursues a collection action, CVSHC agrees immediately to pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. CVSHC agrees not to contest any offset, recoupment, and/or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

16. **Plan Support**. DOJ will reasonably cooperate with the Debtors' Asset Sale and will not oppose a Plan on the basis of the DOJ Claim so long as the Plan is consistent with the terms of this Agreement. The United States reserves the right to object to the Plan for any reason not related to the DOJ Claim.

17. **United States' General Reservation of Rights**. Except with respect to the terms explicitly set forth herein, nothing in this Agreement shall affect the rights and claims of any non-DOJ federal entity or agency, or any claims (a) concerning any civil, criminal or administrative liability arising under Title 26 of the United States Code, (b) concerning any civil, criminal or administrative liability or obligations arising under Titles 18 and 21 of the United States Code, (c) concerning any civil, criminal or administrative liability under federal environmental laws, or (d) against any individual. Further, in addition to the United States' right to offset against the CVSHC Obligations in the event of a Default as defined in Paragraph 15 above, nothing in this Agreement shall preclude or limit the United States from asserting or exercising its setoff rights, as permitted by law, as to any amounts not subject to or satisfied by this Agreement that may be owed by the Debtors or CVSHC to the United States, and any defenses the Debtors or CVSHC may have thereto

will be explicitly preserved.

18. **Unallowable Costs**. To the extent applicable, the Debtors and CVS Entities agree that all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Omnicare and CVSHC, including their present or former officers, directors, employees, shareholders, and agents in connection with:

a. the matters covered by the Bassan Action and this Agreement;

b. the United States' audit and civil investigation of the matters covered by the Bassan Action and this Agreement;

c. Omnicare's and CVSHC's investigation, defense, and corrective actions undertaken in response to the United States' audit and civil investigation in connection with the matters covered by the Bassan Action and this Agreement (including attorneys' fees);

d. the negotiation and performance of this Agreement; and

e. the payments and distributions made by the Debtors' estates and CVSHC to the United States pursuant to this Agreement and any distributions or payments that the Debtors' estates and CVSHC may make to Relator, including expenses, costs and attorneys' fees

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP).

19. **Future Treatment of Unallowable Costs**: Unallowable Costs shall be separately determined and accounted for by the CVS Entities, and the CVS Entities shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by the CVS Entities to the Medicare, TRICARE, or FEHBP Programs.

20. **Treatment of Unallowable Costs Previously Submitted for Payment**: The CVS Entities further agree that within 90 days of the Effective Date they shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and FEHBP fiscal agents, any Unallowable Costs (as defined in Paragraph 18) included in payments previously sought from the United States, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by the CVS Entities, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. The CVS Entities agree that the United States, at a minimum, shall be entitled to recoup from the CVS Entities any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or

6

requests for payment. Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the DOJ and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by the CVS Entities on the effect of inclusion of Unallowable Costs (as defined above) on the CVS Entities' cost reports, cost statements, or information reports. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine the CVS Entities' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

21. **Successors and Assigns**. This Agreement is binding on the Parties' successors, transferees, heirs, and assigns, including any reorganized debtors, subsequently appointed chapter 11 or 7 trustee, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as legal representative of the Debtors or their estates, or any party that has or is granted standing to pursue claims or causes of action on behalf of the Debtors' estates.

22. **Applicable Law and Jurisdiction**. This Agreement is governed by the laws of the United States. The Parties acknowledge that the Bankruptcy Court has jurisdiction over any disputes regarding the validity, interpretation or performance of this Agreement so long as the Chapter 11 Cases are pending; *provided however*, that if the Chapter 11 Cases are dismissed, or the Bankruptcy Court cannot or does not exercise jurisdiction, such jurisdiction and venue shall belong to the United States District Court for the Southern District of New York.

23. **Voluntary Agreement and Construction**. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties and shall not, therefore, be construed against any Party for that reason in any subsequent dispute. Further, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

24. **Entire Agreement.** This Agreement constitutes the complete agreement between the Parties and is intended to be for the benefit of the Parties only.

25. **Modifications**. This Agreement may not be amended except by written consent of all the Parties. Forbearance by the United States from pursuing any remedy or relief available under this Agreement shall not constitute a waiver of rights under this Agreement.

26. **Counterparts and Authority**. This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement. Delivery of a signature page to this Agreement by electronic means shall be effective as delivery of the original signature page to this Agreement. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

**[SIGNATURES TO FOLLOW]**

DATED: 4/1/26          BY:    **THE UNITED STATES OF AMERICA**

Mary A. Schmergel
Assistant Director
Civil Division
United States Department of Justice

**JAY CLAYTON**
United States Attorney for the
Southern District of New York

DATED:_____

Jennifer Jude
Jean-David Barnea
Jeremy Liss
Assistant United States Attorneys

[*Signature Page to Collection Agreement*]

**DATED:**_____          **BY:**   **THE UNITED STATES OF AMERICA**

_____

Mary A. Schmergel
Assistant Director
Civil Division
United States Department of Justice


**JAY CLAYTON**
United States Attorney for the
Southern District of New York

**DATED:** July 1, 2026          _____

Jennifer Jude
Jean-David Barnea
Jeremy Liss
Assistant United States Attorneys

*[Signature Page to Collection Agreement]*

DATED: **6/26/2026**     BY:   **OMNICARE, INC. (n/k/a OMNICARE, LLC),
on behalf of all DEBTORS and DEBTORS-IN-
POSSESSION**

_____
Vincent Lazar
Authorized Person

*[Signature Page to Collection Agreement]*

DATED: _7/1/26_          BY:   **CVS HEALTH CORPORATION, on behalf of all
                               CVS ENTITIES**

                               Thomas S. Moffatt
                               Vice President, Assistant Secretary & Senior Legal
                               Counsel - Corporate Services

*[Signature Page to Collection Agreement]*

## Exhibit 2

## CVS Estate Settlement

*Execution Version*

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Agreement**") is made between CVS Health Corporation ("**CVS**"), on the one hand, and Omnicare, LLC ("**Omnicare**") and its affiliated chapter 11 debtors (collectively, the "**Debtors**") and the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases (the "**Committee**"), on the other hand.  CVS, the Committee, and the Debtors are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties**."[1]

# RECITALS

A.     On September 22, 2025 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**"). The Debtors' chapter 11 cases are jointly administered and currently pending under Case No. 25-80486 in the Bankruptcy Court. Omnicare continues to operate its business and manage its affairs as a debtor in possession.

B.     On August 18, 2025, following a four-week jury trial, the United States District Court for the Southern District of New York entered a judgment (the "**FCA Judgment**") in the amount of $948,778,444.10 in favor of the United States and against Omnicare, consisting of $135,592,814.70 in damages which were trebled under the False Claims Act (a total of $406,778,444.10), plus $542,000,000 in statutory penalties, $164,800,000 of which the court found CVS to be jointly and severally liable with Omnicare. *See United States of America et al. ex rel. Uri Bassan v. Omnicare, Inc. et al.,* No. 15-cv-4179 (CM) (S.D.N.Y. Aug. 18, 2025) [Docket No. 831].

C.     On March 20, 2026, DOJ filed proof of claim in Omnicare's chapter 11 case on account of the FCA Judgment in the amount of $952,717,824.19 (the "**DOJ Claim**") [Claim No. 491].

D.     On January 30, 2026, CVS Pharmacy, Inc. ("**CVS Pharmacy**"), which is one of the CVS Entities, filed a proof of claim in the Debtors' cases in the amount of $54,450,254.00 (the "**CVS Claim**") [Claim No. 332] on account of pre-petition amounts CVS Pharmacy asserts are owed by the Debtors to CVS Pharmacy, $12,895,623.00 of which is asserted to be entitled to administrative claim status under 11 U.S.C. § 503(b)(9) and $4,574.285.69 of which is asserted to be entitled to be a priority claim under 11 U.S.C. § 507(a)(4).

E.     The Debtors and the Committee have evaluated whether and the extent to which the Debtors' estates might assert claims against the CVS Entities and any Agents (as defined herein).

---

[1] CVS and its affiliates and subsidiaries, other than the Debtors and their subsidiaries, shall be referred to herein collectively as the "**CVS Entities**."

F.    The Debtors intend to sell substantially all of their assets pursuant to section 363 of the Bankruptcy Code (the "**Asset Sale**") and to propose and confirm a chapter 11 plan (the "**Plan**") for the distribution of sale proceeds and other remaining estate assets.  The Plan and accompanying disclosure statement shall be consistent with this Agreement and reasonably acceptable to the Committee.

G.    The Bankruptcy Court has entered an *Order (I) Approving The Asset Purchase Agreement Between the Debtors And GenieRx Holdings LLC; (II) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances; (III) Authoring the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith,; and (II) Granting Related Relief* [Docket No. 835] (the "**Sale Order**") authorizing the sale of the Debtors' assets to GenieRx Holdings LLC ("**Buyer**").

H.    The Debtors, CVS, and DOJ have contemporaneously entered into an agreement (the "**DOJ Agreement**") to address the DOJ Claim and the FCA Judgment.  The DOJ Agreement provides, among other things:

(i)    CVS will pay $130 million to DOJ within 14 days of the DOJ Agreement becoming effective;

(ii)    DOJ will receive payments of no less than $310 million funded in the first instance from proceeds of the Asset Sale and other assets of the Debtors' estates that remain after payment of all allowed claims other than the CVS Excluded Claims (as that term is defined in the DOJ Agreement).  To the extent DOJ has not received such amount by March 15, 2028 from the proceeds of the Asset Sale and other assets of the Debtors' estates, CVS agrees to pay the balance to DOJ no later than March 31, 2028, or by the date the Chapter 11 Cases are dismissed, whichever date occurs first;

(iii)    The DOJ Claim will be treated as a general unsecured claim and not subordinated in any way, but notwithstanding the foregoing DOJ has agreed to defer distributions on the DOJ Claim until all other general unsecured claims (excluding the CVS Claim) are paid in full; and

(iv)    The CVS Entities will not receive any distributions on account of any pre-petition claims against the Debtors, including the CVS Claim, unless and until the FCA Judgment and all other allowed claims are satisfied in full.

I.    CVS is not willing to make the payments or take the other actions provided for in the DOJ Agreement unless all Claims that might be asserted against CVS Entities or their Agents by the Debtors or Debtors' estates are released on the terms set forth herein.

**NOW, THEREFORE,** in consideration of the mutual promises and undertakings set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

2

**AGREEMENT**

1.   **Incorporation.** The foregoing recitals are true and are incorporated into this Agreement as though fully set forth herein by reference.

2.   **Definitions.** The following definitions shall apply to the Agreement:

(a) "**Agents**" shall mean as to any person or entity, all past and present directors, officers, managers, employees, consultants, attorneys, accountants, affiliates, members, partners, representatives, agents, servants, successors, heirs, and assigns, as applicable, but in each case only to the extent acting in such a capacity.

(b) "**Claims**" shall mean any and all claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, controversies, costs, expenses, attorneys' fees, and losses whatsoever, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, common law right of action, or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, based upon any acts, omissions, conduct, or other matters occurring prior to the date hereof including, without limitation, claims under chapter 5 of the Bankruptcy Code.

(c) "**Final Order**" shall mean an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (1) which has not been reversed, stayed, modified, vacated or amended, and as to which the time to do so has expired and no such action has been timely taken, or (2) as to which an appeal has been taken, or a petition for certiorari or motion for a new trial, stay, re-argument, amendment, alteration or rehearing has been filed, such relief shall have been denied or resulted in no modification of such order, and the time to take any further such actions shall have expired, in any case as a result of which such order or judgment shall have become final in accordance with 8002; provided that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure, as made applicable by Federal Rule of Bankruptcy Procedure 9024, may be filed shall not by itself cause such order to not be a Final Order.

3.   **Releases.** In consideration of CVS's performance of its obligations under this Agreement and the DOJ Agreement, and the other benefits and rights afforded the Debtors and their estates under this Agreement and the DOJ Agreement, upon the Effective Date (as defined in Paragraph 5 below) each of the Debtors, on behalf of itself and its estate:

(a)   releases and discharges each of the CVS Entities of all Claims, expressly including but not limited to Claims arising from or in any way related to (i) the FCA Judgment and/or the DOJ Claim, (ii) the corporate relationship between or among any of the Debtors and any of the CVS Entities, (iii) intercompany transfers or other transactions between or among any of the Debtors and any of the CVS Entities, and (iv) any of the CVS Entities' ownership, management, or oversight of any of the Debtors;

3

(b)     releases and discharges each of the CVS Entities' Agents from all Claims arising from or in any way related to a Claim released against any of the CVS Entities pursuant to section 3(a) of this Agreement;

(c)     releases and discharges each of the Debtors' Agents from all Claims arising from or in any way related to: (i) the FCA Judgment and/or the DOJ Claim, (ii) the corporate relationship between or among any of the Debtors and any of the CVS Entities, (iii) intercompany transfers or other transactions between or among any of the Debtors and any of the CVS Entities, and (iv) any of the CVS Entities' ownership, management, or oversight of any of the Debtors.

4.     **Additional Terms.** In addition to CVS's obligations under the DOJ Agreement, CVS's performance of which is an express condition and additional obligation under this Agreement, the following additional terms and conditions are agreed upon by the Parties and shall apply:

(a) Claims Process. The Debtors agree to commence their claims reconciliation and objection process within 14 days of Bankruptcy Court approval of this Agreement.  The Committee shall have the right to participate in the claims reconciliation and claim objection process. The Debtors shall consult with the Committee and/or the Creditor Representative, on a regular basis with respect to the claims reconciliation process and claim objections so long as the Committee or the Creditor Representative continues to exist.  The Debtors also agree to:

   i.     Provide to the Committee, upon the Committee's reasonable request, regular updates and information on the claims reconciliation process;

   ii.    Provide to the Committee five (5) days' notice of (a) any claim objection, or (b) the proposed allowance of any claim (i) in excess of $25,000, or (ii) where the disputed amount exceeds $25,000.

   iii.   Support a Plan that provides for the appointment of a plan administrator (the "**Plan Administrator**") or liquidating trustee (the "**Liquidating Trustee**"), in each case selected by the Debtors subject to the reasonable consent of the Committee and the CVS Entities.  The Plan Administrator or Liquidating Trustee's role will include liquidating the remaining assets of the Debtors' estates after consummation of the sale, administering claims, and making distributions.  The Plan shall provide for a Creditor Representative (as defined below) appointed by the Committee, who shall have consultation rights as to the claims reconciliation process after the effective date of the Plan.

      i.   The Plan Administrator or Liquidating Trustee, as applicable, shall provide the Creditor Representative with bi-weekly updates and information on the claims reconciliation process necessary to perform such oversight and consultation role.

      ii.  The Plan Administrator or Liquidating Trustee, as applicable, shall provide the Creditor Representative with no less than five (5) days' notice

4

(the "**Notice Period**"), of (a) any claim objection, (b) the proposed allowance of any claim (other than insured claims) (i) in excess of $25,000, or (ii) where the disputed amount exceeds $25,000, or (c) the proposed allowance of any claim that is expected to materially and adversely impact recoveries on account of other non-DOJ unsecured claims.

    iii.  In the event that the Creditor Representative disagrees with the Plan Administrator's or Liquidating Trustee's, as applicable, decision to object to, consent to, or otherwise agree to, the allowance of a claim and such disagreement remains unresolved after the Notice Period, the Creditor Representative shall have the right to be appear and be heard in connection with such objection to, or proposed allowance of, such claim.

(b) <u>CVS Claim Bar</u>. CVS agrees that it will not assert a claim against the Debtors' estates on account of any payments required to be made to DOJ pursuant to the DOJ Agreement or this Agreement.

(c) <u>Cooperation</u>. The Debtors agree to pursue the Asset Sale and the Plan process in good faith and in a manner consistent with this Agreement and the DOJ Agreement. The CVS Entities and the Committee each agree to cooperate in good faith and support the Asset Sale Process and a Plan for the Debtors, so long as it is consistent with the terms of the DOJ Agreement and this Agreement, including (i) without obligating CVS or the Committee to take any particular actions or assume any obligations, in connection with the Asset Sale, by not taking any action to impede the Asset Sale process or any sale order entered in connection therewith, and (ii) by not taking any action to impede the confirmation of a Plan so long as the Plan is consistent with this Agreement, the DOJ Agreement, and applicable law.

(d) <u>Plan Provisions</u>.

    i.  *DOJ Claim Treatment.* Consistent with the DOJ Agreement, the DOJ Claim will be classified as a general unsecured claim and not subordinated in any Plan; *provided*, *however*, that any Plan shall provide for the deferral of distributions on account of the DOJ Claim until all other general unsecured claims (excluding the CVS Claim) are paid in full.

    ii.  *CVS Entities Treatment*. The CVS Entities will not receive any distributions on account of any pre-petition claims against the Debtors, including the CVS Claim, unless and until the FCA Judgment and all other allowed claims are satisfied in full.

    iii.  *Supplier Release*. Any Plan for any Debtor shall include a release of any and all claims under Chapter 5 of the Bankruptcy Code against any landlord, supplier of goods or services, or trade creditor of the Debtors, to the extent such claims were not otherwise transferred pursuant to the Asset Sale.

    iv.  *Creditor Representative*. Any Plan shall provide for a creditor representative appointed by the Committee (the "**Creditor Representative**"), whose reasonable

fees and expenses shall be paid under the Plan.  The Creditor Representative shall have those duties, powers, and rights as set forth herein in paragraph 4(a)(iii).

v. *Insured Claims.* Any Plan shall include provisions consistent with the concepts that with respect to any claim asserted against any Debtor arising from acts, events or occurrences prior to the Plan effective date, as to which costs of defense or liability are covered by an existing insurance policy or program (including the captive insurance program), (i) those claims shall continue to be covered and paid by insurance following the Plan's effective date, (ii) the Debtors' existing rights under those insurance policies and programs shall be preserved, and (iii) each of the Debtors' rights, title, and interests as an insured under any insurance policy or program in effect as of the Plan effective date shall vest in the person or entity responsible under the Plan for administration of the applicable Debtors' assets and liabilities following the Plan's effective date (currently expected to be the Plan Administrator), and such rights, title, and interests shall not be modified absent further order of this Court unless such modification has no material negative impact on the availability of insurance to pay claims asserted in the Debtors' cases or related costs of defense.

5. **Conditions to Effectiveness.** This Agreement shall not be enforceable unless each of the following conditions is satisfied and shall become effective as of the date of satisfaction of the last condition (the "**Effective Date**"):

(a) An agreement among the Parties within twenty-one (21) days of this Agreement on go-forward professional fee budgets for the Debtors' and the Committee's professionals through the effective date of a Plan, unless such condition is waived by CVS in its sole discretion.

(b) An order or orders approving this Agreement and the DOJ Agreement shall have become a Final Order(s) on or before August 15, 2026, unless otherwise agreed in writing by the Parties (the "**Bankruptcy Court Approval**").

(c) The closing of an Asset Sale to the Buyer or another buyer on terms generally consistent with the "Asset Purchase Agreement" attached to the Sale Order.

In the event any of the conditions to effectiveness set forth in this section are not met, this Agreement shall be null and void and of no further force or effect, and the Parties shall have no further obligations hereunder except as expressly set forth herein.

6. **Rule 9019 Motion.** Promptly following execution of this Agreement, the Debtors shall file with the Bankruptcy Court a motion (the "**Settlement Motion**") under Federal Rule of Bankruptcy Procedure 9019 seeking approval of this Agreement. The Settlement Motion shall be filed concurrently with, or as part of, the motion seeking Bankruptcy Court approval of the DOJ Agreement. The Committee agrees to support the Settlement Motion provided that the terms of the Settlement Motion are consistent with this Agreement and such Settlement Motion is in a form and substance that is reasonably acceptable to the Committee.

7. **Costs and Attorneys' Fees.** the Debtors and the CVS Entities shall bear their own attorneys' fees and costs in negotiating, documenting, and executing this Agreement and in carrying out its obligations under this Agreement. The Committee's professional fees and costs relating to negotiating, documenting, and executing this Agreement, and in carrying out its obligations (if any) under this Agreement, shall be paid by the Debtors or their estates pursuant to the standard process under § 330 of the Bankruptcy Code.

8. **No Assignment of Claims.** The Parties represent and warrant that they have not made or caused to be made any assignment or transfer of any right, claim, demand, or cause of action covered by this Agreement.

9. **No Oral Amendment or Waiver.** No provision of this Agreement may be amended, modified, supplemented, changed, discharged, or terminated, except by an instrument in writing signed by an authorized representative of each Party. Any such amendment, modification, supplementation, change, discharge, or termination shall be null and void and ineffective and shall not be enforced against any Party absent a written signed instrument by an authorized representative of each Party. The Parties shall not at any time be deemed, by any act or omission, to have waived any of their rights or remedies under this Agreement, unless such waiver is in writing and signed by each Party, and any such waiver shall be null and void and ineffective and shall not be enforced absent an executed written waiver signed by each Party. A waiver of one event shall not be construed as a continuing waiver or as a bar to or waiver of any right or remedy in connection with any subsequent event.

10. **Complete Agreement.** This Agreement, along with the DOJ Agreement, constitutes the full and complete understanding of the Parties regarding its subject matter and supersedes any prior understanding or agreement, whether oral or in writing, with respect to the matters set forth herein. For the avoidance of doubt, this Agreement does not supersede or modify the terms of the DOJ Agreement, and in the event of any conflict between this Agreement and the DOJ Agreement, the terms of the DOJ Agreement shall control.

11. **Successors Bound.** This Agreement is binding on and inures to the benefit of each Party. This Agreement shall also be binding on and inure to the benefit of the Debtors' and the CVS Entities' respective agents, servants, employees, directors, officers, attorneys, accountants, affiliates, stockholders, members, partners, representatives, receivers, trustees, parents, subsidiaries, predecessors, successors, heirs, and assigns, and this Agreement shall also inure to the benefit of the Debtors' estates.

12. **Voluntary Agreement.** The Parties individually represent, warrant, and agree that: (a) they have been represented by legal counsel of their choice in connection with the entering into this Agreement, fully understand the advice of their attorneys concerning the legal and tax consequences of this Agreement, and are relying upon their own respective tax counsel and advice; (b) they are fully aware of and clearly understand all of the terms and provisions contained in this Agreement; (c) they have voluntarily, with full knowledge and without coercion or duress of any kind, entered into this Agreement; (d) they are not relying on any representation, either written or oral, express or implied, made to them by any other Party

other than as set forth in this Agreement; and (e) the consideration received by them to enter into this Agreement and the settlement contemplated by this Agreement is adequate.

13.     **Capacity to Execute Agreement.** Subject to Bankruptcy Court approval, the Parties represent and warrant to each other that they have the capacity and authority to execute this Agreement. Each person executing this Agreement in a representative capacity warrants to each other Party that they have the right, power, legal capacity, and authority to enter into this Agreement on behalf of the represented Party.

14.     **Construction of Terms.** The terms of this Agreement are contractual and not mere recitals. This Agreement was drafted with the input and comments of all the Parties. In the event of a dispute concerning the interpretation of any provision of this Agreement or any related document, the rule of construction to the effect that certain ambiguities are to be construed against the party drafting a document will not apply. All prior representations and understandings relied upon by the Parties have been incorporated into the text of this Agreement, and the Parties are not relying on any representations that are not contained herein.

15.     **Captions.** The captions and headings used in this Agreement are inserted for reference purposes only and shall not be deemed to define, limit, extend, describe, or affect in any way the meaning, scope, or interpretation of any of the terms of this Agreement or its intent.

16.     **Governing Law, Jurisdiction, and Venue.** This Agreement shall be deemed to be a contract made under the laws of the State of Texas and shall, for all purposes, be construed and enforced in accordance with such laws but without regard to the State of Texas's choice of law rules. The Parties agree that, to the extent a lawsuit is filed by any of them to interpret and/or enforce this Agreement, any such lawsuit shall be filed in the Bankruptcy Court.

17.     **Counterparts.** This Agreement may be executed in counterparts, each of which will be deemed an original document, with the same force and effect as if all signatures appeared on one document. This Agreement also may be executed by facsimile or electronic signature with a copy of the signed original provided to counsel for the Parties by email or ordinary mail.

*[Signature page follows]*

8

**IN WITNESS WHEREOF,** the Parties have entered into this Agreement as of the last date stated below.

**CVS HEALTH CORPORATION**

By: _____

Name: Thomas S. Moffatt

Title: Vice President, Assistant Secretary & Senior Legal Counsel - Corporate Services

Date: _____July 1_____, 2026

*[Signature Page to Settlement Agreement]*

**OMNICARE, LLC**, on behalf of itself and its affiliated chapter 11 debtors, as debtors and debtors-in-possession

By: _____

Name: Vincent Lazar

Title: Authorized Person

Date: ___6/26_____, 2026

*[Signature Page to Settlement Agreement]*

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF OMNICARE, LLC, ET AL.**

By: _____

Name: Megan Wasson, Esq.

Title:   Counsel to the Official Committee of Unsecured Creditors
Partner at HSF Kramer (US) LLP


Date:___ July 1, 2026

*[Signature Page to Settlement Agreement]*

**EXHIBIT B**

**Declaration of Paul Rundel**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| OMNICARE, LLC, *et al.*,[1] | ) | Case No. 25-80486 (SGJ) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**DECLARATION OF PAUL RUNDELL
IN SUPPORT OF DEBTORS' MOTION PURSUANT TO
FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 TO APPROVE
COMPROMISES WITH THE UNITED STATES DEPARTMENT
OF JUSTICE, CVS HEALTH CORPORATION, AND THE
<u>OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>**

I, Paul Rundell, declare under penalty of perjury as follows:

1.      I am a Managing Director at Alvarez & Marsal North America, LLC ("**A&M**"), a global restructuring advisory firm and financial advisor to Omnicare, LLC ("**Omnicare**") and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). On August 18, 2025, A&M was engaged by the Debtors to provide financial advisory services to assist in managing their liquidity and evaluating strategic alternatives. On September 21, 2025, I, along with Matthew Frank of A&M, were appointed Co-Chief Restructuring Officers of Omnicare.

2.      In my capacity as Co-Chief Restructuring Officer and financial advisor to the Debtors, I have become knowledgeable and familiar with the Debtors' day-to-day operations, business, financial affairs, and the circumstances leading to the commencement of these Chapter

---

[1] The last four digits of Omnicare, LLC's federal tax identification number are 1351. There are 110 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Omnicare. The location of Omnicare, LLC's corporate headquarters and the Debtors' service address is One CVS Drive, Mail Code 1160, Woonsocket, RI 02895.

11 Cases. I submit this declaration (the "**Declaration**") on behalf of the Debtors in support of the

*Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 to Approve*

*Compromises with the United States Department of Justice, CVS Health Corporation, and the*

*Official Committee of Unsecured Creditors* (the "**Motion**").[2]

3.     Except as otherwise indicated, the statements in this Declaration are based on my

personal knowledge, my review of relevant documents, information provided to me by the Debtors

or their employees, advisors, or professionals, or my opinion based on my experience, knowledge,

and information concerning the Debtors' operations and the industry in which they operate. I have

worked closely with the Debtors' management team and other advisors with respect to evaluating

their strategic alternatives and managing the Chapter 11 Cases, including with respect to the

investigations, negotiations, and compromises described in the Motion. I am over the age of

eighteen and am authorized to submit this Declaration on behalf of the Debtors. If called upon to

testify, I would testify competently to the facts set forth in this Declaration.

## I.   The Chapter 11 Cases.

4.     On September 22, 2025 (the "**Petition Date**"), the Debtors commenced these

Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.     The United States Trustee appointed the Official Committee of Unsecured

Creditors (the "**Committee**") on October 16, 2025.

## II.   The FCA Action and Judgment.

6.     In June 2015, Uri Bassan, a former Omnicare pharmacist, filed a False Claims Act

---

[2] Capitalized terms used, but not otherwise defined in this Declaration, shall have the meanings ascribed to them in the Motion.

action (the "**FCA Action**") against Omnicare in the United States District Court for the Southern District of New York. The United States intervened and took control of the lawsuit in December 2019 and added CVS Health Corporation ("**CVS**") as a defendant.

7.      Following a four-week jury trial in April 2025, a jury returned a verdict against both Omnicare and CVS in the FCA Action. The jury awarded damages against Omnicare in the amount of $135,592,814.70, but none against CVS. Following post-trial briefing, on August 18, 2025, the District Court entered a judgment (the "**Judgment**") in the amount of $948,778,444.10 against Omnicare, consisting of $135,592,814.70 in damages which were trebled under the FCA (a total of $406,778,444.10), plus $542,000,000 in statutory penalties, of which the District Court found CVS to be jointly and severally liable with Omnicare for $164,800,000. On September 15, 2025, both Omnicare and CVS appealed the Judgment to the Second Circuit Court of Appeals, and those appeals remain pending.

8.      On March 20, 2026, DOJ filed a proof of claim in Omnicare's chapter 11 case in the amount of $952,717,824.19, which has been assigned Claim No. 419 (the "**DOJ Claim**"). The DOJ Claim represents the single largest claim against the Debtors' estates, and the resolution and treatment of the DOJ Claim is therefore critical to the Debtors' restructuring efforts and the recoveries available to other creditors.

### III.  The Asset Sale.

9.      The Debtors are in the process of selling substantially all of their assets pursuant to section 363 of the Bankruptcy Code (the "**Asset Sale**"). On May 13, 2026, the Court entered an order approving the Asset Sale [Docket No. 835] (the "**Sale Order**") pursuant to an asset purchase agreement (the "**APA**") with GenieRx Holdings LLC ("**GenieRx**"), under which GenieRx agreed to acquire substantially all of the Debtors' assets in exchange for $250,000,000 in cash

consideration, plus the assumption of (i) unpaid payroll liabilities accrued with respect to the payroll period ending after the closing date; (ii) unpaid paid time off benefit liabilities up to $6,000,000; and (iii) other assumed liabilities up to $30,000,000. The Asset Sale has not yet closed.

**IV.  The CVS Claim.**

10.     On January 30, 2026, CVS Pharmacy, Inc. ("**CVS Pharmacy**") filed a proof of claim against the Debtors in the amount of $54,450,254.00 [Claim No. 332] (the "**Prepetition CVS Claim**") on account of prepetition amounts CVS Pharmacy asserts are owed by the Debtors, of which $12,895,623.00 is asserted to be entitled to administrative status under section 503(b)(9) of the Bankruptcy Code and $4,574,285.69 is asserted to be entitled to priority status under section 507(a) of the Bankruptcy Code. CVS also asserts post-petition claims against the Debtors that arise in the ordinary course of the Debtors' business, including for shared services.

**V.  The Agreements.**

11.     Following the Petition Date, the Debtors engaged in extensive, good faith negotiations with DOJ, CVS, and the Committee regarding resolution of the Judgment and the DOJ Claim, the ultimate distribution of the Asset Sale proceeds, resolution of potential estate claims against CVS and its non-debtor subsidiaries and affiliates (collectively, the "**CVS Entities**"), and the terms of plans for the Debtors. I participated in those negotiations on behalf of the Debtors, which involved multiple parties with potentially divergent interests and required a careful balancing of complex legal and commercial considerations.

12.     After months of intensive negotiations, the parties reached agreement on the key terms of two separate agreements – the DOJ Agreement and the CVS Estate Settlement – as summarized and described in the Motion. Based on estimates of the proceeds anticipated to be realized from the Asset Sale, the costs of administration of the Debtors' estates and any plan, and

4

claims against the Debtors that ultimately will be allowed, the Debtors expect that the Agreements

– including most importantly DOJ's agreement to defer distributions on account of the DOJ Claim

until after all other general unsecured claims are paid in full, and CVS's agreement to defer all

distributions on account of the Prepetition CVS Claim – will result in significant, and very likely

100%, distributions for all other general unsecured creditors.

13.    Based on my participation in and observation of the negotiations, I can attest that

each party negotiated vigorously and at arm's length to protect its respective interests, and that the

resulting Agreements reflect genuine compromises by all parties.

**VI.   The Investigation of Potential Claims Against CVS Entities.**

14.    Following the commencement of the Chapter 11 Cases, and at the direction of

Omnicare's independent director, the Debtors' professionals conducted an investigation into

potential claims that the Debtors' estates might hold against CVS Entities arising from the conduct

at issue in the FCA Action, the Debtors' prepetition relationships with the CVS Entities, transfers

made by the Debtors to CVS Entities, and CVS's role in the events leading to these Chapter 11

Cases. That investigation included an extensive review of the Debtors' books and records, analysis

of intercompany agreements and arrangements, and a review of transactions by and among the

Debtors and CVS Entities.

15.    Independently, commencing shortly after its appointment on October 16, 2025, the

Committee conducted its own parallel investigation into potential estate claims against the CVS

Entities.

16.    As part of their investigations, professionals for the Debtors and Committee

conferred with each other on issues relevant to their evaluations of the potential claims, and

considered documents and information provided by the CVS Entities at the Debtors' and

Committee's requests.

17. The Debtors and Committee each independently concluded that the estates may hold colorable claims against CVS Entities, including potential constructive fraudulent transfer claims arising from a 2023 Omnicare member distribution to the CVS Entities in the amount of $660 million. CVS strongly disputes that the 2023 transaction is avoidable on any basis, asserts (among other things) that Omnicare remained solvent by over $200 million following the 2023 distribution, and disputes the viability of all potential claims against the CVS Entities.

18. The Debtors have evaluated the proposed Agreements, including the proposed releases of claims against the CVS Entities in the CVS Estate Settlement. The Debtors, acting through their independent director and with the advice and input of the Debtors' professionals, determined that the significant consideration and benefits to be provided by CVS under the Agreements represented a tangible outcome that is likely to be materially superior to litigating the estate's potential claims against CVS Entities, taking into account the substantial legal and factual defenses available to CVS Entities, the cost and duration of any litigation, and the attendant risks and uncertainties of any litigation.

## VII. The Best Interests of the Debtors' Estates and Creditors.

19. The Agreements provide the framework necessary for the Debtors to proceed efficiently from the Asset Sale to plan confirmation without the delay, expense and uncertainty of contested litigation over the DOJ Claim and potential estate claims against the CVS Entities. The expenses associated with such litigation would likely include tens of millions of dollars in professional fees, directly reducing the funds available for distribution to creditors. The Agreements eliminate these expenses, provide certainty of recovery, and allow the Debtors to focus their resources on the sale closing, a consensual plan process, and efficient claims

6

reconciliation.

20.     Most significantly, the Agreements ensure that allowed general unsecured creditors (other than DOJ and the CVS Entities) will be paid in full before any distribution is made to DOJ on its substantial claim. CVS's $130 million initial payment to DOJ and CVS's collection guarantee for the second payment provide substantial value to the estates by reducing the amount that must be paid to DOJ from estate assets, directly increasing the funds available for distribution to other creditors.

21.     Based on my analysis, and consistent with the Debtors' current projections, I believe the Agreements are structured in a manner that will likely result in a 100% recovery for all general unsecured creditors (other than DOJ and the CVS Entities), and a substantial (and agreed) minimum distribution to DOJ. Further, the fact that both DOJ and the Committee have agreed to support the Debtors' restructuring framework provides parties with assurance that the major constituencies are aligned, that the path to confirmation is clear, and that closing will not be delayed or derailed by stakeholder disputes.

22.     For all of the foregoing reasons, it is my opinion that the Agreements are fair, reasonable, and in the best interests of the Debtors' estates and all creditors. I respectfully request that the Court grant the relief requested in the Motion and such other relief as may be just and proper.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: July 1, 2026

/s/  Paul Rundell_____
Paul Rundell
Co-Chief Restructuring Officer, Omnicare, LLC

7