CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 17, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| OMNICARE, LLC, *et al.*,[1] | ) | Case No. 25-80486 (SGJ) |
| Debtors. | ) | (Jointly Administered) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION AND LIQUIDATION OF OMNICARE, LLC AND ITS DEBTOR AFFILIATES**

[1] The last four digits of Omnicare, LLC's federal tax identification number are 1351. There are 110 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Omnicare. The location of Omnicare, LLC's corporate headquarters and the Debtors' service address is One CVS Drive, Mail Code 1160, Woonsocket, RI 02895.

Upon the filing by the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") of the *Second Amended Joint Chapter 11 Plan of Reorganization and Liquidation of Omnicare, LLC and Its Debtor Affiliates* [Docket No. 1267] (as modified, amended, or supplemented from time to time in accordance with its terms, including by the Plan Supplement and any modifications reflected herein or announced on the record at the Confirmation Hearing, the "**Plan**"), a copy of which is attached hereto as **Exhibit A**,[2] and the *Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization and Liquidation of Omnicare, LLC and Its Debtor Affiliates* [Docket No. 1098] (as amended, modified, or supplemented, the "**Disclosure Statement**"); and the Court having entered the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Tabulation Procedures in Connection with Confirmation of the Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Approving the Confirmation Timeline with Respect Thereto; and (V) Granting Related Relief* [Docket No. 1114] (the "**Disclosure Statement Order**"); and the Debtors having caused the Solicitation Packages, the Notices of Non-Voting Status, the Confirmation Hearing Notice, the Ballots, the letter from the Committee in support of the Plan, and all other documents required by the Disclosure Statement Order to be distributed or made available to Holders of Claims and Interests and other parties in interest in accordance with the Disclosure Statement Order, as established by the certificates of service filed in these Chapter 11 Cases [Docket Nos. 1166, 1205] (collectively, the "**Certificates of Service**") and the affidavit of publication [Docket No. 1134] (the "**Affidavit of Publication**"); and the Debtors having filed the Plan Supplement on September 3, 2026 [Docket Nos. 1208, 1209] (as amended, supplemented, or otherwise modified from time to time in accordance with the Plan, the "**Plan Supplement**"); and the Court having

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

considered (i) the *Declaration of Angela Tsai of Stretto, Inc. Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Amended Joint Chapter 11 Plan of Reorganization and Liquidation of Omnicare, LLC and Its Debtor Affiliates* [Docket No. 1259] (the "**Voting Declaration**"), (ii) the *Declaration of Matthew Frank in Support of Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization and Liquidation of Omnicare, LLC and Its Debtor Affiliates* [Docket No. 1268] (the "**Frank Declaration**" and, together with the Voting Declaration, the "**Declarations**"), (iii) the *Debtors' Memorandum of Law in Support of Confirmation of the Amended Joint Chapter 11 Plan of Reorganization and Liquidation of Omnicare, LLC and Its Debtor Affiliates* [Docket No. 1271] (the "**Confirmation Brief**"), and (iv) all other evidence proffered or adduced and arguments of counsel made at the hearing to consider confirmation of the Plan held on September 17, 2026 (the "**Confirmation Hearing**"); and the Court having considered each of the objections and comments to confirmation of the Plan, whether formal or informal, and any joinders thereto (collectively, the "**Objections**"); and the Court having taken judicial notice of the papers and pleadings Filed in these Chapter 11 Cases; and the Court having found that due and proper notice of the Confirmation Hearing and the deadlines and procedures relating thereto has been provided and that no other or further notice is required; and the Court having determined, after due deliberation and sufficient cause appearing therefor, that the legal and factual bases set forth in the Confirmation Brief, the Declarations, and the record of the Confirmation Hearing establish just cause for the relief granted herein, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A. Findings and Conclusions.** The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order and are essential, inextricable, and non-severable components and terms of this Confirmation Order and the treatment and distributions provided under the Plan. To the extent that any of the following constitutes findings of fact that are conclusions of law, they are adopted as such, and vice versa.

**B. Jurisdiction and Venue.** This Court has jurisdiction over these Chapter 11 Cases and Confirmation of the Plan pursuant to 28 U.S.C. §1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc*, Miscellaneous Rule No. 33 (N.D. Tex. Aug. 3, 1984). Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed, and constitutional authority to enter a final order with respect thereto. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**C. Eligibility for Relief; Plan Proponents.** Each Debtor was and is an entity eligible for relief under section 109 of the Bankruptcy Code, and each Debtor is a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

**D. Commencement and Joint Administration of the Chapter 11 Cases.** On September 22, 2025 (the "**Petition Date**"), each Debtor commenced with this Court a voluntary

case under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and *Amended Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 158]. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

**E. Appointment of the Committee; No Patient Care Ombudsman.** On October 16, 2025, the U.S. Trustee filed the *Appointment of the Official Unsecured Creditors' Committee* [Docket No. 157], notifying the Bankruptcy Court of its appointment of an official committee of unsecured creditors (the "**Committee**") pursuant to section 1102(b) of the Bankruptcy Code. On October 24, 2026, the Court entered the *Order Determining Patient Care Ombudsman Appointment not Necessary in these Chapter 11 Cases* [Docket No. 215] and found that the appointment of a patient care ombudsman under section 333(a)(1) of the Bankruptcy Code was not necessary based on the facts and circumstances of these Chapter 11 Cases.

**F. Judicial Notice.** The Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation) the docket of these Chapter 11 Cases maintained by the clerk of the Court or its duly appointed agent, including all pleadings and other documents Filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases, including the hearing to consider the adequacy of the Disclosure Statement.

**G. The Sale.** On May 13, 2026, the Court entered the Sale Order approving the Sale. The Sale Order is a Final Order, and nothing in this Confirmation Order or the Plan modifies,

limits, or otherwise affects the Sale Order, which remains in full force and effect, except as expressly modified by the Plan or this Confirmation Order.

**H. The DOJ Agreement and the CVS Agreement.** On August 12, 2026, the Court entered the *Order Granting Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 to Approve Compromises with the United States Department of Justice, CVS Health Corporation, and the Official Committee of Unsecured Creditors* [Docket No. 1113] (the "**Compromise Order**") approving the DOJ Agreement and the CVS Agreement. The Plan implements the DOJ Agreement and the CVS Agreement, as described in the Disclosure Statement and the Frank Declaration.

**I. Disclosure Statement Order; Solicitation.** On August 12, 2026, the Court entered the Disclosure Statement Order, which, among other things: (i) approved the Disclosure Statement on a final basis as containing adequate information within the meaning of section 1125 of the Bankruptcy Code; (ii) approved the Solicitation Procedures and the Tabulation Procedures; (iii) approved the forms of Ballots and the Notices of Non-Voting Status; (iv) established September 11, 2026, at 4:00 p.m. (prevailing Central Time) as the deadline for voting on the Plan (the "**Voting Deadline**") and as the deadline for objecting to Confirmation (the "**Plan Objection Deadline**"); and (v) scheduled the Confirmation Hearing for September 17, 2026, at 9:30 a.m. (prevailing Central Time). In the Disclosure Statement Order, the Court found that the Disclosure Statement (including all applicable exhibits thereto, including the Plan) provides Holders of Claims, Holders of Interests, and other parties in interest with sufficient notice of the injunction, exculpation, no successor liability, and release provisions contained in Article VIII of the Plan, in satisfaction of Bankruptcy Rules 2002(c)(3) and 3016(b) and (c).

**J. Transmittal and Mailing of Materials; Notice.** As evidenced by the Voting Declaration, the Certificates of Service, and the Affidavit of Publication, the Solicitation Packages (including the Plan, the Disclosure Statement, the Disclosure Statement Order, and the appropriate form of Ballot) were transmitted to all Holders of Claims in the Voting Classes, and the Notices of Non-Voting Status were transmitted to Holders of Claims and Interests in the Non-Voting Classes, in each case in compliance with the Bankruptcy Code (including sections 1125 and 1126 thereof), Bankruptcy Rules 2002, 3017, and 3018, the Local Bankruptcy Rules, and the Disclosure Statement Order. Due, adequate, and sufficient notice of the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Hearing, the Voting Deadline, the Administrative Claims Bar Date, and the Plan Objection Deadline, has been provided to all known Holders of Claims and Interests and other parties in interest and published in substantial compliance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and no other or further notice is or shall be required. The Filing of the Plan Supplement, and notice thereof, complied with the requirements of the Plan and the Disclosure Statement Order, and no other or further notice with respect thereto is or shall be required.

**K. Solicitation in Good Faith.** As described in the Voting Report, the solicitation of votes on the Plan complied with the Solicitation Procedures set forth in the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable rules, laws, and regulations. Votes on the Plan were solicited only after disclosure to Holders of Claims in the Voting Classes of adequate information as defined in section 1125(a) of the Bankruptcy Code. The Debtors, the Committee and its members, the CVS Entities, the DIP Lender, the Purchaser, and each of their respective

Related Parties participated in the activities described in section 1125 of the Bankruptcy Code in good faith, within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Disclosure Statement Order, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII.D of the Plan. Transmission and service of the Solicitation Packages was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No further notice is required. The period during which the Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for each Holder in a Voting Class to make an informed decision to accept or reject the Plan. The Notices that the Debtors served pursuant to the Disclosure Statement Order adequately summarized the material terms of the Plan, including the classification and treatment of Claims and Interests and the release and exculpation provisions in the Plan.

**L. Voting.** As evidenced by the Voting Declaration, votes to accept or reject the Plan were solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Disclosure Statement Order. As set forth in the Voting Declaration, Class 3 (General Unsecured Claims) and Class 5 (CVS Prepetition Claims) each voted to accept the Plan by the requisite majorities in number and amount specified in section 1126(c) of the Bankruptcy Code.

**M. Plan Supplement.** On September 3, 2026, the Debtors filed the Plan Supplement with the Bankruptcy Court [Docket Nos. 1208, 1209]. The Plan Supplement (including as it may be subsequently modified, supplemented, or otherwise amended pursuant to its terms and in accordance herewith) complies with the Bankruptcy Code and the terms of the Plan, and the

Debtors provided good and proper notice of the filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the facts and circumstances of these Chapter 11 Cases. Parties in interest were provided due, adequate, and sufficient notice of the Plan Supplement. No other or further notice is or will be required with respect to the Plan Supplement. Any Plan Supplement documents that have not been filed as of the date of this Confirmation Order, including but not limited to the Transition Services Agreement and Amended APA, may be approved by separate order prior to the Effective Date. The Plan Supplement documents are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan and this Confirmation Order, the Debtors shall have the right to alter, amend, update, or modify the Plan Supplement.

**N. Plan Modifications.** Any modifications to the Plan since the commencement of solicitation, including any modifications reflected in this Confirmation Order or announced on the record at the Confirmation Hearing (collectively, the "**Plan Modifications**"), constitute technical or clarifying changes, changes with respect to particular Claims made with the consent of the Holders of such Claims, or changes that do not adversely affect or change the treatment of any other Claim or Interest under the Plan. Pursuant to section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code, notice, or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. All Holders of Claims that voted to accept the Plan are conclusively deemed to have accepted the Plan as modified by the Plan Modifications.

**O. Burden of Proof.** The Debtors have met their burden of proving that the Plan satisfies or complies with all applicable provisions of sections 1122, 1123, 1125, 1126, and 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard for confirmation. In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

**P. Bankruptcy Rule 3016.** The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a). The Plan and the Disclosure Statement were Filed with the Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions of the Plan and the Disclosure Statement describe, in bold, specific, and conspicuous language, all acts to be enjoined, released, or exculpated, and identify the Entities subject to the injunctions, releases, and exculpation, thereby satisfying Bankruptcy Rule 3016(c).

**Q. Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).** The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**R. Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).** Article III of the Plan designates seven Classes of Claims and Interests: Class 1 (Other Secured Claims); Class 2 (Other Priority Claims); Class 3 (General Unsecured Claims); Class 4 (DOJ Claim); Class 5 (CVS Prepetition Claims); Class 6 (Surviving Equity Interests); and Class 7 (Other Equity Interests). Administrative Claims, DIP Claims, Priority Tax Claims, and statutory fees are not classified, consistent with section 1123(a)(1) of the Bankruptcy Code. The Claims and Interests placed in each Class are substantially similar to the other Claims and Interests in such Class, and valid business, factual, and legal reasons exist for the separate classification of each Class, including, without limitation, the separate classification of the DOJ Claim (which is subject to the negotiated

deferral under the DOJ Agreement) and the CVS Prepetition Claims (which are held by insiders and are subject to the negotiated subordination under the CVS Agreement). The classification scheme was not proposed to create a consenting impaired class, to manipulate class voting, or for any other improper purpose, and it does not unfairly discriminate among Holders of Claims and Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**S. Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Article III of the Plan specifies that Claims and Interests in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 6 (Surviving Equity Interests) are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

**T. Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).** Article III of the Plan specifies the treatment of each Impaired Class under the Plan—Class 3 (General Unsecured Claims), Class 4 (DOJ Claim), Class 5 (CVS Prepetition Claims), and Class 7 (Other Equity Interests)—thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

**U. Equal Treatment Within Classes (11 U.S.C. § 1123(a)(4)).** The Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of such a Claim or Interest has agreed to less favorable treatment, thereby satisfying section 1123(a)(4) of the Bankruptcy Code. The deferral of Distributions on the DOJ Claim and the subordination of the CVS Prepetition Claims reflect the agreement of the respective Holders of such Claims pursuant to the DOJ Agreement and the CVS Agreement.

**V. Means for Implementation (11 U.S.C. § 1123(a)(5)).** The Plan, including Article IV thereof, together with the documents included in the Plan Supplement and the Sale Documents, provides adequate and proper means for its implementation, including, without limitation: (i) the consummation of the Sale and the transactions contemplated by APA; (ii) the sources of

consideration for Plan Distributions, including the Sale proceeds and the Wind-Down Assets; (iii) the continued corporate existence of the Reorganized Debtors and the vesting of the Reorganized Debtors' assets pursuant to sections 1141(b) and (c) of the Bankruptcy Code; (iv) the wind-down of the Liquidating Debtors and the administration of the Wind-Down Assets by the Plan Administrator; (v) the appointment, authority, and powers of the Plan Administrator, including the powers of a trustee under sections 323, 704, and 1106 of the Bankruptcy Code; (vi) the appointment and consultation rights of the Creditor Representative; (vii) the general settlement of Claims, Interests, and controversies, including the implementation of the DOJ Agreement and the CVS Agreement; (viii) the cancellation of Interests and the issuance of new Interests in the Reorganized Debtors to the Purchaser; and (ix) the execution and delivery of all documents necessary or appropriate to effectuate the Plan. The Plan therefore satisfies section 1123(a)(5) of the Bankruptcy Code.

**W. Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).** The Plan provides that the organizational documents of each Reorganized Debtor shall be deemed amended, to the extent required by section 1123(a)(6) of the Bankruptcy Code, to prohibit the issuance of nonvoting equity securities. With respect to the Liquidating Debtors, which will be wound down and dissolved and will issue no securities under the Plan, section 1123(a)(6) is inapplicable. The Plan therefore satisfies section 1123(a)(6) of the Bankruptcy Code.

**X. Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).** The Plan's provisions with respect to the manner of selection of the Plan Administrator, the Creditor Representative, and the directors, managers, and officers of the Reorganized Debtors, as disclosed in the Plan, the Plan Supplement, and the Frank Declaration, are consistent with the interests of creditors and equity security holders and with public policy, thereby satisfying section

1123(a)(7) of the Bankruptcy Code. The Plan Administrator appointed pursuant to this Confirmation Order will serve as the Liquidating Debtors' sole officer and the representative of their Estates, and the identity and material terms of engagement (including compensation) of the Plan Administrator have been disclosed in the Plan Supplement.

**Y. Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).** The Plan's discretionary provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.

**Z. Impairment or Unimpairment of Any Class of Claims or Interests (11 U.S.C. § 1123(b)(1)).** Consistent with section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan impairs Classes 3, 4, 5, and 7 and leaves Classes 1, 2, and 6 Unimpaired.

**AA. Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).** Consistent with section 1123(b)(2) of the Bankruptcy Code, Article V of the Plan provides for the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases, and such provisions reflect the Debtors' reasonable exercise of business judgment.

**BB. Modification of the Rights of Holders of Claims (11 U.S.C. § 1123(b)(5)).** Consistent with section 1123(b)(5) of the Bankruptcy Code, Article III of the Plan modifies or leaves unaffected, as applicable, the rights of Holders of Claims.

**CC. Other Appropriate Provisions (11 U.S.C. § 1123(b)(6)).** The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**DD. The Plan's Settlements (11 U.S.C. § 1123(b)(3)).** Pursuant to Article IV.A of the Plan, the Plan constitutes a good-faith compromise and settlement of all Claims, Interests, and

controversies related to the contractual, legal, and subordination rights of Holders of Claims and Interests. Based upon the record in these Chapter 11 Cases, including the Frank Declaration, the Court finds that the compromises and settlements embodied in the Plan, including the DOJ Agreement and the CVS Agreement: (i) are fair, equitable, and reasonable; (ii) are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests; (iii) fall well above the lowest point in the range of reasonableness; (iv) appropriately account for the probability of success, the complexity, expense, and delay of the litigation resolved thereby—including litigation over the allowance, priority, and treatment of the DOJ Claim and appellate proceedings relating to the FCA Judgment—and the paramount interest of creditors, whose recoveries are materially enhanced by the negotiated deferral and subordination arrangements; (v) were negotiated in good faith and at arm's length among sophisticated parties represented by experienced counsel, with the support and participation of the Committee, and are not the product of fraud or collusion; and (vi) comply with the absolute priority rule. Entry of this Confirmation Order and the Compromise Order constitutes approval of all such compromises and settlements pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019.

**EE. Limited Consolidation (Plan Article III.G).** The Debtors' respective Chapter 11 Cases are consolidated solely for purposes of voting on, Confirmation of, and Distributions under the Plan as follows: (i) all Claims against any Debtor shall be deemed to be Claims against a single consolidated estate of all Debtors, and duplicative Claims Filed against more than one Debtor arising from or relating to the same underlying obligation (including Claims based on guarantees or other forms of derivative liability) shall be treated as a single Claim against the consolidated Debtors for voting and Confirmation purposes; (ii) each Class of Claims and Interests shall be treated as a single Class with respect to all Debtors, and the Holders of Claims in each such Class

shall vote and otherwise participate in Confirmation as a single constituency across all Debtors; (iii) Confirmation requirements under section 1129 of the Bankruptcy Code, including the acceptance requirements of sections 1129(a)(8), 1129(a)(10), and 1129(b), are hereby determined on a consolidated basis with respect to all Debtors collectively, rather than on a Debtor-by-Debtor basis; and (iv) a single set of Classes and a single disclosure statement, ballot, and voting tabulation shall apply to all Debtors. The limited consolidation provided for in the Plan and this Confirmation Order is limited consolidation for voting, Confirmation, and distribution purposes only and does not constitute a substantive consolidation of the Debtors or their Estates for any other purpose. Entry of this Confirmation Order constitutes the Court's approval, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, effective as of the Effective Date, of such limited consolidation. The limited consolidation provided for in the Plan shall not (i) affect the legal or corporate structure of any of the Debtors, (ii) cause the merger or consolidation of any legal entities, or (iii) affect the mutuality requirement for purposes of setoff under section 553 of the Bankruptcy Code.

**FF. The Debtor Releases (Plan Article VIII.A).** The releases of the Released Parties set forth in Article VIII.A of the Plan (the "**Debtor Releases**") are granted solely by the Debtors, their Estates, and the Plan Administrator (solely in his capacity as a representative of the Debtors and their Estates). No Holder of a Claim or Interest and no other non-Debtor grants any release under the Plan, and the Plan contains no nonconsensual release of any Claim or Cause of Action held by any non-Debtor against any non-Debtor. The Debtor Releases are the product of arm's-length negotiation, were a negotiated condition of the DOJ Agreement, the CVS Agreement, and the Sale, and represent a sound and reasonable exercise of the Debtors' business judgment, made with the assistance of the Debtors' advisors and in consultation with the Debtors' independent

manager, following an evaluation of whether the Estates hold viable Claims or Causes of Action against the Released Parties. The releases are supported by the good and valuable consideration described in the Plan and the record, including, as applicable: the CVS Entities' subordination of more than $54 million of prepetition Claims, waiver of Claims on account of payments to the DOJ, and provision of shared and transition services; the DIP Lender's provision of the $110 million DIP Facility; the Purchaser's payment of $250 million in cash plus the assumption of the Assumed Liabilities; and the Committee's and its members' fiduciary efforts in negotiating the settlement architecture embodied in the Plan. The Debtor Releases are appropriately limited: they do not release the Non-Released Obligations, do not release any party from post-Effective Date obligations under the Plan or the documents implementing the Plan, and do not release any Claims arising from a Released Party's fraud, willful misconduct, or gross negligence as determined by a Final Order. The Debtor Releases are: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good-faith settlement and compromise of the Claims and Causes of Action released thereby; (iii) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) consistent with sections 1123(b)(3)(A) and 1123(b)(3)(B) of the Bankruptcy Code, Bankruptcy Rule 9019, and the Supreme Court's decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024).

**GG. The Intercompany Release (Plan Article VIII.B).** The release of Intercompany Claims set forth in Article VIII.B of the Plan is a sound exercise of the Debtors' business judgment under section 1123(b) of the Bankruptcy Code. The Debtors operated as a single integrated enterprise; all creditor recoveries under the Plan flow from a common pool of Sale proceeds and Wind-Down Assets distributed under a single waterfall; and the prosecution of Intercompany

Claims among commonly administered Estates would generate circular litigation, administrative expense, and delay without increasing recoveries for any creditor. The Intercompany Release is consistent with the Plan's limited consolidation for voting, Confirmation, and Distribution purposes and is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

**HH. The Supplier Release (Plan Article VIII.C).** The release of the Debtors' landlords, suppliers of goods or services, and trade creditors set forth in Article VIII.C of the Plan (the "**Supplier Release**") is a sound exercise of the Debtors' business judgment under section 1123(b)(3)(A) of the Bankruptcy Code. The Debtors have concluded, in consultation with their advisors, that the net value of avoidance actions against Suppliers would be modest at best after accounting for available defenses under section 547(c) of the Bankruptcy Code, the dilutive effect of resulting Claims under section 502(h) of the Bankruptcy Code, and the cost and delay of pursuing such actions, and that preserving the trade relationships necessary to an orderly transition of the Debtors' pharmacy operations to the Purchaser confers greater value on the Estates. The Supplier Release is narrowly drawn: it extends only to Causes of Action arising under chapter 5 of the Bankruptcy Code, only to the extent such Causes of Action are not transferred to the Purchaser and are not re-vesting in a Reorganized Debtor, and does not release any other Claims of the Estates.

**II. The Exculpation Provision (Plan Article VIII.D).** The exculpation provision set forth in Article VIII.D of the Plan (the "**Exculpation Provision**") is necessary and appropriate to the Plan. The Exculpation Provision extends only to estate fiduciaries: (i) the Debtors and their respective Estates; (ii) the Debtors' independent manager (for conduct within the scope of his duties); (iii) the Debtors' co-chief restructuring officers (for conduct within the scope of their duties); and (iv) the Committee and its members (for conduct within the scope of their duties). The

Exculpation Provision is limited to postpetition acts or omissions in connection with, relating to, or arising out of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan, the Disclosure Statement, the DOJ Agreement, the CVS Agreement, the Sale, or any other document created in connection with the Chapter 11 Cases; it does not affect the liability of any Exculpated Party resulting from any act or omission determined in a Final Order to have constituted actual fraud, gross negligence, or willful misconduct; and it does not exculpate any conduct occurring after the Effective Date other than conduct in connection with the implementation and consummation of the Plan. The Exculpated Parties have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on, and Distributions under, the Plan and in connection with these Chapter 11 Cases. The Exculpation Provision, including its carve-out for actual fraud, gross negligence, and willful misconduct, is appropriately tailored, is an integral part of the Plan and the settlements embodied therein, and protects the Estates' fiduciaries from collateral attacks relating to their good-faith service in these Chapter 11 Cases.

**JJ. The Plan's Injunctions (Plan Article VIII.E).** The injunction provisions set forth in Article VIII.E of the Plan are essential to the Plan, are appropriately tailored to the Plan's hybrid reorganization-and-liquidation structure, and are necessary to implement and preserve the discharge, the releases, the Exculpation Provision, and the Distributions contemplated by the Plan. With respect to the Reorganizing Debtors, the injunction in Article VIII.E.2 of the Plan is the permanent injunction described in section 524(a) of the Bankruptcy Code regarding the discharge granted to each Reorganized Debtor under section 1141(d)(1) of the Bankruptcy Code, and otherwise enforces the releases and exculpation set forth in Article VIII of the Plan in accordance with their terms. With respect to the Liquidating Debtors, the injunction in Article VIII.E.1 of the

Plan is a temporary injunction in aid of the administration, liquidation, and Distribution of the Wind-Down Assets that channels Claims through the Plan's Claims reconciliation and Distribution procedures, expires as to each Liquidating Debtor upon entry of a final decree closing such Liquidating Debtor's Chapter 11 Case (or its earlier dissolution or such other date as may be ordered by the Court), and does not constitute or effect a discharge of any Liquidating Debtor.

**KK. The Gatekeeper Provision (Plan Article VIII.E).** The gatekeeper provision set forth in Article VIII.E of the Plan applies solely to Claims and Causes of Action that are released or exculpated under the Plan or subject to the injunctions in Article VIII.E of the Plan; expressly does not enjoin, bar, or require this Court's authorization for the commencement or continuation of any Claim or Cause of Action that is not released or exculpated under the Plan; does not enlarge the substantive scope of the releases or the Exculpation Provision; and reserves for this Court the determination, after notice and a hearing, whether an asserted Claim or Cause of Action is colorable and is not discharged, released, or subject to exculpation (or, as to the Liquidating Debtors' injunction, would not interfere with the administration of the Wind-Down Assets), before such Claim or Cause of Action may be pursued.

**LL. The No Successor Liability Provision (Plan Article VIII.F).** The no successor liability provision set forth in Article VIII.F of the Plan implements, and is coextensive with, the free-and-clear protections granted in the Sale Order pursuant to section 363(f) of the Bankruptcy Code and the vesting of property in the Reorganized Debtors free and clear of Claims, Liens, charges, and other encumbrances pursuant to sections 1141(b) and (c) of the Bankruptcy Code. Article VIII.F is limited by its terms to theories of successor or transferee liability, de facto merger, mere continuation, continuity of enterprise, substantial continuity, alter ego, veil piercing, and similar theories of derivative or vicarious liability arising from, relating to, or in connection with

the Debtors, the Chapter 11 Cases, or the consummation of the transactions contemplated by the Plan and the Sale Documents, and only to the extent such liability, obligation, Claim, or Cause of Action arose prior to the Effective Date; it does not release, discharge, or enjoin any direct claim against the Purchaser or the Reorganized Debtors for their own conduct. The protections of Article VIII.F were a fundamental inducement to the Purchaser's agreement to pay $250 million and assume the Assumed Liabilities, and without such protections the Estates could not have realized the going-concern value the Plan distributes to creditors. Article VIII.F is appropriately limited: it does not preclude the National Labor Relations Board or any court of competent jurisdiction from finding a purchaser of Omnicare of Nevada, LLC's assets, or any entity that employs the employees formerly employed by Omnicare of Nevada, LLC, is subject to collective bargaining obligations under the National Labor Relations Act in accordance with *NLRB v. Burns International Security Services*, 406 U.S. 272 (1972), and it is subject to the reservations in favor of the United States set forth in Article XII.J of the Plan.

**MM. Cure of Defaults (11 U.S.C. § 1123(d)).** Article V.A of the Plan provides for the satisfaction of any monetary defaults under each Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, under the Plan by payment of the applicable Cure amount, determined in accordance with and subject to the Sale Documents, Article V of the Plan, the Sale Order, and applicable nonbankruptcy law, thereby satisfying section 1123(d) of the Bankruptcy Code.

**NN. Preservation of Causes of Action (11 U.S.C. § 1123(b)(3)(B)).** The Plan appropriately preserves all Causes of Action for the benefit of the Estates, except for those released under Article VIII of the Plan. The Plan Administrator shall have the authority to investigate, prosecute, settle, compromise, abandon, or otherwise dispose of preserved Causes of Action.

**OO. The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).** The Debtors have complied with all applicable provisions of the Bankruptcy Code, including sections 1123, 1125, and 1126 thereof, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots, the letter from the Committee in support of the Plan, and related notices and documents, and in soliciting and tabulating votes on the Plan, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. The Debtors solicited votes only from Holders of Claims in Class 3, Class 4, and Class 5 (the "**Voting Classes**"), the only Classes entitled to vote; consistent with section 1126(f) of the Bankruptcy Code, the Debtors did not solicit votes from Class 1, Class 2, or Class 6, each of which is Unimpaired and conclusively presumed to accept the Plan; and, consistent with section 1126(g) of the Bankruptcy Code, the Debtors did not solicit votes from Class 7, which will receive no Distribution and is deemed to reject the Plan.

**PP. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).** The Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation of the Plan. The Plan was proposed with honesty and good intentions and with the legitimate purposes of, among other things, maximizing the value of the Debtors' Estates; preserving the going-concern value of a business that provides essential pharmacy services to long-term care facilities; achieving a global and final resolution of the FCA Judgment and related disputes; and distributing value to creditors in accordance with the priorities of the Bankruptcy Code. The Plan is the culmination of months of intensive, arm's-length, good faith negotiations among the Debtors, the DOJ, CVS

Health, the Committee, the DIP Lender, and the Purchaser, each represented by sophisticated counsel and other professional advisors, and it enjoys the support of each of those constituencies.

**QQ. Payment for Services and Expenses (11 U.S.C. § 1129(a)(4)).** Any payment made or to be made by the Debtors for services or for costs and expenses in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, including Professional Fee Claims, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**RR. Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).** The Debtors have disclosed the identity and affiliations of the individuals and entities proposed to serve on or after the Effective Date as the Plan Administrator, the Creditor Representative, and the directors, managers, and officers of the Reorganized Debtors, and the identity and compensation of any insider who will be employed or retained by the Reorganized Debtors, to the extent applicable. The appointment or continuance of each such individual and entity is consistent with the interests of Holders of Claims and Interests and with public policy, thereby satisfying section 1129(a)(5) of the Bankruptcy Code.

**SS. No Rate Changes (11 U.S.C. § 1129(a)(6)).** The Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction. Section 1129(a)(6) of the Bankruptcy Code is therefore inapplicable.

**TT. Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).** The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement, the Frank Declaration, and the other evidence proffered or adduced at or prior to the Confirmation Hearing: (i) are reasonable, persuasive, credible, and accurate as of the dates such analyses or evidence were prepared, presented, or proffered; (ii) utilize reasonable and appropriate

methodologies and assumptions; (iii) have not been controverted by other evidence; and (iv) establish that each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. Among other things, in a hypothetical chapter 7 liquidation, the DOJ Claim and the CVS Entities' Claims would share *pari passu* with (or ahead of) General Unsecured Claims, and the Estates would bear additional administrative costs, including chapter 7 trustee commissions, materially diluting recoveries for Holders of General Unsecured Claims relative to their treatment under the Plan.

**UU. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).** Classes 1, 2, and 6 are Unimpaired under the Plan, and the Holders of Claims and Interests in such Classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. As set forth in the Voting Declaration, Classes 3 and 5 voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. Class 4 did not return a ballot and is not deemed to accept or reject the Plan. Class 7 (Other Equity Interests) will receive no Distribution under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) of the Bankruptcy Code is not satisfied with respect to Class 7, the Plan is confirmable because it satisfies section 1129(b) of the Bankruptcy Code with respect to each non-accepting Class.

**VV. Treatment of Administrative, Priority, and Tax Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Claims, DIP Claims, Professional Compensation Claims, Priority Tax Claims under Article II of the Plan, and Other Priority Claims under Article

III of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**WW. Acceptance by at Least One Impaired, Non-Insider Class (11 U.S.C. § 1129(a)(10)).** As evidenced by the Voting Declaration, Class 3 (General Unsecured Claims), an Impaired Class of Claims whose Holders are not insiders of the Debtors, voted to accept the Plan by the requisite majorities in number and amount, determined without including any acceptance of the Plan by any insider. Section 1129(a)(10) of the Bankruptcy Code is therefore satisfied. Consistent with Article III.G of the Plan and as approved by this Confirmation Order, acceptance has been determined on a consolidated basis with respect to all Debtors. Section 1129(a)(10) of the Bankruptcy Code is satisfied.

**XX. Feasibility (11 U.S.C. § 1129(a)(11)).** The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence proffered or adduced at or prior to the Confirmation Hearing, including the Frank Declaration: (i) is reasonable, persuasive, credible, and accurate; (ii) has not been controverted by other evidence; and (iii) establishes that the Plan is feasible and that Confirmation is not likely to be followed by liquidation or the need for further financial reorganization of the Reorganized Debtors, except as provided in the Plan. Under Article IX.A.3 of the Plan, it is a condition precedent to the occurrence of the Effective Date that the Sale shall have closed or be capable of closing substantially simultaneously with the Effective Date. The proceeds of the Sale, together with the other Wind-Down Assets and the proceeds of the Insurance Policies, are sufficient to make all Distributions and payments required under the Plan. The Debtors have demonstrated that that the Plan Administrator and the Creditor Representative, as applicable, will have the financial wherewithal to satisfy their obligations following the Effective

Date. The wind-down of the Liquidating Debtors contemplated by the Plan is itself the orderly liquidation the Plan proposes.

**YY. Payment of Statutory Fees (11 U.S.C. § 1129(a)(12)).** Article XII.D of the Plan provides for the payment of all fees payable pursuant to 28 U.S.C. § 1930(a), together with any interest thereon pursuant to 31 U.S.C. § 3717, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

**ZZ. Inapplicability of Sections 1129(a)(13) Through 1129(a)(16).** The Debtors do not maintain retiree benefits within the meaning of section 1114 of the Bankruptcy Code, are not required to pay any domestic support obligations, are not individuals, and are moneyed, business, or commercial corporations or similar entities. Accordingly, sections 1129(a)(13) through 1129(a)(16) of the Bankruptcy Code are inapplicable.

**AAA. Confirmation Notwithstanding the Requirements of Section 1129(a)(8) (11 U.S.C. § 1129(b)).** The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to Class 7 (Other Equity Interests), the only Class that has not accepted or been conclusively presumed to accept the Plan.[3] All of the applicable requirements of section 1129(a) of the Bankruptcy Code, other than section 1129(a)(8), have been satisfied. The Plan does not discriminate unfairly against, and is fair and equitable with respect to, Class 7: (i) no Class of Interests similarly situated to Class 7 receives more favorable treatment (the Unimpaired treatment of the intercompany Class 6 Surviving Equity Interests—each of which is held solely by another Reorganizing Debtor—being a structural mechanic that preserves the corporate architecture through which the Purchaser will acquire and operate the Reorganized Debtors, and not a distribution of value on account of a prepetition Interest); (ii) no Holder of any Claim or Interest

[3] Class 4 (DOJ Claim) did not return a ballot and is not deemed to accept or reject the Plan.

junior to Class 7 will receive or retain any property under the Plan on account of such junior Claim or Interest; and (iii) no Holder of a Claim senior to Class 7 will receive more than payment in full on account of its Claim. Accordingly, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code notwithstanding that the requirements of section 1129(a)(8) have not been satisfied with respect to each such Class.

**BBB. Only One Plan (11 U.S.C. § 1129(c)).** The Plan is the only plan Filed in these Chapter 11 Cases, thereby satisfying section 1129(c) of the Bankruptcy Code.

**CCC. Principal Purpose of the Plan (11 U.S.C. § 1129(d)).** The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and no governmental unit has requested that the Court decline to confirm the Plan on such grounds. The Plan therefore satisfies section 1129(d) of the Bankruptcy Code.

**DDD. Not Small Business Cases (11 U.S.C. § 1129(e)).** These Chapter 11 Cases are not small business cases within the meaning of the Bankruptcy Code, and section 1129(e) of the Bankruptcy Code is therefore inapplicable.

**EEE. Executory Contracts and Unexpired Leases.** The Debtors have exercised reasonable business judgment in determining whether to assume, assume and assign, or reject Executory Contracts and Unexpired Leases pursuant to Article V of the Plan, the Sale Order, and this Confirmation Order, and each such assumption, assumption and assignment, or rejection is in the best interests of the Debtors, their Estates, and all parties in interest and is, or in connection with the Sale Order has previously been, approved.

**FFF. Conditions to Confirmation and the Effective Date.** Entry of this Confirmation Order satisfies any conditions to Confirmation expressly set forth in the Plan. Each condition

precedent to the Effective Date set forth in Article IX of the Plan is reasonably likely to be satisfied or duly waived in accordance with the Plan.

**GGG. Waiver of Stay.** Given the facts and circumstances of these Chapter 11 Cases—including the need to consummate the Sale and the transactions contemplated by the Plan promptly in order to preserve the value of the Debtors' business, maintain continuity of pharmacy services for long-term care facilities, and minimize the accrual of administrative expenses—cause exists to waive the fourteen-day stay imposed by Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 6004(h) and 6006(d).

**HHH. Retention of Jurisdiction.** The Court properly may, and upon the Effective Date shall, retain jurisdiction over the matters set forth in Article X of the Plan and section 1142 of the Bankruptcy Code, to the fullest extent permitted by applicable law.

**III. Objections.** All Objections and all reservations of rights pertaining to Confirmation that have not been withdrawn, waived, settled, or otherwise resolved (whether by stipulation, by agreed language in this Confirmation Order, or by announcement on the record at the Confirmation Hearing) are overruled on the merits, with prejudice, for the reasons stated in the Confirmation Brief, the Declarations, the Response Chart, and on the record of the Confirmation Hearing. The objection of 1015 North Garrison, LLC [Docket No. 1256], to the extent not withdrawn, is overruled.

**JJJ. Satisfaction of Confirmation Requirements.** Based upon the foregoing, and upon the record of these Chapter 11 Cases and the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. **Findings of Fact and Conclusions of Law.** The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

2. **Confirmation of the Plan.** The Plan, attached hereto as **<u>Exhibit A</u>**, including each of its provisions (as modified by the Plan Modifications, if any), is approved and **CONFIRMED** pursuant to section 1129 of the Bankruptcy Code. The documents contained in or contemplated by the Plan Supplement, as may be amended through and including the Effective Date in accordance with the Plan, are authorized and approved. The terms of the Plan, the Plan Supplement, the Compromise Order, and in each case, the exhibits thereto are incorporated by reference into, and are an integral part of, this Confirmation Order. The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision, it being the intent of this Confirmation Order that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

3. **Headings.** Headings utilized in this Confirmation Order are for convenience of reference only and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

4. **Solicitation and Notice.** Notice of the Confirmation Hearing and the solicitation of votes on the Plan: (i) complied with the terms of the Disclosure Statement Order; (ii) were

appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases; and (iii) complied with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

5. **Objections.** All Objections and all reservations of rights pertaining to Confirmation of the Plan that have not been withdrawn, waived, settled, or otherwise resolved are overruled on the merits, with prejudice.

6. **Approval of Plan Modifications.** The Plan Modifications are approved pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and do not require additional disclosure or resolicitation of votes on the Plan. The Plan as modified shall constitute the Plan submitted for Confirmation. No additional solicitation or disclosure is required on account of any modifications made to the Plan after entry of the Disclosure Statement Order, and all Holders of Claims and Interests who voted to accept the Pan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended. No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications. Furthermore, the provisions governing the modification of the Plan as set forth in Article XI of the Plan shall be, and hereby are, approved in their entirety. The Debtors, subject to the consent requirements set forth in the Plan, may modify or amend the Plan Supplement until the occurrence of the Effective Date. Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtors expressly reserve their rights to alter, amend, or modify the Plan one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, remedy any defect or omission, or

reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

7. **Binding Effect.** Upon the occurrence of the Effective Date, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062, the Plan and this Confirmation Order shall be immediately effective and enforceable and shall bind the Debtors, the Reorganized Debtors, the Plan Administrator, the Creditor Representative, the Purchaser, all Holders of Claims and Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the Holders of such Claims or Interests accepted, rejected, or are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors, together with their respective successors and assigns, in each case in accordance with section 1141(a) of the Bankruptcy Code.

8. **General Settlement of Claims, Interests, and Controversies.** Pursuant to sections 105(a) and 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan (including the DOJ Agreement and the CVS Agreement implemented thereby and approved by the Compromise Order) constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan, and each of such compromises and settlements is approved.

9. **Implementation of the Plan.** The Debtors, the Reorganized Debtors, and the Plan Administrator, as applicable, are authorized, without further notice to or action, order, or approval of this Court or any other Entity, except as expressly required by the Plan or this Confirmation

Order, to take all actions necessary or appropriate to implement, effectuate, and consummate the Plan, the Sale Documents, the DOJ Agreement, the CVS Agreement, and the transactions contemplated thereby, including to execute, deliver, File, and record all contracts, instruments, releases, and other agreements or documents contemplated by the Plan or the Plan Supplement, pursuant to section 1142(b) of the Bankruptcy Code and applicable nonbankruptcy law. All such actions taken or caused to be taken shall be deemed to have been authorized and approved by this Court, and all requisite corporate or limited liability company action shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable nonbankruptcy law and sections 105, 1141, and 1142 of the Bankruptcy Code, without any requirement of further action by the security holders, members, managers, directors, or officers of the Debtors or the Reorganized Debtors. The Reorganized Debtors shall have the right, to the fullest extent permitted by section 1142 of the Bankruptcy Code, to apply to the Court for an order, notwithstanding any otherwise applicable non-bankruptcy law, directing any appropriate entity to execute and deliver an instrument or perform any other act necessary to implement the Plan or the provisions of this Confirmation Order.

10. **The Sale; Vesting of Assets.** Nothing in the Plan or this Confirmation Order modifies, limits, or otherwise affects the Sale Order , which remains in full force and effect in accordance with its terms, except as expressly modified by the Plan or this Confirmation Order. Except as otherwise provided in the Plan, the Sale Order, or this Confirmation Order, on the Effective Date: (i) all property of each Reorganizing Debtor's Estate, together with any property of each Reorganizing Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the Plan or the Sale Documents, shall vest in the applicable Reorganized Debtor, free and clear of all Claims, Liens, charges, other encumbrances, and Interests pursuant to sections

363(f), 1141(b), and 1141(c) of the Bankruptcy Code; and (ii) all Excluded Assets (including any Reorganizing Debtor Excluded Assets and the Liquidating Debtors' books, records, and accounts) shall vest in Omnicare's Estate as Wind-Down Assets, free and clear of all Claims, Liens, charges, and other encumbrances, to be administered, liquidated, and distributed by the Plan Administrator in accordance with the Plan; *provided* that the Heartland Interests shall not vest or re-vest in OCR Services, any other Reorganized Debtor, the Purchaser, and shall instead be treated as Wind-Down Assets. On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, and the Plan Administrator may administer the Wind-Down Assets, in each case in accordance with the Plan and without supervision or approval by the Court, except as expressly provided in the Plan or this Confirmation Order.

11. **Privileges.** On the Effective Date, all attorney-client privileges, work-product doctrine protections, and other similar privileges and immunities of the Debtors and their Estates relating to the Wind-Down Assets, the Claims reconciliation process, or the Causes of Action preserved under the Plan, shall vest in, and may be asserted or waived by, the Plan Administrator on behalf of the Liquidating Debtors' Estates, in each case without further notice to or action, order, or approval of this Court and without waiver or limitation by reason of such vesting.

12. **The Plan Administrator.** The appointment of Matthew Sorenson as Plan Administrator is approved, effective as of the Effective Date. On and after the Effective Date, the Plan Administrator shall serve as the sole officer of the Liquidating Debtors and as the representative of the Liquidating Debtors in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, and shall have all of the powers, authority, and responsibilities specified in the

Plan, in each case subject to the terms of the Plan (including the consultation and other rights of the Creditor Representative) and this Confirmation Order.

13. **Post-Confirmation Governance.** On the Effective Date, the term of each director, manager, and officer of each Liquidating Debtor shall expire, and each such director, manager, and officer of each Liquidating Debtor shall be deemed to have resigned, without further notice to or action, order, or approval of this Court or any other Entity, in favor of the ongoing administration of the Liquidating Debtors' affairs by the Plan Administrator, who shall thereafter serve as the sole officer, manager, and representative of each Liquidating Debtor without the need for any further corporate or limited liability company action or approval. Omnicare shall remain in existence after the Effective Date for the purposes set forth in Article IV.F.1 of the Plan, including to (i) receive, hold, preserve, administer, and liquidate the Wind-Down Assets; (ii) facilitate recoveries under the Insurance Policies and otherwise address the Debtors' insurance coverage claims and related matters under the direction of the Plan Administrator; (iii) pay the reasonable fees and expenses of the Plan Administrator's professionals, employees, and consultants; (iv) facilitate the Claims reconciliation process; and (v) provide the Transition Services and ensure compliance with all other post-Effective Date obligations of the Liquidating Debtors under the Sale Documents. As set forth in Article IV.F.2, on and after the Effective Date, each Reorganized Debtor shall continue in existence and may be operated by the Purchaser as a going-concern business in accordance with applicable law and its organizational documents, as such documents may be amended or restated in connection with the Plan, and the governance, management, and operation of each Reorganized Debtor shall be as provided in the Plan Supplement. The Plan Administrator shall have no duties or responsibilities other than as expressly set forth in the Plan, the Plan Supplement, or this Confirmation Order.

14. **Wind-Down Expenses.** All costs and expenses incurred on or after the Effective Date by the Liquidating Debtors or the Plan Administrator related to the implementation and administration of the Plan, including the fees and expenses of the Plan Administrator and its professionals, employees, and consultants (collectively, the "**Wind-Down Expenses**"), shall be paid from the Wind-Down Assets prior to any Allowed Claims or Interests treated under Articles II and III of the Plan, in each case without further notice to or action, order, or approval of this Court. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code or the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Case Professionals and (II) Granting Related Relief* [Docket No. 176] in seeking retention or compensation for services rendered after the Effective Date shall terminate, and the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable may employ and pay any Professional without further notice or action, order, or approval of the Court or under sections 327 through 331 of the Bankruptcy Code. Neither the Plan Administrator nor any disbursing agent shall be required to give any bond, surety, or other security for the performance of its duties unless otherwise ordered by this Court.

15. **The Creditor Representative.** The appointment of Matthew Dundon as Creditor Representative, as selected by the Committee, is approved, effective as of the Effective Date. The Creditor Representative shall have the rights, duties, and consultation and oversight functions specified in the Plan, solely in its capacity as such and solely on behalf of Holders of General Unsecured Claims. The reasonable fees and expenses of the Creditor Representative shall be paid from the Wind-Down Assets as a Plan expense without further notice to or action, order, or approval of this Court. From and after the Effective Date, the Plan Administrator shall consult with the Creditor Representative on a bi-weekly basis with respect to the Claims reconciliation process

and Claim objections for so long as the Committee or the Creditor Representative continues to exist, and shall provide the Creditor Representative with no less than five days' notice of (i) any Claim objection, (ii) the proposed allowance of any Claim (other than Insured Claims) (a) in excess of $25,000 or (b) where the disputed amount exceeds $25,000, and (iii) the proposed allowance of any Claim that is expected to materially and adversely impact recoveries on account of Allowed Class 3 Claims. In the event the Creditor Representative disagrees with the Plan Administrator's decision to object to, consent to, or otherwise agree to the allowance of a Claim and such disagreement remains unresolved after such notice period, the Creditor Representative shall have the right to appear and be heard in connection with such objection or proposed allowance, all as more fully set forth in Articles VII.B and XII.C of the Plan.

16. **Cancellation of Interests; Issuance of New Interests.** Except as otherwise provided in the Plan (including with respect to the Class 6 Surviving Equity Interests, which are Unimpaired and retained solely as a structural mechanic in accordance with Article III of the Plan), on the Effective Date, all notes, instruments, certificates, and other documents evidencing Claims against or Interests in the Debtors, including the Class 7 Other Equity Interests, shall be canceled, released, and extinguished without any Distribution, and shall be of no further force or effect. The issuance of new Interests in the Reorganized Debtors to the Purchaser (or its designee) pursuant to the Plan and the Sale Documents is authorized and approved, and such new Interests shall be issued on account of the consideration paid under the Sale Documents and not on account of any prepetition Interest; *provided*, that notwithstanding Confirmation or the occurrence of the Effective Date, any such document or instrument that governs the rights, claims, or remedies of the Holder of a Claim or Interest, shall continue in effect solely for purposes of enabling Holders of Allowed Claims to receive distributions under the Plan as provided therein, and allowing each of the

applicable agents to make or direct the distributions in accordance with the Plan as provided therein.

17. **Transfer of Business Employees; Employer Debtor Entity.** The transfer of the Business Employees contemplated by Article IV.H of the Plan is approved. On the Effective Date, the issued and outstanding equity of the Employer Debtor Entity shall be deemed canceled, and new Interests representing 100% of the Interests in the Employer Debtor Entity shall be issued to the Purchaser or its designee in accordance with the Plan, thereby effecting the transfer of the Business Employees employed by the Debtors (other than Business Employees employed by Omnicare of Nevada, LLC) to the Purchaser. Upon the Effective Date, the employment of Business Employees employed by Omnicare of Nevada, LLC shall be terminated and such employees will be offered employment by LTC Pharmacy of Nevada, LLC, a newly-formed direct or indirect subsidiary of the Purchaser. For the avoidance of doubt, neither the Purchaser nor the Reorganized Debtors shall have any liability or obligations with respect to any awards to be paid under any key employee incentive plan or key employee retention plan approved in connection with the Chapter 11 Cases.

18. **Executory Contracts and Unexpired Leases.** The provisions of Article V of the Plan governing the assumption, assumption and assignment, and rejection of Executory Contracts and Unexpired Leases are approved. Entry of this Confirmation Order constitutes an order of this Court approving each assumption, assumption and assignment, and rejection provided for under the Plan, the Plan Supplement, the Sale Documents, or a separate order of this Court, pursuant to sections 365 and 1123 of the Bankruptcy Code, in each case effective as of the date provided in the applicable document or order. Any Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and this Confirmation Order must be Filed by the

Rejection Bar Date (Monday, October 19, 2026), and in accordance with the procedures set forth in the Plan, and any such Claim not timely Filed shall be forever barred. Cure amounts shall be determined and paid in accordance with Article V of the Plan and section 1123(d) of the Bankruptcy Code.

19. **Professional Compensation Claims; Administrative Claims.** All final requests for payment of Professional Compensation Claims, and all requests for payment of Administrative Claims (other than as excepted under the Plan), shall be Filed by the Professional Fee Bar Date or Administrative Claims Bar Date, and shall be subject to the procedures set forth in the Plan. Any such Claim not timely Filed shall be forever barred to the extent provided in the Plan.

20. **Distributions; Disputed Claims Reserve.** The procedures governing Distributions set forth in Article VI of the Plan are approved in their entirety. Except as otherwise provided in the Plan or this Confirmation Order, on or as soon as reasonably practicable after the Effective Date, the Plan Administrator shall make initial Distributions to Holders of Allowed Claims entitled to receive Distributions under the Plan, in accordance with the Distribution priorities set forth in Article III of the Plan, and shall make Distributions on account of Disputed Claims that thereafter become Allowed Claims as soon as reasonably practicable, and in any event no later than 60 days, after such Claims become Allowed. The Plan Administrator may serve as the disbursing agent for purposes of making Distributions under the Plan without the need to provide any bond or surety. Distributions shall be made to Holders at the addresses determined in accordance with Article VI.C of the Plan; if any Distribution is returned as undeliverable, no further Distribution shall be made to such Holder unless and until the Plan Administrator is notified of such Holder's current address. Amounts in respect of undeliverable Distributions shall be held in trust for the applicable Holder. If any Holder fails to claim an undeliverable Distribution within 180 days, such Distribution shall

be deemed irrevocably forfeited and any forfeited Distributions shall revest in Omnicare's Estate as Wind-Down Assets. Prior to making any Distribution, the Plan Administrator shall establish the Disputed Claims reserve required by Article VI.D of the Plan (provided that no reserve shall be required on account of any Insured Claim to the extent the Plan Administrator reasonably believes such Claim is covered by and payable from proceeds of the Insurance Policies). The Plan Administrator shall not be required to make Distributions of less than $10.00, shall comply with all tax withholding and reporting requirements imposed by any Governmental Unit, and may condition Distributions on the delivery of tax, "know your customer," and OFAC certifications in accordance with Article VI.I of the Plan, with any Distribution forfeited thereunder revesting in the Omnicare's Estate as Wind-Down Assets. Except as otherwise provided in the Plan, the Plan Administrator may, but shall not be required to, exercise rights of setoff or recoupment in accordance with Article VI.J of the Plan (provided that no setoff or recoupment may be exercised on account of Avoidance Claims against any Supplier or its Related Parties released pursuant to Article VIII of the Plan), and, unless otherwise specifically provided in the Plan or this Confirmation Order, postpetition interest shall not accrue or be paid on any Claim. For the avoidance of doubt, and except as set forth in the Sale Documents and the Plan, neither the Purchaser nor the Reorganized Debtors shall have any liability under any circumstances for any Claim or any Distributions to be made under the Plan, including the DOJ Claim.

21. **Claims Administration.** Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Plan Administrator shall have and retain all rights and defenses of the Debtors and the Estates with respect to Claims and Interests, including under section 502(d) of the Bankruptcy Code, and shall have the exclusive right and sole authority (subject to the consultation, notice, and appear-and-be-heard rights of the Creditor Representative described in

the Plan and this Confirmation Order) to: (i) File, withdraw, or litigate to judgment objections to Claims or Interests, through and including the date that is 180 days after the Effective Date, subject to extension by this Court for cause; (ii) settle, compromise, or otherwise resolve any Disputed Claim without further notice to or action, order, or approval of this Court; and (iii) administer and adjust the Claims Register, including to expunge any Claim that has been paid or satisfied or that has been amended or superseded, without any objection having to be Filed and without further notice to or action, order, or approval of this Court. Any Claim as to which the Holder receives payment in full from a party that is not a Debtor or the Plan Administrator shall be reduced or disallowed in accordance with Article VI.E of the Plan without an objection having to be Filed and without further order of this Court, *provided* that the Debtors or the Plan Administrator, as applicable, shall provide notice of such reduction to the Holder. The Debtors or the Plan Administrator may, at any time, request that this Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, and this Court retains jurisdiction to do so, in accordance with Article VII.C of the Plan.

22. **Waiver or Estoppel.** Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, as an Other Secured Claim, or not subordinated, by virtue of an agreement made with the Debtors or their counsel (or any other Entity), if such agreement was not disclosed in the Plan, the Sale Order, the Plan Supplement, the Disclosure Statement, or other papers filed with the Bankruptcy Court or evidenced by a written instrument acknowledged by the Debtors or their counsel before the Confirmation Date.

23. **Preservation of Causes of Action.** Any and all Causes of Action not released or transferred pursuant to the Sale as outlined in Articles IV.E.2 and XII.I of the Plan are hereby

preserved in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. On and after the Effective Date, the Plan Administrator shall retain and may enforce all rights to commence and pursue any and all Causes of Action other than those released by the Debtors and their Estates pursuant to Article VIII of the Plan or that have been transferred pursuant to the Sale. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or consummation of the Plan.

24. **Return of Deposits.** All utilities, including, but not limited to, any Person or Entity that received a deposit or other form of adequate assurance of performance under section 366 of the Bankruptcy Code during these Chapter 11 Cases, must return such deposit or other form of adequate assurance of performance to the Plan Administrator promptly following the occurrence of the Effective Date, if not returned or applied earlier.

25. **Insurance Policies; Insured Claims.** Nothing in the Plan or this Confirmation Order shall diminish or impair the enforceability of any Insurance Policy that may cover Claims against any Debtor or any other Person or Entity. With respect to any Insured Claim arising from an event prior to the Effective Date: (i) such Insured Claim shall continue to be covered and paid in accordance with the applicable Insurance Policies following the Effective Date; (ii) the Debtors' existing rights under the Insurance Policies are preserved; (iii) each of the Debtors' rights, title, and interests as an insured under any Insurance Policy in effect as of the Effective Date shall vest in the Plan Administrator, and such rights, title, and interests shall not be modified absent further order of this Court unless such modification has no material negative impact on the availability of insurance to pay Claims asserted in the Chapter 11 Cases or related costs of defense; (iv) the Debtors, the Plan Administrator, the Liquidating Debtors, and the Reorganizing Debtors, as

applicable, shall retain any and all defenses to any Insured Claim; and (v) the Insured Claims shall be subject to the resolution procedures set forth in Article VII.D of the Plan. The automatic stay and/or the discharge injunctions provided under the Plan shall be deemed modified immediately upon the Effective Date solely to the extent, and on the terms, set forth in Article VII.D of the Plan.

26. **Authority to Act.** Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state(s) in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtor or notice to, order of, or hearing before, the Bankruptcy Court.

27. **Dissolution of the Committee.** On the Effective Date, the Committee shall dissolve, and its members shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases; *provided* that, on and after the Effective Date, the Committee shall continue in existence and have standing and a right to be heard for the limited purposes of (i) pursuing applications for allowance of fees and reimbursement of expenses of the Committee and its Professionals and (ii) participating in any appeals of this Confirmation Order or in which the Committee is a named party. The Plan Administrator shall pay the reasonable fees and expenses incurred by the Committee on or after the Effective Date solely in connection with the matters described in Article XII.B of the Plan.

28. **Releases, Exculpation, Injunctions, and Related Provisions. The release, exculpation, injunction, gatekeeper, no successor liability, and related provisions set forth in Article VIII of the Plan (including Articles VIII.A, VIII.B, VIII.C, VIII.D, VIII.E, and VIII.F thereof) are approved in their entirety, are incorporated herein by reference and made a part of this Confirmation Order as if set forth fully herein, and shall be immediately effective on the Effective Date without further order or action by this Court, any of the parties to such releases, or any other Entity, and shall bind all Entities to the fullest extent provided therein. Without limiting the generality of the foregoing:**

29. **Debtor Releases. The releases set forth in Article VIII.A of the Plan are approved pursuant to sections 1123(b)(3)(A) and 1123(b)(3)(B) of the Bankruptcy Code and Bankruptcy Rule 9019. Entry of this Confirmation Order constitutes the Court's finding that the Debtor Releases are: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good-faith settlement and compromise of the Claims and Causes of Action released thereby; (iii) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors, their Estates, or the Plan Administrator asserting any Claim or Cause of Action released pursuant to the Debtor Releases. For the avoidance of doubt, no Holder of a Claim or Interest and no other non-Debtor grants any release under Article VIII.A of the Plan.**

30. **Intercompany Release; Supplier Release. The Intercompany Release set forth in Article VIII.B of the Plan and the Supplier Release set forth in Article VIII.C of the Plan are approved pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and shall be effective in accordance with their terms on the Effective Date. The Supplier**

**Release is (i) a good-faith settlement and compromise of the Claims and Causes of Action released thereby; (ii) in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Debtors, their Estates, or the Plan Administrator asserting any Claim or Cause of Action released pursuant to the Supplier Release.**

31. **Exculpation. The Exculpation Provision set forth in Article VIII.D of the Plan is approved and shall be effective in accordance with its terms on the Effective Date. The Exculpation Provision provides as follows:**

> **The Exculpated Parties shall neither have nor incur any liability to any Holder of a Claim or Interest for any postpetition act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan, this Disclosure Statement, the DOJ Agreement, the CVS Agreement, the Sale, or any other document created in connection with the Chapter 11 Cases; provided that the foregoing exculpation shall have no effect on the liability of any Exculpated Party that results from any act or omission determined in a Final Order to have constituted actual fraud, gross negligence, or willful misconduct.**

32. **Injunctions. The injunction provisions set forth in Article VIII.E of the Plan, including the temporary injunction in aid of the wind-down of the Liquidating Debtors set forth in Article VIII.E.1 of the Plan and the permanent injunction with respect to the Reorganizing Debtors set forth in Article VIII.E.2 of the Plan, are approved and shall be effective in accordance with their terms on the Effective Date. The injunction in Article VIII.E.2 of the Plan is the permanent injunction described in section 524(a) of the Bankruptcy Code with respect to the discharge granted to each Reorganized Debtor under section 1141(d)(1) of the Bankruptcy Code. The injunction in Article VIII.E.1 of the Plan is in aid of the administration of the Wind-Down Assets only, shall not constitute or be deemed**

**a discharge of any Liquidating Debtor under section 1141(d) of the Bankruptcy Code, and shall expire as to each Liquidating Debtor upon entry of a final decree closing such Liquidating Debtor's Chapter 11 Case (or, if earlier, the dissolution of such Liquidating Debtor or such other date as may be ordered by this Court).**

33. **Gatekeeper Provision.** The gatekeeper provision set forth in Article VIII.E of the Plan is approved. No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, or the Exculpated Parties, as applicable, that is released pursuant to Article VIII of the Plan, subject to exculpation pursuant to Article VIII.D of the Plan, or subject to the injunctions in Article VIII.E of the Plan, without this Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action (a) is colorable and is not discharged, released, or subject to exculpation under the Plan, or (b) to the extent of the Liquidating Debtors' injunction in Article VIII.E.1 of the Plan, would not interfere with the administration, liquidation, or Distribution of the Wind-Down Assets or the wind-down of the Liquidating Debtors' Estates under the Plan, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Liquidating Debtor, Reorganized Debtor, or Exculpated Party. For the avoidance of doubt, the foregoing applies solely to Claims and Causes of Action that are released or exculpated under the Plan or subject to the injunctions in Article VIII.E of the Plan, and shall not be construed to enjoin, bar, or require this Court's authorization for the commencement or continuation of any Claim or Cause of Action that is not released or exculpated under the Plan. This Court shall have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

34. **No Successor Liability.** The no successor liability provision set forth in Article VIII.F of the Plan is approved and shall be effective in accordance with its terms on the Effective Date. On and after the Effective Date, the Purchaser and the Reorganized Debtors, and each of their respective successors and assigns, shall not have or incur, and are released and exculpated from, any liability, obligation, Claim, or Cause of Action of any kind arising prior to the Effective Date, whether known or unknown, whether arising before, on, or after the Petition Date, on any theory of successor or transferee liability, de facto merger, mere continuation, continuity of enterprise, substantial continuity, alter ego, veil piercing, or any similar theory or basis of derivative or vicarious liability, in each case arising from, relating to, or in connection with the Debtors, the Chapter 11 Cases, or the consummation of the transactions contemplated by the Plan and the Sale Documents, all as more fully set forth in, and subject to the terms and limitations of, Article VIII.F of the Plan. For the avoidance of doubt, nothing in the Plan or this Confirmation Order: (i) releases, discharges, or enjoins any direct claim against the Purchaser or the Reorganized Debtors for their own conduct; (ii) limits the reservations in favor of the United States set forth in Article XII.J of the Plan; or (iii) precludes (a) the National Labor Relations Board or any court from finding that any purchaser of Omnicare of Nevada, LLC's assets, or any entity that employs the employees formerly employed by Omnicare of Nevada, LLC, is subject to collective bargaining obligations under the National Labor Relations Act in accordance with *NLRB v. Burns International Security Services*, 406 U.S. 272 (1972) and applicable law, or (b) the National Labor Relations Board, or the Pharmacy Guild and the International Association of Machinists as charging parties, from pursuing or participating in proceedings concerning unfair labor practice charges that were filed before the Effective Date against Omnicare of Nevada, LLC solely for purposes of liquidating the Claims asserted therein, *provided, however*, that any monetary award,

settlement, or other remedies resulting from such proceedings shall be paid or satisfied only in accordance with the terms of the Plan and shall not otherwise be enforceable against Purchaser, any Reorganized Debtor, or any of their respective assets on or after the Effective Date.

35. **Discharge of the Reorganizing Debtors; No Discharge of the Liquidating Debtors.** Except as otherwise provided in the Plan, effective as of the Effective Date, pursuant to section 1141(d)(1) of the Bankruptcy Code, each Reorganizing Debtor and Reorganized Debtor shall be discharged from any and all Claims, Interests, and Causes of Action to the fullest extent provided in the Plan and section 1141 of the Bankruptcy Code. Consistent with section 1141(d)(3) of the Bankruptcy Code, the Plan does not grant, and nothing in the Plan or this Confirmation Order shall be deemed to grant, a discharge to any Liquidating Debtor.

36. **Exemption from Certain Transfer Taxes (11 U.S.C. § 1146(a)).** To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with the Plan (including the Sale, the vesting of assets in the Reorganized Debtors, and the making or delivery of any deed, bill of sale, assignment, or other instrument of transfer under, in furtherance of, or in connection with the Plan) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents are hereby directed to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

37. **The United States.** Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, the provisions of Article XII.J of the Plan are

incorporated herein by reference in their entirety and shall govern with respect to the United States, its agencies, and any instrumentalities thereof. Without limiting the foregoing, and except as otherwise provided in the DOJ Agreement, nothing in the Plan, the Plan Supplement, the Sale Documents, or this Confirmation Order shall: (i) limit, or be intended or construed to bar, the United States from pursuing any police or regulatory action or any criminal action; or (ii) discharge, release, exculpate, impair, or otherwise preclude any obligation or liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code, any Claim of the United States arising on or after the Confirmation Date, or any liability described in Article XII.J of the Plan, in each case subject to the provisos and reservations set forth therein.

38. **Payment of Statutory Fees.** All fees payable pursuant to 28 U.S.C. § 1930(a), together with any interest thereon pursuant to 31 U.S.C. § 3717, shall be paid by each of the applicable Debtors, the Reorganized Debtors, or the Plan Administrator (on behalf of the Liquidating Debtors), as applicable, for each quarter (including any fraction thereof) until the applicable Chapter 11 Case of such Debtor is converted, dismissed, or closed, whichever occurs first, and the applicable parties shall File all required post-confirmation quarterly reports.

39. **Closing of the Reorganizing Debtors' Chapter 11 Cases; Final Decree.** In accordance with Article IV.F.2 of the Plan, on the Effective Date, the Chapter 11 Case of each Reorganizing Debtor shall be deemed closed and fully administered, and the Plan shall serve as the Post-Confirmation Report and Application for Final Decree for each Reorganizing Debtor's Chapter 11 Case pursuant to Bankruptcy Rule 3022 and Local Bankruptcy Rule 3022-1. Entry of this Confirmation Order constitutes approval of each such application and shall serve as the final decree closing each Reorganizing Debtor's Chapter 11 Case, effective as of the Effective Date, without further notice to or action, order, or approval of this Court. Notwithstanding anything to

the contrary in the Plan or the Disclosure Statement, from and after the Effective Date, neither the Reorganized Debtors nor the Liquidating Debtors shall have any obligation to file post-confirmation operating reports in connection with the Reorganized Debtors and neither shall incur any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) on account of the Reorganized Debtors. The Clerk of the Court is authorized to close the Chapter 11 Case of each Reorganizing Debtor on and after the Effective Date, and all Claims and other matters pending in, relating to, or that may be brought in the Chapter 11 Cases shall thereafter be administered in the Chapter 11 Case of *Omnicare, LLC*, Case No. 25-80486 (SGJ).

40. **Closing of the Liquidating Debtors' Chapter 11 Cases; Dissolution.** Except as otherwise provided in the Plan, the Plan Administrator shall, promptly after the full administration of any Liquidating Debtor's Chapter 11 Case, File with this Court all documents required by Bankruptcy Rule 3022 and any applicable order of this Court to close such Chapter 11 Case. Upon entry of an order closing the Chapter 11 Case of a Liquidating Debtor, unless otherwise specified by the Plan Administrator, such Liquidating Debtor shall be deemed dissolved automatically and without further action under applicable law, regulation, order, or rule, including any action by the Plan Administrator or the stockholders, members, managers, or similar governing body of such Debtor. No further corporate or limited liability company action, no filing of a certificate of dissolution, articles of dissolution, or similar instrument under nonbankruptcy law, and no consent, vote, or approval of any equity holder, member, manager, director, officer, or other governing body of any Liquidating Debtor shall be required to effect such dissolution. This Confirmation Order and the order closing the applicable Chapter 11 Case shall be deemed sufficient and conclusive evidence of the dissolution of the applicable Liquidating Debtor for all purposes under applicable federal, state, and local law, shall be accepted as evidence of such dissolution by any

governmental, regulatory, or taxing authority and by any other Entity or Person, and the Plan Administrator is authorized (but not required) to file or record this Confirmation Order and/or such closing order with any applicable Secretary of State or other governmental office to evidence such dissolution.

41. **Documents and Instruments.** Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

42. **Governmental Approvals Not Required.** This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, commonwealth, or other governmental unit with respect to the implementation or consummation of the Plan and this Confirmation Order, and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan and this Confirmation Order; provided that nothing in this paragraph shall relieve any Entity of any obligation under Article XII.J of the Plan or excuse compliance with any applicable regulatory requirement governing the licensure, certification, enrollment, or operation of the Debtors' or the Reorganized Debtors' pharmacy businesses.

43. **Notice of Entry of Confirmation Order.** In accordance with Bankruptcy Rules 2002 and 3020(c), promptly after the Effective Date, the Debtors or the Plan Administrator, as applicable, shall cause notice of entry of this Confirmation Order and of the occurrence of the Effective Date, in form and substance acceptable to the Debtors, to be served by United States mail, first-class postage prepaid, by hand, or by overnight courier service (or, where permissible, by email) upon all parties served with the Confirmation Hearing Notice, and to be Filed with the

Court. Such notice shall constitute due, adequate, and sufficient notice of entry of this Confirmation Order and of the occurrence of the Effective Date, and no other or further notice shall be required.

44. **Retention of Jurisdiction.** Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court shall retain jurisdiction over these Chapter 11 Cases and all matters arising out of, or relating to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law, including the matters set forth in Article X of the Plan and section 1142 of the Bankruptcy Code. Furthermore, the Court shall retain jurisdiction over the Compromise Order, the CVS Agreement, and the DOJ Agreement pursuant to the terms of the applicable order or agreement.

45. **References to and Effect of Plan Provisions.** The failure of this Confirmation Order specifically to include or reference any particular term or provision of the Plan shall not diminish or impair the effectiveness of such term or provision, it being the intent of this Court that the Plan be confirmed and approved in its entirety. Each term and provision of the Plan, as it may have been modified in accordance with the Plan and this Confirmation Order, is valid, binding, and enforceable pursuant to its terms.

46. **Inconsistency.** In the event of any inconsistency between the Plan, the Disclosure Statement, the Plan Supplement, any exhibit to the Plan, or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern; *provided* the event of an inconsistency between the Plan and the Plan Supplement, the Plan Supplement shall control; *provided* further that, in the event of any inconsistency between the Plan and this Confirmation Order, this Confirmation Order shall govern; *provided* further that nothing in the Plan or this

Confirmation Order modifies, limits, or otherwise affects the Sale Order, except as expressly modified by the Plan or this Confirmation Order.

47. **Severability.** Each term and provision of the Plan, including the DOJ Agreement and the CVS Agreement, in each case as modified or interpreted in accordance with the Plan and this Confirmation Order, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified except (a) in the case of the Plan and this Confirmation Order, in accordance with the terms of the Plan and this Confirmation Order, and (b) in the case of the DOJ Agreement or the CVS Agreement, the terms of the applicable agreement; and (iii) nonseverable and mutually dependent.

48. **Notice of Subsequent Pleadings.** Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date is required to be served upon only the following parties: (a) the U.S. Trustee; (b) the Creditor Representative, (c) the Plan Administrator, (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice after the Effective Date in writing to the Debtors or the Plan Administrator or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Debtors' Notice and Claims Agent shall not be required to file updated service lists.

49. **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise

set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

50. **Applicable Non-Bankruptcy Law.** The provisions of this Confirmation Order, the Plan, the Plan Supplement, and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law or any requirements related thereto.

51. **Waiver of Stay.** For good cause shown, the fourteen-day stay of this Confirmation Order imposed by Bankruptcy Rule 3020(e), and, to the extent applicable, the stays imposed by Bankruptcy Rules 6004(h) and 6006(d), are waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry. The Debtors are authorized to consummate the Plan and the transactions contemplated thereby at any time after entry of this Confirmation Order, subject to the satisfaction or waiver of the conditions precedent to the Effective Date set forth in Article IX of the Plan, which conditions shall be, and hereby are, approved in their entirety.

52. **Reporting.** After entry of this Confirmation Order, the Debtors or the Plan Administrator, as applicable, shall have no obligation to file with the Bankruptcy Court, serve on any parties, or otherwise provide any party with any other report that the Debtors were obligated to provide under the Bankruptcy Code or an order of the Bankruptcy Court, including obligations to provide (a) any reports to any parties otherwise required under the "first" and "second" day orders entered in these Chapter 11 Cases, *provided* that the Debtors shall continue to provide such reporting as required under the "first" and "second" day orders to the Committee until the Effective Date, and (b) monthly operating reports (even for those periods for which a monthly operating report was not filed before the Effective Date); *provided* that the Debtors or Plan Administrator, as applicable, will comply with the U.S. Trustee's quarterly reporting requirements.

53. **Notice of the Effective Date.** The Debtors or the Plan Administrator, as applicable, shall serve notice of entry of this Confirmation Order, of the occurrence of the Effective Date, and of appliable deadlines (the "**Notice of Effective Date**") in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with notice of the Confirmation Hearing within seven (7) Business Days after the Effective Date; *provided* that no notice of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements. The Notice of Effective Date will have the effect of an order of the Bankruptcy Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law. The above-referenced notices are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

54. **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code.

55. **Effect of Conflict.** This Confirmation Order supersedes any order of this Court issued prior to the Confirmation Date to the extent such order is inconsistent with this Confirmation Order; *provided* that nothing in the Plan or this Confirmation Order modifies, limits, or otherwise affects the Sale Order, except as expressly modified by the Plan or this Confirmation Order. If

there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

56. **UnitedHealthcare.** Any and all defenses of setoff and/or recoupment of UnitedHealthcare Insurance Company, Change Healthcare Solutions LLC, and their (direct or indirect) parents, subsidiaries, affiliates, successors and assigns (collectively, "**UHC**") are hereby preserved, and it shall not be necessary for UHC to seek any court order or other relief to be able to assert any such existing defenses in any litigation or arbitration with the Debtor, Reorganized Debtor, or any of their successors or assigns.

57. **Tennessee Department of Revenue.** Notwithstanding anything to the contrary in the Plan or the Confirmation Order, consistent with section 503(b)(1)(D) of the Bankruptcy Code, the Tennessee Department of Revenue shall not be required to file a request for the payment of an expense described in sections 503(b)(1)(B) or 503(b)(1)(C) of the Bankruptcy Code.

58. **Texas Comptroller of Public Accounts.** Notwithstanding any term in the Plan or this Confirmation Order to the contrary: (i) the setoff rights of the Texas Comptroller of Public Accounts (the "**Texas Comptroller**") are preserved under section 553 of the Bankruptcy Code; (ii) pursuant to section 503(b)(1)(D) of the Bankruptcy Code, the Texas Comptroller shall not be required to file a request for payment of any amounts coming due to the Texas Comptroller post-petition for any Claims covered by sections 503(b)(1)(B) or (C) of the Bankruptcy Code; (iii) any and all delinquent tax returns shall be filed with the Texas Comptroller no later than 180 calendar days following the occurrence of the Effective Date, including but not limited to any final franchise tax return(s) for Omnicare, LLC; (iv) the Texas Comptroller shall be allowed to amend its proofs of claim without leave of the Court or consent from any other parties for any reason, including to reflect returns received or resolution of audit liabilities or any other tax liabilities owed by Debtors

to the Texas Comptroller; and (v) the bankruptcy shall have no effect on the Texas Comptroller's rights as to non-Debtor third parties. Any additional tax reporting that may arise, if any, shall be timely filed and paid. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, if a reporting extension for ongoing franchise tax liability has been sought, the return related to such franchise tax liability shall be timely filed by the extended due date and paid in full upon the filing of the return. For the avoidance of doubt, all Priority Tax Claims of the Texas Comptroller shall be treated in accordance with the terms set forth in section 1129(a)(9)(c) of the Bankruptcy Code beginning on the Effective Date. In the event of any default in payment, interest on any of the Texas Comptroller's claims shall accrue at the statutory rate of interest pursuant to section 111.060 of the Texas Tax Code. Any General Unsecured Claims of the Texas Comptroller shall be subject to the Plan's treatment of Class 3 Claims and paid pursuant to Article VI of the Plan (Provisions Governing Distributions). The Texas Comptroller preserves all available bankruptcy and state law remedies, if any, in the event of default of payment on claims as addressed in this paragraph. In connection with the foregoing, any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under applicable law in favor of the Texas Comptroller, the Debtors, the Liquidating Debtors, the Reorganizing Debtors, the Reorganized Debtors, the Purchaser, the Plan Administrator, or the Creditor Representative, as applicable, are preserved.

59. **Chubb Companies**. Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the CVS Agreement, the Confirmation Order, any bar date notice or claim objection, any other document related to any of the foregoing or any other order of the Court (including, without limitation, any other provision that purports to be

preemptory or supervening, grants an injunction, discharge or release, or confers Bankruptcy Court jurisdiction):

(a) on the Effective Date, all of the Insurance Policies, including any agreements, documents, or instruments relating thereto, which have been issued at any time by ACE American Insurance Company, ACE Property & Casualty Insurance Company, Indemnity Insurance Company of North America, Westchester Surplus Lines Insurance Company, Westchester Fire Insurance Company, Illinois Union Insurance Company, Pacific Indemnity Company, Federal Insurance Company, Executive Risk Indemnity Inc., Executive Risk Specialty Insurance Company, and Chubb Custom Insurance Company (collectively, and together with their U.S.-based affiliates and predecessors, and solely in their capacities as insurers and/or third party administrators, "**Chubb**") providing coverage to the Debtors or their predecessors (the "**Chubb Insurance Program**") shall continue in full force and effect in accordance with their respective terms and conditions;

(b) nothing shall alter or modify the terms and conditions of the Chubb Insurance Program, or the rights and obligations thereunder, including any rights and obligations of the CVS Entities; all rights and defenses, including coverage defenses, are preserved; and all rights and obligations shall be determined in accordance with and subject to the terms and conditions of the Chubb Insurance Program and applicable non-bankruptcy law no matter when such obligations arose or arise, without the need for Chubb to file a proof of Claim, Administrative Claim, or cure Claim, object to any cure amount, or file a motion for setoff or recoupment, except that on and after the Effective Date, the Debtors' rights and obligations under the Chubb Insurance Program shall vest, unaltered, in the Plan Administrator, who shall be responsible for performing the Debtors' non-monetary obligations under the Chubb Insurance Program regardless of whether such obligations arise before, on or after the Effective Date; *provided that* any and all rights of the Debtors, the Reorganizing Debtors, the Liquidating Debtors, the CVS Entities, the Plan Administrator, or the Creditor Representative, as applicable, to dispute such obligations under the Chubb Insurance Program and applicable non-bankruptcy law are expressly reserved;

(c) except as expressly set forth in this paragraph, nothing shall permit or otherwise effectuate a sale, assignment or other transfer of the Chubb Insurance Program and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to the Chubb Insurance Program, or any collateral provided on account of the Chubb Insurance Program, without the prior express written consent of Chubb; and

(d) solely with respect to the Insured Claims, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit: (i) Chubb to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or the Plan Administrator, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Plan Administrator, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Plan Administrator, as applicable) under the Chubb Insurance Program, in such order as Chubb

may determine; and (ii) Chubb to exercise any rights they may have under the Chubb Insurance Program.

60. **State of Texas.** As to the State of Texas and its agencies, including the Texas Health & Human Services Commission (the "**State of Texas**"), nothing in this Confirmation Order, the Plan, any amendments thereto, or related documents, discharges, releases, precludes, or enjoins: (i) any obligation or liability to the State of Texas that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of the State of Texas arising on or after the Confirmation Date; (iii) any obligation or liability to the State of Texas under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any obligation or liability to the State of Texas on the part of any person other than the Debtors. Nor shall anything in this Confirmation Order enjoin or otherwise bar the State of Texas from asserting or enforcing, outside this Court, any obligation or liability described in the preceding sentence. Further, nothing in this Confirmation Order, the Plan, any amendments thereto, or related documents, authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, in each case issued by the State of Texas, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Confirmation Order shall relieve any entity from any obligation to address or comply with information requests or inquiries from the State of Texas. Nothing in this Confirmation Order shall affect any setoff or recoupment rights of the State of Texas, and all rights and defenses of the Debtors, Liquidating Debtors, the Reorganizing Debtors, the Plan Administrator, the Creditor Representative, the Purchaser, and other parties in interest thereto are hereby preserved. Nothing in this Confirmation Order divests any tribunal of any jurisdiction it may have under police or regulatory law; *provided that*, this Court shall retain jurisdiction

regarding interpreting, enacting, or enforcing the Plan, Confirmation Order, or any other order entered by the Court in these Chapter 11 Cases. Nothing in this paragraph is intended to amend, modify, limit, impair, waive, supersede, or otherwise affect any finding, conclusion, provision, protection, injunction, limitation of liability, or other relief granted to the Purchaser or the Purchased Assets under the Sale Order, or, except as specifically set forth in this paragraph, the Plan.

61. **1015 North Garrison, LLC.** Notwithstanding anything to the contrary in the Plan or this Order, the permanent injunction set forth in Article VIII.E.2 of the Plan shall not bar 1015 North Garrison, LLC d/b/a Vancouver Specialty and Rehabilitative Care from asserting defensive theories of set-off and recoupment in any action commenced or continued by the Reorganized Debtors or their successors against 1015 North Garrison, LLC, including the action pending in Clark County Superior Court, Washington, to the extent such theories arise from the same set of transactions or occurrences as the Reorganized Debtor's claims.

62. **Final Order.** For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court. This Confirmation Order is a Final Order and shall be effective and enforceable immediately upon entry, and its provisions shall be self-executing.

**### END OF ORDER ###**

**Order submitted by:**

*/s/ Ian T. Peck*
Charles A. Beckham, Jr. (TX #02016600)
Ian T. Peck (TX #24013306)
Martha Wyrick (TX #24101606)
**HAYNES AND BOONE, LLP**
2801 N. Harwood Street, Ste. 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email: charles.beckham@haynesboone.com
ian.peck@haynesboone.com
martha.wyrick@haynesboone.com

Vincent E. Lazar (admitted *pro hac vice*)
Derek L. Wright (admitted *pro hac vice*)
Angela M. Allen (admitted *pro hac vice*)
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Email: vlazar@jenner.com
dwright@jenner.com
aallen@jenner.com
cwedoff@jenner.com

Carl N. Wedoff (admitted *pro hac vice*)
**JENNER & BLOCK LLP**
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
Email: cwedoff@jenner.com

*Counsel to the Debtors and*
*Debtors in Possession*

# EXHIBIT A

**SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION AND LIQUIDATION OF OMNICARE, LLC AND ITS DEBTOR AFFILIATES**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| OMNICARE, LLC, *et al.*,[1] | ) | Case No. 25-80486 (SGJ) |
| Debtors. | ) | (Jointly Administered) |

**SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION AND LIQUIDATION OF OMNICARE, LLC AND ITS DEBTOR AFFILIATES**

**JENNER & BLOCK LLP**
Vincent E. Lazar (admitted *pro hac vice*)
Derek L. Wright (admitted *pro hac vice*)
Angela M. Allen (admitted *pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Email: vlazar@jenner.com
dwright@jenner.com
aallen@jenner.com

*Counsel for the Debtors and Debtors in Possession*

**HAYNES AND BOONE, LLP**
Charles A. Beckham, Jr. (TX #02016600)
Ian T. Peck (TX #24013306)
Martha Wyrick (TX #24101606)
2801 N. Harwood Street, Ste. 2300
Dallas, TX 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email: charles.beckham@haynesboone.com
ian.peck@haynesboone.com
martha.wyrick@haynesboone.com

Dated: September 15, 2026

[1] The last four digits of Omnicare, LLC's federal tax identification number are 1351. There are 110 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Omnicare. The location of Omnicare, LLC's corporate headquarters and the Debtors' service address is One CVS Drive, Mail Code 1160, Woonsocket, RI 02895.

# INTRODUCTION[2]

The Debtors propose this Plan under section 1121 of the Bankruptcy Code. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

This Plan is a combined plan of reorganization and liquidation. Pursuant to the APA, the Purchaser has agreed to acquire substantially all of the Debtors' operating assets. Certain of the Debtors will be acquired by the Purchaser as "Reorganizing Debtors" that will continue in existence as going-concern businesses operated by the Purchaser on and after the Effective Date and will emerge from chapter 11 as "Reorganized Debtors." The remaining Debtors are "Liquidating Debtors" whose Purchased Assets are being sold to the Purchaser and will be dissolved following the Effective Date under the supervision of the Plan Administrator. The identities of the Reorganizing Debtors and Liquidating Debtors are set forth in Exhibits A, B, and C to the Plan. Notwithstanding the foregoing distinction, the treatment of Claims and Interests under this Plan is the same for all Debtors, and the Plan shall constitute a separate chapter 11 plan for each Debtor.

Reference is made to the Disclosure Statement filed contemporaneously with this Plan for a discussion of the Debtors' history, business, operations, and capital structure, as well as a summary and analysis of this Plan and certain related matters, including Distributions to be made hereunder.

Supplemental agreements and documents referenced in this Plan and the Disclosure Statement are available for review on both the Bankruptcy Court's docket and on the Debtors' case information website at https://cases.stretto.com/Omnicare.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

[2] Capitalized terms used, but not otherwise defined in this Introduction, shall have the meanings ascribed to them below.

# I. DEFINED TERMS AND RULES OF INTERPRETATION

## A. Defined Terms

As used in this Plan, capitalized terms have the meanings set forth below.

1. "Administrative Claim" means a Claim for costs and expenses of administration of the Chapter 11 Cases of a kind referred to in sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (ii) Allowed Professional Compensation Claims; (iii) all fees and charges assessed against the Estates pursuant to 28 U.S.C. § 1930; and (iv) DIP Claims.

2. "Administrative Claims Bar Date" means the date that is 60 days after the Effective Date, by which a Holder of an Administrative Claim (other than a Professional Compensation Claim, DIP Claim, or Claim entitled to priority under section 503(b)(9) of the Bankruptcy Code) must File a request for payment of such Administrative Claim.

3. "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

4. "Allowed" means with respect to any Claim or Interest: (i) a Claim or Interest, proof of which was timely Filed by the applicable Claims Bar Date in accordance with section 501 of the Bankruptcy Code and the Bar Date Order, as to which no objection has been Filed and the applicable time period for objecting has expired; (ii) a Claim or Interest that has been allowed by a Final Order; (iii) a Claim or Interest that is allowed pursuant to the terms of this Plan; (iv) a Claim or Interest that is allowed pursuant to any stipulation or agreement entered into between the Holder of such Claim or Interest and the Debtors or the Plan Administrator; or (v) listed in the Schedules as not disputed, not contingent, not unliquidated with respect to amount, secured status or priority and (a) no Proof of Claim in an amount greater than the amount set forth in the Schedules has been Filed, (b) no objection to allowance, priority or classification, request for estimation, motion to deem the Schedules amended or other challenge has been Filed prior to the applicable deadlines set forth in the Plan, the Bankruptcy Code, the Bankruptcy Rules or as determined by the Bankruptcy Court, and (c) such Claim is not otherwise subject to disallowance under section 502(d) or bifurcation under section 506(a) of the Bankruptcy Code. "Allow," "Allowing," and "Allowance" shall have correlative meanings.

5. "Amended APA" means that certain Amended and Restated Asset Purchase Agreement, and together with all exhibits, disclosure schedules, and all other ancillary agreements, instruments, and documents related thereto, to be filed as a Plan Supplement or separately approved by the Bankruptcy Court.

6. "APA" means that certain Asset Purchase Agreement dated as of March 31, 2026 and attached to the Sale Order, and together with all exhibits, disclosure schedules, and all other ancillary agreements, instruments, and documents related thereto.

7. "Assumed Liabilities" has the meaning provided in Section 2.03 of the APA.

8. "Assumption Notices" means the *Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts*, Filed April 27, 2026 [Docket No. 789], *Supplemental Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts*, Filed May 1, 2026 [Docket No. 798], *Supplemental Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts*, Filed June 18, 2026 [Docket No. 991], *Notice of Revised Cure Amounts for Potentially Assigned Agreements* Filed August 21, 2026 [Docket No. 1164], and any other such notice of the assumption and assignment of Executory Contracts and Unexpired Leases as the Debtors may file from time-to-time pursuant to the Bidding Procedures Order.

9. "Avoidance Action" means any and all actual or potential avoidance, recovery, subordination, or similar actions or remedies that may be brought by or on behalf of the Debtors or the Estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies arising under chapter 5 and section 724(a) of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes and common law, including fraudulent transfer laws, fraudulent conveyance laws, or other similar related laws, in each case whether or not litigation to prosecute such Claim(s) and Cause(s) of Action was commenced prior to the Effective Date.

10. "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended.

11. "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court having jurisdiction over the Chapter 11 Cases.

12. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended, and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time.

13. "Bar Date Order" means the *Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* entered by the Bankruptcy Court on December 3, 2025 [Docket No. 395].

14. "Bidding Procedures Order" means the *Order (I)(A) Approving Bidding Procedures and the Form and Manner of Notice Thereof, (B) Authorizing the Selection of the Stalking Horse Bidder(s) and Approving Bid Protections, (C) Establishing Bid Deadlines and Scheduling the Auction and Sale Hearing(s), and (D) Establishing Certain Assumption and Assignment Procedures and Approving the Manner of Notice Thereof; and (II) Granting Related Relief* entered by the Bankruptcy Court on December 3, 2025 [Docket No. 398].

15. "Business Day" means any day other than a Saturday, Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a).

16. "Business Employees" has the meaning provided in section 4.09 of the APA.

17. "Captive Insurance Program" means insurance coverage provided to the Debtors by a captive insurer and wholly owned CVS subsidiary, CVS Caremark Indemnity Ltd.

18. "Cash" or "$" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

19. "Causes of Action" means any and all Claims, Interests, damages, remedies, causes of action, controversies, demands, proceedings, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, agreements, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. "Cause of Action" includes: (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (ii) the right to object to Claims or Interests; (iii) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (iv) any claim or defense including fraud, mistake, duress, and usury; and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any state or foreign law fraudulent transfer or similar claim.

20. "Chapter 11 Cases" means the chapter 11 bankruptcy cases of the Debtors pending in the Bankruptcy Court, jointly administered under Case No. 25-80486 (SGJ).

21. "Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

22. "Claims Bar Date" means, as applicable, (i) any deadline to File a Proof of Claim set forth in the Bar Date Order; (ii) the Administrative Claims Bar Date; (iii) the Professional Fee Bar Date; (iv) any applicable Rejection Bar Date; or (v) such other date established by order of the Bankruptcy Court by which Proofs of Claim must have been Filed.

23. "Claims Register" means the official register of Claims against and Interests in the Debtors maintained by Stretto, Inc., as the claims, noticing, and solicitation agent in the Chapter 11 Cases.

24. "Class" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

25. "Class 6 Reorganizing Debtors" means the Reorganizing Debtors classified in Class 6 of this Plan and listed on Exhibit A to this Plan.

26. "Class 7 Reorganizing Debtors" means the Reorganizing Debtors classified in Class 7 of this Plan and listed on Exhibit B to this Plan.

27. "Committee" means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on October 16, 2025, pursuant to the Notice of *Appointment of the Official Unsecured Creditors' Committee* [Docket No. 157].

28. "Compromise Motion" means the *Debtors' Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 to Approve Compromises with the United States Department*

*of Justice, CVS Health Corporation, and the Official Committee of Unsecured Creditors*, filed July 1, 2026 [Docket No. 1023].

29. "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

30. "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

31. "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of this Plan pursuant to section 1128 of the Bankruptcy Code.

32. "Confirmation Order" means the Final Order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

33. "Creditor Representative" means the creditor representative appointed by the Committee pursuant to the CVS Agreement and this Plan, whose reasonable fees and expenses shall be paid from the Wind-Down Assets as Plan expenses.

34. "Cure" means all Claims, including Claims in an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is assumed or assumed and assigned by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

35. "CVS Agreement" means the Settlement Agreement by and among the Debtors, CVS Health, and the Committee and filed as Exhibit 2 to the Compromise Motion.

36. "CVS Entities" means CVS Health and its direct and indirect subsidiaries (other than the Debtors and Heartland Entities), including, but not limited to, CVS Pharmacy, CVS Cabot Holdings Inc., CVS Shaw Holdings Inc., Aetna Inc., CVS Rx Services, Inc., and CVS Shared Services Resources, LLC.

37. "CVS Health" means CVS Health Corporation.

38. "CVS Pharmacy" means CVS Pharmacy, Inc.

39. "CVS Prepetition Claims" means all Claims of the CVS Entities against the Debtors' Estates arising before the Petition Date, including any claims entitled to Administrative Claim status under section 503(b)(9) of the Bankruptcy Code, which shall be classified and treated as set forth in Class 5 under this Plan.

40. "Debtor Releases" means the releases set forth in Article VIII.A herein.

41. "Debtors" means collectively, Omnicare and each of its debtor Affiliates that are debtors and debtors in possession in the Chapter 11 Cases at the time immediately prior to the Effective Date.

42. "*De Minimis* Claim" means any Claim in an amount equal to or less than $10.00.

43. "DIP Claims" means all Claims of the DIP Lender arising under or related to the DIP Facility, including all principal, accrued interest, fees, costs, indemnification obligations (if any), and expenses.

44. "DIP Facility" means the senior secured superpriority debtor-in-possession credit facility, in the aggregate amount of $110 million, provided by the DIP Lender pursuant to the DIP Order, as amended from time to time.

45. "DIP Lender" means JMB Capital Partners Lending, LLC, or any of its successors or assigns as agent and lender under the DIP Facility.

46. "DIP Order" means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, Grant Liens, Provide Superpriority Administrative Expense Claims and Use Cash Collateral, (II) Modifying the Automatic Stay, and (III) Granting Related Relief* entered by the Bankruptcy Court on November 3, 2025 [Docket No. 257], as amended by the order entered by the Bankruptcy Court on February 27, 2026 [Docket No. 624].

47. "Disallowed" means with respect to any Claim or Interest, a Claim or Interest that has been disallowed by a Final Order or pursuant to the terms of this Plan.

48. "Disclosure Statement" means the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization and Liquidation of Omnicare and its Debtor Affiliates*, as approved by the Bankruptcy Court, together with all exhibits and schedules thereto.

49. "Disputed Claim" means any Claim or portion thereof that is not an Allowed Claim, including any Claim that is subject to a pending objection or is otherwise not Allowed.

50. "Distribution" means any distribution to be made to Holders of Allowed Claims pursuant to this Plan.

51. "Distribution Date" means each date on which the Plan Administrator makes a Distribution to Holders of Allowed Claims.

52. "Distribution Record Date" means the record date for the purpose of determining Holders of Allowed Claims entitled to receive Distributions pursuant to the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date designated in the Confirmation Order or any subsequent Order of the Bankruptcy Court.

53. "DOJ" means the United States Department of Justice.

54. "DOJ Agreement" means the agreement among the Debtors, CVS Health, and the DOJ resolving the DOJ Claim and filed as Exhibit 1 to the Compromise Motion.

55. "DOJ Claim" means the Claim of the United States arising from the FCA Judgment against Omnicare in the amount of $952,717,824.19 [Claim No. 419], which shall be classified and treated as set forth in Class 4 under this Plan.

56. "Effective Date" means the first Business Day on which all conditions precedent to the effectiveness of this Plan set forth in Article IX of this Plan have been satisfied or waived.

57. "Employer Debtor Entity" means (i) Best Care LTC Acquisition Company LLC, a Delaware limited liability company, which shall be renamed "Omnicare Payroll, LLC" on or before the Effective Date as set forth in Article IV.H of this Plan, and (ii) if applicable, any additional Debtors that may be designated in the Plan Supplement to become employers of record for Business Employees on and after the Effective Date.

58. "Entity" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

59. "Estate" means with respect to each Debtor, the estate of such Debtor created pursuant to section 541 of the Bankruptcy Code upon commencement of such Debtor's Chapter 11 Case.

60. "Excluded Assets" means all Liquidating Debtor Excluded Assets and Reorganizing Debtor Excluded Assets.

61. "Exculpated Party" means each of the following, solely in their capacity as such: (i) the Debtors and their respective Estates; (ii) the Debtors' independent manager (for conduct within the scope of his duties); (iii) the Debtors' co-chief restructuring officers (for conduct within the scope of their duties); and (iv) the Committee and its members (for conduct within the scope of their duties).

62. "Executory Contract" means a contract to which a Debtor is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

63. "FCA Action" means the case captioned *United States of America et al. ex rel. Uri Bassan v. Omnicare, Inc.* et al., No. 15-cv-4179 (CM) (S.D.N.Y.).

64. "FCA Judgment" means the judgment entered against Omnicare in the FCA Action on August 18, 2025, in the amount of $948,778,444.10, consisting of $406,778,444.10 in trebled damages and $542,000,000 in statutory penalties, $164,800,000 of which the United States District Court for the Southern District of New York found CVS Health to be jointly and severally liable with Omnicare.

65. "Federal Judgment Rate" means the federal judgment rate specified by 28 U.S.C. § 1961 in effect as of the Petition Date.

66. "File," "Filed," "Filing" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

67. "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (1) which has not been reversed, stayed, modified, vacated or

amended, and as to which the time to do so has expired and no such action has been timely taken, or (2) as to which an appeal has been taken, or a petition for certiorari or motion for a new trial, stay, re-argument, amendment, alteration or rehearing has been filed, such relief shall have been denied or resulted in no modification of such order, and the time to take any further such actions shall have expired, in any case as a result of which such order or judgment shall have become final in accordance with Bankruptcy Rule 8002; provided that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure, as made applicable by Federal Rule of Bankruptcy Procedure 9024, may be filed shall not by itself cause such order to not be a Final Order.

68. "First Day Declarations" means (i) the *Declaration of Matthew Frank in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 23], dated September 22, 2025; (ii) the *Supplemental Declaration of Matthew Frank in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 152], dated October 15, 2025; and (iii) the *Second Supplemental Declaration of Matthew Frank in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 161], dated October 17, 2025.

69. "General Unsecured Claim" means any Claim against any Debtor that is not an Administrative Claim, DIP Claim, Priority Tax Claim, Other Secured Claim, Other Priority Claim, DOJ Claim, CVS Prepetition Claim, Intercompany Claim, or otherwise secured by collateral or entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court.

70. "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

71. "Heartland Entities" means non-Debtors Heartland Healthcare Services, LLC, Heartland Pharmacy of Maryland, LLC, and Heartland Pharmacy of PA, LLC.

72. "Heartland Interests" means the interests OCR Services holds in Heartland Healthcare Services, LLC together with any interests that OCR Services, LLC may hold in the other Heartland Entities.

73. "Holder" means any Entity holding a Claim against or Interest in any Debtor.

74. "Insured Claim" means any Claim arising from acts, events or occurrences prior to the Effective Date asserted against any Debtor, any Debtor's current or former employee arising from acts, events or occurrences during the course and scope of such employee's employment with the Debtor or the CVS Entities, or any third-parties any Debtor is obligated to indemnify under agreements or applicable law, as to which costs of defense or liability are covered by an existing Insurance Policy or program (including the Captive Insurance Program). A list of all known Insured Claims that arose prior to the Petition Date for which a Proof of Claim has been filed is attached as Exhibit D to this Plan.

75. "Insurance Policy" means any policy or agreement for insurance coverage or insurance-related services to, on behalf of, for the benefit of, or that includes coverage for any Debtor or any Property of any Debtor, including but not limited to property, automobile, professional liability, employment practices liability, workers' compensation, cyber

liability, crime, directors' and officers' liability and umbrella excess liability insurance, and the Captive Insurance Program.

76. "Insurer" means any entity, including any insurer or other provider of insurance-related services, that issued, underwrote, or is otherwise responsible for any Insurance Policy, or related agreement providing coverage to, or for the benefit of, the Debtors, their Affiliates, or Insiders prior to the Effective Date, and that provides coverage, or extended reporting (tail) coverage in connection therewith.

77. "Intercompany Claim" means any Claim held by one Debtor against another Debtor.

78. "Interest" means any equity security in any Debtor, including all membership interests and other equity interests.

79. "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

80. "Liquidating Debtor" means each "Liquidating Debtor" identified in Exhibit C to this Plan.

81. "Liquidating Debtor Excluded Assets" means all Property of the Liquidating Debtors that is an Excluded Asset under and as defined in Section 2.02 of the APA.

82. "Non-Released Obligations" means (i) any post-petition obligations arising in the ongoing ordinary course of business between the Debtors and the CVS Entities, including without limitation any rights to or arising under the shared services described in the First Day Declarations (including insurance obligations and any agreements related to the foregoing), all of which shall continue in accordance with their terms; (ii) all post-closing obligations under the Sale Documents; (iii) the Administrative Claims of the CVS Entities arising post-petition in the ordinary course of the Debtors' business; and (iv) any rights of the Debtors with respect to Insured Claims under an Insurance Policy issued by the CVS Entities.

83. "OCR Services" means OCR Services, LLC, a Delaware limited liability company and Debtor in these Chapter 11 Cases.

84. "Omnicare" means Omnicare, LLC, a Delaware limited liability company and the lead Debtor in the Chapter 11 Cases.

85. "Other Priority Claim" means any Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim, DIP Claim, or Priority Tax Claim.

86. "Other Secured Claim" means any Secured Claim that is not a DIP Claim.

87. "Petition Date" means September 22, 2025, the date on which the Debtors commenced the Chapter 11 Cases.

88. "Plan" means this *Joint Chapter 11 Plan of Reorganization and Liquidation of Omnicare, LLC and Its Debtor Affiliates*, as it may be amended, modified, or supplemented from time to time.

89. "Plan Administrator" means the person or entity designated by the Debtors (subject to the reasonable consent of the Committee and the CVS Entities) in the Plan Supplement to serve as plan administrator on and after the Effective Date in accordance with this Plan, and any successor thereto appointed in accordance with this Plan.

90. "Plan Administrator Duties" means the duties of the Plan Administrator specified in Article IV.E.2 of this Plan.

91. "Plan Supplement" means the compilation of documents and forms of documents, schedules, and exhibits to this Plan, which shall be consistent with the CVS Agreement and otherwise reasonably acceptable to the Committee and the Purchaser, to be Filed with the Bankruptcy Court prior to the Confirmation Hearing, as may be amended from time to time, including the identity of the Plan Administrator and the material terms of the Plan Administrator's engagement.

92. "Priority Tax Claim" means a Claim of a Governmental Unit entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

93. "Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

94. "Professional" means an Entity (other than an ordinary course professional): (i) employed, or proposed to be employed prior to the Confirmation Date, in the Chapter 11 Cases pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

95. "Professional Compensation Claim" means a Claim by a Professional for allowance of compensation or reimbursement of expenses for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

96. "Professional Fee Bar Date" means 60 days after the Effective Date.

97. "Proof of Claim" means a proof of claim Filed or deemed Filed against any Debtor in the Chapter 11 Cases.

98. "Property" means, with respect to any Debtor, all property of such Debtor and of such Debtor's Estate, including all property of such Estate within the meaning of section 541 of the Bankruptcy Code, wherever located and by whomever held.

99. "Purchased Assets" means the Property purchased by the Purchaser pursuant to the Sale Documents.

100. "Purchaser" means GenieRx Holdings LLC, a Delaware limited liability company, and any Buyer Designee(s) (as such term is defined in the APA).

101. "Rejection Bar Date" means the date that is 30 days after the effective date of rejection of an Executory Contract or Unexpired Lease, which rejection is either set forth in a Final Order of the Bankruptcy Court or pursuant to the Plan or Confirmation Order.

102. "Related Party" means each of, and in each case in their capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders, funds, predecessors, successors, assigns, representatives, subsidiaries, affiliates, partners, principals, employees, agents, trustees, counsel, consultants, and other professionals and advisors, and any such Related Party's respective heirs, executors, estates, and nominees.

103. "Released Party" means each of the following, solely in their capacity as such: (i) each Debtor and its respective Estate; (ii) the CVS Entities (other than CVS Caremark Indemnity Ltd.); (iii) the DIP Lender; (iv) the Committee and its members (solely in their capacity as such); and (v) the Purchaser.

104. "Releasing Party" means each of the following, solely in their capacity as such: (i) each Debtor and its respective Estate; and (ii) the Plan Administrator, in each case solely in its capacity as a representative of the Debtors and their Estates. For the avoidance of doubt, no Holder of a Claim or Interest, and no non-Debtor (including any Related Party of any Debtor, the CVS Entities, the DIP Lender, or the Committee or its members), grants any release pursuant to Article VIII.A of this Plan, and the releases set forth in Article VIII.A are granted solely by the Debtors and their Estates pursuant to section 1123(b)(3)(A) of the Bankruptcy Code.

105. "Reorganized Debtor" means each Debtor, on and after the Effective Date, that is reorganized pursuant to and under this Plan.

106. "Reorganizing Debtor" means each Debtor listed on Exhibits A or B to this Plan.

107. "Reorganizing Debtor Excluded Assets" means all Property of the Reorganizing Debtors that would be "Excluded Assets" under and as defined in Section 2.02 of the APA; provided, however, Reorganizing Debtor Excluded Assets shall not include (i) the assets of each Reorganizing Debtor listed in APA Section 2.02(a)(14)(i); (ii) the assets of each Class 6 Reorganizing Debtor listed in APA Section 2.02(a)(14)(ii); and (iii) the assets of each Reorganizing Debtor listed in APA Section 2.02(a)(20), other than the Heartland Interests, which shall be treated as Wind-Down Assets.

108. "Sale" means the sale of all or substantially all of the Debtors' Property pursuant to section 363 of the Bankruptcy Code, as approved by the Sale Order.

109. "Sale Documents" means the APA, the Amended APA, the Transition Services Agreement, the Sale Order, and all other agreements, instruments, and documents related thereto.

110. "Sale Order" means the Bankruptcy Court's *Order (I) Approving the Asset Purchase Agreement Between the Debtors and GenieRx Holdings LLC; (II) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Interests and*

*Encumbrances; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (IV) Granting Related Relief* [Docket No. 835], entered on May 13, 2026.

111. "Secured Claim" means a Claim secured by a valid, perfected, and enforceable Lien on property in which a Debtor's Estate has an interest, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code.

112. "Supplier" means any landlord, suppliers of goods or services, or trade creditor of any Debtor or its Estate.

113. "Transition Services" means all mutually agreed post-closing transition services to be provided by CVS Pharmacy and Omnicare to the Purchaser to facilitate the orderly transfer of the Business, the Purchased Assets, and the Assumed Liabilities (each as defined in the APA) to the Purchaser as set forth in the Transition Services Agreement.

114. "Transition Services Agreement" means the Transition Services Agreement to be entered into by and among Purchaser, CVS Pharmacy, and Omnicare and all exhibits, schedules, and other documents related thereto.

115. "Unexpired Lease" means a lease to which a Debtor is a party that has not expired as of the Petition Date and is subject to assumption or rejection under section 365 of the Bankruptcy Code.

116. "Unimpaired" means, with respect to a Claim against or an Interest in a Debtor, not impaired within the meaning of section 1124 of the Bankruptcy Code.

117. "Wind-Down Assets" means all Property vesting or re-vesting in Omnicare's Estate pursuant to this Plan, which shall include (i) any Excluded Assets, (ii) any Cash remaining in the Estates immediately prior to the Effective Date, (iii) any Causes of Action not released or transferred pursuant to the Sale or this Plan, (iv) any other Property of the Debtors' Estates not otherwise sold, transferred, or distributed to Purchaser pursuant to the Sale or this Plan, (v) the Heartland Interests, and (vi) any proceeds of any of the foregoing Property.

118. "Workers' Compensation Order" means the Order (I) Modifying the Automatic Stay, (II) Authorizing the Payment of Workers' Compensation Claims in the Ordinary Course of Business Effective as of the Petition Date and (III) Granting Related Relief [Docket No. 180].

### B. Rules of Interpretation

Unless otherwise specified, all Article or Section references in this Plan are to the respective Article or Section of this Plan. The words "herein," "hereof," "hereto," and "hereunder" refer to this Plan as a whole. The words "includes" and "including" are not limiting. For purposes herein: (i) each term, whether stated in the singular or plural, shall include both; (ii) any reference to a contract or document means such document substantially in such form; (iii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (iv) captions and headings

are inserted for convenience only and are not intended to affect interpretation; and (v) any term used in capitalized form not otherwise defined but used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned in the Bankruptcy Code or the Bankruptcy Rules.

### C. Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### D. Reference to Monetary Figures

All references in this Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

### E. Controlling Document

In the event of an inconsistency between this Plan and the Disclosure Statement, this Plan shall control. In the event of an inconsistency between this Plan and the Plan Supplement, the Plan Supplement shall control. In the event of an inconsistency between this Plan, the Plan Supplement, and the Confirmation Order, the Confirmation Order shall control.

Notwithstanding the foregoing and except as explicitly provided otherwise, nothing in this Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order shall be deemed to amend or supersede any rights, obligations, or duties of any party under the Sale Documents.

## II. TREATMENT OF ADMINISTRATIVE CLAIMS, DIP CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Compensation Claims), DIP Claims, and Priority Tax Claims have not been classified for purposes of voting or receiving Distributions under this Plan and are excluded from the Classes of Claims and Interests set forth in Article III of this Plan.

### A. Administrative Claims

Except with respect to Professional Compensation Claims subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code, and except to the extent that a Holder of an Allowed Administrative Claim agrees to less favorable treatment, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim on or as soon as reasonably practicable after the latest of: (i) the Effective Date; (ii) the date on which such Administrative Claim becomes an Allowed Administrative Claim; and (iii) such other date as may be agreed to by the Plan Administrator and the Holder of such Allowed Administrative Claim.

Requests for payment of Administrative Claims must be Filed with the Bankruptcy Court and served on the Plan Administrator no later than the Administrative Claims Bar Date, except as otherwise provided in this Plan, the Confirmation Order, or the Bar Date Order. Any Administrative Claim not timely Filed shall be forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtors, the Estates, or the Plan Administrator.

In accordance with Article VII.D of this Plan, no Distributions shall be made from Wind-Down Assets on account of an Administrative Claim that is an Allowed Insured Claim for which insurance is available under one of the Insurance Policies until exhaustion of all remedies with respect to such Insurance Policy. To the extent applicable, the automatic stay and/or discharge injunction shall be deemed modified immediately upon the Effective Date to permit the Holders of Insured Claims, including but not limited to those listed on Exhibit D, to pursue their Claims in accordance with the provisions of Articles VI.F and VII.D of this Plan.

The CVS Entities will not receive any Distributions on account of any Administrative Claims arising before the Petition Date, including on account of the CVS Prepetition Claims (as applicable), unless and until all Allowed General Unsecured Claims and the DOJ Claim are satisfied in full. The CVS Entities' Administrative Claims that constitute Non-Released Obligations shall be paid in full along with all other Administrative Claims as provided herein.

## B. DIP Claims

On the Effective Date, all DIP Claims shall be indefeasibly paid in full in Cash from the proceeds of the Sale or other sources of consideration available under this Plan. Upon payment in full of the DIP Claims, all Liens and security interests of the DIP Lender in or against any Property shall be released, terminated, and discharged.

## C. Professional Compensation Claims

### 1. Final Fee Applications

All Professionals requesting compensation or reimbursement of expenses for services rendered prior to the Effective Date shall File and serve applications for final allowance no later than the Professional Fee Bar Date. Objections to such applications must be Filed within 21 days after the applicable application is Filed. The Plan Administrator shall pay Allowed Professional Compensation Claims in Cash on or as soon as reasonably practicable after such Claims are Allowed by Final Order.

### 2. Post-Effective Date Fees and Expenses

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, may employ and pay any Professional without any further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, the Liquidating Debtors, their Estates, and the Plan Administrator shall have no responsibility, liability, or obligation to pay any professional employed by the Reorganized Debtors.

## D. Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, at the election of the Debtors or the Plan Administrator, in full and final satisfaction of such Allowed Priority Tax Claim: (i) Cash in an amount equal to such Allowed Priority Tax Claim, payable on or as soon as

reasonably practicable after the Effective Date; or (ii) such other treatment as may be required pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

**E. Statutory Fees**

All fees due and payable pursuant to 28 U.S.C. § 1930(a)(6) shall be paid by the Debtors or the Plan Administrator when due until the earliest to occur of: (i) conversion of the applicable Chapter 11 Case; (ii) dismissal of the applicable Chapter 11 Case; or (iii) entry of a final decree closing the applicable Chapter 11 Case.

## III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A. Classification of Claims and Interests

Pursuant to section 1122 of the Bankruptcy Code, Claims (other than Allowed Administrative Claims, DIP Claims, Professional Compensation Claims, Priority Tax Claims, and Statutory Fees) are classified for all purposes, including, without limitation, voting, Confirmation and Distribution pursuant to this Plan, as set forth herein. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving Distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

As explained in Article III.G, this Plan is premised upon the consolidation of the Debtors solely for purposes of voting on, Confirmation of, and Distributions under the Plan.

The following table summarizes the classification and treatment of Claims and Interests under this Plan:

| Class | Claim/Interest Type | Status |
|---|---|---|
| 1 | Other Secured Claims | Unimpaired / Deemed to Accept |
| 2 | Other Priority Claims | Unimpaired / Deemed to Accept |
| 3 | General Unsecured Claims | Impaired / Entitled to Vote |
| 4 | DOJ Claim | Impaired / Entitled to Vote |
| 5 | CVS Prepetition Claims | Impaired / Entitled to Vote |
| 6 | Surviving Equity Interests | Unimpaired / Deemed to Accept |
| 7 | Other Equity Interests | Impaired / Deemed to Reject |

The Debtors reserve all rights to amend, supplement, or modify the classification of Claims and Interests prior to or at the Confirmation Hearing, consistent with applicable law.

### B. Treatment of Claims and Interests

#### 1. Class 1 – Other Secured Claims

Class 1 consists of all Other Secured Claims against any Debtor. Each Holder of an Allowed Class 1 Other Secured Claim shall receive, at the option of the Debtors (or the Plan Administrator after the Effective Date), one of the following treatments in full and final satisfaction of such Allowed Claim: (i) Cash in an amount equal to such Allowed Claim, including any postpetition interest required to be paid pursuant to section 506(b) of the Bankruptcy Code, payable on or as soon as reasonably practicable after the Effective Date in accordance with Article VI.B of this Plan; (ii) reinstatement of such Allowed Claim pursuant to section 1124(2) of the Bankruptcy Code; or (iii) such other treatment that renders such Claim Unimpaired pursuant to section 1124

of the Bankruptcy Code. Class 1 is Unimpaired, and Holders of Allowed Class 1 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote.

2. Class 2 – Other Priority Claims

Class 2 consists of all Other Priority Claims against any Debtor. Each Holder of an Allowed Class 2 Other Priority Claim shall receive Cash in an amount equal to such Allowed Claim on or as soon as reasonably practicable after the Effective Date. Class 2 is Unimpaired, and the Holders of Allowed Class 2 Claims are conclusively deemed to have accepted this Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote. CVS Prepetition Claims are excluded from Class 2, and the CVS Entities shall receive no payment on account of Other Priority Claims.

3. Class 3 – General Unsecured Claims

Class 3 consists of all General Unsecured Claims against any Debtor. Class 3 is Impaired. Holders of Allowed Class 3 Claims are entitled to vote to accept or reject this Plan.

Each Holder of an Allowed General Unsecured Claim shall receive on each applicable Distribution Date its Pro Rata share of the distributable value of the Estates remaining after payment of Allowed Administrative Claims, DIP Claims, Allowed Class 1 Claims, and Allowed Class 2 Claims until such Holder has been paid in full on account of its Allowed General Unsecured Claim. The CVS Prepetition Claims are excluded from Class 3 and the CVS Entities shall receive no payment on account of General Unsecured Claims.

In accordance with Article VII.D of this Plan, no Distributions shall be made from Wind-Down Assets on account of a General Unsecured Claim that is an Allowed Insured Claim until exhaustion of all remedies with respect to such Insurance Policy. To the extent applicable, the automatic stay and/or discharge injunction shall be deemed modified immediately upon the Effective Date to permit the Holders of Insured Claims, including but not limited to those listed on Exhibit D, to pursue their Claims in accordance with the provisions of Articles VI.F and VII.D of this Plan. For the avoidance of doubt, nothing in this Plan modifies the Workers' Compensation Order, which order shall remain in place after the Effective Date, as applicable.

4. Class 4 – DOJ Claim

Class 4 consists solely of the DOJ Claim. The DOJ Claim shall be Allowed in the amount of $952,717,824.19. The DOJ Claim is not subordinated under section 510 of the Bankruptcy Code or otherwise. Class 4 is Impaired. The Holder of the Allowed Class 4 DOJ Claim is entitled to vote to accept or reject this Plan.

Pursuant to the DOJ Agreement and the CVS Agreement, the DOJ has agreed to defer receipt of Distributions on account of the DOJ Claim until all Allowed General Unsecured Claims in Class 3 have been paid in full. Following payment in full, or the establishment of a reserve for payment in full of all such other Allowed General Unsecured Claims, the DOJ, in accordance with Article VI.D of this Plan, shall be entitled to receive Distributions in an amount up to the full amount of the DOJ Claim.

5. Class 5 – CVS Prepetition Claims

Class 5 consists of all CVS Prepetition Claims against the Debtors, including the Claims asserted in the proof of claim Filed by CVS Pharmacy on January 30, 2026, in the amount of $54,450,254.00 [Claim No. 332]. Pursuant to the CVS Agreement and the DOJ Agreement, the CVS Entities shall not receive any Distribution from the Estates or the Plan Administrator on account of any CVS Prepetition Claims unless and until (a) the DOJ Claim and (b) all other Allowed Claims (including, for the avoidance of doubt, all Allowed General Unsecured Claims) have been satisfied in full. Pursuant to the CVS Agreement, the CVS Entities will not assert, and shall not be entitled to, any Claim against the Debtors or the Debtors' Estates on account of any payments required to be made to the DOJ pursuant to the DOJ Agreement or the CVS Agreement. Class 5 is Impaired, and Holders of Class 5 CVS Prepetition Claims are entitled to vote on this Plan.

6. Class 6 – Surviving Equity Interests

Class 6 consists of all Interests in the Reorganizing Debtors listed on Exhibit A. Holders of Class 6 Interests shall retain such Interests after the Effective Date. Class 6 is Unimpaired, and the Holders of Class 6 Interests are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Class 6 Interests are not entitled to vote to accept or reject the Plan.

7. Class 7 – Other Equity Interests

Class 7 consists of all Interests in any Debtor listed in Exhibits B or C to this Plan. As of the Effective Date, Class 7 Interests will be canceled, released, and extinguished, and will be of no further force or effect. Holders of Class 7 Interests will not receive any Distribution under the Plan and are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Class 7 Interests are not entitled to vote to accept or reject the Plan.

## C. Special Provision Governing Unimpaired Claims

Except as otherwise specifically provided in this Plan, nothing herein shall be deemed to affect, diminish, or impair the legal, equitable, and contractual rights to which the Holders of Unimpaired Claims are entitled.

## D. Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court for voting purposes as of the date of the Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### E. Acceptance or Rejection of this Plan

1. Acceptance by an Impaired Class

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

2. Presumed Acceptance of this Plan

Classes 1, 2, and 6 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

3. Presumed Rejection of this Plan

Class 7 is Impaired under this Plan and will receive no Distributions and, thus, is conclusively presumed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.

4. Voting Classes

Classes 3, 4, and 5 are Impaired under this Plan and are entitled to vote to accept or reject this Plan.

### F. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b)

The Debtors shall seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

### G. Limited Consolidation for Voting, Confirmation, and Distribution Purposes Only

Solely for purposes of voting on, Confirmation of, and Distributions under the Plan, the Debtors and their Estates shall be deemed consolidated as follows: (i) all Claims against any Debtor shall be deemed to be Claims against a single consolidated estate of all Debtors, and duplicative Claims Filed against more than one Debtor arising from or relating to the same underlying obligation (including Claims based on guarantees or other forms of derivative liability) shall be treated as a single Claim against the consolidated Debtors for voting and Confirmation purposes; (ii) each Class of Claims and Interests shall be treated as a single Class with respect to all Debtors, and the Holders of Claims in each such Class shall vote and otherwise participate in Confirmation as a single constituency across all Debtors; (iii) Confirmation requirements under section 1129 of the Bankruptcy Code, including the acceptance requirements of sections 1129(a)(8), 1129(a)(10), and 1129(b), shall be determined on a consolidated basis with respect to

all Debtors collectively, rather than on a Debtor-by-Debtor basis; and (iv) a single set of Classes and a single disclosure statement, ballot, and voting tabulation shall apply to all Debtors.

The limited consolidation provided for in this Plan is a limited consolidation for voting, Confirmation, and distribution purposes only and does not constitute a substantive consolidation of the Debtors or their Estates for any other purpose. To the extent necessary, the Plan shall serve as a motion seeking, and entry of the Confirmation Order shall constitute, the approval, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, effective as of the Effective Date, of such limited consolidation. The limited consolidation provided for in the Plan shall not (i) affect the legal or corporate structure of any of the Debtors, (ii) cause the merger or consolidation of any legal entities, or (iii) affect the mutuality requirement for purposes of setoff under section 553 of the Bankruptcy Code.

Other than as set forth in the Sale Documents and herein, neither the Purchaser nor the Reorganized Debtors shall have any liability under any circumstances for any Claim or any Distributions to be made under this Plan, including but not limited to the DOJ Claim.

## IV. MEANS FOR IMPLEMENTATION OF THE PLAN

### A. General Settlement of Claims and Interests

The provisions of this Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of this Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), subject to the requirements of Article VII herein, but without any further notice to, action by, or order or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against the Debtors and Causes of Action against other Persons.

### B. Sale Process, Reorganization and Liquidation

Pursuant to the Sale Order, the Debtors were authorized to sell the Purchased Assets to the Purchaser under the APA in exchange for $250 million in cash and assumption of the Assumed Liabilities, which are subject to the relevant limits set forth in the APA. The Sale Order provides that, subject to the mutual agreement of the Debtors and the Purchaser, the APA may be modified to provide for the sale or transfer of equity interests in one or more subsidiaries of Omnicare, including by means of a plan of reorganization or liquidation, so long as such modification does not have a material adverse effect on the Debtors' Estates. Accordingly, the Debtors and the Purchaser have determined and agreed that certain of the Debtors will be reorganized and directly or indirectly acquired by the Purchaser under this Plan, and the Debtors and the Purchaser expect that agreement to be memorialized in the Amended APA.

All proceeds from the Sale, all Excluded Assets, all Reorganizing Debtor Excluded Assets, and any other Property of the Debtors or the Debtors' Estates not acquired by the Purchaser

pursuant to the Sale Documents or vesting in a Reorganized Debtor pursuant to this Plan shall vest in Omnicare's Estate on the Effective Date as Wind-Down Assets and be administered by the Plan Administrator for the benefit of all holders of Claims and Interests treated under this Plan.

The Interests in the Reorganizing Debtors classified in Class 6 of this Plan are held by other Reorganizing Debtors. Such Interests are not impaired under the Plan, and those Reorganized Debtors will continue to be owned by the same Reorganizing Debtor that held such Interests as of Petition Date, provided, however, that the Debtors may, at any time prior to two Business Days before the Effective Date and with the Purchaser's consent, direct that the existing equity interests of any Class 6 Reorganizing Debtor shall be cancelled with new equity interests for any such Class 6 Reorganizing Debtor to be issued to another Reorganizing Debtor as of the Effective Date.

Except as otherwise expressly provided in this Plan, and excluding any Reorganizing Debtor Excluded Assets (which shall vest in Omnicare's Estate as Wind-Down Assets), all Property of each such Reorganizing Debtor shall re-vest in the applicable Reorganized Debtor on the Effective Date, free and clear of all Claims, Liens, charges, and other encumbrances.

The Interests in the Reorganizing Debtors classified in Class 7 of this Plan are impaired under this Plan. All Interests in the Reorganizing Debtors classified in Class 7 of this Plan will be deemed cancelled on the Effective Date, and new Interests representing 100% of the Interests in those Reorganizing Debtors will be issued to Purchaser or its designee on the Effective Date. Except as otherwise expressly provided in this Plan, and excluding any Reorganizing Debtor Excluded Assets (which shall vest in Omnicare's Estate as Wind-Down Assets), all Property of each such Reorganizing Debtor shall re-vest in the applicable Reorganized Debtor on the Effective Date, free and clear of all Claims, Liens, charges, and other encumbrances.

The Interests in the Liquidating Debtors are classified in Class 7 of this Plan and are impaired under this Plan. All Interests in Liquidating Debtors will be deemed cancelled on the Effective Date. All Liquidating Debtor Excluded Assets shall vest in Omnicare's Estate as Wind-Down Assets on the Effective Date (or in the case of Omnicare, re-vest in Omnicare on the Effective Date) and will be administered by the Plan Administrator for the benefit of all holders of Claims and Interests treated under this Plan.

The classification of a Debtor as a Liquidating Debtor, Class 6 Reorganizing Debtor, or Class 7 Reorganizing Debtor (with the exception of Omnicare) may be amended by the Debtors with the consent of the Purchaser at any time prior to filing of the Plan Supplement, wherein the identities of any Debtors that have been reclassified shall be disclosed.

### C. Licenses and Permits

All licenses, permits and similar rights held by any Reorganizing Debtor shall re-vest in the applicable Reorganized Debtor and remain in full force and effect to the maximum extent permitted under applicable law, including but not limited to any state pharmacy licenses, state compounding licenses, state controlled substance registrations, Drug Enforcement Administration registrations, state automated dispensing system licenses, state wholesale drug distributor licenses, state manufacturer licenses, Food and Drug Administration repackager registration, accreditations, National Provider Identifier numbers, NCPDP provider IDs, Medicare Part B (DMEPOS) provider agreements including continued use of all supplier numbers, Medicare Part B (Mass Immunizer)

provider agreements including continued use of all supplier numbers, and state Medicaid provider agreements including continued use of all provider numbers. All licenses, permits and similar rights held by any Liquidating Debtor relating to any of the Purchased Assets shall be transferred to Purchaser and remain in full force and effect to the maximum extent permitted under applicable law.

To facilitate the closing of the Sale and the occurrence of the Effective Date, the Debtors anticipate that they will need to submit a number of federal, state and local license and permit-related applications and notices, and to execute various additional agreements in connection with the Sale. Those documents may include, among other things, a Successor Liability With Joint And Several Liability Agreement as provided under California Code of Regulations, Title 22, § 51000.32, in connection with the change of control of the Debtors' Med-Cal provider number and National Provider Identifier to Purchaser during the change of ownership. The Debtors have determined, in their business judgment, that it is in the best interests of the Debtors and their Estates to submit such applications and notices and to execute such agreements in order to facilitate the closing of the Sale and the occurrence of the Effective Date of the Plan, and that the risk of any liability associated with such actions is remote and outweighed by the benefits of doing so. The Confirmation Order shall constitute authorization for the Debtors, in their business judgment, to make such applications and execute such documents as are necessary and reasonable to facilitate the closing of the Sale and the Effective Date of this Plan.

### D. Transition Services

Section 6.17 of the APA contemplates that the Purchaser, Omnicare, and CVS Pharmacy will negotiate in good faith a Transition Services Agreement to be entered into as of the closing of the Sale. It is contemplated that under the Transition Services Agreement, CVS Pharmacy and Omnicare will provide, or cause to be provided, certain mutually agreed post-closing transition services to the Purchaser to facilitate the orderly transfer of the Business, the Purchased Assets, and the Assumed Liabilities (each as defined in the APA) to the Purchaser, while preserving Omnicare's continued access to the resources necessary for the administration of the Plan and the wind-down of its Estate. The duration and cost of each transition service will be set forth in the Transition Services Agreement. For the avoidance of doubt, pursuant to the Transition Services Agreement, the Purchaser shall provide the Plan Administrator with continuing access to books, records and information necessary for the Plan Administrator to perform their duties and obligations under this Plan, and also for continuing access to employees and information as necessary in connection with Insured Claims, until such time that the Plan Administrator and Purchaser enter an agreement providing the Plan Administrator with such access.

### E. Plan Administrator

#### 1. Appointment of the Plan Administrator

On the Effective Date, the Plan Administrator identified in the Plan Supplement shall be appointed to serve as the plan administrator in accordance with this Plan and pursuant to the Confirmation Order. The Plan Administrator shall be selected by the Debtors with the consent of CVS Health and the Committee (in each case, whose consent shall not be unreasonably withheld). The Plan Administrator shall be the Liquidating Debtors' sole officer and shall be deemed the Liquidating Debtors' Estates' representative in accordance with section 1123 of the Bankruptcy

Code and shall have all of the powers, authority, and responsibilities specified in this Plan, including the powers of a trustee under sections 323, 704, and 1106 of the Bankruptcy Code to act on behalf of the Estates, provided, however, the Plan Administrator shall only serve as representative of the Reorganized Debtors' Estates as explicitly provided for in this Plan. The identity of the Plan Administrator and the material terms of the Plan Administrator's engagement, including the Plan Administrator's compensation, shall be disclosed in the Plan Supplement. The Plan Administrator shall be responsible for Filing all required monthly operating reports and all subsequent quarterly reports on behalf of the Liquidating Debtors from and after the Effective Date.

2. <u>Authority and Powers of the Plan Administrator</u>

On and after the Effective Date, the Plan Administrator shall be authorized and directed, subject to the requirements of Article VII of this Plan, without any further notice to or order of the Bankruptcy Court, to:

i. receive, hold, preserve, administer, and liquidate the Wind-Down Assets;

ii. make Distributions to Holders of Allowed Claims in accordance with this Plan;

iii. investigate, prosecute, settle, compromise, abandon, or otherwise dispose of Causes of Action preserved under this Plan;

iv. object to, compromise, settle, or otherwise resolve Disputed Claims, subject to the consultation rights of the Creditor Representative set forth herein;

v. wind down the Liquidating Debtors' Estates following the closing of the Sale, including filing all required federal, state, and local tax returns and paying all taxes required to be paid by the Liquidating Debtors;

vi. retain professionals, employees, and consultants as necessary to carry out the Plan Administrator's duties under this Plan, and pay the documented fees and expenses thereof from the Wind-Down Assets without further order of the Bankruptcy Court;

vii. effect the dissolution of any Liquidating Debtor entity in accordance with this Plan and applicable law;

viii. maintain the books, records, and accounts of the Liquidating Debtors;

ix. monitor and, if necessary, pursue recoveries under the Insurance Policies for the benefit of Insured Claims;

x. manage and oversee the provision of Transition Services and all other post-Effective Date obligations required to be provided by Omnicare and the other Liquidating Debtors under the Sale Documents;

xi. take all actions necessary to administer the Liquidating Debtors' Chapter 11 Cases through entry of a final decree; and

xii. prepare and file all necessary documents, reports, and pleadings to close the Reorganized Debtors' Chapter 11 Cases consistent with Art. IV.F.2 of this Plan.

For the avoidance of doubt, neither the Purchaser nor Reorganizing Debtors shall have any responsibility for or any obligations with respect to the Plan Administrator Duties, all of which shall be the responsibility of the Plan Administrator.

**F. Corporate Existence**

1. Liquidating Debtors

Omnicare shall remain in existence after the Effective Date to (i) receive, hold, preserve, administer, and liquidate Wind-Down Assets; (ii) facilitate recoveries under the Insurance Policies, and otherwise address the Debtors' insurance coverage claims and related matters under the direction of the Plan Administrator, (iii) pay the reasonable fees and expenses of the Plan Administrator's professionals, employees, and consultants; (iv) otherwise facilitate the Claims reconciliation process; and (v) provide the Transition Services and ensure compliance with all other post-Effective Date obligations of the Liquidating Debtors under the Sale Documents. The other Liquidating Debtors' Chapter 11 Cases are expected to be closed following the Effective Date.

Upon entry of an Order closing the estate of each Liquidating Debtor's Chapter 11 Case, unless otherwise specified by the Plan Administrator, each such Debtor shall be deemed dissolved automatically and without further action under applicable law, regulation, order, or rule, including any action by the Plan Administrator, stockholders, members, managers, or similar governing body of any Debtor. No further corporate or limited liability company action, no filing of a certificate of dissolution, articles of dissolution, or similar instrument under non-bankruptcy law, and no consent, vote, or approval of the Plan Administrator or any equity holder, member, manager, director, officer, or other governing body of any Liquidating Debtor shall be required to effect the dissolution of any Liquidating Debtor. The Confirmation Order and the Order closing the Chapter 11 Case shall be deemed sufficient and conclusive evidence of the dissolution of the applicable Liquidating Debtor for all purposes under applicable federal, state, and local law, and shall be accepted as evidence of dissolution of the applicable debtor by any governmental, regulatory, or taxing authority and by any other Entity or Person, and the Plan Administrator is authorized (but not required) to file or record the Confirmation Order and/or the Order closing the Chapter 11 Case with any applicable Secretary of State or other governmental office to evidence such dissolution. Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Liquidating Debtors shall not be entitled to a discharge.

2. Reorganizing Debtors

On and after the Effective Date, each Reorganizing Debtor shall continue in existence as a Reorganized Debtor and may be operated by the Purchaser as a going-concern business, in accordance with applicable law and such organizational documents as may be amended or restated

in connection with the Plan. The organizational documents of each Reorganized Debtor shall be modified or deemed to be modified to include a provision pursuant to and only to the extent required by Bankruptcy Code section 1123(a)(6), prohibiting the issuance of non-voting equity securities. Each Reorganized Debtor shall be entitled to the benefits of the discharge provided under section 1141(d)(1) of the Bankruptcy Code. The governance, management, and operation of each Reorganized Debtor after the Effective Date shall be as provided in the Plan Supplement.

On the Effective Date, the Chapter 11 Case of each Reorganizing Debtor shall be deemed closed, and notwithstanding anything to the contrary in the Plan or Disclosure Statement, the Reorganized Debtors shall have no obligation to file post-confirmation operating reports and shall not incur any post-Effective Date fees under 28 U.S.C. § 1930(a)(6). On the Effective Date, the Plan shall be fully administered with respect to each Reorganized Debtor's Chapter 11 Case. On the Effective Date, the Purchased Assets shall be transferred to the Purchaser, and the Purchaser shall assume operation thereof pursuant to the terms of the Plan. The Plan Administrator shall be responsible for the claims administration process as set forth more fully herein. To the extent necessary, the Plan shall serve as the Post-Confirmation Report and Application for Final Decree pursuant to Local Bankruptcy Rule 3022-1 seeking entry of a final decree for each Reorganizing Debtor's Chapter 11 Case. Entry of the Confirmation Order shall constitute approval of each such application pursuant to Bankruptcy Rule 3022 and Local Bankruptcy Rule 3022-1 and serve as the final decree for each Reorganizing Debtor's Chapter 11 Case.

### G. Cancellation of Interests

On the Effective Date, except to the extent otherwise provided in the Plan or the Sale Documents, all notes, instruments, certificates, and other documents evidencing Claims against or Interests in a Class 7 Debtor shall be cancelled and of no further force or effect, without any further act or action under any applicable agreement, law, regulation, order, or rule.

### H. Transfer of Business Employees

Prior to the Effective Date, Business Employees employed by the Debtors (other than Business Employees employed by Omnicare of Nevada, LLC) shall be transferred to the Employer Debtor Entity which shall become the employer of record of such Business Employees while they continue to provide services to the Debtors until the Effective Date. Upon the Effective Date, the issued and outstanding equity of the Employer Debtor Entity shall be deemed cancelled, and new Interests representing 100% of the Interests in the Employer Debtor Entity will be issued to Purchaser or its designee in accordance with this Plan, thereby effecting the transfer of the Business Employees to the Purchaser. On the Effective Date, Best Care LTC Acquisition Company LLC shall be deemed renamed to "Omnicare Payroll, LLC," if and to the extent not renamed earlier. Upon the Effective Date, the employment of Business Employees employed by Omnicare of Nevada, LLC shall be terminated and such employees will be offered employment by LTC Pharmacy of Nevada, LLC, a newly-formed direct or indirect subsidiary of the Purchaser.

For the avoidance of doubt, neither the Purchaser nor the Reorganized Debtors shall have any liability or obligations with respect to any awards to be paid under any key employee incentive plan or key employee retention plan approved in connection with the Chapter 11 Cases.

### I. Vesting of Assets

Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Excluded Assets shall vest in Omnicare's Estate as Wind-Down Assets, to be administered by the Plan Administrator in accordance with the Plan free and clear of all Claims, Liens, charges, and other encumbrances.

Except as otherwise provided in this Plan or the Confirmation Order, and excluding any Reorganizing Debtor Excluded Assets (which shall vest in Omnicare's Estate as Wind-Down Assets), all Property of each Reorganizing Debtor shall vest in the applicable Reorganized Debtor on the Effective Date, free and clear of all Claims, Liens, charges, and other encumbrances.

Notwithstanding the foregoing, the Heartland Interests shall not vest or re-vest in OCR Services, any other Reorganized Debtor or the Purchaser, but shall instead be treated as Wind-Down Assets.

### J. Wind-Down Expenses

All costs and expenses incurred on or after the Effective Date by the Liquidating Debtors or Plan Administrator related to the implementation and administration of this Plan, including but not limited to the fees and expenses of the Plan Administrator and their professionals, employees, and consultants, are entitled to and shall be paid in priority to any Allowed Claims or Interests treated under Article II and Article III of this Plan.

### K. Section 1146 Exemption from Certain Transfer Taxes and Recording Fees

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to any other Person pursuant to, in contemplation of, or in connection with the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales and use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment. The appropriate state or local governmental officials or agents shall be directed to forgo the collection of any such tax, recordation fee, or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

## V. <u>TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

### A. Assumption and Assignment of Executory Contracts and Unexpired Leases

Any Executory Contract or Unexpired Lease not otherwise assumed, rejected, or transferred pursuant to this Plan or pursuant to a separate order of the Bankruptcy Court prior to the Effective Date shall be, subject to the terms of the Sale Documents, either: (i) assumed and assigned to the Purchaser pursuant to the Sale Documents (with respect to any Executory Contract or Unexpired Lease of a Liquidating Debtor), or (ii) assumed as of the Effective Date (with respect to any Executory Contract or Unexpired Lease of a Reorganizing Debtor). Unless rejected by a Reorganizing Debtor under this Plan or pursuant to another Court order, all Executory Contracts and Unexpired Leases of Reorganized Debtors are being assumed under this Plan. A list of any Executory Contracts and Unexpired Leases to be rejected by a Reorganizing Debtor under the Plan

will be included in the Plan Supplement. In accordance with section 2.02(b) of the APA, the Debtors reserve the right to modify the list (with the consent of the Purchaser) at any time prior to two Business Days before the Effective Date.

In connection with the Sale, the Debtors Filed and served Assumption Notices identifying each Executory Contract and Unexpired Lease that may be assumed and assigned in connection with the Sale with the applicable respective Cure amounts [Docket No. 789, 798, 991, 1164]. Under the Sale Order, (i) counterparties that did not timely object were deemed to have consented to the assumption and assignment at the proposed Cure amounts and are forever barred from asserting additional Cure amounts or defaults, and (ii) the payments of Cure Costs (as defined in the Sale Order) is appropriate and deemed to fully satisfy the Debtors' obligations under section 365(b) of the Bankruptcy Code.

For the avoidance of doubt, payments of Cure Costs (as defined in the Sale Order) by the Purchaser with respect to the Executory Contracts and Unexpired Leases (i) to be assumed by the Reorganized Debtors under the Plan and (ii) assumed and assigned to the Purchaser under the Sale Documents shall be collectively subject to the $1,000,000 Cure limit set forth in Section 2.05(d) of the APA.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan, and payment of any Cures relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

**B. Claims Based on Rejection of Executory Contracts and Unexpired Leases**

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Bankruptcy Court, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Plan Administrator, the Purchaser, or any of their respective Property unless a Proof of Claim is Filed with the Bankruptcy Court by the Rejection Bar Date; *provided that*, any such Claims arising from the rejection of an Unexpired Lease shall be subject to the cap on rejection damages imposed by section 502(b)(6) of the Bankruptcy Code. Any Allowed Claims arising from the rejection of an Executory Contract or Unexpired Lease shall be classified and treated as General Unsecured Claims in Class 3.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable.

Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order that are not timely Filed by the Rejection Bar Date will be Disallowed automatically, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Plan Administrator, the Purchaser, or any of

their respective Property. The claims agent or the clerk of the Bankruptcy Court, as applicable, is authorized and directed to expunge any such untimely Filed Claim without further order of the Bankruptcy Court.

### C. Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated, or is rejected or repudiated under this Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, unless such Executory Contract or Unexpired Lease has been previously assumed by the Debtors.

### D. Reservation of Rights

Nothing contained in this Plan, the Plan Supplement, the Sale Documents, or the Confirmation Order shall constitute an admission that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors, the Estates, or the Plan Administrator have any liability thereunder.

### E. Nonoccurrence of Effective Date

If the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases under Bankruptcy Code section 365(d)(4), unless such deadline(s) have expired.

### F. Insurance Policies

With respect to any Insured Claim that arises from an event prior to the Effective Date, (i) the Insured Claim shall continue to be covered and paid in accordance with the Insurance Policies following the Plan's Effective Date; (ii) the Debtors' existing rights under those Insurance Policies shall be preserved; (iii) each of the Debtors' rights, title, and interests as an insured under any Insurance Policy in effect as of the Effective Date shall vest in the Plan Administrator, and such rights, title, and interests shall not be modified absent further order of the Bankruptcy Court unless such modification has no material negative impact on the availability of insurance to pay Claims asserted in the Debtors' Chapter 11 Cases or related costs of defense; (iv) the Debtors, the Plan Administrator, the Liquidating Debtors, and the Reorganizing Debtors, as applicable, shall retain any and all defenses to any Insured Claim; and (v) the Insured Claims shall be subject to the resolution procedures set forth in Article VII.D.

## VI. PROVISIONS GOVERNING DISTRIBUTIONS

### A. Distributions on Account of Claims Allowed as of the Effective Date

Except as otherwise provided herein or as ordered by the Bankruptcy Court, on or as soon as reasonably practicable after the Effective Date, the Plan Administrator shall make initial Distributions to Holders of Allowed Claims that are entitled to receive Distributions under this Plan. Distributions to Holders of Allowed Class 3 General Unsecured Claims shall be made in accordance with the distribution priority set forth in Article III.B.3 of this Plan. Distributions to the Holder of the Allowed Class 4 DOJ Claim shall be made in accordance with the Distribution priority set forth in Article III.B.4 of this Plan. Distributions (if any) to Holders of Allowed Class 5 CVS Prepetition Claims shall be made in accordance with the priority set forth in Article III.B.5 of this Plan.

For the avoidance of doubt and other than as set forth in the Sale Documents and herein, neither the Purchaser nor the Reorganized Debtors shall have any liability under any circumstances for any Claim or any Distributions to be made under this Plan, including but not limited to the DOJ Claim.

### B. Distributions on Account of Claims Allowed After the Effective Date

Distributions with respect to a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made to such Holder as soon as reasonably practicable, but in any event no later than 60 days after the date on which such Disputed Claim becomes an Allowed Claim.

### C. Delivery of Distributions and Undeliverable Distributions

All Distributions shall be made to the Holder of each Allowed Claim at the address of such Holder as listed on the Proof of Claim Filed by such Holder, or if none, at the address set forth in the Debtors' Schedules. If any Distribution is returned as undeliverable, no further Distribution shall be made to such Holder unless and until the Plan Administrator is notified of such Holder's current address. Amounts in respect of undeliverable Distributions shall be held in trust for the applicable Holder. If any Holder fails to claim an undeliverable Distribution within 180 days, such Distribution shall be deemed irrevocably forfeited and any forfeited Distributions shall revest in Omnicare as Wind-Down Assets.

### D. Disputed Claims Reserve

Prior to making any Distribution, the Plan Administrator shall establish a reserve for the full amount of all Disputed Claims (or such lesser amount as the Bankruptcy Court may authorize pursuant to section 502(c) of the Bankruptcy Code). The Plan Administrator shall not be required to reserve any amounts for any Claims to the extent that they are payable from proceeds of one of the Insurance Policies. The Plan Administrator shall not make Distributions on account of Disputed Claims until such Claims have been Allowed by Final Order or otherwise resolved.

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or Distribution provided under this Plan shall be made on account of such Claim, Proof of Claim, or such disputed portion thereof unless and until the Disputed Claim becomes an Allowed Claim. For the avoidance of doubt, the Plan Administrator shall make a Distribution (if any) with respect to the non-disputed portion of such Disputed Claim to which such Holder is entitled under this Plan.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. With respect to any Disputed Claims that becomes an Allowed Claim after the Effective Date, the Plan Administrator shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan, unless otherwise provided by order of the Bankruptcy Court, as soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, but in any event no later than 60 days after the date on which such Disputed Claim becomes an Allowed Claim. No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final Distribution is made on account of such Claim unless this Plan provides otherwise.

**E. Claims Paid or Payable by Third Parties**

The Debtors or the Plan Administrator, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Plan Administrator, provided that the Debtors or the Plan Administrator, as applicable, shall provide notice of such reduction to the Holder of such Claim. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Plan Administrator on account of such Claim, such Holder shall, within fourteen days of receipt thereof, repay or return the distribution to the Plan Administrator, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Plan Administrator annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is fully repaid.

**F. No Reserve for Insured Claims**

The Plan Administrator shall not be required to establish or maintain any reserve on account of any Insured Claim to the extent that the Plan Administrator reasonably believes such Claim is covered by and payable from proceeds of one or more of the Insurance Policies.

The portion of any Allowed Insured Claim that is ultimately not covered by an Insurance Policy will entitle the Holder of such Insured Claim to a Distribution pursuant to Article VI.A of this Plan. Such Holder shall only be entitled to a Distribution if the portion of the Insured Claim that is not covered by an Insurance Policy is an Allowed Claim.

**G. Fractional and *De Minimis* Claims**

Notwithstanding anything herein to the contrary, the Plan Administrator shall not be required to make Distributions in Cash or payments of less than $10.00. Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $10.00 shall be forever barred from asserting such Claim against the Debtors, the Reorganized Debtors, the Estates, the Purchaser, the Plan Administrator, or any of their property.

### H. Compliance with Tax Requirements

In connection with this Plan and all Distributions made hereunder, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed by any Governmental Unit. The Plan Administrator is authorized to take all actions necessary to comply with such withholding and reporting requirements.

### I. Tax Identification, KYC and OFAC Certifications

Any Holder entitled to receive a Distribution under the Plan shall, upon request of the Plan Administrator, deliver: (i) a completed IRS Form W-9 or appropriate IRS Form W-8, as applicable; (ii) a true and accurate certification that the Holder is not a Person or Entity with whom it is illegal for a U.S. person to do business under Office of Foreign Assets Control sanctions regulations and/or the list of Specially Designated Nationals and Blocked Persons; and (iii) "know your customer" information of the Holder. If a Holder fails to satisfy a request within 30 days, a second request shall be sent. If the Holder fails to comply within 90 days after such second request, the Holder shall be deemed to have forfeited its right to receive Distributions, and any forfeited Distributions shall revest in the Debtors as Wind-Down Assets. The Plan Administrator may serve as disbursing agent for the purposes of making Distributions under the Plan. The disbursing agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

### J. Setoffs and Recoupment

Except as otherwise provided in this Plan, the Plan Administrator may, but shall not be required to, set off against or recoup from any Claim and the Distributions to be made in respect of such Claim, any Causes of Action that the Debtors may hold against the Holder of such Claim, to the extent such setoff or recoupment is permitted under applicable law. Notwithstanding anything to the contrary herein, the Plan Administrator shall not be entitled to exercise set off or recoupment rights on account of Avoidance Claims against any Supplier or its Related Parties that are being released pursuant to Article VIII of this Plan.

### K. No Interest on Claims

Unless otherwise specifically provided for in this Plan or the Confirmation Order, postpetition interest will not accrue or be paid on Claims, and no Claim holder will be entitled to interest accruing on or after the Petition Date on any Claim. Similarly, unless otherwise specifically provided for in this Plan or the Confirmation Order, postpetition interest will not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

## VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

### A. Allowance of Claims

After the Effective Date, the Plan Administrator shall have and retain any and all rights and defenses that the Debtors or the Estates had with respect to any Claim or Interest immediately prior to the Effective Date, including, without limitation, with respect to any Disputed Claim, including the Debtors' rights pursuant to section 502(d) of the Bankruptcy Code.

### B. Claims Objections

The Plan Administrator shall have the exclusive right to File objections to Claims through and including the date that is 180 days after the Effective Date, subject to extensions by the Bankruptcy Court for cause. The Creditor Representative shall have the right to participate in the Claims reconciliation and claim objection process, and the Plan Administrator shall consult with the Creditor Representative on a bi-weekly basis with respect to the Claims reconciliation process and claim objections so long as the Committee or the Creditor Representative continues to exist. The Plan Administrator shall provide the Creditor Representative with no less than five days' notice of (i) any claim objection, (ii) the proposed allowance of any Claim (other than Insured Claims) (a) in excess of $25,000, or (b) where the disputed amount exceeds $25,000, or (iii) the proposed allowance of any claim that is expected to materially and adversely impact recoveries on account of the Allowed Class 3 Claims. In the event that the Creditor Representative disagrees with the Plan Administrator's decision to object to, consent to, or otherwise agree to the allowance of a Claim and such disagreement remains unresolved after such notice period, the Creditor Representative shall have the right to appear and be heard in connection with such objection to, or proposed allowance of, such Claim.

Any objections to Claims shall be served upon the Holder of the Claim to which such objection relates. The Plan Administrator may compromise, settle, or otherwise resolve any Disputed Claim without further approval of the Bankruptcy Court, but in all cases subject to providing the Creditor Representative with required notice, as detailed above. Except as otherwise specifically provided in this Plan, after the Effective Date, the Plan Administrator shall have the sole authority to: (i) file, withdraw, or litigate to judgment, objections to Claims or Interests; (ii) settle or compromise any Disputed Claim; and (iii) administer and adjust the Claims Register to reflect any settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court. Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Plan Administrator without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### C. Estimation of Claims

The Debtors or the Plan Administrator, as applicable, may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code, for any reason, regardless of whether a prior objection to such Claim has been Filed. The Bankruptcy Court shall retain jurisdiction to estimate any such Disputed Claim, including during the pendency of any objection to such Claim or the appeal of any such objection. Notwithstanding any provision otherwise herein, a Claim that has been expunged or Disallowed from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court or as otherwise provided pursuant to a Final Order of the Bankruptcy Court (including any stipulation). In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.

**D. Insured Claims**

The automatic stay and/or discharge injunction shall be modified immediately upon the Effective Date to (i) permit the Holders of Insured Claims to continue to prosecute their Insured Claims in a court of competent jurisdiction to a final judgment and to collect any judgment solely from the proceeds of the Insurance Policies (unless Article VI.F applies), and (ii) allow, but not require, the Debtors or the Plan Administrator (as applicable), the Debtors' insurers, or the Debtors' third party administrators to administer, handle, defend, settle, and/or pay the Insured Claim in accordance with the terms of this Plan. For the avoidance of doubt, most Holders of Insured Claims do not have a direct right of action against any Insurer (including the Captive Insurance Program). The Debtors, the Liquidating Debtors, the Reorganizing Debtors, or the Plan Administrator, as applicable, shall continue to have access to the Captive Insurance Program with respect to the Insured Claims that had deductibles or self-insured retention obligations payable by the Captive Insurance Program in the ordinary course of business prior to the Effective Date.

To the extent a Holder of an Insured Claim elects to continue to prosecute their Insured Claim pursuant to the terms of this Plan, and the Debtor against which an Insured Claim is asserted is a (i) Reorganized Debtor or (ii) Liquidating Debtor whose case is closed, Omnicare and/or the Plan Administrator may be substituted as the nominal defendant(s) in such action without any further order of the Bankruptcy Court.

After the Effective Date, the Plan Administrator shall be responsible for monitoring and pursuing pre-Effective Date insurance coverage claims on behalf of the Debtors' Estates (both Liquidating Debtors and Reorganizing Debtors), including the investigation, prosecution, settlement, compromise, abandonment, or other disposition of such claims.

Nothing in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors, the Estates, the Plan Administrator, or any other Entity may hold against any Insurer, nor shall anything in the Plan constitute or be deemed a waiver by the Debtors, the Estates, the Plan Administrator, any Insurer, or any other Entity of any defenses under applicable bankruptcy and non-bankruptcy law, including coverage defenses, that such Entity may hold. All rights, defenses, and obligations of the Debtors, the Plan Administrator, the Estates, and the Insurers under Insurance Policies are expressly preserved.

To the extent one or more Insurers satisfies an Insured Claim (if and to the extent adjudicated by a court of competent jurisdiction, Allowed by the Bankruptcy Court, or agreed upon between the Holder of such Claim (on the one hand) and the Debtors or Plan Administrator (on the other)), and the Holder of such Insured Claim filed a Proof of Claim, such Proof of Claim may be expunged from the Claims Register without the need for a Claim objection to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**E. No Distributions Pending Allowance**

Notwithstanding any other provision of this Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to the disputed portion of such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

### F. Disallowance of Late Claims

Except as provided herein or otherwise agreed to by the Debtors or the Plan Administrator, as applicable, any Holder of a Claim Filed via Proof of Claim after the applicable Bar Date shall not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

### G. Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan, without any interest to be paid on account of such Claim.

### H. Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests. Consistent with the Plan, the disbursing agent shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date. The disbursing agent shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### I. Distribution Free and Clear

Except as otherwise provided in the Plan, any Distribution or transfer made under the Plan, including Distributions to any Holder of an Allowed Claim, shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to the Plan.

### J. Reimbursement or Contribution

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (i) such Claim has been adjudicated as non-contingent or (ii) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## VIII. RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A. Debtor Releases

**Pursuant to sections 1123(b)(3)(A) and 1123(b)(3)(B) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party shall be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released by the Releasing Parties (and by no other Person or Entity) from any and all Claims,**

**Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that any Releasing Party would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of its respective Estate, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Sale, the business or contractual arrangements between any Debtor and any Released Party, the DIP Facility, the DOJ Agreement, the CVS Agreement, the Plan, or any related agreement; provided, however, that the foregoing release shall not release (i) any Non-Released Obligations, or (ii) any Released Party from any Claims arising from such Released Party's fraud, willful misconduct, or gross negligence as determined by a Final Order. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any party with post-effective date obligations under this Plan or any document, instrument, or agreement executed to implement this Plan from those post-Effective Date obligations.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth above, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Releases: (i) are in exchange for the good and valuable consideration provided by the Released Parties; (ii) are a good faith settlement and compromise of the Claims or Causes of Action released thereunder; (iii) are in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests; (iv) are fair, equitable, and reasonable; (v) are given and made after due notice and opportunity for hearing; and (vi) are a bar to any of the Debtors, their Estates, or the Plan Administrator asserting any Claim or Cause of Action released pursuant to the releases of the Released Parties.**

### B. Intercompany Release

**Pursuant to section 1123(b) of the Bankruptcy Code, and effective as of the Effective Date, each of the Debtors, on behalf of itself, its Estate, the Plan Administrator, and the Reorganized Debtors, as applicable, shall be deemed to absolutely, unconditionally, irrevocably, and forever release, waive, and discharge any and all Intercompany Claims, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, asserted or unasserted, accrued or unaccrued, due or to become due, in law, equity, or otherwise, that any Debtor or its Estate has, had, or may have against any other Debtor (or its Estate, the Plan Administrator, or the Reorganized Debtors, as applicable), based on or arising out of any act, omission, transaction, agreement, event, or other occurrence taking place or existing on or before the Effective Date. On and after the Effective Date, no Intercompany Claim shall be enforced against any Debtor, the Plan Administrator, the Reorganized Debtors, or any of their respective property, and each Holder of an Intercompany Claim is permanently enjoined from asserting or otherwise pursuing any such Intercompany Claim.**

### C. Supplier Release

**Effective on and after the Effective Date, any Supplier shall be released from any and all Claims and Causes of Action arising under chapter 5 of the Bankruptcy Code (including**

**Claims under sections 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code) that any Debtor or its Estate may hold against such suppliers to the extent such Claims were not otherwise transferred pursuant to the APA or are revesting in a Reorganized Debtor. This release does not extend to any other Claims the Estates may hold against such Suppliers or any Claims against parties that are not Suppliers.**

**D. Exculpation**

**The Exculpated Parties shall neither have nor incur any liability to any Holder of a Claim or Interest for any postpetition act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Plan, this Disclosure Statement, the DOJ Agreement, the CVS Agreement, the Sale, or any other document created in connection with the Chapter 11 Cases; provided that the foregoing exculpation shall have no effect on the liability of any Exculpated Party that results from any act or omission determined in a Final Order to have constituted actual fraud, gross negligence, or willful misconduct.**

**E. Injunction**

**1. Liquidating Debtors. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests or Causes of Action relating to a Liquidating Debtor are enjoined, from and after the Effective Date until the entry of a final decree closing the Chapter 11 Case of the applicable Liquidating Debtor (or, if earlier, the dissolution of such Liquidating Debtor or such other date as may be ordered by the Bankruptcy Court), from taking any of the following actions against any Liquidating Debtor, any Liquidating Debtor's Estate, the Exculpated Parties (with respect to the Exculpated Parties, solely to the extent of the exculpation provided pursuant to Article VIII.D of the Plan), the Wind-Down Assets, or the Plan Administrator (as applicable), in each case solely to the extent such action would interfere with the administration, liquidation, or Distribution of the Wind-Down Assets or the wind-down of the Liquidating Debtors' Estates under this Plan: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests or Causes of Action; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities or the Wind-Down Assets, other than through the Claims reconciliation and Distribution procedures set forth in this Plan, on account of or in connection with or with respect to any such Claims or Interests or Causes of Action; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or their property on account of or with respect to any such Claims or Interests or Causes of Action; or (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests or Causes of Action. For the avoidance of doubt, and notwithstanding anything to the contrary in this Plan, the foregoing injunction (x) is in aid of the administration of the Wind-Down Assets only, (y) shall not constitute or be deemed a discharge of any Liquidating Debtor under section 1141(d) of the Bankruptcy Code, and (z) shall not bar the commencement or continuation of any action or proceeding against a Liquidating Debtor from and after the closing of its Chapter 11 Case.**

**2. Reorganizing Debtors. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests or Causes of Action relating to the Reorganizing Debtors that are discharged pursuant to section 1141(d)(1) of the Bankruptcy Code and Article XII.A of this Plan, released pursuant to Article VIII of this Plan, or subject to exculpation pursuant to Article VIII.D of this Plan are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Reorganizing Debtors, the Reorganized Debtors, the Reorganizing Debtors' Estates, or the Exculpated Parties (with respect to the Exculpated Parties, solely to the extent of the exculpation provided pursuant to Article VIII.D of the Plan), in each case on account of or in connection with or with respect to any such discharged, released, or exculpated Claims, Interests, or Causes of Action: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests or Causes of Action; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests or Causes of Action; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or their property on account of or in connection with or with respect to any such Claims or Interests or Causes of Action; or (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities or their property in connection with or with respect to any such Claims or Interests or Causes of Action. The injunction set forth in this paragraph is the permanent injunction described in section 524(a) of the Bankruptcy Code with respect to the discharge granted to each Reorganized Debtor under section 1141(d)(1) of the Bankruptcy Code and Article XII.A of this Plan, and otherwise enforces the releases and exculpation set forth in Article VIII of this Plan in accordance with their terms.**

**Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, , or Exculpated Parties, as applicable, that is released pursuant to Article VIII of this Plan, subject to exculpation pursuant to Article VIII.D of this Plan, or subject to the injunction in Article VIII.E, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action (a) is colorable and is not discharged, released, or subject to exculpation under this Plan, or (b) to the extent of the Liquidating Debtors' injunction in Article VIII.E.1, would not interfere with the administration, liquidation, or Distribution of the Wind-Down Assets or the wind-down of the Liquidating Debtors' Estates under this Plan, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Liquidating Debtor, or Exculpated Party. For the avoidance of doubt, except as otherwise provided, this paragraph applies solely to Claims and Causes of Action that are released or exculpated under this Plan and shall not be construed to enjoin, bar, or require Bankruptcy Court authorization for the commencement or continuation of any Claim or Cause of Action that is not released or exculpated under this Plan. The injunction in this Plan shall extend to any successors and**

**assigns of the Debtors and the Reorganized Debtors and their respective property and interests in property. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.**

### F. No Successor Liability

On and after the Effective Date, the Purchaser and the Reorganized Debtors, and each of their respective successors and assigns, shall not have or incur, and are hereby released and exculpated from, any liability, obligation, Claim, or Cause of Action of any kind arising prior to the Effective Date, whether known or unknown, on any theory of successor or transferee liability, de facto merger, mere continuation, continuity of enterprise, substantial continuity, alter ego, veil piercing, or any similar theory or basis of derivative or vicarious liability, in each case arising from, relating to, or in connection with the Debtors, the Chapter 11 Cases, or the consummation of the transactions contemplated by this Plan and the Sale Documents. Without limiting the foregoing, the Purchaser shall not, by reason of its acquisition of the Purchased Assets or its consummation of the Sale or the transactions contemplated by this Plan, be deemed to (i) be a successor to any Debtor, any Debtor's Estate, or any CVS Entity; (ii) have, de facto or otherwise, merged or consolidated with or into any Debtor or any CVS Entity; (iii) be a continuation or substantial continuation, or be holding itself out as a mere continuation, of any Debtor, any CVS Entity, or any enterprise or business operation of any Debtor or any CVS Entity, or (iv) have assumed or otherwise become liable for any Claim against, or Interest in, any Debtor or any CVS Entity. All Holders of Claims and Interests, and all other Persons and Entities, are permanently enjoined from asserting, commencing, or continuing any Claim or Cause of Action against the Purchaser or Reorganized Debtors, or any of their respective successors and assigns, or against any of the Purchased Assets, on any theory of successor or transferee liability described in this Article VIII.F.

Notwithstanding the foregoing, and with all rights specifically reserved by the Purchaser, the Debtors, and any interested party, nothing herein is intended to, nor shall it be deemed to: (i) preclude the National Labor Relations Board or any court from finding that any purchaser of Omnicare of Nevada, LLC's assets, or any entity that employs the employees formerly employed by Omnicare of Nevada, LLC, is subject to collective bargaining obligations under the National Labor Relations Act in accordance with *NLRB v. Burns International Security Services*, 406 U.S. 272 (1972) and applicable law; or (ii) preclude the National Labor Relations Board, or the Pharmacy Guild and the International Association of Machinists as charging parties, from pursuing or participating in proceedings concerning unfair labor practice charges that were filed before the Effective Date against Omnicare of Nevada, LLC solely for purposes of liquidating the Claims asserted therein; *provided, however*, that any monetary award, settlement, or other remedies resulting from such proceedings shall be paid or satisfied only in accordance with the terms of this Plan and shall not otherwise be enforceable against Purchaser, any Reorganized Debtor, or any of their respective assets on or after the Effective Date.

### G. Term of Injunctions or Stays

Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until

the Effective Date. Upon the Effective Date, all injunctions or stays contained in this Plan or the Confirmation Order shall be in full force and effect in accordance with their terms.

### H. Protection Against Discriminatory Treatment

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Persons, including Governmental Units, shall not discriminate against the Debtors, the Reorganized Debtors, the Plan Administrator, or the Purchaser or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors, the Reorganized Debtors, the Plan Administrator, or the Purchaser or another Person with whom such entities have been associated, solely because the Debtors have been debtors under Chapter 11, insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or not paid a debt that is dischargeable in the Chapter 11 Cases.

### I. Release of Liens

Except as otherwise provided in this Plan or any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Plan Administrator, Purchaser, or Debtor, as may be applicable. For the avoidance of doubt, except as otherwise provided in this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or Filing updated schedules or statements typically Filed pursuant to the Uniform Commercial Code.

### J. CVS Releases and Claims

Nothing herein shall reduce or limit in any way the releases of the CVS Entities provided in the CVS Agreement or DOJ Agreement, all of which remain in full force and effect pursuant to this Plan.

Article VIII of this Plan shall not release any post-petition obligations arising in the ongoing ordinary course of business between the Debtors and the CVS Entities, including without limitation any rights to or arising under the shared services described in the First Day Declarations (including insurance obligations and any agreements related to the foregoing), all of which shall continue in accordance with their terms. In addition, nothing herein shall release or waive the Administrative Claims of the CVS Entities arising post-petition in the ordinary course of the Debtors' business, which shall be paid in full under this Plan.

# IX. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

## A. Conditions Precedent to the Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived pursuant to Article IX.B:

1. The Bankruptcy Court shall have entered an Order approving the Disclosure Statement, in a form reasonably acceptable to the Committee, as containing adequate information within the meaning of Bankruptcy Code section 1125;

2. The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtors, the Purchaser, the CVS Entities, the Committee, and the DIP Lender, and such Confirmation Order shall not have been stayed, modified, or vacated on appeal;

3. The Sale shall have closed, or be capable of closing substantially simultaneously with the Effective Date;

4. The DOJ Agreement shall have been approved by a Final Order of the Bankruptcy Court and shall be effective pursuant to its terms;

5. The CVS Agreement shall have been approved by a Final Order of the Bankruptcy Court and shall be effective pursuant to its terms;

6. The Plan Supplement, in form and substance reasonably acceptable to the Debtors, the Purchaser, the CVS Entities, the Committee, and the DIP Lender, shall have been Filed with the Bankruptcy Court;

7. The Amended APA and the Transition Services Agreement, each in form and substance reasonably acceptable to the Debtors, the Purchaser, the CVS Entities, the Committee, and the DIP Lender, shall have been Filed with and approved by the Bankruptcy Court; and

8. All other actions and documents necessary to implement this Plan shall have been effected or executed and delivered.

## B. Waiver of Conditions Precedent

The Debtors, with the consent of each of the DIP Lender, the CVS Entities, the Purchaser, and the Committee, may waive any of the conditions to the Effective Date set forth in Article IX.A (other than entry of the Confirmation Order) at any time, without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

## C. Effect of Non-Occurrence of Conditions to the Effective Date

The Plan may be revoked or withdrawn by the Debtors at any time, subject to the consent rights of the DIP Lender, the Purchaser, and the Committee. If the Sale does not close by the date set forth in the Sale Order, as may be extended, the Plan shall be deemed withdrawn and revoked.

If the Plan is revoked or withdrawn, or if the Confirmation Order is vacated: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan shall be deemed null and void; and (iii) nothing contained in the Plan shall constitute a waiver or release of any Claims, Interests, or Causes of Action.

## X. RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2. Decide and resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation, and Distribution;

3. Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses of Professionals;

4. Resolve any matters related to: (i) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure amount arising therefrom; and/or (ii) any dispute regarding whether a contract or lease is or was executory or expired;

5. Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

6. Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

7. Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8. Adjudicate, decide, or resolve any and all matters related to the Sale;

9. Adjudicate, decide, or resolve any and all matters related to the DOJ Agreement;

10. Adjudicate, decide, or resolve any and all matters related to the CVS Agreement;

11. Enter and implement orders as may be necessary to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, and other agreements created in connection with this Plan;

12. Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

13. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

14. Hear and determine any matter arising in connection with or related to this Plan, the Plan Supplement, the Sale Documents, the Disclosure Statement, or the Confirmation Order;

15. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16. Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising therefrom;

17. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

18. Hear and determine any Causes of Action that may be brought by the Plan Administrator;

19. Consider any modification of this Plan pursuant to section 1127 of the Bankruptcy Code;

20. Enforce all orders previously entered by the Bankruptcy Court; and

21. Hear any other matter over which the Bankruptcy Court has jurisdiction.

## XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A. Modification and Amendment

Subject to the limitations contained in the Bankruptcy Code and the consent rights of the DIP Lender, the Purchaser, and the Committee, the Debtors reserve the right to modify this Plan at any time prior to or after Confirmation, but prior to the substantial consummation of this Plan, subject to the requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

### B. Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### C. Revocation or Withdrawal of Plan

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date, subject to the consent rights of the DIP Lender, the Purchaser, and the Committee. If the Debtors revoke or withdraw this Plan prior to the Effective Date, this Plan shall be deemed null and void, and nothing herein shall be deemed to constitute a waiver or release of any Claims by or against any Debtor or any other person or to prejudice in any manner the rights of any Debtor or other person in any further proceedings.

## XII. MISCELLANEOUS PROVISIONS

### A. Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Plan Administrator, the Holders of Claims or Interests, the Released Parties, and each of their respective successors and assigns. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

### B. Dissolution of Committee

On the Effective Date, the Committee shall dissolve and its members shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided* that on and after the Effective Date, the Committee will continue in existence and have standing and a right to be heard for the limited purpose of (i) pursuing applications for allowance of fees and reimbursement of expenses for the Committee and its Professionals, and (ii) participating in any appeals (a) of the Confirmation Order, or (b) in which the Committee is a named party. The Plan Administrator shall be responsible for paying the reasonable fees and expenses incurred by the Committee on or after the Effective Date solely in connection with (x) applications for payment of any fees or expenses for services rendered prior to the Effective Date that are Allowed by the Bankruptcy Court; (y) responding to objections to its applications for payment of fees and expenses rendered prior to the Effective Date; and (z) participating in appeals of the Confirmation Order or in appeals in which the Committee is a named party.

### C. Creditor Representative

The Committee shall select a Creditor Representative, whose appointment shall be authorized in the Confirmation Order. The reasonable fees and expenses of the Creditor Representative shall be paid from the Wind-Down Assets as a Plan expense without further order of the Bankruptcy Court. From and after the Effective Date, the Creditor Representative shall perform such oversight, consultation, and other functions as specified in the CVS Agreement and this Plan with respect to the administration of the Estates and the Claims reconciliation process, including consultation with the Plan Administrator regarding Claims resolution and provision of

bi-weekly updates and information on the Claims reconciliation process, and including the rights to notice, consultation, and to appear and be heard as specified in Article X.B of this Plan.

The Debtors shall include in the Plan Supplement the identity of the Person or Entity that the Committee has selected as the Creditor Representative. The selection of the Creditor Representative shall be approved in the Confirmation Order, and such selection shall be effective as of the Effective Date.

**D. Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930 shall be paid for each quarter (including any fraction thereof) until the applicable Chapter 11 Case is converted, dismissed, or closed, whichever occurs first. All such fees accruing after the Effective Date attributable to the Liquidating Debtors shall be the responsibility of the Plan Administrator.

**E. Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a Plan document provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof.

**F. Notices**

All notices, requests, and demands to or upon the Debtors, the Plan Administrator, the Purchaser, the DIP Lender, the Committee, or the Creditor Representative shall be in writing and shall be deemed to have been duly given or made when actually delivered or received. Notices shall be served on:

If to the Debtors:

Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
Attn: Vincent E. Lazar (vlazar@jenner.com)
Derek L. Wright (dwright@jenner.com)
Angela M. Allen (aallen@jenner.com)

Haynes and Boone, LLP
2801 N. Harwood Street, Ste. 2300
Dallas, TX 75201
Attn: Charles A. Beckham, Jr. (charles.beckham@haynesboone.com)
Ian T. Peck (ian.peck@haynesboone.com)
Martha Wyrick (martha.wyrick@haynesboone.com)

If to the Purchaser:

BakerHostetler LLP
200 South Orange Avenue

Suite 2300
Orlando, FL 32801
Attn: Andrew V. Layden (alayden@bakerlaw.com)
Elizabeth A. Green (egreen@bakerlaw.com)
Douglas S. Eingurt (deingurt@bakerlaw.com)

If to the DIP Lender:

Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019
Attn: Robert M. Hirsh (robert.hirsh@nortonrosefulbright.com)
Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com)
Jamie Copeland (james.copeland@nortonrosefulbright.com)

If to the Committee or the Creditor Representative:

Herbert Smith Freehills Kramer (US) LLP
1177 Avenue of the Americas
New York, NY 10036
Attn: Adam C. Rogoff (adam.rogoff@hsfkramer.com)
Rachael Ringer (rachael.ringer@hsfkramer.com)
Megan Wasson (megan.wasson@hsfkramer.com)
Andrew Citron (andrew.citron@hsfkramer.com)

Vartabedian Katz Hester & Haynes LLP
2200 Ross Avenue, Suite 4600E
Dallas, Texas 75201
Attn: Martin A. Sosland (martin.sosland@vkhh.law)
Jeff P. Prostok (jeff.prostok@vkhh.law)
Candice Carson (candice.carson@vkhh.law)

If to the CVS Entities:

Foley & Lardner LLP
321 N. Clark St., Suite 3000
Chicago, IL 60654
Attn: Geoffrey S. Goodman (ggoodman@foley.com)

**G. Successors and Assigns**

This Plan shall be binding upon and inure to the benefit of the Debtors, the Estates, the Plan Administrator, and their respective successors and assigns, including any trustee appointed pursuant to chapter 7 of the Bankruptcy Code.

### H. Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code and any applicable non-bankruptcy law, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under this Plan, and, therefore, will have no liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on this Plan.

### I. Reservation of Rights

Except as expressly set forth in this Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense of the Debtors or the Plan Administrator. The Plan Administrator shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and defenses as fully as if the Chapter 11 Cases had not been commenced.

### J. The United States

Except as otherwise provided in the DOJ Agreement, as to the United States, its agencies or any instrumentalities thereof (collectively, the "United States"), notwithstanding anything contained in the Plan, Plan Supplement, the Sale Documents, or Confirmation Order to the contrary, nothing shall:

1. limit or be intended to or be construed to bar the United States from pursuing any police or regulatory action or any criminal action;

2. discharge, release, exculpate, impair or otherwise preclude: (a) any obligation or liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (b) any Claim of the United States arising on or after the Confirmation Date; (c) any liability of the Debtors under police or regulatory statutes or regulations to the United States as the owner, lessor, lessee or operator of property that such Entity owns, operates or leases after the Effective Date, if any; or (d) any liability owed to the United States, including but not limited to any liabilities arising under the federal environmental, criminal, civil or common law, by any non-Debtor, including the released parties and exculpated parties; *provided*, *however*, that the foregoing shall not (1) diminish the scope of any exculpation to which any Person is entitled under section 1125(e) of the Bankruptcy Code or (2) limit the scope of discharge granted to the Reorganizing Debtors under sections 524 and 1141 of the Bankruptcy Code;

3. enjoin or otherwise bar the United States from asserting or enforcing, outside the Bankruptcy Court, any obligation or liability described in the preceding clause (2); *provided*, *however*, that the non-bankruptcy rights and defenses of all Entities with respect to (a)–(d) in clause (2) are likewise fully preserved;

4. affect any right of setoff or recoupment of the United States against any of the Reorganized Debtors; *provided*, *however*, that the rights and defenses (other than any rights or defenses based on language in the Plan or the Confirmation Order that may extinguish or limit setoff or recoupment rights) of the Debtors with respect thereto are fully preserved;

5. confer exclusive jurisdiction upon the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

6. authorize the assumption, assignment, sale or other transfer of any federal (a) grants, (b) grant funds, (c) contracts, (d) agreements, (e) awards, (f) task orders, (g) property, (h) intellectual property, (i) patents, (j) leases, (k) certifications, (l) applications, (m) registrations, (n) billing numbers, (o) national provider identifiers, (p) provider transaction access numbers, (q) licenses, (r) permits, (s) covenants, (t) inventory, (u) guarantees, (v) indemnifications, (w) data, (x) records, or (y) any other interests belonging to the United States (collectively, "Federal Interests") without compliance with all terms of the Federal Interests and with all applicable non-bankruptcy law;

7. be interpreted to set cure amounts related to any Federal Interests or to require the United States to novate, approve or otherwise consent to the assumption, assignment, sale or other transfer of any Federal Interests;

8. constitute or be deemed an approval or consent by the United States;

9. waive, alter, or otherwise limit the United States' property rights;

10. be construed as a compromise or settlement of any liability, Claim, Cause of Action or interest of the United States; or

11. modify the scope of section 525 of the Bankruptcy Code.

Further, in the event of an inconsistency or conflict between any provision of the Plan Documents or any provisions of this Plan, and the DOJ Agreement, then the provisions of the DOJ Agreement shall control. In the event of an inconsistency or conflict between any provisions of the Plan Documents and any provision of this Plan, then, as to the United States, the provisions of this Plan and federal law shall control.

**K. No Admission of Liability**

Nothing in the Plan, the Disclosure Statement, or any related document shall constitute or be deemed to constitute an admission of fact, liability, stipulation, or waiver by any party.

**L. Entire Agreement**

Except as otherwise indicated, including, without limitation, with respect to the CVS Agreement and the DOJ Agreement, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on the subject matters hereof.

**M. Headings**

The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

**N. Severability**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (iii) nonseverable and mutually dependent.

**O. Debtors' Managers and Members**

As of the Effective Date, the term of the current members or board of managers (as applicable) for each Liquidating Debtor shall expire automatically and each person serving as a member or manager of a Liquidating Debtor shall be deemed removed and cease to serve automatically without any further action required on the part of the Debtors, the Plan Administrator, the Debtors' officers, or their respective managers or members.

On and after the Effective Date, the governance, management, and operation of each Reorganized Debtor after the Effective Date shall be as provided in the Plan Supplement and the Sale Documents.

**P. Closing of Chapter 11 Cases; Dissolution**

Except as otherwise provided in the Plan, the Plan Administrator shall, promptly after the full administration of any Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases. Upon entry of an order closing the estate of each Liquidating Debtor's Chapter 11 Case, such Debtor's dissolution shall be authorized and approved in all respects without further action required by the Plan Administrator under applicable law, regulation, order, or rule, including any action by the stockholders, members, managers, or similar governing body of any Debtor.

(*Signature page follows.*)

Dated: September 15, 2026

Respectfully submitted,

**HAYNES AND BOONE, LLP**

*/s/ Ian T. Peck*
Charles A. Beckham, Jr. (TX #02016600)
Ian T. Peck (TX #24013306)
Martha Wyrick (TX #24101606)
2801 N. Harwood Street, Ste. 2300
Dallas, Texas 75201
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
Email: charles.beckham@haynesboone.com
ian.peck@haynesboone.com
martha.wyrick@haynesboone.com

**JENNER & BLOCK LLP**

Vincent E. Lazar (admitted *pro hac vice*)
Derek L. Wright (admitted *pro hac vice*)
Angela M. Allen (admitted *pro hac vice*)
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Email: vlazar@jenner.com
dwright@jenner.com
aallen@jenner.com

*Counsel to the Debtors and*
*Debtors in Possession*

**Exhibit A**

Class 6 Reorganizing Debtors

1. AMC-Tennessee, LLC
2. APS Acquisition LLC
3. APS-Summit Care Pharmacy, L.L.C.
4. ASCO Healthcare of New England Limited Partnership
5. ASCO Healthcare, LLC
6. Badger Acquisition LLC
7. Badger Acquisition of Minnesota LLC
8. Care4, L.P.
9. CCRX Holdings, LLC
10. CCRX of North Carolina Holdings, LLC
11. CCRX of North Carolina, LLC
12. Compass Health Services, LLC
13. Compscript, LLC
14. CP Acquisition, LLC
15. Evergreen Pharmaceutical, LLC
16. Home Care Pharmacy, LLC
17. Institutional Health Care Services, LLC
18. Interlock Pharmacy Systems, LLC
19. Langsam Health Services, LLC
20. LCPS Acquisition LLC
21. Lobos Acquisition, LLC
22. Lo-Med Prescription Services, LLC
23. Main Street Pharmacy, L.L.C.
24. Managed Healthcare, LLC
25. Medical Arts Health Care, LLC
26. MHHP Acquisition Company LLC
27. NCS Healthcare of Iowa, LLC
28. NCS Healthcare of Kansas, LLC
29. NCS Healthcare of Montana, LLC
30. NCS Healthcare of New Mexico, LLC
31. NCS Healthcare of Ohio, LLC
32. NCS Healthcare of South Carolina, LLC
33. NCS Healthcare of Wisconsin, LLC
34. Neighborcare of Indiana, LLC
35. Neighborcare of New Hampshire, L.L.C.
36. Neighborcare of Virginia, LLC
37. Neighborcare Pharmacies, LLC

38. Neighborcare Pharmacy of Virginia, LLC
39. North Shore Pharmacy Services LLC
40. OCR Services, LLC
41. Omnicare Indiana Partnership Holding Company LLC
42. Omnicare of New York, LLC
43. Omnicare Pharmacies of Pennsylvania West LLC
44. Omnicare Pharmacy of Florida, LLC
45. Omnicare Pharmacy of North Carolina, LLC
46. Omnicare Pharmacy of Tennessee, LLC
47. Omnicare Pharmacy of Texas 1, LP
48. Omnicare Pharmacy of Texas 2, LP
49. Omnicare Pharmacy of the Midwest, LLC
50. Pharmacy Associates of Glens Falls, LLC
51. Pharmacy Consultants, LLC
52. Pharmacy Holding #1, LLC
53. Pharmacy Holding #2, LLC
54. Pharmed Holdings, LLC
55. PRN Pharmaceutical Services, LP
56. Roeschen's Healthcare LLC
57. Shore Pharmaceutical Providers, LLC
58. Specialized Pharmacy Services, LLC
59. Sterling Healthcare Services, LLC
60. Suburban Medical Services, LLC
61. Superior Care Pharmacy, LLC
62. TCPI Acquisition, LLC
63. UC Acquisition, LLC
64. Value Health Care Services LLC
65. Weber Medical Systems LLC
66. Westhaven Services Co., LLC
67. Williamson Drug Company, LLC

**Exhibit B**

Class 7 Reorganizing Debtors

1. NeighborCare Pharmacy Services, LLC
2. JHC Acquisition LLC
3. Badger Acquisition of Kentucky LLC
4. D&R Pharmaceutical Services, LLC
5. Evergreen Pharmaceutical of California, LLC
6. Best Care LTC Acquisition Company LLC (a/k/a Omnicare Payroll, LLC)
7. NCS Healthcare of Kentucky, LLC

**Exhibit C**

Liquidating Debtors

1. Omnicare, LLC
2. Med World Acquisition, LLC
3. Three Forks Apothecary, LLC
4. Merwin Long Term Care, LLC
5. Merwin IV & Specialty Pharmacy, LLC
6. Merwin RX-Compounding Pharmacy, LLC
7. NIV Acquisition, LLC
8. CHP Acquisition, LLC
9. Home Pharmacy Services, LLC
10. Omnicare Pharmacies of the Great Plains Holding Company, LLC
11. Geneva Woods Pharmacy, LLC
12. Geneva Woods Health Services, LLC
13. Geneva Woods Retail Pharmacy, LLC
14. Geneva Woods LTC Pharmacy, LLC
15. Geneva Woods Pharmacy Alaska, LLC
16. Geneva Woods Pharmacy Wyoming, LLC
17. Geneva Woods Pharmacy Washington, LLC
18. Enloe Drugs LLC
19. Omnicare Property Management, LLC
20. NCS Healthcare of Illinois, LLC
21. NCS Healthcare of Tennessee, LLC
22. Omnicare Pharmacy and Supply Services LLC
23. Care Pharmaceutical Services, LP
24. VAPS Acquisition Company, LLC
25. PP Acquisition Company, LLC
26. Continuing Care Rx, LLC
27. ZS Acquisition Company, LLC
28. Badger Acquisition of Ohio LLC
29. Grandview Healthcare, LLC
30. Omnicare Pharmacy of Pueblo, LLC
31. Uni-Care Health Services of Maine, LLC
32. Grandview Pharmacy, LLC
33. Martin Health Services, LLC
34. Campo's Medical Pharmacy, LLC
35. Omnicare Pharmacy of Nebraska LLC
36. Omnicare of Nevada, LLC

**Exhibit D**

Insured Claims

**(Redacted Version)**

| Proof of Claim Number | Claimant Name |
|---|---|
| 84 | CONFIDENTIAL CREDITOR 1107 |
| 85 | CONFIDENTIAL CREDITOR 1015 |
| 173 | CONFIDENTIAL CREDITOR 6739 |
| 177 | CONFIDENTIAL CREDITOR 1032 |
| 199 | CONFIDENTIAL CREDITOR 6601 |
| 200 | CONFIDENTIAL CREDITOR 6041 |
| 202 | CONFIDENTIAL CREDITOR 1021 |
| 207 | CONFIDENTIAL CREDITOR 6597 |
| 213 | CONFIDENTIAL CREDITOR 6597 |
| 226 | CONFIDENTIAL CREDITOR 1031 |
| 252 | FARMERS PROPERTY AND CASUALTY INSURANCE COMPANY A/S/O CONFIDENTIAL CREDITOR 1048 (INSURED) |
| 253 | CONFIDENTIAL CREDITOR 1020 |
| 254 | CONFIDENTIAL CREDITOR 1079 |
| 279 | CONFIDENTIAL CREDITOR 6044 |
| 290 | CONFIDENTIAL CREDITORS 1028 & 1047 |
| 292 | REHAB ASSIST GUARDIANSHIP SERVICES, AS PLENARY GUARDIAN OF THE ESTATE AND PERSON OF CONFIDENTIAL CREDITOR 6046 |
| 296 | CONFIDENTIAL CREDITOR 1088 |
| 302 | CONFIDENTIAL CREDITOR 1118 |
| 352 | CONFIDENTIAL CREDITOR 1124 |
| 353 | CONFIDENTIAL CREDITOR 1123 |
| 355 | CONFIDENTIAL CREDITOR 1122 |
| 371 | CONFIDENTIAL CREDITOR 6590 |
| 381 | CONFIDENTIAL CREDITOR 6740 |

| Proof of Claim Number | Claimant Name |
|---|---|
| 382 | NATIONAL GENERAL INSURANCE |
| 397 | PROGRESSIVE NORTHERN INSURANCE COMPANY |
| 399 | LIBERTY MUTUAL INSURANCE |
| 454 | CONFIDENTIAL CREDITOR 6741 |
| 460 | ALACRITY SOLUTIONS |
| 463 | ROADSAFE TRAFFIC SYSTEMS, INC. |